1                        UNITED STATES DISTRICT COURT
2                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
                              SAN JOSE DIVISION
3

4

5        IN RE GOOGLE, INC., GMAIL          CASE NO.  MD-13-2430-LHK
         LITIGATION.
6                                           SAN JOSE, CALIFORNIA

7                                           MAY 8, 2013

8

9
                             TRANSCRIPT OF PROCEEDINGS
10                   BEFORE THE HONORABLE LUCY H. KOH
                      UNITED STATES DISTRICT JUDGE
11

12                        A-P-P-E-A-R-A-N-C-E-S

13
         FOR THE PLAINTIFF:     GOLOMB & HONIK
14                              BY: KENNETH J. GRUNFELD
                                1515 MARKET STREET , SUITE 1100
15                              PHILADELPHIA, PENNSYLVANIA 19102

16                              CORY WATSON
                                BY:  F. JEROME TAPLEY
17                              2131 MAGNOLIA AVENUE
                                BIRMINGHAM, ALABAMA 35205
18
                                WYLY-ROMMEL
19                              BY:  SEAN F. ROMMEL
                                4004 TEXAS BOULEVARD
20                              TEXARKANA, TEXAS 75503

21          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22
         OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, CRR
23                                   CERTIFICATE NUMBER 8074

24
             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
25        TRANSCRIPT PRODUCED WITH COMPUTER.

1

A P P E A R A N C E S:   (CONT')

2

FOR THE PLAINTIFFS:                 BEASLEY ALLEN
3                                   BY:  C. LANCE GOULD
                                    272 COMMERCE STREET
4                                   P.O. BOX 4160
                                    MONTGOMERY, ALABAMA 36103
5
                                    KERR & WAGSTAFFE
6                                   BY:  MICHAEL NG
                                    100 SPEAR STREET
7                                   SUITE 1800
                                    SAN FRANCISCO, CALIFORNIA
8                                   94105

9                                   CARTER WOLDEN CURTIS
                                    BY:  KIRK J. WOLDEN
10                                  1111 EXPOSITION BOULEVARD
                                    SUITE 602
11                                  SACRAMENTO, CALIFORNIA
                                    95825
12
                                    GOLDENBERG, HELLER,
13                                  ANTOGNOLI & ROWLAND
                                    BY:  THOMAS P. ROSENFELD
14                                  2227 S. STATE ROUTE 157
                                    EDWARDSVILLE, ILLINOIS
15                                  62025

16      TELEPHONICALLY              GOLDENBERG, HELLER,
                                    ANTOGNOLI & ROWLAND
17                                  BY:  THOMAS P. ROSENFELD
                                    2227 S. STATE ROUTE 157
18                                  EDWARDSVILLE, ILLINOIS
                                    62025
19

20      FOR THE DEFENDANTS:         COOLEY
                                    BY:  WHITTY SOMVICHIAN
21                                  101 CALIFORNIA STREET
                                    5TH FLOOR
22                                  SAN FRANCISCO, CALIFORNIA
                                    94111
23

24

25

```
1     SAN JOSE, CALIFORNIA                      MAY 8, 2013
                         P R O C E E D I N G S
2

3        (COURT CONVENED.)

4            THE CLERK:  CALLING CASE NUMBER MD-13-02430-LHK, IN

5     RE:  GOOGLE, INCORPORATED, GMAIL LITIGATION.

6            MR. ROMMEL:  GOOD AFTERNOON, YOUR HONOR.  SEAN

7     ROMMEL FOR PLAINTIFFS.

8            MR. NG:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL NG FOR

9     THE PLAINTIFF IN THE AK CASE.

10           MR. TAPLEY:  GOOD AFTERNOON, YOUR HONOR.  JEROME

11    TAPLEY FOR PLAINTIFFS.

12           THE COURT:  GOOD AFTERNOON.

13           MR. WOLDEN:  KIRK WOLDEN FOR PLAINTIFFS, YOUR HONOR.

14           MR. GRUNFELD:  KEN GRUNFELD FROM GOLOMB & HONIK FOR

15    THE PLAINTIFFS, YOUR HONOR.

16           THE COURT:  OKAY.  I'M SORRY.  GIVE ME JUST ONE

17    SECOND TO FIND YOU ALL ON MY LIST.  MR. NG AND MR. WOLDEN.

18           MR. GRUNFELD:  MR. GRUNFELD, KEN GRUNFELD FROM

19    GOLOMB & HONIK.

20           THE COURT:  OKAY.  THANK YOU.

21           MR. GOULD:  GOOD AFTERNOON.  LANCE GOULD.

22           THE COURT:  OKAY.  IS THAT EVERYBODY?

23           I THINK WE HAD MR. ROSENFELD ON THE PHONE.  WHO IS

24    ON THE PHONE?

25           MR. ROSENFELD:  MY NAME IS TOM ROSENFELD, YOUR
```

