COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE INC. GMAIL LITIGATION | Case No.  5:13-md-02430-LHK |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **DEFENDANT GOOGLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **F.R.C.P. 12(b)(1), 12(b)(6)** |
| | Date:         September 5, 2013 |
| | Time:         1:30 p.m. |
| | Judge:        Hon. Lucy H. Koh |
| | Courtroom: 8 |
| | Trial Date:   Not yet set |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S MOTION TO DISMISS COMPLAINT**
**MEMORANDUM OF POINTS & AUTHORITIES**
**CASE NO. 5:13-MD-02430-LHK**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 1

I.  INTRODUCTION ................................................................................................ 2

II. STATEMENT OF FACTS ..................................................................................... 3

    A.  Gmail ......................................................................................................... 3

    B.  Google Apps ............................................................................................... 4

    C.  Google's Terms and Disclosures ................................................................ 4

    D.  Plaintiffs, Their Consent to Automated Processing, And Their Claims ................ 5

III. APPLICABLE STANDARDS ................................................................................ 6

IV. ARGUMENT ..................................................................................................... 6

    A.  The Wiretapping Claims Fail Because the Alleged Scanning Practices Are
        Part of Google's Ordinary Course of Business as an ECS Provider ..................... 6

        1.  The Wiretap Statutes Exempt ECS Providers from Liability ..................... 6

        2.  Courts Have Consistently Dismissed Claims Against ECS
            Providers Involving Circumstances Similar to Those Alleged Here ......... 8

        3.  Plaintiffs' Efforts to Plead around the "Ordinary Course of
            Business" Exemption Fail ........................................................................ 10

        4.  Plaintiffs' Theory of Liability Would Lead to Absurd Results ................. 12

        5.  The Pennsylvania Wiretap Statute Applies Only to the Senders, Not
            the Recipients of a Communication ......................................................... 13

    B.  Plaintiffs' Claims Also Fail Under the Consent Defenses of the Wiretap
        Statutes at Issue ......................................................................................... 13

        1.  Gmail Plaintiffs Expressly Consent to Automated Scanning,
            Precluding Any Claim under ECPA .......................................................... 14

        2.  Minors like Plaintiff J.K Cannot Avoid the Terms They Agreed to ......... 16

        3.  Plaintiffs Fread and Carrillo Cannot Avoid Their Express Consent
            by Claiming They Were Pressured into Using Gmail ............................... 17

        4.  The Non-Gmail Plaintiffs Also Impliedly Consent to the Automated
            Processing of Their Messages ................................................................. 19

    C.  The CIPA Claim Also Fails as a Matter of Law for Multiple Reasons ............... 21

        1.  CIPA Does Not Apply to Email Communications ................................... 21

        2.  Plaintiffs Also Have no Article III Standing to Pursue a CIPA claim ...... 23

        3.  Plaintiffs Also Fail to Allege Any Connection with California ............... 24

    D.  The Section 632 Claim Fails for Additional Reasons ..................................... 25

        1.  Plaintiffs Allege no Facts to Show that Their Emails Were
            "Confidential Communications" within the Meaning of the Statute ........ 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

2. Federal Law Preempts Any Claim that an ECS Provider's Operations Constitute an Illegal "Recording" under Section 632 ........... 26

E. The CIPA Claim Should Also Be Dismissed Under Choice Of Law Principles ........................................................................................ 27

V. CONCLUSION ........................................................................................ 30

Cooley LLP
Attorneys At Law
San Francisco

ii.

**Google's Motion To Dismiss Complaint**
**Memorandum of Points & Authorities**
**Case No. 5:13-md-02430-LHK**

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 6

*Banks v. Nissan N. Am., Inc.*,
No. 11-cv-2022, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012) .......................... 28

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*,
366 F.3d 692 (9th Cir. 2004) ................................................................................ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 6

*Berg v. Traylor*,
148 Cal. App. 4th 809 (2007) ................................................................................ 16

*Bohach v. City of Reno*,
932 F. Supp. 1232 (D. Nev. 1996) ............................................................................ 7

*Borninski v. Williamson*,
No. 02-cv-1014, 2005 WL 1206872 (N.D. Tex. May 17, 2005) .......................................... 16

*Bunnell v. MPAA*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................................. 27

*Cavines v. Horizon Cmt. Learning Ctr., Inc.*,
590 F.3d 806 (9th Cir. 2010) .................................................................................... 6

*City of Richmond v. S. Bell Tel. & Tel. Co.*,
174 U.S. 761 (1899) .............................................................................................. 23

*Commonwealth v. Blystone*,
549 A.2d 81 (Pa. 1988) ............................................................................................ 5

*Commonwealth v. Maccini*,
No. 06-cv-0873, 2007 WL 1203560 (Mass. Super. Ct. Apr. 23, 2007) ................................ 20

*Commonwealth v. Proetto*,
771 A.2d 823 (Pa. Super. Ct. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003) ............................ 20

*Deacon v. Pandora Media, Inc.*,
901 F. Supp. 2d 1166 (N.D. Cal. 2012) .................................................................. 23

*Deering v. CenturyTel, Inc.*,
No. 10-cv-0063, 2011 WL 1842859 (D. Mont. May 16, 2011) .......................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

*Deibler v. State*,
    776 A.2d 657 (Md. Ct. App. 2001) ........................................................................ 5

*Diamond v Google Inc.*,
    No. CIV-1202715 (Cal. Sup. Ct. 2012) ................................................................ 22

*In re DoubleClick Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................... 7, 19

*Faulkner v. ADT Servs., Inc.*,
    706 F.3d 1017 (9th Cir. 2013) .............................................................................. 26

*Fraser v. Nationwide Mut. Ins. Co.*,
    352 F.3d 107 (3d Cir. 2003) ................................................................................... 7

*Frezza v. Google, Inc.*,
    No. 12-cv-0237, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ............................ 27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .............................................................................................. 24

*In re Google, Inc. Privacy Policy Litig.*,
    No. 12-cv-1382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28. 2012) ...... 8, 9, 10, 11

*In re Google, Inc. Street View Elec. Commc'ns Litig.*,
    794 F. Supp. 2d 1067 (N.D. Cal. 2011) ............................................................... 27

*Hall v. EarthLink Network, Inc.*,
    396 F.3d 500 (2d Cir. 2005) ......................................................................... 6, 8, 11

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) .............................................................................................. 29

*Hibbs v. Winn*,
    542 U.S. 88 (2004) ................................................................................................ 12

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
    No. 07-cv-1029, 2007 WL 4394447 (E.D. Pa Dec. 13, 2007) ............................. 10

*In re iPhone Application Litig.*,
    No. 11-md-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................... 24, 25

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) ...................................................................................... 25, 29

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

**GOOGLE'S MOTION TO DISMISS COMPLAINT**
**MEMORANDUM OF POINTS & AUTHORITIES**
**CASE NO. 5:13-MD-02430-LHK**

*Kirch v. Embarq Mgmt. Co.*,
  702 F.3d 1245 (10th Cir. 2012)...........................................................................8, 9, 10

*Kirch v. Embarq Mgmt. Co.*,
  No. 10-cv-2047, 2011 WL 3651359 (D. Kan. Aug. 19, 2011) ............................... 16

*Kline v. Sec. Guards, Inc.*,
  386 F.3d 246 (3d Cir. 2004)................................................................................... 13

*Klump v. Nazareth Area Sch. Dist.*,
  425 F. Supp. 2d 622 (E.D. Pa. 2006) ..................................................................... 13

*Kopko v. Miller*,
  892 A.2d 766 (Pa. 2006) ......................................................................................... 5

*LaCourt v Specific Media, Inc.*,
  No. 10-cv-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ............................ 25

*In re Marriage of Baltins*,
  212 Cal. App. 3d 66 (1989)..................................................................................... 18

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012).....................................................................28, 29, 30

*Minotty v. Baudo*,
  42 So.3d 824 (Fla. Dist. Ct. App. 2010) ................................................................. 5

*Montegna v. Yodle, Inc.*,
  No. 12-cv-0647, 2012 WL 3069969 (S.D. Cal. July 27, 2012) ............................ 26

*Mortensen v. Bresnan Commc'n, LLC*,
  No. 10-cv-0013, 2010 WL 5140454 (D. Mont. Dec. 13, 2010)............................ 16

*Penkava v. Yahoo!, Inc.*,
  No. 12-cv-3414 PSG LHK (N.D. Cal.) ECF No. 1................................................. 4

*People v. Chavez*,
  44 Cal. App. 4th 1144 (1996) ................................................................................. 22

*Pub. Util. Dist. No. 1 v. IDACORP, Inc.*,
  379 F.3d 641 (9th Cir. 2004)................................................................................... 27

*Smith v. Maryland*,
  442 U.S. 735 (1979) ..........................................................................................19, 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**GOOGLE'S MOTION TO DISMISS COMPLAINT**
**MEMORANDUM OF POINTS & AUTHORITIES**
**CASE NO. 5:13-MD-02430-LHK**

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
No. 09-cv-4567, 2011 WL 900096 (D.N.J. Mar. 15, 2011).........................................14, 19, 21

*Standiford v. Standiford*,
598 A.2d 495 (Md. Ct. Spec. App. 1991) ................................................................................5

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
782 F. Supp. 2d 1059 (E.D. Cal. 2011)...................................................................................6

*State v. Komisarjevsky*,
No. CR07241860, 2011 WL 1032111 (Conn. Super. Ct. Feb. 22, 2011).............................23

*State v. Lott*,
879 A.2d 1167 (N.H. 2005) ...................................................................................................20

*State v. Roden*,
279 P.3d 461 (Wash. Ct. App. 2012) ....................................................................................20