1  HONOR, ON BEHALF OF THE AK PLAINTIFFS.

2        MR. SOMVICHIAN:  WHITTY SOMVICHIAN FOR GOOGLE, YOUR

3  HONOR.  GOOD AFTERNOON.

4        THE COURT:  WELL, I HAVE SEVEN ATTORNEYS FOR THE

5  PLAINTIFFS.  WHAT DID WE HAVE 26 OR 27?  I THINK SEVEN IS TOO

6  MUCH.

7        MR. ROMMEL:  YES, YOUR HONOR.

8        THE COURT:  THIS IS A CMC.  WHICH PRIVATE CLIENT

9  WOULD PAY FOR SEVEN LAWYERS -- NO, ACTUALLY IS IT EIGHT

10  COUNTING MR. ROSENFELD, OR SEVEN TOTAL?

11     ANYWAY, I REALLY DON'T THINK THAT A PRIVATE CLIENT WOULD

12  PAY FOR THIS MANY ATTORNEYS TO ATTEND A CMC, AND I DON'T THINK

13  AN ABSENT CLASS MEMBER OR A PUNITIVE CLASS MEMBER SHOULD HAVE

14  TO PAY FOR THAT EITHER.

15        MR. ROMMEL:  YEAH.  AS WE INDICATED IN THE CMC

16  STATEMENT, THE ONLY REASON WHY ALL OF US ARE OUT HERE TODAY IS,

17  AGAIN, TO HOPEFULLY, IF THE COURT HAD ANY QUESTIONS, OF THE

18  RESPECTIVE INDIVIDUAL CASE LAWYERS TO PUT FORTH IN THE PC, THAT

19  THAT'S WHY WE'RE ALL HERE TODAY.

20     AS WE INDICATED IN THE CMC STATEMENT, WE DON'T ENVISION

21  THAT THIS WILL BE THE WAY GOING FORWARD.  AND WE REALLY DID TRY

22  TO TAKE YOUR COMMENTS TO HEART AND YOUR ADMONITIONS TO PUT

23  FORTH THE STREAMLINE PROPOSAL THAT WE HAVE THAT IS THE CO-LEAD,

24  LIAISON, AND A FOUR PERSON PC REPRESENTATIVE OF TWO LAWYERS

25  FROM THE THREE STATE CASES, AND TWO LAWYERS FROM THE AK MINOR

1    CASE WITH THE UNDERSTANDING THAT WE ALSO PUT TOGETHER WE THINK

2    SOME GUIDELINES FOR ROLES AND RESPONSIBILITIES, AND WE ALSO PUT

3    TOGETHER THE DETAILED TIME AND EXPENSE ACCOUNTING PRACTICES AND

4    ALL OF THAT BEFORE THE COURT IS I THINK A UNANIMOUS AND IS NOT

5    OPPOSED TO BY GOOGLE AT ALL.

6        BUT WHAT WE'RE HERE TODAY IS, MY UNDERSTANDING WAS, TO

7    ADDRESS MAYBE GOOGLE'S UNSPECIFIED CONCERNS AS TO WHAT THE PC

8    WOULD BE DOING, AND THEN I KNOW MR. NG WANTED TO PRESENT WITH

9    REGARDS TO THE ADDITION OF A MINOR SUBCOMMITTEE.

10       BUT WE REALLY DID TRY TO STREAMLINE IT DOWN, AND WE THINK

11   OBVIOUSLY MR. WALDEN AND MR. TAPLEY AND MYSELF NEED TO GET

12   THESE OTHER GENTLEMAN UP TO SPEED ON TWO AND A HALF YEARS OF

13   LITIGATION TO GET THE CONSOLIDATED COMPLAINT FILED.

14       WE THINK THAT THE VERSION OF THE PC THAT IS BEFORE THE

15   COURT RIGHT NOW IS REPRESENTATIVE OF THE INTEREST OF THE

16   INDIVIDUAL CASES.  WE HAVE WORKED IN LANGUAGE WITHIN THE

17   PROPOSAL THAT WE HAVE THAT WE THINK WILL SATISFY OR HOPEFULLY

18   HAVE ANY CONCERNS ABOUT THE INDIVIDUAL ISSUES IN THE CASE.

19       AND I WOULD LIKE TO SAY, YOU KNOW, WITH REGARDS TO

20   GOOGLE'S UNSPECIFIED CONCERNS AS TO WHAT THE PC WOULD DO AND

21   THOSE TYPES OF THINGS, YOU KNOW, THE CREATION OF THE MDL

22   DOESN'T EVISCERATE OUR ROLE AS COUNSEL FOR THESE CLIENTS.

23       AND WE REALLY TRIED TO LOOK AT THE PROCEDURAL

24   RAMIFICATIONS OF THE CONSOLIDATED COMPLAINT AND PUT SOMETHING

25   BEFORE THE COURT THAT WOULD BE ILLUSTRATIVE OF ALL OF THE

1    COORDINATION THAT WE HAVE DONE.  AND I HAVE TO SAY OVER THE

2    LAST COUPLE OF WEEKS, AND SINCE WE HAVE BEEN HERE LAST, YOUR

3    KNOW, THAT MR. SOMVICHIAN WOULDN'T HAVE NOTICED ANY DIFFERENCE

4    AT ALL BECAUSE MYSELF AND MR. TAPLEY AND MR. WALDEN HAVE BEEN

5    NEGOTIATING WITH HIM ON THE PROTECTIVE ORDER THAT IS BEFORE THE

6    COURT TODAY, THE DISCOVERY PLAN, THE ISSUES THAT ARE THERE,

7    JUST AS WE HAVE CONTINUITY AND JUST AS WE HAVE IN ANY OF THE

8    OTHER CASES.

9         THE OTHER ISSUES WITH REGARDS TO THE INDIVIDUAL ISSUES

10   THAT MAY ARISE IN THE CASE FROM THE PARTICULAR CLASSES --

11            THE COURT:  WELL, LET ME ASK YOU A QUESTION.  SO

12   PUNITIVE CLASS MEMBERS ARE PAYING FOR THREE LAWYERS TO

13   NEGOTIATE A PROTECTIVE ORDER AND GOOGLE IS PAYING FOR ONE

14   LAWYER TO NEGOTIATE A PROTECTIVE ORDER?

15        I JUST DON'T THINK THAT THOSE IMBALANCES BETWEEN A PAYING

16   CLIENT WHO IS WRITING CHECKS AND WHO IS MONITORING THE FEES AND

17   COSTS SHOULD BE PAYING LESS THAN BASICALLY A PUNITIVE CLASS FOR

18   WHOM YOU HAVE A FIDUCIARY DUTY, AND I'M JUST CONCERNED ABOUT

19   THERE NOT BEING EFFICIENCIES HERE.

20        AND, YOU KNOW, LAST TIME THERE WERE, WHAT, 27 LAWYERS HERE

21   FOR THE PLAINTIFFS?

22        IF IT COMES OUT THAT THERE IS A SETTLEMENT IN THIS CASE,

23   I'M NOT GOING TO APPROVE 27 LAWYERS FLYING OUT.  AS GOOD AS IT

24   IS FOR THE ECONOMY, I'M NOT GOING TO BE PAYING FOR 27 FLIGHTS,

25   27 HOTELS, 27 MEALS.  I MEAN, THAT'S JUST NOT RIGHT.