*State v. Townsend*,
57 P.3d 255 (Wash. 2002)......................................................................................................20

*Taylor v. Indus. Accident Comm'n*,
216 Cal. App. 2d 466 (1963) .................................................................................................16

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003)...............................................................................................27

*United States v. Van Poyck*,
77 F.3d 285 (9th Cir. 1996)....................................................................................................14

*United States v. Verdin-Garcia*,
516 F.3d 884 (10th Cir. 2008)...............................................................................................19

*In re Vistaprint Corp. Mktg. & Sales Pracs. Litig.*,
No. 08-md-1994, 2009 WL 2884727 (S.D. Tex, Aug. 31, 2009), *aff'd*, 392 F. App'x
327 (5th Cir. 2010).................................................................................................................16

*Weiner v. ARS Nat'l Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012) .................................................................................26

*Zephyr v. Saxon Mortg. Servs., Inc.*,
873 F. Supp. 2d 1223 (E.D. Cal. 2012)..................................................................................29

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

**STATUTES**

18 Pa. C.S.

§ 5701 ............................................................................................................. 5

§ 5702 ............................................................................................................. 8

§ 5704(4) ....................................................................................................... 14

§ 5725 ............................................................................................................ 13

§§ 5741-43 ...................................................................................................... 7

15 U.S.C. § 6502(d) ................................................................................... 17, 18

18 U.S.C.

§ 2510 ....................................................................................................... 6, 11

§ 2511 ...................................................................................................... 14, 19

§ 2701 ......................................................................................................... 6, 7

Ala. Code 1975 § 13A-11-30 ......................................................................... 28

Cal. Fam. Code § 6701(c) ........................................................................ 16, 17

Cal. Penal Code

§ 629 ........................................................................................................ 23, 24

§ 630 ......................................................................................................... 6, 29

§ 631 ............................................................................................... 6, 21, 22, 25

§ 632 ......................................................................................................... *passim*

§ 637.2 ..................................................................................................... 24, 28

Fla. Stat.

§ 934.02 ........................................................................................................... 8

§ 934.03 ...................................................................................................... 5, 14

§§ 934.21-23 .................................................................................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

Page

Md. Code, Cts. & Jud. Proc.

 § 10-401 ............................................................................................... 7, 8

 § 10-402 ........................................................................................... 5, 7, 14

 § 10-410 ................................................................................................... 28

**OTHER AUTHORITIES**

34 C.F.R. 99.31 ............................................................................................ 13

*Black's Law Dictionary* (9th ed. 2009) ......................................................... 22

Restatement (Second) of Contracts § 175 (1981) ......................................... 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on September 5, 2013, at 1:30 p.m., defendant Google Inc. ("Google") will and hereby does move to dismiss Plaintiffs' Consolidated Individual and Class Action Complaint (the "Complaint"). Google's Motion to Dismiss is made pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and other pleadings in support of the Motion, and all pleadings on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Have Plaintiffs stated a claim that the automated processing of email in Google's Gmail service violates the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), and its Florida, Maryland, and Pennsylvania state law analogues (collectively the "wiretap statutes"), where:

- The wiretap statutes exempt providers of an electronic communication service (an "ECS") like Google from liability based on conduct in the ordinary course of business and the Complaint confirms that the alleged "interceptions" occur as part of Google's normal processes in providing the Gmail service;

- ECPA precludes liability where a single party to a communication consents to the alleged "interception," and all Gmail users contractually agree to the scanning of email as part of using Google's services;

- The state wiretap statutes preclude liability where both parties to a communication consent, and case law holds that all users of email necessarily give implied consent to the automated processing of their emails;

- The Pennsylvania wiretap statute applies only to the senders, not the recipients, of an electronic communication.

2.  Have Plaintiffs stated a claim that Google's automated processing of email violates the California Invasion of Privacy Act ("CIPA"), where:

- The express terms and legislative history of CIPA confirm that the statute excludes email;

- The only Plaintiffs purporting to bring a CIPA claim are non-California residents who allege no connection with California;

- CIPA allows a claim only for injured persons and Plaintiffs allege no harm of any kind from the automated processing of their emails.

Cooley LLP
Attorneys At Law
San Francisco

1.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

# I. INTRODUCTION.

This case involves Plaintiffs' effort to criminalize ordinary business practices that have been part of Google's free Gmail service since it was introduced nearly a decade ago. While Plaintiffs are differently situated (some are Gmail users; others are non-Gmail users who exchange emails with Gmail users), their claims boil down to the same core allegation: that Google commits an illegal "interception" when it applies automated (non-human) scanning to emails involving Gmail users–even though the processes at issue are a standard and fully-disclosed part the Gmail service. This claim fails as matter of law for multiple reasons.

First, all of the federal and state wiretap laws at issue specifically exempt ECS providers from liability based on conduct in their ordinary course of business. These protections reflect the reality that ECS providers like Google *must* scan the emails sent to and from their systems as part of providing their services. While Plaintiffs go to great lengths to portray Google in a sinister light, the Complaint actually confirms that the automated processes at issue are Google's ordinary business practices implemented as part of providing the free Gmail service to the public. This is fatal to Plaintiffs' claims.

Second, the wiretap statutes also preclude liability where either a single party to the communication (for the federal statute) or both parties (for the state statutes) have expressly or impliedly consented to the practices at issue. Here, all Plaintiffs who are Gmail users consented to the automated scanning of their emails (including for purposes of delivering targeted advertising) in exchange for using the Gmail service, thus precluding any claim under federal law. Moreover, multiple courts have held that *all* email senders impliedly consent to the processing of their emails by virtue of the fact that email cannot be sent or delivered without some form of electronic processing. This combination of express and implied consent bars Plaintiffs' claims in their entirety, under both the federal and state wiretap statutes.

Third, the CIPA claim brought by certain Plaintiffs is even farther afield than the wiretapping claims above because CIPA does not apply to emails *at all*, as confirmed by both the express terms and legislative history of the statute. In fact, the California Legislature specifically considered *and rejected* proposals to expand the statute to cover emails. And even if CIPA could

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

be interpreted to cover emails, both implied consent and choice of law rules would preclude the CIPA Plaintiffs from relying on the statute. As residents of Alabama and Maryland whose emails have no alleged connection to California, these Plaintiffs cannot invoke the protections of California law and bypass the laws of the states in which they reside simply because they want to avoid the requirements and limitations of their local laws.

Last, Plaintiffs' claims should be rejected because they would lead to anomalous results with far-ranging consequences beyond the allegations in the Complaint. Plaintiffs' theory–that any scanning of email content by ECS providers is illegal–would effectively criminalize routine practices that are an everyday aspect of using email. Indeed, Plaintiffs' effort to carve out spam filtering and virus detection from their claims underscores the fact that their theory of liability would *otherwise* encompass these common services that email users depend on. Notwithstanding these limited carve-outs, Plaintiffs' theory would still sweep up a host of common features that benefit consumers. For example, Plaintiffs' theory of liability would prevent ECS providers from providing features that allow users to sort their emails using automated filters or even to search their emails for specific words—because these features necessarily involve the scanning of email content and would thus be an illegal "interception" under Plaintiffs' theory. The Court should not allow the Complaint to proceed on this sweeping basis.

## II. STATEMENT OF FACTS.

### A. Gmail.

Gmail is one of the most popular web-based email services in the world with over 400 million users. Like all email providers, Google applies automated systems for the delivery of email. As part of this processing, Google's automated systems scan email content to filter out spam, detect computer viruses, and provide various features, including functions that allow users to search their email messages, automatically sort incoming email, and others. These systems are also used to display advertisements targeted to email content, as Google has disclosed since the inception of Gmail nearly a decade ago. The revenues from these advertisements enable Google to provide the Gmail service for free to the public. Gmail's advertising-based business model is similar to that of other free email services offered by Yahoo, AOL, and Hotmail. Yahoo, the very

web-based email service one named Plaintiff uses, also generates revenue from scanning email content to deliver targeted advertising.[1] The processes related to Google's automated scanning are completely automated and involve no human review.

### B. Google Apps.

"Google Apps" is a suite of Google products that includes Gmail. Google Apps enables its users–which can include businesses, educational organizations, and Internet service providers ("ISPs")–to provide email services to their employees, students, or customers.[2] These email services are operated by Gmail but can be customized in certain ways. Cable One, Inc. ("Cable One") is an ISP and the Universities of Hawaii ("Hawaii") and of the Pacific ("UoP") are two educational institutions that provide email services to their users (including Plaintiffs Dunbar, Castillo, and Fread) through Google Apps. (Compl. ¶¶ 8, 14, 100, 101.)

### C. Google's Terms and Disclosures.

The Google Terms of Service ("TOS") and Privacy Policy in effect during the majority of the class period required users of Gmail to agree that "advertisements may be targeted to the content of information stored on [Google's] Services, queries made through [Google's] Services or other information."[3] (Declaration of Aaron Rothman (hereinafter "Rothman Declaration" or "Rothman Decl.") ¶ 11, Exh. E at § 17.1.) The Privacy Policy has essentially stated throughout the class period that Google could use information from users to "[p]rovide, maintain, protect, and improve [its] services (including advertising services) and develop new services." (*Id*. at ¶ 15, Exh. I; *see also id.* at ¶¶ 13-16, Exhs. G-J.)

In addition to these contractual terms, Google also provides a variety of disclosures throughout its website and within Gmail itself explaining that automated processing is applied to Gmail messages and that email content is scanned to deliver targeted ads. Several of these

---

[1] *See* Declaration of Kyle Wong (hereinafter "Wong Decl."), Exh. AA. In fact, attorneys for Plaintiff Dunbar filed a class action against Yahoo in this district claiming nearly identical allegations as brought here. (Compl. §§ 9-15 *Penkava v. Yahoo!, Inc.*, No. 12-cv-3414 PSG LHK (N.D. Cal.) ECF No. 1.) The case was subsequently dismissed with prejudice while Yahoo's motion to dismiss was pending. (*See* Wong Decl., Exh. PP.)