1          WHATEVER MONEY GETS RECOVERED, IT SHOULD GO TO THE CLASS,

2     IF THERE IS ONE, WHICH I DON'T KNOW IF THERE IS GOING TO BE ONE

3     OR NOT.

4          BUT I'M JUST -- I MEAN, YOU ALL CAN COME OUT BUT YOU'RE

5     GOING TO BE COMING OUT PRO BONO BECAUSE I AIN'T GOING TO HAVE

6     THIS CLASS PAYING FOR THIS MUCH REDUNDANCY, OKAY.

7          MR. ROMMEL:  I UNDERSTAND.

8          THE COURT:  I'M NOT.  AND SO IF A PRIVATE CLIENT IS

9     SAYING I'M GOING TO SEND ONE LAWYER HERE, OKAY, I JUST, I JUST

10    THINK THAT THESE ASYMMETRIES ARE NOT GOOD.  THEY'RE NOT

11    REFLECTING A HIGH LEVEL OF EFFICIENCY.

12         MR. ROMMEL:  YOUR HONOR, IF I MAY?

13         THE COURT:  YEAH.

14         MR. ROMMEL:  YOU SEE MR. SOMVICHIAN HERE TODAY BY

15    HIMSELF TODAY BUT --

16         THE COURT:  I KNOW HE HAS A TEAM.

17         MR. ROMMEL:  AND HE HAS HIS FOLKS ON THE PHONE WITH

18    US, AND WE'VE BEEN NEGOTIATING.  AND WE DON'T JUST DEAL WITH

19    HIM.  WE DEAL WITH OTHERS IN HIS OFFICE.

20         AND GOOGLE HAS SIX LAWYERS IN THE ARKANSAS CASE AND THEY

21    HAVE SIX LAWYERS IN THE TEXAS CASE AND THEY ALL SHOW UP AT THE

22    HEARINGS, TOO, AND THE COURT DIDN'T SEE THAT.

23         AND, AGAIN, THE REASON THERE WERE SO MANY HERE LAST TIME

24    IS BECAUSE THAT WAS THE FIRST TIME THAT ALL OF THE GROUPS CAME

25    TOGETHER.  WE'VE WINNOWED IT DOWN EVEN MORE AND THIS IS THE

1    SECOND TIME, AND WE, AS INDICATED, AND WE DON'T ANTICIPATE THAT

2    THIS WILL HAPPEN GOING FORWARD.

3        AND WE'RE WELL AWARE OF AND HOPEFULLY BUILT INTO THE

4    PROPOSAL THE VERY TYPES OF THINGS THAT THE COURT HAS EXPRESSED

5    CONCERN ABOUT, AND I'LL JUST GIVE YOU AN EXAMPLE.

6        I DON'T SEE ANY ISSUE WITH THE FACT THAT MR. WOLDEN AND

7    MR. TAPLEY AND MYSELF CAN HIGHLIGHT THE ISSUES THAT WILL BE THE

8    COMMON ISSUES IN THIS CASE AND THAT THE PC MEMBERS AND ALL OF

9    US, YOU KNOW, THE INDIVIDUAL FIRMS WILL BE ABLE TO SAY I'LL

10   TAKE THAT ISSUE AND THEY CAN GO AND DEVELOP IT AS IT'S GOING TO

11   HAVE TO BE, REGARDLESS IF THE CASE IS AN MDL CASE OR NOT.

12   THERE'S A LOT OF WORK THAT STILL NEEDS TO BE DONE IN THIS CASE.

13           THE COURT:  I UNDERSTAND.  AND I'M NOT SAYING THAT

14   YOU DON'T NEED A BIG TEAM, IT'S JUST THAT THE SAME BIG TEAM

15   DOESN'T NEED TO DO ALL OF THE SAME THING.

16           MR. ROMMEL:  AGREED.  ABSOLUTELY.

17           THE COURT:  IT NEEDS TO BE MORE LEANLY STAFFED.

18       ANYWAY, SO I THINK I HAVE LET MY VIEWS BE KNOWN THAT

19   WHATEVER HAPPENS IN THIS CASE, SHOULD THERE BE A MOTION FOR

20   ATTORNEY'S FEES, IT IS GOING TO BE UNDER VERY STRICT SCRUTINY

21   AND IF I SEE A LOT OF REDUNDANCY, YOU ALL ARE GOING TO BE DOING

22   THIS CASE PRO BONO, OKAY, BECAUSE I DON'T THINK IT'S RIGHT FOR

23   BASICALLY ABSENT CLIENTS WHO CAN'T SPEAK UP AND SAY -- AND IT'S

24   MY DUTY AS THE COURT HERE TO WATCH OUT FOR THE INTEREST OF ANY

25   PUNITIVE CLASS, IT'S NOT RIGHT.  THEY DON'T HAVE A VOICE HERE

1    TO SAY, WAIT A MINUTE, I AIN'T GOING TO PAY FOR THAT.  I MEAN,

2    THERE'S NO ONE HERE TO BASICALLY STRIP DOWN YOUR FEES THE WAY

3    INHOUSE COUNSEL WOULD DO FOR A RETAINED LAWYER.

4        SO I'M JUST TELLING YOU I NEED TO SEE LESS REDUNDANCY AND

5    I DON'T NEED TO SEE THIS MANY LAWYERS NEXT TIME FOR A CMC.

6            MR. ROMMEL:  YES, MA'AM.

7            THE COURT:  NOW, I UNDERSTAND THAT MR. NG WANTS A

8    SEPARATE COMMITTEE FOR MINORS.

9        I'LL ALLOW YOU TO BE HEARD ON THAT ISSUE.

10            MR. NG:  THANK YOU, YOUR HONOR.  AS WE TALKED ABOUT

11    THE LAST TIME, THERE ARE DISTINCT ISSUES IN THE MINOR CASE THAT

12    ARE NOT PRESENT IN THE OTHER CASES, SPECIFICALLY THE ISSUES

13    ABOUT MINOR'S CAPACITY TO CONSENT.

14        AND WHAT WE HAVE PROPOSED, AND WE TALKED ABOUT WITH GOOGLE

15    AND WE BELIEVE GOOGLE BELIEVE MAKES SENSE, AND WE'RE VERY