[2] *See, e.g.,* http://www.google.com/enterprise/apps/education/ and http://www.google.com/enterprise/apps/business/.

[3] The TOS defined Google's "Services" as "Google's products, software, services and web sites," including Gmail. (*See* Rothman Decl., Ex. F at §1.1.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

disclosures are detailed in the Rothman Declaration.

### D. Plaintiffs, Their Consent to Automated Processing, and Their Claims.

Plaintiffs Dunbar, Fread, Carrillo, and J.K. (through A.K.) (collectively, "Gmail Plaintiffs") are Gmail or Google Apps users. (Compl. ¶¶ 224, 233, 345, 248.) Plaintiff Dunbar has a Google Apps account through his ISP, Cable One. Plaintiffs Fread and Carrillo have used Google Apps accounts provided by the universities they attend (Hawaii and UoP). J.K. is a minor who uses a Gmail account. These Gmail Plaintiffs claim that Google violated ECPA, 18 U.S.C. §§ 2511(1)(a) and (1)(d), by unlawfully intercepting and using their electronic communications. (*Id.* ¶ 216.) Each of these Gmail Plaintiffs are bound by the TOS, Privacy Policy, or both.[4]

Plaintiffs Brinkman, Knowles, and Brent Scott are residents of Pennsylvania, Maryland, and Florida respectively. They allege that they used their non-Gmail email accounts to communicate with Gmail users. (Compl. ¶¶ 10, 12, 13.) Based on these communications, these Plaintiffs claim that Google violated the state wiretap laws of their respective home states, Fla. Stat. §§ 934.03 *et seq.*; Md. Code, Cts. & Jud. Proc. §§ 10-402 *et seq*; 18 Pa. C.S. §§ 5701 *et seq.*, by unlawfully intercepting and using their electronic communications (Compl. ¶¶ 332-384.) Because these states' wiretap laws are directly modeled on ECPA and are virtually identical to it in form and substance,[5] the claims of these Plaintiffs and the Gmail Plaintiffs (collectively, the "Wiretapping Plaintiffs") are considered and analyzed together below.

---

[4] Plaintiff Dunbar concedes that he is bound by the Cable One Apps TOS and Google's Privacy Policy. (Wong Decl., Exh. OO.) The relevant terms in the Cable One Apps TOS are virtually identical to, if not the same as, those terms in the Google TOS discussed above. (Rothman Decl. ¶ 7.) With respect to Plaintiffs Fread and Carrillo, as also discussed in the Rothman Declaration, the contracts between Google and Hawaii and UoP (i) incorporate the Privacy Policy, including its description of how Google processes data and (ii) require Hawaii and UoP to obtain the necessary consent from end users, like Fread and Carrillo, for Google to provide the Gmail service. (*Id.* ¶¶ 8 and 9, Exhs. C and D.) Plaintiff J.K. alleges that he created his Gmail account "via the 'Create An Account' link on Gmail's homepage." (Wong Decl., Exh. EE at ¶ 10.) As explained in the Rothman Declaration, a user who signs up in this manner must affirmatively agree to the TOS and Privacy Policy. (Rothman Decl. ¶ 6, Exh. A.) Moreover, at certain times during the class period, Google's Create an Account web page explained that in "Gmail, you won't see blinking banner ads. Instead, *we display ads you might find useful that are relevant to the content of your messages.*" (*Id.* (emphasis added).) As such, each named Plaintiff is bound by the TOS, Privacy Policy, or both.

[5] *See, e.g.*, *Minotty v. Baudo*, 42 So. 3d 824 (Fla. Dist. Ct. App. 2010); *Deibler v. State*, 776 A.2d 657 (Md. Ct. App. 2001); *Kopko v. Miller*, 892 A.2d 766, 773 (Pa. 2006). As such, these statutes are to be construed in line with federal law under ECPA. *Minotty*, 42 So. 3d at 827; *Standiford v. Standiford*, 598 A.2d 495, 498 (Md. Ct. Spec. App. 1991); *Commonwealth v. Blystone*, 549 A.2d

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

Plaintiffs Brad Scott and Harrington, residents of Maryland and Alabama respectively, seek relief under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630-632. These Plaintiffs (collectively, the "CIPA Plaintiffs") have non-Gmail email accounts through which they exchanged emails with Gmail users. Plaintiffs Brinkman, Knowles, Brent Scott, Brad Scott, and Harrington are referred to collectively as the "non-Gmail Plaintiffs."

While Plaintiffs seek to represent eight separate classes of Gmail and non-Gmail users under five causes of action, (Compl. ¶¶ 388-392), all Plaintiffs allege the same core theory of liability: that Google's automated scanning of emails is an illegal interception of their electronic communications without their consent. Plaintiffs claim that Google's systems "read[] each and every message" as part of the regular course of providing the Gmail service to its users. (*Id.* ¶ 3.) Plaintiffs purport to carve out spam filtering and virus detection from their claims, (*see, e.g.*, *id.* ¶¶ 43, 45), but their claims otherwise apply to *all* forms of scanning, regardless of the purpose or the benefits to Gmail users provided by scanning.

## III.   APPLICABLE STANDARDS.

This Motion is governed by Rule 12(b)(6) as interpreted in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under these standards, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D. Cal. 2011); *see also Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

## IV.   ARGUMENT

### A.   The Wiretapping Claims Fail Because the Alleged Scanning Practices Are Part of Google's Ordinary Course of Business as an ECS Provider.

#### 1.   The Wiretap Statutes Exempt ECS Providers from Liability.

The overall structure of ECPA[6] reflects Congress's careful effort to ensure that ECPA's

81 (Pa. 1988). For purposes of this motion, the only relevant difference between ECPA and these laws concerns their requirement of dual, as opposed to single, party consent, as discussed below.
[6] As background, ECPA "amended the Federal wiretap law" and was "divided into Title I, which governs unauthorized interceptions of electronic communications, 18 U.S.C. §§ 2510-2522, and Title II, which governs unauthorized access to stored communications, 18 U.S.C. §§ 2701-2711." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 (2d Cir. 2005).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

provisions regarding the "interception" of electronic communications will not interfere with ECS providers' ability to engage in their normal business practices. In enacting ECPA, Congress recognized that "provider[s] of electronic communications services may have to monitor a stream of transmissions in order to properly route, terminate, and otherwise manage the individual messages they contain," and that such monitoring "may be necessary to the provision of an electronic communication service." (Wong Decl., Exh. BB [S. Rep. No. 99-541] at p. 20). With respect to email in particular, Congress noted that "the providers of electronic mail create electronic copies of private correspondence for later reference," and that "[t]his information *is processed for the benefit of the user*." *Id.* at 3 (emphasis added). *See also In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001) (explaining that emails must be "temporarily stored by electronic communications services incident to their transmission – for example, when an email service stores a message until the addressee downloads it").

Given these realities, Congress clarified that ECS providers can lawfully receive and access electronic communications involving their users–the very things that Plaintiffs contend are unlawful. For instance, while Section 2701 generally prohibits parties from accessing electronic communications in electronic storage, this provision "does not apply with respect to conduct authorized . . . by the . . . entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c)(1). In other words, ECS providers are expressly authorized to access the communications sent to their systems. Title II prohibits ECS providers only from *disclosing* the electronic communications of their users, which is not at issue here (and even this general bar is subject to specific exceptions that allow an ECS provider to disclose communications in some circumstances). *See* 18 U.S.C. §§ 2701-2703.[7] *See, e.g.*, *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) (Section 2701 "allows service providers to do as they wish when it comes to accessing communications"); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003) (no ECPA liability under Section 2701 where ECS provider searched the contents of text messages in its systems).

---

[7] The state wiretapping statutes at issue include analogous terms. *See* Fla. Stat. §§ 934.21-23; Md. Code, Cts. & Jud. Proc. §§ 10-402 to -404; 18 Pa. C.S. §§ 5741-43; *see also* Appendix.

Similarly, Title I, relating to the interception of communications, contains several terms that exempt ECS providers from liability. Most importantly, Section 2510(5)(a)(i) excludes from the definition of "device" the equipment of an ECS provider used to access electronic communications "in the ordinary course of its business."[8] Thus, a "Wiretap Act claim requires, at a minimum, (a) an 'electronic communication' and (b) interception of that communication by someone *other than* 'a provider of wire or electronic communication service … in the normal course of' business . . . " *In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-1382 PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28. 2012) (emphasis added) ("*In re Google Privacy Policy*").

Other provisions further clarify that an ECS provider's normal practices are not an illegal "interception" under Section 2510. *See, e.g.*, 18 U.S.C. § 2511(2)(a)(i) (permitting employees and agents of an ECS provider "to intercept, disclose, or use" electronic communications being transmitted by the ECS for normal business purposes including "the protection of the rights or property of the" ECS provider); *id.* (permitting ECS providers to engage in "service observing" and "random monitoring" of electronic communications while prohibiting the same for wire (*e.g.*, telephone and telegraph) communications).

The rationale underlying these provisions is to ensure that ECS providers can deliver electronic communications and provide related services to their users without incurring liability under the provisions of the statute aimed at illicit behavior. As the Second Circuit explained in *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005), these provisions exempting ECS providers from liability must be applied consistently; otherwise, ECS providers "would constantly be intercepting communications under ECPA because their basic services involve the 'acquisition of the contents' of electronic communication."

### 2. Courts Have Consistently Dismissed Claims Against ECS Providers Involving Circumstances Similar to Those Alleged Here.