16    GRATIFIED THAT YOUR HONOR BELIEVES SHOULD BE AMENABLE TO IT, IS

17    TO ADDRESS THAT DISTINCT LEGAL ISSUE IN AN EARLIER MOTION.

18        AND AFTER WE ADDRESS THAT ISSUE, WE WILL KNOW WHAT THE

19    REST OF THE CASE LOOKS LIKE, WHAT THE SHAPE OF THE DISCOVERY

20    LOOKS LIKE, WHAT THE SHAPE OF THE LEGAL ISSUES LOOK LIKE.

21            THE COURT:  I DON'T RECALL EVER COMMITTING MYSELF TO

22    DOING AN EARLY MOTION.

23            MR. NG:  BUT, YOUR HONOR, WE DISCUSSED HAVING

24    DIFFERENT MOTIONS FROM THE INDIVIDUAL CASES THAT WERE NOT

25    NECESSARILY IN THE CONSOLIDATED CASE.  IN ANY EVENT --

1              THE COURT:  THAT WOULD BE PART OF THE CONSOLIDATED

2      COMPLAINT?

3              MR. NG:  YES, YOUR HONOR.  I MEAN, OUR PREFERENCE

4      WOULD BE NOT TO, BUT WE UNDERSTAND YOUR HONOR'S INDICATING THAT

5      THAT'S HOW YOU WOULD LIKE TO PROCEED, AND YOU'RE AMENABLE TO

6      DOING THAT.

7              THE COURT:  OKAY.

8              MR. NG:  THE ISSUE ABOUT MINOR'S CONSENT IS THIS,

9      YOUR HONOR, IF MINORS ARE LEGALLY INCAPABLE OF GIVING THE

10     CONSENT REQUIRED TO ALLOW GOOGLE TO SCAN THEIR E-MAILS, THEN

11     THE OTHER CONSENT ISSUE THAT ARE PRESENT IN THE OTHER

12     INDIVIDUAL'S CASES ARE IRRELEVANT.

13         SO THE DISCOVERY LOOKS A LOT DIFFERENT, THE LEGAL ISSUES

14     LOOK A LOT DIFFERENT, AND THE CLASS CERTIFICATION ISSUES LOOK A

15     LOT DIFFERENT, AND WE'RE NOT PROPOSING THAT WE SHOULD PROCEED

16     ON AN ENTIRELY SEPARATE TRACK.

17         BUT LIKE YOUR HONOR SAID, OUR CLASS MEMBERS HAVE AN

18     INTEREST IN HAVING THOSE ISSUES ADJUDICATED EFFICIENTLY.  AND

19     AN EFFICIENT WAY TO DO THAT IS TO ADDRESS IT EARLY AND IT'S A

20     PURELY LEGAL ISSUE AND IT CAN BE ADDRESSED WITH MINIMAL, IF

21     ANY, DISCOVERY, I THINK BASICALLY UNDER THE EXISTING DISCOVERY.

22     AND AFTER THAT WE WILL KNOW WHETHER THE DISTINCT ISSUES -- I'M

23     SORRY -- ABOUT WHETHER THE ISSUES ABOUT CONSENT IN THE OTHER

24     CASES HAVE ANY BEARING ON THE MINORS AT ALL.

25              AND IF SO, IF GOOGLE'S VIEW PREVAILS, THEN OUR CASE IS

1    GOING TO LOOK A LOT LIKE THE OTHERS AND OUR DISCOVERY WILL

2    PROCEED IN A WAY THAT IS LIKE THE OTHERS.

3         IF NOT, THOUGH, THOSE ISSUES WILL HAVE NO BEARING ON OUR

4    CASE AND SO, THEREFORE, IT WOULD BE UNFAIR TO HAVE OUR CLIENTS

5    AND OUR MINOR CLASS MEMBERS, WHO ARE ENTIRELY DISTINCT FROM THE

6    OTHER CLASS MEMBERS, BEAR THE COST AND THE BURDEN OF THAT

7    DISCOVERY AND THAT WORK.

8         SO OUR PRIMARY INTEREST IS TO ENSURE THAT WE HAVE THE

9    LATITUDE TO FILE THAT EARLY MOTION AND TEE UP THAT LEGAL ISSUE

10   EARLY BECAUSE THAT'S THE MOST EFFICIENT WAY THAT WE'RE GOING TO

11   GET TO KNOW WHAT THE SHAPE OF THAT DISTINCT CASE IS.

12        AND WE'RE SIMPLY LOOKING OUT FOR OUR CLIENTS AND UPHOLDING

13   OUR FIDUCIARY DUTY TO DO THAT ON BEHALF OF THE ABSENT CLASS.

14        NOW, WE HAD PROPOSED A STRUCTURE FOR DOING THAT IN THE

15   NEGOTIATIONS.  WE HAVE ENDED UP WITH SOMETHING DIFFERENT THAN

16   WE ORIGINALLY PROPOSED.  AND THAT'S FINE.  THAT'S HOW THESE

17   THINGS ARE SUPPOSED TO BE WORKED OUT.

18        BUT I GUESS, FRANKLY, WE'RE A LITTLE CONFUSED ABOUT WHAT

19   THE RESISTANCE IS TO THAT BECAUSE THERE SEEMS TO BE AN

20   AGREEMENT THAT WHERE THERE ARE DISTINCT ISSUES LIKE THIS IN

21   THIS CASE WHERE IT MAKES SENSE TO GO AHEAD EARLY, THAT THE

22   COUNSEL IN THE INDIVIDUAL CASES WOULD HAVE CONTROL OVER THAT.

23        ALL THAT WE PROPOSED IS TO PUT A LITTLE BIT MORE STRUCTURE

24   AROUND THAT, AND, FRANKLY, WE THINK THAT THAT MAKES SENSE.

25        IF YOUR HONOR IS CONCERNED ABOUT EFFICIENCY AND IS

1    CONCERNED ABOUT REDUNDANCY, THE THING THAT MAKES THE MOST SENSE

2    IS TO ASSIGN RESPONSIBILITIES WITH CLARITY.

3        WE'RE IN ABSOLUTE AGREEMENT THAT COMMON ISSUES AND COMMON

4    DISCOVERY SHOULD BE TAKEN TOGETHER.  THEY SHOULD BE DONE IN A