Applying this statutory scheme, courts have consistently rejected claims by plaintiffs attempting to characterize the normal business practices of ECS providers like Google as an illegal "interception" under the wiretapping statutes.

---

[8] The state wiretapping statutes at issue include analogous terms. *See* Fla. Stat. § 934.02(4)(a)2; Md. Code, Cts. & Jud. Proc. § 10-401(4)(i); 18 Pa. C.S. § 5702; *see also* Appendix.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

For example, in *Kirch v. Embarq Management Co.*, 702 F.3d 1245 (10th Cir. 2012), the plaintiffs alleged that the defendant, an ISP, unlawfully "intercepted their Internet communications" by extracting information about their Internet browsing histories for the purpose of delivering targeted advertisements. *Id.* at 1245-48. The court affirmed the dismissal of the claim as a matter of law because all of the data at issue (plaintiffs' Internet browsing histories) was obtained in the course of defendant's business as an ISP. *Id.* at 1246, 1250-51. The fact that the ISP extracted a subset of the data for purposes of delivering targeted advertisements had no affect on the analysis "because [defendant's] access was in the ordinary course of its core business as an ISP transmitting data over its equipment." *Id.* at 1249. *See also id.* at 1250-51 (explaining that the advertising delivery system at issue "gave [the defendant] access to no more of [the plaintiffs'] electronic communications than it had in the ordinary course of its business as an ISP.").

Judge Grewal applied these same considerations to dismiss an ECPA claim in the specific context of a claim alleging that Google "intercepted" its users' information. In *In re Google Privacy Policy*, the plaintiffs alleged that "an interception occurred when their content from one Google product was . . . combined with information from another Google product that also was stored on Google's servers." 2012 WL 6738343, at *5-6. The claims in that matter were far broader than here; plaintiffs alleged that Google accesses and uses information from dozens of Google products, including Gmail, without consent to serve targeted advertisements and for other allegedly improper purposes. (Wong Decl., Exh. CC.) But as Judge Grewal recognized, even if Google's access and use of the information at issue exceeded the scope of Google's terms, there was no viable claim for an "interception" because "[a]n interception claim under the Wiretap Act also requires the use of a defined 'device,' *which cannot include Google's own systems . . .*" *In re Google Privacy Policy*, 2012 WL 6738343 at *5 (emphasis added). *See also id.* at *6 ("the inescapably plain language of [ECPA] . . . excludes from the definition of a 'device' a provider's own equipment used in the ordinary course of business."). Because the complaint did not allege the use of a "device" outside of Google's own systems, the Court dismissed the complaint as a matter of law. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

This case is no different. Plaintiffs' wiretapping claims fail because they do not allege the use of "a defined 'device'" distinct from "*Google's own systems*." *Id*. at *5 (emphasis added). Instead, the Complaint confirms that the alleged "interceptions" involve only Google's own equipment used in its capacity as an ECS provider. (*See* Compl., ¶¶ 22-92 (describing various Google servers and systems with no allegation of any non-Google device).) This alone mandates dismissal. *In re Google Privacy Policy*, 2012 WL 6738343 at *5.[9]

Moreover, the Complaint repeatedly confirms that the purpose of the alleged "interceptions" is to implement normal functions within the ordinary course of Google's business. Specifically, Plaintiffs complain that Google scans information from its users (the emails sent to and from Gmail users) in order to extract a subset of information (keywords and other information from the emails) "for the purpose of delivering content-based advertising."[10] (*See* Compl. ¶¶ 22-91, 259(g) (describing Google's processing of emails and alleging that Google does so to deliver advertising).) This is strikingly similar to the facts in *Kirch*, in which the defendant provided information from its users (their Internet activity) to a third party so that a subset of that information ("customer requests for highly trafficked commercial websites") could be used "to deliver online advertising thought likely to be interest users who visited those websites." 702 F.3d at 1247-48. As in *Kirch*, there is no illegal "interception" here because all of the email information at issue in Plaintiffs' claims stems from Google "access … in the ordinary course of its core business as [ECS provider] transmitting data over its equipment." *Id*. at 1249. Notably in *Kirch*, the defendant was accused, unlike here, of providing its users' information to a *third party*.

In short, there is no illegal "interception" here because Plaintiffs' own allegations confirm that the alleged practices at issue are part of Google's ordinary course of business.

### 3. Plaintiffs' Efforts to Plead around the "Ordinary Course of Business" Exemption Fail.

---

[9] *See also Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-cv-1029, 2007 WL 4394447, at *4 (E.D. Pa Dec. 13, 2007) ("The drive or server on which an email is received does not constitute a device for purposes of the Wiretap Act.").

[10] Plaintiffs also note various other alleged purposes for Google's automated scanning, which further confirm that Google's practices are implemented for ordinary business reasons. (*See* Compl. ¶ 288 (alleging that Google scans emails for "commercial advantage and profits"); *id*. at ¶ 338 (alleging that Google scans emails to reduce certain "traffic acquisition costs").) Seeking profits and lowering costs are, of course, normal business purposes.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

Rather than alleging any facts to show an illegal "interception," Plaintiffs seek to avoid the "ordinary course of business" exemption by claiming that Google's practices are not an "industry standard" practice. (Compl. ¶ 262.) Plaintiffs further suggest that Google's Gmail-related practices, including the delivery of targeted advertising, fall outside of the exemption because they are not a necessary "service of a provider of an electronic communication service." (Compl. ¶¶ 264-65.)

But the "ordinary course of business" exemption does not turn on whether an alleged practice is necessary for an ECS provider to deliver an electronic communication. Nor does the exemption turn on whether an ECS provider's practices conform to Plaintiffs' subjective notion of the prevailing "industry standard." Indeed, it would be nonsensical to assume that Congress intended to deprive an ECS provider of the "ordinary course of business" exemption simply because it chooses to run its business differently (or better) than its competitors.

Instead, the exemption applies broadly to protect an ECS provider's acts in the "course of *its* business." 18 U.S.C. 2510(5)(a)(ii)(emphasis added). For example, in *Hall*, the plaintiff argued that his email service provider did not act in the ordinary course of its business by continuing to deliver emails to customers who had terminated their accounts. 396 F.3d at 505. The Second Circuit did not inquire whether this practice was necessary to the defendant's business of delivering emails or whether it was consistent with prevailing industry standard. Instead, the Court applied the "ordinary course of business" exemption because it was the email service provider's *own* internal "practice at the time to continue to receive and store e-mails . . . after any account was cancelled." *Id.*

Similarly, the *In re Google Privacy Policy* plaintiffs alleged that Google's unique combination of products, including Gmail, allows it to target advertisements in a way that has no industry equivalent. (*See, e.g.*, Wong Exh. CC at ¶ 17 (alleging that Google's products, including Gmail, provide it with "targeted advertising capabilities" that "surpass those offered by social networks, such as Facebook.").) Yet these allegations did not deter Judge Grewal from applying the "ordinary course of business exemption," as discussed above. *In re Google Privacy Policy*, 2012 WL 6738343 at *5-6. In reaching that conclusion, the Court found no need to consider

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

whether Google's practices conform to an "industry standard" for the "services of an electronic communications service provider" (Compl. ¶¶ 262, 264-65), because those considerations are simply irrelevant.

The same result applies here: notwithstanding Plaintiffs' effort to plead around the "ordinary course of business" exemption, all wiretapping claims fail for the simple reason that the alleged conduct at issue is undisputedly part of *Google's* ordinary business practices as an ECS provider (and a provider of a free service at that).

### 4. Plaintiffs' Theory of Liability Would Lead to Absurd Results.

More generally, Plaintiffs' wiretapping claims should be rejected because they would criminalize an ECS provider's normal methods for processing emails and other electronic communications. Indeed, Plaintiffs' theory of liability—that the scanning of email content by an ECS provider is an illegal "interception"—directly conflicts with Title II, which expressly permits an ECS provider to "access" electronic communications sent to its systems (and even to disclose such communications in certain circumstances). The Court should not allow Plaintiffs to pursue a theory of an illegal "interception" that creates these sorts of irreconcilable conflicts within the statutory scheme. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (citation omitted); *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) (A statute "should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless.") (citation and quotation omitted).

In practice, Plaintiffs' theory would prevent ECS providers from providing a host of normal services that Congress could not possibly have intended to criminalize as an illegal "interception." For example, an ECS provider could not allow users to sort their emails using automated filters because any such system would require scanning the contents of the emails being delivered to the user, thus running afoul of Plaintiffs' theory. Nor could an ECS provider provide even basic features like allowing users to search their own emails for particular key terms because doing so would, again, involve the scanning of email content. And while Plaintiffs have

removed spam filtering and virus detection from their claims, these selective carve-outs simply underscore the fact that their sweeping theory of liability would *otherwise* encompass these basic (and desirable) features of email.[11]

In short, Plaintiffs' interpretation would render large swaths of the statutory scheme meaningless while making it virtually impossible for ECS providers to provide normal services to their users. The Court should not allow Plaintiffs to proceed on this basis.