5    COORDINATED AND CONSOLIDATED FASHION.  THAT'S GOOD FOR THE

6    COURT.  FRANKLY, IT'S GOOD FOR ALL OF US BECAUSE WE'RE SHARING

7    RESOURCES.  THE BIGGEST BENEFIT, OF COURSE, IS TO GOOGLE.

8        BUT WHERE THERE ARE THESE DISTINCT ISSUES THAT THE

9    EFFICIENT, LOGICAL THING FOR US TO DO IS TO FILE THIS EARLY

10   MOTION TO SEE WHAT THE SHAPE OF THE LEGAL AND FACTUAL ISSUES

11   THAT REMAIN ARE AFTER THAT AND THEN WE'LL KNOW.

12       YOU KNOW, MAYBE THE PROBLEM IS WITH NOMENCLATURE, AND

13   MAYBE THE PROBLEM -- YOU KNOW, WE USE THE TERM "COMMITTEE"

14   BECAUSE THAT'S WHAT THE MANUAL ON COMPLEX LITIGATION USES.

15       REALLY ALL WHAT WE WANT TO DO IS CLARIFY ROLES AND

16   RESPONSIBILITIES TO MAKE SURE THAT WE CAN EFFICIENTLY LITIGATE

17   THE MINOR'S CASES IN A WAY THAT MAKES THE MOST SENSE FOR THEM

18   AND FOR THE COURT.

19           THE COURT:  DO YOU WANT TO BE HEARD ON THIS,

20   MR. SOMVICHIAN?

21           MR. SOMVICHIAN:  I DO, YOUR HONOR.  I GUESS I'M

22   CONFUSED HERE AS TO WHAT WE'RE REALLY TRYING TO RESOLVE.

23       THE ISSUE AS IT WAS TEED UP IN THE LEADERSHIP PROPOSALS

24   AND OUR RESPONSES WAS WHETHER THERE OUGHT TO BE A SEPARATE

25   MINOR'S COMMITTEE.  AND GOOGLE HAS TAKEN THE POSITION AND THE

1    OTHER PLAINTIFFS HAVE TAKEN THE POSITION THAT THERE'S NO NEED

2    FOR A SEPARATE COMMITTEE BECAUSE THE EXISTING PROPOSAL TO HAVE

3    AN EXECUTIVE COMMITTEE PROVIDES THE INFRASTRUCTURE FOR THE

4    PLAINTIFF'S GROUP TO ADDRESS THESE DISTINCT ISSUES.

5        AND THE QUESTION OF WHEN THEY ALL RESPECTIVELY WANT TO TEE

6    UP AN ISSUE ABOUT MINORS WOULD BE RESOLVED AS PART OF THE

7    DISCUSSIONS WITH, I PRESUME, THE EXECUTIVE COMMITTEE AND THE

8    LEAD COUNSEL WOULD THEN DETERMINE WHICH FIRM HAS LEAD

9    RESPONSIBILITIES FOR ADDRESSING THAT ISSUE.

10       SO IF THE QUESTION IS SHOULD WE HAVE A SEPARATE MINOR'S

11   COMMITTEE?  I THINK THE ANSWER IS, NO, BECAUSE IT'S REDUNDANT

12   OF THE EXISTING STRUCTURE.

13       IF NOW WE'RE TALKING ABOUT SHOULD WE HAVE A MOTION, AN

14   EARLY MOTION TO RESOLVE THIS MINOR'S CONSENT ISSUE, THAT'S NOT

15   SOMETHING THAT WE EVER RESOLVED CERTAINLY AT THE LAST CMC AND

16   NOT SOMETHING WE CONFERRED ABOUT BEFORE TODAY.

17       CERTAINLY THEY HAVE LATITUDE TO RAISE WHATEVER ISSUES THEY

18   WANT, AND WE WOULD BE HAPPY TO FIGURE OUT THE BEST WAY TO

19   RESOLVE THAT ISSUE, BUT I SEE THAT AS A SEPARATE QUESTION FROM

20   WHAT WILL THE OVERALL STRUCTURE OUGHT TO BE.

21            MR. NG:  YOUR HONOR, IF I COULD RESPOND VERY

22   BRIEFLY?

23            THE COURT:  VERY BRIEFLY.  I DO HAVE ANOTHER CASE.

24            MR. NG:  WE HAVE A DISTINCT ISSUE ON BEHALF OF A

25   DISTINCT CLASS.  THERE'S NO OVERLAP BETWEEN THESE CLASSES

1    WHATSOEVER AND OUR CLIENTS, BOTH THE INDIVIDUAL CLIENTS AND THE

2    CLASS, WE'RE SEEKING TO REPRESENT HAVE DISTINCT INTERESTS.

3        AND SO FOR US TO ESTABLISH A STRUCTURE WHERE SOMEONE ELSE

4    CAN DICTATE TO US, YES, FOLLOW THIS PATH; DON'T FOLLOW THIS

5    PATH; YES, TAKE THIS DISCOVERY; YES, FILE THIS MOTION AT THIS

6    TIME ON THE ISSUES THAT ARE NOT PRESENT IN ANY OF THE OTHER

7    CASES DOESN'T MAKE SENSE.  IT JUST TAKES OUR CLIENT AND GIVES

8    CONTROL OF HER CASE TO SOMEONE WHO REPRESENTS A COMPLETELY

9    DIFFERENT GROUP OF CLIENTS ON COMPLETELY DIFFERENT ISSUES.

10        MR. SOMVICHIAN:  YOUR HONOR, MINORS ARE NOT CARVED

11    OUT OF ANY OF THE OTHER CASE CLASSES.  THEY WEREN'T CARVED OUT

12    OF THE DUNBAR CLASS, AND THEY WERE NOT CARVED OUT OF THE NEW

13    COMPLAINT THAT HAS BEEN FILED.

14        ALL OF THOSE PEOPLE ARE ALSO BOUND TO GOOGLE TERMS UNDER

15    OUR VIEW FOR ALL OF THESE PUNITIVE CLASS MEMBERS THAT THE CLASS

16    DEFINITIONS ALSO INCLUDE MINORS, AND I DON'T ACCEPT THE PREMISE

17    THAT AK IS THE ONLY CASE THAT RAISES AN ISSUE WITH RESPECT TO