### 5. The Pennsylvania Wiretap Statute Applies Only to the Senders, Not the Recipients of a Communication.

A further basis exists under Pennsylvania law to reject Plaintiff Brinkman's claim of an alleged "interception." Section 5725 of the Pennsylvania statute only authorizes a private right of action for a person "whose wire, electronic or oral communication is intercepted, disclosed or used . . . " 18 Pa. C.S. § 5725. Pennsylvania courts have interpreted this to mean "that the cause of action belongs to the person with whom the communication originated, not the recipient." *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 633 (E.D. Pa. 2006) (citing *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 257 (3d Cir. 2004)). In *Klump*, the plaintiff lacked standing under section 5725 because the allegedly intercepted communications were sent *to* him, and therefore he could not meet the first requirement of the prima facie case. *Id.* at 633. To the extent that Plaintiff Brinkman seeks to bring claims for emails that she received but did not author (Compl. §§ 365, 391), she has no private right of action and her claim must be dismissed. *Id.*

### B. Plaintiffs' Claims Also Fail Under the Consent Defenses of the Wiretap Statutes at Issue.

In addition to the lack of any illegal "interception," the Wiretapping Plaintiffs' claims also fail for the additional reason that the senders and recipients of the emails at issue have all

---

[11] The wiretapping claims of Plaintiffs Fread and Carrillo are further undermined by the Family Educational Rights and Privacy Act of 1974 ("FERPA"). Plaintiffs Fread and Carrillo allege that Google violated the Wiretap Act by processing their emails on behalf of the universities at which they are enrolled. But Plaintiffs admit that Google's actions were taken under contracts with each university, in which the university outsourced its email processing to Google. Even assuming, arguendo, that FERPA applies here, the law permits schools to "outsource[] institutional services or functions," including provision of email services. *See* 34 C.F.R. 99.31(a)(1)(i)(B). A party such as Google, to whom this function has been outsourced, is deemed a "school official," and as such may access and use student records, even without student consent. *Id.* The Court should not construe an "interception" under the Wiretap Act in a manner that would criminalize conduct that is expressly permitted under FERPA and its implementing regulations.

necessarily consented to the processing of their emails by Google.

The consent defense to a wiretap claim can be based on the terms of an express agreement. *See, e.g., Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-cv-4567, 2011 WL 900096, at *10-11 (D.N.J. Mar. 15, 2011) ("[B]y subscribing to [Microsoft's email service], each Microsoft customer consents to Microsoft intercepting and filtering all of his email communications."). Consent can also be implied from the overall circumstances of a particular communication. *See, e.g., United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (consent may be "implied in fact from surrounding circumstances . . . ") (citation and quotation omitted).

Under federal law, the consent of a *single* party to a communication is complete defense to any liability and so the consent of the Gmail user alone is sufficient to bar a claim. *See* 18 U.S.C. § 2511(2)(d). The state wiretap statutes at issue also provide a defense where both parties to the communication consent to the alleged interception. Fla. Stat. § 934.03(2)(d); Md. Code, Cts. & Jud. Proc. § 10-402(c)(3); 18 Pa. C.S. § 5704(4).

## 1. The Gmail Plaintiffs Expressly Consent to Automated Scanning, Precluding Any Claim under ECPA.

The single-party consent defense under federal law precludes the Gmail Plaintiffs' claims as a matter of law because they expressly consented to automated scanning in exchange for using the free Gmail service. The Gmail Plaintiffs concede that by signing up for, or using, their Gmail or Google Apps accounts (Compl. ¶¶ 219, 223, 233, 241, 247), they are contractually bound to Google's terms. Indeed, they devote much of the Complaint to attacking the disclosures in the TOS and Privacy Policy in an effort to avoid this express contractual consent.

Because the Gmail Plaintiffs are bound to Google's TOS and/or Privacy Policy, they have expressly consented to the scanning disclosed in these terms. For example, the TOS in effect during the majority of the proposed class period informed users that Google's services, including Gmail, are supported by advertising revenue and that Google may display advertising targeted to the content of user information, including emails in Gmail accounts: "[A]dvertisements may be

targeted to the content of information stored on the Service[12], queries made through the Service or other information." (Rothman Decl., ¶ 11, Exh. E, at § 17.1.) This TOS further provided that "Google reserves the right . . . to pre-screen, review, flag, filter . . . any or all Content from any Service." (*Id*. at § 8.3.) The Google Privacy Policies throughout the class period declared in varying but clear terms that Google may use the information from users to "[p]rovide, maintain, protect, and improve our services (including advertising services) and develop new services." (*Id*., ¶ 16, Exh. I; *see also id.* ¶¶ 13-16, Exhs. G-J.)

Google updated its TOS and Privacy Policy on March 1, 2012. These updated versions (which are currently in effect, but for an unrelated change in the Privacy Policy in July 2012) also explained, and required users to agree to, the automated scanning practices at issue. The updated TOS notifies users that "Google's privacy policies explain how we treat your personal data and protect your privacy," and that "[b]y using our Services, you agree that Google can use such data in accordance with our privacy policies." (*Id*., ¶ 12, Exh. F.) The updated Privacy Policy, in turn, explains that Google collects information that users generate while using Google's services, including Gmail, and can use information from "all of [Google's] services to provide, maintain, protect and improve them, to develop new ones, and to protect Google and [its] users." (*Id*. ¶ 16, Exh. J.) The Privacy Policy further specifies that Google "also use[s] this information to offer you tailored content – like giving you more relevant search results and ads." (*Id*.)

These express terms plainly encompass Google's scanning of email content as part of providing the Gmail service. Because the Gmail Plaintiffs are bound to these terms as a condition of using Gmail[13], they cannot pursue a claim under ECPA, which precludes liability based on a single party's consent. *Kirch v. Embarq Mgmt. Co.*, No. 10-cv-2047, 2011 WL 3651359, at *7-8 (D. Kan. Aug. 19, 2011) (finding consent based on defendant's terms of service); *Deering v. CenturyTel, Inc.*, No. 10-cv-0063, 2011 WL 1842859, at *1-3 (D. Mont. May 16, 2011)

---

[12] "Services" is a defined term that includes broadly covers all Google services, including Gmail. (*See* Rothman Decl., Ex. E at §1.1.)
[13] As referenced in note 4, the Cable One Apps TOS that Plaintiff Dunbar agreed to includes essentially identical terms as the Google TOS referenced above (with minor differences as noted in the Rothman Declaration) and links to the same Google Privacy Policy. Further, Hawaii and UoP were contractually required to obtain the necessary consent from end users, like Fread and Carrillo, for Google to provide the Gmail service.

Cooley LLP
Attorneys At Law
San Francisco

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

(dismissing ECPA against ISP based on users' consent to privacy policy).[14]

**2. Minors like Plaintiff J.K. Cannot Avoid the Terms They Agreed To.**

Trying to wriggle free from these binding terms, Plaintiff J.K. (one of the Gmail Plaintiffs) claims he "could not have consented" because he is sixteen years old and his agreement is thus "void" under California law. (Compl. ¶¶ 250, 275.) To support this assertion, Plaintiff J.K. relies principally on Section 6701(c)[15] of the Family Code, which provides that contracts with minors are void if they "relat[e] to any personal property not in the immediate possession or control of the minor." Cal. Fam. Code § 6701(c). But there is nothing in the Family Code or any authority applying the statute suggesting that an agreement in which a minor provides consent to the use of his information is a contract concerning "personal property." *Compare Taylor v. Indus. Accident Comm'n*, 216 Cal. App. 2d 466, 473 (1963) (applying the predecessor statute to Section 6701 with identical terms and holding that hard copies of newspapers are "personal property"). Moreover, Plaintiff J.K.'s express consent to the automated processing of his emails cannot fall within the scope of Section 6701(c) because Plaintiff's emails *are* "within [his] possession or control." Like all Gmail users, Plaintiff J.K. is in full control of the emails in his Gmail account and can select what emails to send, which emails to retain, and which to delete. Under these circumstances, the contractual consent that Plaintiff J.K. gave to Google does not fall within either the terms or the underlying purpose of Section 6701(c).

Even if the California Family Code could be construed to invalidate Plaintiff J.K.'s

---

[14] *See also Mortensen v. Bresnan Commc'n, LLC*, No. 10-cv-0013, 2010 WL 5140454, at *3-5 (D. Mont. Dec. 13, 2010) (dismissing ECPA claim against ISP based on its users' consent in the account agreement, privacy policy, and other posted notices); *In re Vistaprint Corp. Mktg. & Sales Pracs. Litig.*, No. 08-md-1994, 2009 WL 2884727, at *9 (S.D. Tex, Aug. 31, 2009), *aff'd*, 392 F. App'x 327 (5th Cir. 2010) (dismissing ECPA claim based on consent); *Borninski v. Williamson*, No. 02-cv-1014, 2005 WL 1206872, at *12-13 (N.D. Tex. May 17, 2005) (no ECPA violation where plaintiff signed agreement and expressly consented to defendant's monitoring of his communications).

[15] The Complaint also refers in passing to Section 6701(a), which provide that contracts with minors are deemed void if they involve a "delegation of power." (Compl. ¶ 274.) But apart from parroting the statutory term, Plaintiffs allege no facts to show how Google's terms could fall within this provision. In addition to these categories of void contracts, California law also allows minors to disaffirm an otherwise enforceable contract in limited circumstances under Section 6710. Plaintiff J.K., however, does not specify that he seeks to disaffirm his contract under this provision and asserts only that his agreement is void under Section 6701. *See Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007) (a minor's disaffirmance must be reflected in an "unequivocal intent to repudiate [the contract's] binding force and effect.") (citation and quotation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

express consent, it would be preempted by the federal Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501-08. COPPA reflects Congress's judgment that operators of websites *can* obtain and use information from teens like Plaintiff J.K. by obtaining their consent. Under COPPA, an "operator of a website or online service" cannot deal directly with a minor and must obtain parental consent in order to "collect" or "use" the "personal information" of a "child"—but *only where the child is "under the age of 13."* *Id.* §§ 6501(1), 6502(a)(1), (b)(1)(A). In enacting these terms, Congress specifically considered *and rejected* a parental consent requirement for teens like Plaintiff J.K. (*See* Wong Decl., Exh. JJ [the "COPPA FAQ"], No. 11] ("In enacting [COPPA], Congress determined to apply the statute's protections only to children under 13").)