18    MINORS.

19        MR. NG:  WELL, THAT'S NOT TRUE, YOUR HONOR.  I MEAN,

20    THE CLASSES ARE ENTIRELY ORTHOGONAL.  WE'RE THE ONLY CLASSES

21    WITH GMAIL USERS, AND WE'RE THE ONLY CLASS WITH MINOR ISSUES.

22    AND THE GRAVAMEN OF OUR CASE IS VERY DIFFERENT FROM THE OTHERS.

23        THE COURT:  ALL RIGHT.

24        MR. ROMMEL:  YOUR HONOR, MAY I BE HEARD ON THIS AT

25    ALL?

1    THE COURT:  JUST BRIEFLY.

2    MR. ROMMEL:  A COUPLE OF THINGS.  MR. SOMVICHIAN IS

3    RIGHT, WE ALSO HAVE MINORS IN OUR CLASS.  I WOULD PROPOSE THAT

4    OUR, OUR -- THE LANGUAGE THAT WE HAVE IN THERE ALLOWS THE AK

5    COUNSEL TO LOOK AT ANY UNIQUE ISSUE AND PRESENT IT IN A FASHION

6    THAT IS THE BEST INTEREST FOR THAT PARTICULAR CLASS.

7    BUT TO DEFINE WHAT IS GOING TO HAPPEN RIGHT NOW WHEN I

8    FUNDAMENTALLY DISAGREE WITH THEM EVEN IF THEY WERE TO PREVAIL

9    ON THE EXPRESS CONSENT ISSUE, THEY STILL HAVE THE SAME

10   DEFINITIONS FOR THE ELEMENTS OF INTERCEPTIONS AND THEY HAVE THE

11   SAME DEFINITIONS OF DEVICE ISSUES AND THEY HAVE THE SAME

12   ORDINARY COURSE OF BUSINESS ISSUES AND THEY HAVE THE SAME --

13   ALL OF THE OTHER ISSUES ARE IDENTICAL TO THE OTHER ECPA CLAIMS.

14   AND SO OUR CONCERN AT THIS POINT IS THAT THERE MAY BE SOME

15   ISSUES THAT ARE PRESENTED POTENTIALLY IN AN EARLY FASHION TO

16   SEEK RULINGS THAT MIGHT BENEFIT THE AK CASE AND -- BUT ACTUALLY

17   MAY OVERLAP AND BE POTENTIALLY ADVERSE TO SOME OF THE INTERESTS

18   OF THE OTHER GROUP BECAUSE THEY WERE DONE IN THE MANNER THEY

19   WERE DOING.

20   SO ALL WE'RE ASKING FOR THE REMAINING PLAINTIFFS IS THAT

21   THERE'S NOT A NEED FOR A COMMITTEE AT THIS POINT IN TIME.  THE

22   ROLES IS THERE FOR THEM TO BE ABLE TO PRESENT THIS ISSUE AND

23   COORDINATE IT WITH US AND DO THAT, BUT JUST TO HAVE THIS CARVED

24   OUT COMMITTEE IS SOMETHING THAT WE DON'T BELIEVE IS NECESSARY

25   AT THIS TIME.

1      THE COURT:  LET ME HEAR FROM MR. SOMVICHIAN IF YOU

2   THINK THERE SHOULD BE A DIFFERENT -- WERE YOU SATISFIED WITH

3   THE PLAINTIFF'S RESPONSE TO YOUR CONCERNS?

4      MR. SOMVICHIAN:  YES, YOUR HONOR, WITH RESPECT TO

5   THE ISSUE THAT WE SAW ON THE AMBIGUITY OF WHAT THE ROLE OF WHAT

6   THE EXECUTIVE COMMITTEE WOULD BE AND THEIR INITIAL PROPOSAL AS

7   DRAFTED IT WAS UNCLEAR TO US WHAT THE ROLES OF THE EXECUTIVE

8   COMMITTEE MEMBERS WOULD BE AND THE CIRCUMSTANCES IN WHICH THEY

9   COULD UNDERTAKE SPECIFIC LITIGATION TASKS.

10      I THINK IN THE WRITTEN PROPOSAL AND ALSO IN CALLS THAT I

11   HAVE HAD WITH MR. ROMMEL AND TAPLEY THAT CLARIFIED THAT THE

12   EXISTING PROVISIONS IN WHICH LEAD COUNSEL WILL APPROVE AND

13   SPECIFY PARTICULAR FIRMS TO HANDLE PARTICULAR TASKS WILL GOVERN

14   ANY WORK THAT THE FIRMS THAT ARE ON THE EXECUTIVE COMMITTEE

15   WILL PERFORM.

16      SO WITH THAT CLARIFICATION, WE DON'T HAVE A PROBLEM WITH

17   HOW THE OVERALL STRUCTURE HAS BEEN PROPOSED WITH RESPECT TO THE

18   EXECUTIVE COMMITTEE, LEAD COUNSEL AND LIAISON COUNSEL AND,

19   AGAIN, WHERE WE PART COMPANY WITH AK COUNSEL HAS TO DO WITH THE

20   FORMATION OF A SEPARATE MINOR'S COMMITTEE.

21      THE COURT:  OKAY.  WELL, I HAVE REVIEWED ALL OF THE

22   SUBMISSIONS THAT HAVE BEEN FILED, AND I DO HAVE CONCERNS ABOUT

23   REDUNDANCY BY SETTING UP A SEPARATE MINOR'S COMMITTEE.

24      I THINK THAT IS JUST EVIDENT BY LOOKING AT THE BRIEFS.  I

25   DON'T THINK THERE WOULD BE, IF WE SET UP A MINOR'S COMMITTEE,

1    THERE'S NOT GOING TO BE A LOT OF COORDINATION OF EFFORT.  IT'S

2    GOING TO BE A SEPARATE AND DUPLICATIVE EFFORT.

3        I THINK WHAT SHOULD HAPPEN IS THAT IF THERE ARE SPECIFIC

4    ISSUES RELATING UNIQUELY TO MINORS, THEN PERHAPS THE EXECUTIVE

5    COMMITTEE CAN THEN ASSIGN THAT WORK TO THE AK ATTORNEYS, BUT

6    I'M ALREADY CONCERNED THAT THIS IS A VERY BLOATED LEADERSHIP

7    STRUCTURE, RATHER THAN ONE KIND OF SMALL SUBSET OF FIRMS