Rather than requiring parental consent, the regulatory scheme of COPPA encourages websites to obtain consent directly from teens in connection with the use of their information. As the Federal Trade Commission ("FTC") explains in its COPPA FAQ: "Although COPPA does not apply to teenagers, the FTC is concerned about teen privacy and does believe that strong, more flexible, protections may be appropriate for this age group." (*Id.*) To illustrate these alternative "protections" for teens, the COPPA FAQs refer to a separate FTC Report that encourages websites to obtain "affirmative express consent" from teens in certain circumstances (while emphasizing that consent "may not be necessary in every advertising campaign directed to teens"). (*See* Wong Decl., Exh KK). To ensure consistent application of these standards, COPPA expressly preempts any state law that treats the use of "personal information" in a manner that "inconsistent" with COPPA. *See* 15 U.S.C. § 6502(d).

This federal statutory scheme bars Plaintiff J.K. from using the California Family Code to invalidate the "affirmative express consent" that he gave to Google—consent that Google was not only allowed to obtain but *encouraged* to obtain from Plaintiff J.K. under COPPA.

**3.     Plaintiffs Fread and Carrillo Cannot Avoid Their Express Consent by Claiming They Were Pressured into Using Gmail.**

Nor can Plaintiffs Fread and Carrillo avoid Google's terms merely by suggesting that they felt pressured to use their university email accounts operated through Google Apps. For example,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

Fread alleges that he initially avoided using his email account knowing it would be processed similarly to Gmail, but was forced to acquiesce "in order to send and receive official [university] communications." (Compl. ¶ 233.) Plaintiff Carrillo similarly claims he used his university account due only to a "forced migration process," although he concedes he clicked to agree to the "terms and conditions" and "privacy policy" associated with the new account. (*Id.* ¶ 241.)

These vague assertions do nothing to undermine the enforceability of the terms that are binding on these Plaintiffs. Under California law, a party may avoid a contract under a claim of duress only if it can show that "a party intentionally used threats or pressure to induce action or nonaction to the other party's detriment" where "[t]he coercion . . . induce[d] the assent of the coerced party, who has no reasonable alternative to succumbing." *In re Marriage of Baltins*, 212 Cal. App. 3d 66, 84 (1989) (citing Restatement (Second) of Contracts § 175(1)(1981)) (other citations and internal quotation omitted). While these Plaintiffs suggest they felt pressured by circumstances to use their email accounts, they do they not allege that this pressure was due to any "threats or coercion" by Google or that they lacked "a reasonable alternative," as would be needed to invalidate their express contractual consent under state law. Moreover, courts have held that the continued use of a form of communication that an individual knows may be monitored or recorded is sufficient to supply consent under the Wiretap Act–*even if* there was no meaningful choice. *See, e.g.*, *United States v. Verdin-Garcia*, 516 F.3d 884, 894 (10th Cir. 2008) ("A prisoner's voluntarily made choice—even a Hobson's choice—to use a telephone he knows may be monitored implies his consent to be monitored.").

Accordingly, Plaintiffs Fread's and Carrillo's individual allegations are irrelevant as a matter of law and do not undermine the express consent they gave.[16]

---

[16] As a separate basis for avoiding express consent, Plaintiffs make a vague reference to Section 2511(2)(d), which provides that the consent defense is inapplicable where a communication is "intercepted for the purpose of committing any criminal or tortious act . . . " (Compl. ¶ 281.) This provision applies only where the defendant acted with a specific intent to cause injury. *See, e.g.*, *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 515 (discussing Section 2511(2)(d) at length and noting congressional intent to invalidate consent only where "the party acts in any way with an intent to injure the other party") (emphasis omitted). Here, the Complaint is devoid of a single allegation to show that Google had the specific intent to harm its Gmail users.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

**4. The Non-Gmail Plaintiffs Also Impliedly Consent to the Automated Processing of Their Messages.**

The state law wiretap claims of the Non-Gmail Plaintiffs fail for similar reasons. While the non-Gmail Plaintiffs are not bound to Google's contractual terms, they nonetheless impliedly consent to Google's practices by virtue of the fact that *all* users of email must necessarily expect that their emails will be subject to automated processing.

Just as a sender of a letter to a business colleague cannot be surprised that the recipient's assistant opens the letter, people who use web-based email today cannot be surprised if their communications are processed by the recipient's ECS provider in the course of delivery. Indeed, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland,* 442 U.S. 735, 743-44 (1979). In particular, the Court noted that persons communicating through a service provided by an intermediary (in the *Smith* case, a telephone call routed through a telephone company) must necessarily expect that the communication will be subject to the intermediary's systems. For example, the Court explained that in using the telephone, a person "voluntarily convey[s] numerical information to the telephone company and 'expose[s]' that information to its equipment *in the ordinary course of business.*" *Id.* at 744 (emphasis added).

The same is true of email sent through an ECS provider. As numerous courts have held, the automated processing of email is so widely understood and accepted that the act of sending an email constitutes implied consent to automated processing as a matter of law. *See, e.g., State v. Townsend*, 57 P.3d 255, 260 (Wash. 2002) (finding that sender of email impliedly consented to interception of his email because "in order for e-mail to be useful it must be" subjected to automated processes, such as being "recorded on another computer's memory."); *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003) ("Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message. By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.");

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

*State v. Lott*, 879 A.2d 1167, 1172 (N.H. 2005) (sender of instant messages "implicitly consented" to the interception of his communications where he voluntarily sent instant messages knowing that, by the medium's nature, his messages would be automatically recorded).[17]

Similarly here, non-Gmail users who send emails to Gmail recipients must expect that their emails will be subjected to Google's normal processes as the ECS provider for their intended recipients. Indeed, when the non-Gmail Plaintiffs filed their initial complaints, some specifically alleged that they *continued to send emails to Gmail users* despite their knowledge of Google's automated scanning (as confirmed in their complaints).[18] This ongoing use shows that Google's automated scanning was completely immaterial to these Plaintiffs' decisions to communicate with Gmail users and suggests that they were aware of Google's automated scanning all along. In fact, Plaintiff Fread's own allegations confirm that Google's automated scanning is common knowledge among non-Gmail users. Plaintiff Fread alleges he spent months trying to avoid using his Google Apps account, due to his awareness of and apparent concern about Google's email processing. (Compl. ¶ 233.) So too, the non-Gmail Plaintiffs must have expected that their emails to Gmail recipients would be subject to automated processing by Google in its capacity as the ECS provider for their intended recipients. As in *Smith*, these Plaintiffs cannot claim ignorance because they "voluntarily conveyed" emails to Google as an ECS provider and "'expose[d]' that information to [Google's] equipment in the ordinary course of business." 442 U.S. at 744. Under these circumstances, the non-Gmail Plaintiffs have impliedly consented to Google's automated scanning. Thus, in combination with the express consent of the Gmail recipients (as discussed above), their communications are subject to the dual-party consent defenses of the state wiretapping laws and their claims must be dismissed as a matter of law.

---

[17] *See also State v. Roden*, 279 P.3d 461, 466 (Wash. Ct. App. 2012) (finding that the defendant "impliedly consented" to a law enforcement officer's interception of his text messages because "as a user of text message technology," the defendant necessarily "understood that [his drug dealer's cell phone] would record and store the text messages that he sent"); *Commonwealth v. Maccini*, No. 06-cv-0873, 2007 WL 1203560, at *3 (Mass. Super. Ct. Apr. 23, 2007) (holding that, given the nature of email communications, law enforcement's "receipt and recording of the defendant's communications was not secret but rather was *with the defendant's knowledge and implicit consent*." (emphasis added)).

[18] *See* Wong. Decl., Exh. EE (J.K. Compl. ¶ 21); Exh. FF (Knowles Compl. ¶ 20); Exh. GG (Brinkman Compl. ¶ 15); Exh. II (Scott II Compl. ¶ 15).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

In sum, the Wiretapping Plaintiffs' claims fail in their entirety due to both the "ordinary course of business" exemption and the consent defenses applicable under ECPA and the state wiretapping statutes at issue.[19]

## C. The CIPA Claim Also Fails as a Matter of Law for Multiple Reasons.

### 1. CIPA Does Not Apply to Email Communications.

The CIPA claim fares no better because the statute, enacted in 1967, was never intended to apply, and by its terms cannot be applied, to emails. On its face, Section 631 of CIPA is limited to interceptions that involve "telephone and telegraph" communications. *See* Cal. Penal Code § 631.[20] The first clause of Section 631 expressly refers to wiretapping of a "*telegraph or telephone wire, line, cable, or instrument*." *Id.* (emphasis added). The second clause covers other forms of interception that involve "read[ing]" or "learn[ing] the contents" of a communication, but reiterates that liability only applies if the communication is "in transit or passing over *any wire, line, or cable*, or is being sent from, or received at any place within this state." *Id.* (emphasis added). While the term "telegraph or telephone" is not repeated in the second clause, it would be nonsensical to assume that the Legislature intended to cover two totally different categories of "wire[s], line[s], or cable[s]" in two clauses of the same single-sentence provision. For this reason, California courts have interpreted Section 631 as focusing on telephone and telegraph communications alone. *See People v. Chavez*, 44 Cal. App. 4th 1144, 1150 (1996) (explaining that "[w]iretapping refers to the interception by any method of *telegraphic or telephonic communications*") (emphasis added).

Section 632 similarly excludes electronic communications. In particular, Section 632 is targeted at "[e]avesdropping." *See* Cal. Penal Code § 632. Obviously, one cannot "eavesdrop" on an email or other purely electronic communication in any normal sense of the word. *See*

---

[19] These same considerations apply to the Gmail Plaintiffs and CIPA Plaintiffs as well. As to the Gmail Plaintiffs, even if the Court does not find express contractual consent as to the Gmail Plaintiffs, their claims would be barred based on implied consent given their continuing use of their Gmail accounts, even after discovering Google's alleged scanning of their emails. *See* note 18, *supra*. Also, CIPA provides for a defense based on consent and should be dismissed on this basis, in addition to the CIPA-specific reasons set forth herein. *See* Cal. Penal Code §§ 631-632.