8    WINNING OUT, IT'S JUST THAT EVERYBODY GOT JOINED ON.

9        AND SO I HAVE VERY SERIOUS CONCERNS ABOUT EFFICIENCY, AND

10   I STILL DO.  AND I WILL BE RUTHLESS ABOUT ELIMINATING ANY WASTE

11   AND ANY REDUNDANCY IF IT EVER COMES TO A MOTION FOR ATTORNEY'S

12   FEES IN THIS CASE, BUT ANYWAY, THAT REQUEST IS DENIED.

13       LET'S TALK ABOUT DISCOVERY.

14       I THINK 50 INTERROGATORIES FOR EACH SIDE, CONSIDERING THIS

15   IS AN MDL, I'LL ALLOW THAT, OKAY.  FIFTY INTERROGATORIES PER

16   SIDE.

17            MR. SOMVICHIAN:  YOUR HONOR, VERY BRIEFLY ON THAT

18   POINT, JUST TO BE CLEAR ON OUR POSITION.

19       WE WERE NOT FORECLOSING THE POSSIBILITY THAT 50 MAY BE

20   NEEDED ULTIMATELY, BUT OUR PROPOSAL WAS TO PROCEED WITH 30 AND

21   AFTER THE 30 ARE EXHAUSTED, THAT WILL ALLOW US TO BETTER KNOW

22   WHETHER ADDITIONAL DISCOVERY IS REALLY NEEDED.

23       AND RIGHT NOW IT'S COMPLETELY UNCLEAR WHAT THE NEED WOULD

24   BE TO EXCEED THE NORMAL LIMITS.  IT MAY WELL BE THE CASE THAT

25   THEY NEED MORE THAN 30 THAT WE PROPOSED, BUT IT'S ENTIRELY

1    ABSTRACT AT THIS POINT.

2         SO OUR PROPOSAL WAS TO SET A LOWER THRESHOLD AT THE OUTSET

3    SUBJECT TO THE UNDERSTANDING THAT AT THE POINT THAT THEY

4    REACHED 30, WE WOULD CONFER AND BE ABLE TO HAVE A MORE

5    MEANINGFUL DIALOGUE ABOUT SPECIFICALLY WHAT HAS BEEN CONDUCTED

6    AND COMPLETED AND WHAT ARE THE SPECIFIC NEEDS GOING FORWARD,

7    RATHER THAN GIVING A BLANK CHECK TODAY FOR 50.  AND THE SAME

8    GOES WITH THE DEPOSITIONS.

9              THE COURT:  BUT CAN I ASK, WHY DO THE SAME LAWYERS

10   KEEP FILING NEW LAWSUITS?  AND DO THE LAWYERS FOR THE VARIOUS

11   PLAINTIFFS ANTICIPATE FILING MORE?  I KNOW I JUST RELATED ONE

12   MORE.  ARE THERE MORE IN THE WORKS OR WHAT IS THE STATUS?

13             MR. TAPLEY:  JEROME TAPLEY.  YOUR HONOR, I DON'T

14   KNOW OF ANY ADDITIONAL CASES WHICH ARE IN THE WORKS.

15             THE COURT:  ALL RIGHT.  WELL, HELP ME UNDERSTAND,

16   WHY ARE THERE NEW CASES STILL BEING FILED?

17             MR. TAPLEY:  THE MOST RECENT CASE THAT WAS FILED,

18   YOUR HONOR, THE FREAD CASE, WAS ONE IN WHICH WE WERE CONTACTED

19   LAST FALL AND HAVE BEEN INVESTIGATING AND TALKING TO THE CLASS

20   REP WHO CONTACTED US.

21        AND WE MOVED AS QUICKLY AS WE COULD IN THE FINAL DAYS TO

22   TRY TO MAKE SURE THAT WE HAD AS PART OF THE CONSOLIDATED

23   COMPLAINT AND SO THERE WOULDN'T BE TWO ROUNDS OF THAT PROCESS,

24   BUT IT'S SOMETHING THAT HAS BEEN IN THE WORKS FOR SOME TIME.

25             THE COURT:  AND I GUESS WHAT I DON'T UNDERSTAND IS

```
1    THAT YOU ARE LAWYERS FOR DUNBAR AND HARRINGTON AND I THINK

2    SCOTT.

3         SO I GUESS THAT'S WHY I DON'T UNDERSTAND.  EACH OF THOSE

4    CASES YOU ARE ASSERTING A CLASS THAT WOULD INCORPORATE ALL OF

5    THESE NEW PLAINTIFFS ANYWAY.

6              MR. TAPLEY:  I DON'T BELIEVE IT WOULD, YOUR HONOR.

7    THE NEW CLASS IS ON BEHALF OF COLLEGE STUDENTS WHOSE

8    UNIVERSITY'S E-MAIL SYSTEMS ARE POWERED BY A GOOGLE APP.  SO

9    THEY'RE NOT ENCOMPASSED WITHIN THE OTHER CLASSES.

10             THE COURT:  WELL, IT WILL BE 50 INTERROGATORIES PER

11   SIDE.  PLEASE MAKE AN AGREEMENT THAT ALL DUNBAR DISCOVERY WILL

12   BE SHARED WITH THESE MDL CONSOLIDATED CASES.

13        DEPOSITIONS -- BLESS YOU.  I'M GOING TO SAY 20 DEPOSITIONS

14   PER SIDE.  AND IF YOU NEED MORE, YOU'RE GOING TO HAVE TO SHOW

15   GOOD CAUSE.

16             MR. SOMVICHIAN:  YOUR HONOR, JUST FOR CLARITY?

17             THE COURT:  YES.  THE 3 TAKEN IN DUNBAR DO NOT COUNT

18   AGAINST THE 20.

19             MR. SOMVICHIAN:  WHAT ABOUT WITH RESPECT TO

20   INTERROGATORIES, THE SAME?

21             THE COURT:  HOW MANY INTERROGATORIES HAVE BEEN

22   SERVED?

23        WELL, I JUST THINK IT'S NOT -- WE NOW HAVE ALL OF THESE

24   NEW CASES SO, YEAH, IT'S NOT GOING TO APPLY.  THERE WILL BE 50

25   NEW ONES.
```