[20] The full text of Sections 631 and 632 are set forth in the attached Appendix of Relevant Statutes for the court's convenience.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

*Black's Law Dictionary*, 588 (9th ed. 2009) (defining "eavesdropping" as "[t]he act of secretly listening to the private conversation of others without their consent."). While Section 632 also refers to the "record[ing]" of confidential communications, that reference must be interpreted consistently with the overall statute, which plainly focuses on oral communications. *See* Cal. Penal Code § 632.

Construing these terms, a California court has specifically held that ***CIPA does not apply to the automated processing of emails in the Gmail system***. In *Diamond v. Google Inc.*, No. CIV-1202715, the Marin County Superior Court dismissed the Section 632 claim because the plaintiff had not explained "how Google could have possibly 'overheard' the emails 'by means of any electronic amplifying or recording device'" for purposes of the statute. The court also held that Section 631 cannot be expanded beyond its express limitations to telephone and telegraph equipment, explaining that "the words 'telegraph or telephone' … can only be reasonably construed to apply to" Section 631 as a whole. (*See* Wong Decl., Exh. LL at p. 2.) The court thus dismissed the Section 631 claim because "Plaintiff allege[d] no facts allowing email communications to be characterized as 'telephone' or 'telegraph' transmissions." (*Id.*) The same common sense analysis should be applied here.

Indeed, any contrary interpretation of CIPA as encompassing emails would be nonsensical because the Legislature could not possibly have contemplated email when it enacted the statute in 1967. As the Supreme Court has long cautioned, "[i]t is not the function of the judiciary, because of discoveries after the [initial enactment of a statute], to broaden the provisions of that act so that it will include corporations or companies that were not, and could not have been at that time, within the contemplation of Congress." *City of Richmond v. S. Bell Tel. & Tel. Co.*, 174 U.S. 761, 774-776 (1899) (holding that statute applying to "telegraph lines" could not be applied to telephone technology implemented after the statute's enactment).[21] Plaintiffs' claims violate this

---

[21] *See also State v. Komisarjevsky*, No. CR07241860, 2011 WL 1032111, at *3 (Conn. Super. Ct. Feb. 22, 2011) (News reports sent via Twitter do not fall within a rule related to "broadcasting" because the rule predated Twitter and "[c]ourts traditionally have proceeded with caution in extending old legislation to new technologies.") (citation omitted); *Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1172-75 (N.D. Cal. 2012) (statutory terms related to "selling," "renting" and "lending" music could not be applied to online music streaming because streaming technology could not have been contemplated at the time of the statute's enactment).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

basic rule by rewriting CIPA to encompass email technology that simply did not exist when the statute was enacted.

In fact, after CIPA's initial enactment, ***the Legislature specifically considered and rejected proposals to expand the statute to cover emails***.  In 1995, the Legislature expanded Penal Code Section 629 (a related statute to CIPA that regulates interception of communications by law enforcement) to cover certain types of electronic communications.  In considering the bill, the Senate Judiciary Committee observed that "[i]t is not clear that California law specifically protects e-mail and other electronic communications from improper interception by either private parties or law enforcement."  (Wong Decl., Exh. MM at p. 4.)  It thus posed the question "SHOULD, AS A COROLLARY TO THE EXTENSION OF THE WIRETAP LAW [Section 629] TO ELECTRONIC COMMUNICATIONS, THE PRIVACY LAWS [CIPA] BE AMENDED TO EXPRESSLY PROTECT ELECTRONIC COMMUNICATIONS FROM INTERCEPTION …." (*Id.* at 4 (caps in original).)  Ultimately, the Legislature opted to amend *only* Section 629 while declining to expand CIPA in similar fashion.  (*Id.*)

In 2010, Section 629 was expanded again to cover additional forms of electronic communications.  As the Senate Committee on Public Safety explained, the language of Section 629 at the time—which was already *broader* than CIPA—still did not cover emails and other forms of electronic communications.  (*See* Wong Decl. Exh. NN (Senate Analysis stating that "[t]his bill … updates California's wiretapping law to include interception of communications by e-mail, blackberry, instant messaging by phone and other forms of contemporaneous two way electronic communication.").)  Again, the Legislature decided to amend *only* Section 629, leaving the limitations of Sections 631 and 632 intact.

In sum, the express terms of the statute, the applicable rules of statutory interpretation, and legislative history all confirm that CIPA does not reach email communications.

### 2.  Plaintiffs Also Have No Article III Standing to Pursue a CIPA Claim.

The CIPA Plaintiffs' claim also fails for an additional and equally fundamental reason: they allege no facts to show they suffered an injury-in-fact sufficient to confer standing under

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

Article III of the Constitution.[22]  While Ninth Circuit authority may be read to permit standing based on the violation of certain statutory rights without independent allegations of harm, this applies *only* to statutes that specifically allow persons who meet the express statutory criteria to bring a claim without any showing of injury.  *In re iPhone Application Litig.*, No. 11-md-2250, 2011 WL 4403963, at \*6 (N.D. Cal. Sept. 20, 2011) (finding that plaintiffs had no Article III standing because they "do not allege a violation of [a] statute which does not require a showing of injury.").  In contrast, CIPA expressly provides that a civil claim can be brought only by a "*person who has been injured.*"  Cal. Penal Code § 637.2 (emphasis added).  Accordingly, Plaintiffs cannot pursue a CIPA claim without establishing the standing requirements of both CIPA and Article III.

Here, the CIPA Plaintiffs fail to allege any concrete injury stemming from the automated processing of the emails they sent to the Gmail system.  While they vaguely assert that Google improperly used information contained in their emails, this Court has held that merely alleging the "collection and tracking of . . . personal information" is insufficient to confer standing under Article III.  *See In re iPhone Application Litig.*, 2011 WL 4403963, at \*5; *see also LaCourt v Specific Media, Inc.*, No. 10-cv-1256, 2011 WL 1661532, at \*3-4 (C.D. Cal. Apr. 28, 2011) (plaintiffs had no Article III standing to bring claims involving use of Flash cookies to track Internet activity).  Plaintiffs' allegations here are no different, and their CIPA claim similarly fails for lack of Article III standing.

### 3.  Plaintiffs Also Fail to Allege Any Connection with California.

In addition to alleging injury, the CIPA Plaintiffs must also show that their communications have some contact with California.  Section 631 specifically regulates the interception of communications "while the same [are] in transit or passing over any wire, line, or cable, or [are] being sent from, or received at *any place within this state*."  Cal. Penal Code § 631(a) (emphasis added).  This same limitation applies to Section 632.  *See Kearney v. Salomon*

---

[22]   Under Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

*Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (2006) (explaining that Section 632 "protect[s] against the secret recording of any confidential communication that is sent from or received *at any place within California*.") (emphasis added). Here, the CIPA Plaintiffs (who reside in Alabama and Maryland) do not allege that any of their emails have any connection to California. For example, they make no effort to allege that they ever sent a single email to a recipient in California, even though that information is obviously within their knowledge. The CIPA claims of these Plaintiffs should be dismissed given this basic failure of pleading.

### D. The Section 632 Claim Fails for Additional Reasons.

#### 1. Plaintiffs Allege no Facts to Show that Their Emails Were "Confidential Communications" within the Meaning of the Statute.

Section 632 applies only to "confidential communication[s]," defined as communications made "in circumstances" that "reasonably indicate" a "desire[]" that the communications "be confined to the parties thereto." Cal. Penal Code § 632(c). This definition excludes communications made "in any . . . circumstance in which the parties . . . may reasonably expect that the communication may be overheard or recorded." *Id*. Applying this requirement, courts have consistently dismissed Section 632 claims where plaintiffs allege that they subjectively expected their communications to be confidential, without pleading additional facts to demonstrate that the communication falls within the scope of Section 632. *See*, *e.g.*, *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013) (affirming dismissal of Section 632 claim where plaintiff alleged that he expected his communication to be confined to the parties, but did not allege sufficient facts to show he had an "objectively reasonable" expectation that the communication would not be recorded).[23]

Similarly here, the CIPA Plaintiffs claim they had no "knowledge or expectation" that the emails they sent to Gmail users would be processed by Google. (Compl. at ¶ 316.) But beyond

---

[23] *See also Montegna v. Yodle, Inc.*, No. 12-cv-0647, 2012 WL 3069969, at *3 (S.D. Cal. July 27, 2012)(dismissing Section 632 claim where plaintiff alleged recording of a "confidential" conversations but failed "to allege any facts regarding [the plaintiffs'] relationship with [the other parties to the communication]" or "the content or nature of the calls."); *Weiner v. ARS Nat'l Servs., Inc.*, 887 F. Supp. 2d 1029, 1033 (S.D. Cal. 2012) (dismissing Section 632 claim where plaintiff failed to allege the relationship between the parties to the communication, or that the communication contained any "personal information.")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

those conclusory assertions, they plead no actual facts to show their emails were sent under "circumstances" that would "reasonably indicate" a "desire[]" that the emails "be confined to the parties." *See* Cal. Penal Code § 632(c). Among other omitted facts, the CIPA Plaintiffs do not describe the content or nature of a single email they sent to a Gmail user[24]; nor do they describe their prior experiences with email services to suggest any basis for their expectations.[25] As in *Faulkner*, "too little is asserted in the complaint about the particular relationship between the parties, and the particular circumstances of the [communications at issue], to lead to the plausible conclusion that an objectively reasonable expectation of confidentiality would have attended such a communication." 706 F.3d at 1020.