1      THE DEPOSITION OF THE PLAINTIFF DUNBAR, HOW MUCH TIME DO

2  YOU WANT WITH -- IS IT JUST DUNBAR THAT IS AT ISSUE?  I KNOW

3  YOU WANT TO DEPOSE ALL OF THE NAMED PLAINTIFFS.

4        MR. SOMVICHIAN:  THE ONLY NAMED PLAINTIFF THAT HAS

5  BEEN DEPOSED PARTIALLY BEFORE IS MR. DUNBAR FOR ABOUT

6  FOUR HOURS.

7        THE COURT:  HOW MUCH MORE TIME DO YOU WANT WITH HIM?

8        MR. SOMVICHIAN:  I THINK WE'D WANT A FULL DEPOSITION

9  GIVEN THE FACT THAT THE CLASS DEFINITION HAS COMPLETELY CHANGED

10  AND THE CONTOURS OF THE CASE THAT MS. DUNBAR ARE NOW TRYING TO

11  PROSECUTE ARE NOW DIFFERENT.

12        THE COURT:  ALL RIGHT.  WHAT IS YOUR OBJECTION?  IT

13  SOUNDS REASONABLE.  I COULD LIMIT IT TO MAYBE FIVE OR

14  SIX HOURS.

15        MR. TAPLEY:  YOUR HONOR, WE DON'T OBJECT.

16        THE COURT:  OKAY.

17        MR. TAPLEY:  BUT SIMILARLY, IT MAY BE THAT THE

18  PREVIOUS DEPOSITIONS THAT WERE TAKEN IN THE DUNBAR MATTER NEED

19  TO BE TAKEN AGAIN GIVEN THAT THE FACTS ARE VERY DIFFERENT NOW.

20        THE COURT:  ALL RIGHT.  NOW, YOU HAVE A NEW SET OF

21  SEVEN HOURS WITH MR. DUNBAR.

22      OKAY.  I DIDN'T UNDERSTAND THIS CASE SPECIFIC DISCOVERY

23  ISSUE.  WHAT DID YOU INTEND BY CASE SPECIFIC DISCOVERY?  WHEN

24  WERE YOU PROPOSING THAT THAT BE DONE?  THERE'S NO BIFURCATION

25  OF DISCOVERY.

1          MR. TAPLEY:  NO, YOUR HONOR.  JUST IN THE EVENT THAT

2     WHAT I THINK WE CONTEMPLATED IN THE DISCOVERY PLAN AND WHAT WE

3     CONTEMPLATED WITHIN THE MDL WAS THAT WE WOULD TAKE COMMON

4     DISCOVERY THAT APPLIES TO ALL OF THE CASES.

5          THE COURT:  YOU WOULD TAKE WHAT?

6          MR. TAPLEY:  COMMON DISCOVERY THAT APPLIES TO ALL OF

7     THE ISSUES.  BUT IN THE EVENT THAT THERE IS SOME ISSUE THAT IS

8     INDIVIDUALLY UNIQUE TO REALLY ONE CASE, THEN THERE MIGHT BE

9     ADDITIONAL DISCOVERY ALLOWED OUTSIDE OF THE LIMITS OF THE

10     COMMON DISCOVERY.

11          THE COURT:  THERE SHOULD BE LIMITS BEYOND THE LIMITS

12     THAT I'VE JUST ALREADY IMPOSED.

13       WELL, IF YOU NEED THAT MUCH INDIVIDUAL DISCOVERY, THEN

14     THERE PROBABLY SHOULDN'T BE A CLASS, RIGHT?

15          MR. TAPLEY:  INDIVIDUAL AS TO ONE OF THE CLASSES.

16     IF ONE OF THE CLASSES ENDS UP HAVING SOME INDIVIDUALIZED ISSUE

17     THAT REALLY HAS NO BEARING ON THE OTHER ISSUES IN THE CASE

18     THERE WOULDN'T --

19          THE COURT:  WELL, I'M GOING TO DENY THAT.  THE

20     LIMITS THAT I HAVE SET WILL REMAIN IN THE CASE UNLESS YOU HAVE

21     REALLY GOOD CAUSE TO SHOW TO AMEND THOSE.

22          MR. TAPLEY:  YES, YOUR HONOR.

23          THE COURT:  OKAY.  ALL RIGHT.  SO WE HAVE A FURTHER

24     CMC SET FOR SEPTEMBER 5TH.  IF I DIDN'T SET THAT BEFORE, I'M

25     SETTING IT NOW.

1    ARE YOU ALL AVAILABLE THAT DATE?  SEPTEMBER 5TH?  WAIT.

2    WHY IS THAT ON A THURSDAY?  OH, BECAUSE IT'S OUR MOTION TO

3    DISMISS HEARING.

4    MR. SOMVICHIAN:  THAT'S RIGHT.

5    THE COURT:  FURTHER CMC ON SEPTEMBER 5TH, AND OUR

6    CLASS CERT HEARING JANUARY 16TH.

7    MR. SOMVICHIAN:  AND, YOUR HONOR, YOU'LL WANT A CMC

8    STATEMENT A WEEK IN ADVANCE I ASSUME?

9    THE COURT:  YES, PLEASE.

10    WHAT ELSE?  WERE THERE ANY OTHER ISSUES THAT WE NEEDED TO

11    COVER TODAY?

12    MR. TAPLEY:  DO YOU WANT TO TALK ABOUT PAGE LIMITS

13    WHILE WE'RE HERE?

14    MR. SOMVICHIAN:  IN THE PRIOR CMC STATEMENT WE HAD

15    RAISED THE ISSUE OF POTENTIAL NEED FOR PAGE EXTENSIONS ON THE

16    MOTION TO DISMISS AND THE CLASS CERT BRIEFING.

17    WE CAN DISCUSS IT NOW OR WE CAN ALSO DO IT AFTER AND WAIT

18    UNTIL WE HAVE SEEN THE CONSOLIDATED COMPLAINT.  THE PLAINTIFF

19    HAD PROSED 40 PAGES A SIDE FOR BRIEFS.  GIVEN THE NUMBER OF

20    LEGAL CLAIMS THAT ARE POTENTIALLY GOING TO BE INCORPORATED INTO

21    THE CONSOLIDATED COMPLAINT, I THINK AT LEAST THAT MUCH IS

22    NECESSARY.

23    I DON'T KNOW WHAT THE CONTOURS OF THE CONSOLIDATED

24    COMPLAINT WILL LOOK LIKE.  SO PERHAPS IT'S BEST TO ADDRESS IT

25    AT THAT TIME SO WE CAN MAKE A MORE INFORMED DECISION ABOUT WHAT

1    IS REALLY NEEDED.

2         THE COURT:  WELL, I WILL JUST TELL YOU THAT, YOU

3    KNOW, 40, 40, 30, I DON'T THINK WE CAN HUMANLY ABSORB THAT.  WE

4    ARE ON A SHOESTRING ON OUR END.  WE DON'T HAVE ALL OF THE

5    ATTORNEYS THAT YOU HAVE.  I JUST DON'T THINK THAT WE'LL BE ABLE

6    TO PROCESS ALL OF THAT.

7         WHAT I WILL DO IS SAY 30, 30, 20.  SO A FIVE-PAGE

8    EXTENSION ON EACH.  SO I HUMANLY DON'T THINK WE CAN HANDLE THAT

9    KIND OF VOLUME.  IF IT'S TOO MUCH.  I MIGHT HAVE TO SPLIT THIS

10   INTO TWO HEARINGS.  I HOPE I DON'T HAVE TO DO THAT AND TURN THE

11   CLASS CERT HEARING INTO THE SECOND MOTION TO DISMISS JUST

12   BECAUSE I REALLY WANT YOU TO TAKE INTO CONSIDERATION OUR VERY,

13   VERY LIMITED RESOURCES.

14        MR. SOMVICHIAN:  FAIR ENOUGH, YOUR HONOR.

15        THE COURT:  ANYTHING ELSE?

16        MR. SOMVICHIAN:  I THINK THAT'S IT.

17        THE COURT:  THANK YOU.  I'LL SEE YOU ON

18   SEPTEMBER 5TH.

19        (COURT CONCLUDED AT 3:34 P.M.)

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16          IRENE RODRIGUEZ, CSR, CRR
            CERTIFICATE NUMBER 8076

17

18

19          DATED:  MAY 21, 2013

20

21

22

23

24

25