### 2. Federal Law Preempts Any Claim that an ECS Provider's Operations Constitute an Illegal "Recording" under Section 632.

As set forth above, ECPA set forth a comprehensive scheme related to ECS providers, which allows providers of email services like Google to "store" and "access" emails sent to its systems. In enacting these provisions, Congress expressed specific concern that conflicting state standards could "discourage potential customers from using innovative communications systems" and "discourage [ECSs and Remote Computing Services ("RCS")] from developing new innovative forms of telecommunications and computer technology." (Wong Decl., Exh. BB at p. 5.) Reflecting these legislative concerns, courts have found that ECPA preempts overlapping state law regulations of electronic communications. *See In re Google, Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1084-85 (N.D. Cal. 2011) (holding that ECPA preempts state wiretap statutes because the statute "comprehensively regulate[s] the interception of electronic communications such that the scheme leaves no room in which the states may further regulate."); *Bunnell v. MPAA*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (ECPA preempts CIPA claim regarding access to emails).

Under these standards, Plaintiffs cannot seek to impose liability on Google for "recording"

---

[24] For example, there could be no reasonable expectation of confidentiality if the CIPA Plaintiffs' emails with Gmail users were sent to large groups of recipients or were sent with the express expectation that they would be forwarded to others, among other circumstances that would preclude application of Section 632.

[25] For example, if Plaintiffs used Yahoo mail, they would have known that automated scanning of emails to deliver advertising is a common industry practice not limited to Gmail. *See* n.11, *supra*.

the emails that are sent to Gmail recipients because ECPA specifically allows Google to receive and store electronic such communications in its capacity as an ECS provider. Even if CIPA could be interpreted to apply to emails at all, Plaintiffs' Section 632 claim based on Google's "recording" of emails is preempted as a matter of law because it is in direct conflict with federal law.[26] *See Ting v. AT&T*, 319 F.3d 1126, 1137 (9th Cir. 2003) ("Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law."); *Pub. Util. Dist. No. 1 v. IDACORP, Inc.*, 379 F.3d 641, 650 (9th Cir. 2004) ("Under the obstruction strand of conflict preemption, an aberrant or hostile state rule is preempted to the extent it actually interferes with the methods by which the federal statute was designed to reach [its] goal.").

### E. The CIPA Claim Should Also be Dismissed under Choice of Law Principles.

Apart from the various defects above, choice-of-law principles preclude the CIPA Plaintiffs—as residents of Alabama and Maryland—from invoking CIPA and bypassing the law of their local jurisdictions.[27] Under the "governmental interest" analysis[28], (1) a court "determines whether the relevant law of each of the potentially affected jurisdictions" differ, (2) "if there is a difference, the court examines each jurisdiction's interest in the application of its own law . . . to determine whether a true conflict exists," and (3) if a true conflict exists, the court must weigh "the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state . . . " *Mazza*, 666 F.3d at 590. These standards mandate application of Alabama and Maryland law here.

---

[26] Plaintiffs also refer in conclusory terms to the "eavesdropping" element of Section 632, but cannot seriously contend that the automated processing of emails by computer systems amounts to "eavesdropping" on a communication.

[27] Choice of law determinations in class actions are routinely resolved at the pleading stage. *See, e.g.*, *Frezza v. Google, Inc.*, No. 12-cv-0237, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013) (stating that *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) was "not only relevant but controlling" and dismissing UCL claims because North Carolina law applied); *Banks v. Nissan N. Am., Inc.*, No. 11-cv-2022, 2012 U.S. Dist. LEXIS 37754, at *3 (N.D. Cal. Mar. 20, 2012) (dismissing nationwide class action claim predicated on California law because "such allegations are inappropriate, pursuant to the Ninth Circuit's reasoning in *Mazza* . . . ").

[28] "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza*, 666 F.3d 589-90 (citation omitted).

Cooley LLP
Attorneys At Law
San Francisco

27.

Google's Motion To Dismiss Complaint
Memorandum of Points & Authorities
Case No. 5:13-md-02430-LHK

***The potentially applicable laws differ***:  As compared to CIPA, Alabama and Maryland law are substantially more limited in terms of the scope of liability, enforcement mechanisms, and available remedies.   Under Alabama law, (1) the interception of electronic communications is permitted where a single party consents, Ala. Code 1975 § 13A-11-30, and (2) enforcement is left to the discretion of state government, with no right of action for private plaintiffs, Ala. Code 1975 §§ 13A-11-30 to 13A-11-37.   In contrast, CIPA requires the consent of all parties to a communication and allows a private right of action for injured persons.  (See above).  Maryland law also differs materially from CIPA.  Maryland does not allow claimants to seek injunctive relief and limits civil recovery to actual damages or "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher."  Md. Code, Cts. & Jud. Proc. §10-410(a)(1).  In contrast, CIPA allows claimants to seek both injunctive relief and "the greater of" $5,000 or three times the amount of any actual damages.  Cal. Penal Code § 637.2(a). In short, CIPA is directly at odds with limitations that Alabama and Maryland have imposed in their respective statutes governing the interception of communications.

***California has no interest in applying CIPA to the claims of non-residents***:  On its face, CIPA indicates that its purpose is to protect California residents, not to regulate in-state business practices that might impact non-Californians: "The Legislature by this chapter *intends to protect the right of privacy of the people of this state*."   Cal. Penal Code § 630 (emphasis added). Reflecting that statement of legislative purpose, the California Supreme Court has recognized that "the principal purpose of [CIPA] is to protect the privacy of confidential communications *of California residents while they are in California*."  *Kearney*, 39 Cal. 4th at 119-120 (italics in original); *see also Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) ("the purpose of [CIPA] does not appear to be to regulate out-of-state commerce or conduct, but to protect California residents").[29]

This express purpose makes clear that California has no interest in applying CIPA to

_____

[29] *See also Kearney*, 39 Cal. 4th at 124 (noting that "one of the principal purposes underlying [CIPA]" was "protecting *individuals in California*"); *id* at 126 (noting "California's concern for the privacy of *the state's consumers*"); *id*. at 125 (noting that CIPA reflects the Legislature's effort to "increase the protection *of California consumers'* privacy") (emphases added).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

claims brought by *non*-California residents, particularly where the communications at issue have no alleged link to California. This lack of a cognizable state interest is dispositive and precludes Plaintiffs from relying on California law. *Kearney*, 39 Cal. 4th at 109 (If "only one of the states has an interest in having its law applied," there is "no problem in choosing the applicable rule of law" as the law of the state having an interest.) (citation and quotation omitted)).

***In contrast, Alabama and Maryland have a strong interest in applying their own laws***: As a general matter, "[e]very state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (citation and quotation omitted). Moreover, each state has a valid "interest in shielding out-of-state businesses from what the state may consider to be excessive litigation." *Id*. at 592. As the Ninth Circuit explained:

> In our federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state . . . Each of our states also has an interest in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.

*Id*. at 592-93 (citation and quotation omitted).[30] Given these considerations*,* the Ninth Circuit reversed an order applying California law to the claims of non-residents because "[t]he district court did not adequately recognize that each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id*. at 593.

The same considerations preclude the CIPA Plaintiffs from applying CIPA in place of the laws of their local jurisdictions. As in *Mazza*, both Alabama and Maryland "would be impaired in their ability to calibrate liability to foster commerce" if the CIPA Plaintiffs were allowed to avoid their local laws and assert a CIPA claim. *Id*. For example, even though Alabama has

---

[30] Moreover, the CIPA Plaintiffs' effort to impose California law on the other 49 states would violate the Dormant Commerce Clause, particularly as applied to communications that have no connection to California. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) ("a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature. The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State.")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK

decided that its residents should have no private right of action to challenge an alleged

interception, that legislative judgment would be entirely subverted if Alabama residents like

Plaintiff Harrington could bring a CIPA claim. Similarly, the limited remedies specified under

Maryland law would be meaningless if Maryland residents like Plaintiff Brad Scott could simply

ignore those limitations and assert a claim under CIPA. In short, allowing Plaintiffs to bypass the

restrictions of their local laws by invoking CIPA would effectively rob Alabama and Maryland of

any ability to determine the appropriate scope of liability for claims brought by their residents.

*Mazza* precludes this result. *See id*. at 591-94.

Indeed, the CIPA Plaintiffs' effort to impose California law on a nationwide class outside

of California is in direct conflict with the claims of other Plaintiffs. While the CIPA Plaintiffs are

seeking to impose CIPA to override all other state wiretapping statutes outside of California,

Plaintiffs Knowles, Brinkman, and Brent Scott have chosen to rely, *not* on CIPA, but on the

wiretapping statutes of their respective states of residence (Maryland, Pennsylvania, and

Florida).[31] (*See* Compl. at ¶¶ 341, 361, 383.) The Court should not allow the CIPA Plaintiffs to

force all non-Gmail users outside of California to rely on CIPA when three of their fellow

Plaintiffs have expressly rejected the application of California law and insisted that local law

must apply to their own claims and the claims of the non-Gmail users in their respective states.

## V.    CONCLUSION.

For all of the reasons above, Plaintiff's Complaint should be dismissed in its entirety.

Dated: June 13, 2013

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)

/s/ Whitty Somvichian
Whitty Somvichian (194463)
Attorneys for Defendant GOOGLE INC.

1319718/SF

---

[31] This inherent conflict is most obvious in the case of Plaintiffs Scott and Knowles. Both are Maryland residents seeking to represent a class that includes non-Gmail users in Maryland – yet Scott seeks to impose CIPA whereas Knowles has chosen to rely on Maryland law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:13-MD-02430-LHK