1   WYLY~ROMMEL, PLLC
    Sean F. Rommel (*Pro Hac Vice*)
2   Email: srommel@wylyrommel.com
    4004 Texas Boulevard
3   Texarkana, Texas 75503
    Telephone: (903) 334-8646
4   Facsimile: (903) 334-8645

5   CORY WATSON CROWDER & DEGARIS, P.C.
    F. Jerome Tapley (*Pro Hac Vice*)
6   Email: jtapley@cwcd.com
    2131 Magnolia Avenue
7   Birmingham, Alabama 35205
    Telephone: (205) 328-2200
8   Facsimile: (205) 324-7896

9   *Plaintiffs' Co-Lead Counsel*

10  CARTER WOLDEN CURTIS, LLP
    Kirk J. Wolden (SBN 138902)
11  Email: kirk@cwclawfirm.com
    1111 Exposition Boulevard, Suite 602
12  Sacramento, California 95815
    Telephone: (916) 567-1111
13  Facsimile:  (916) 567-1112

14  *Plaintiffs' Liaison Counsel*

15          UNITED STATES DISTRICT COURT

16         NORTHERN DISTRICT OF CALIFORNIA

17               SAN JOSE DIVISION

18

19  | IN RE GOOGLE INC. GMAIL LITIGATION | Master Docket No.: 13-MD-02430-LHK |

20  | THIS DOCUMENT RELATES TO: | **PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS** |

21  ALL ACTIONS

22                                      Date:      September 5, 2013
                                        Time:      1:30 p.m.
23                                      Judge:     Hon. Lucy H. Koh
                                        Place:     Courtroom 8—4th Floor
24

25

26  ///

27  ///

28  ///

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................................... iii

I.    THE CLASS ..................................................................................................... 1

II.   INTRODUCTION ............................................................................................ 2

III.  STATEMENT OF FACTS .............................................................................. 3

      A.    The Delta Stroke Sensor-Function, Failure, and Safety Defect .............. 3

      B.    Nissan's Early Knowledge of the Defect .............................................. 5

            1.    12/12/03 Concern & Countermeasure Request ............................. 5

            2.    Customer and Dealer Reports .................................................... 5

            3.    2004 and 2005 Engineering Meetings Regarding DSS Failures ............. 6

            4.    Early NHTSA Complaints to NNA ............................................. 7

            5.    Notice from NNA Dealers and Warranty Experience ....................... 8

            6.    Warranty Data ....................................................................... 8

      C.    The Technical Service Bulletins – A Faulty Fix ................................... 8

      D.    NNA Concealed The Faulty Fix ........................................................ 9

      E.    Nissan Isolates the DSS Safety Defect and the Solution, but Continues to
            Promote the Faulty TSB Reprogramming Fix ................................... 10

      F.    Plaintiffs' Dangerous Experiences with DSS Failures .......................... 11

      G.    Reasonable Drivers Do Not Expect a Sudden and Unexpected Loss of
            Braking Power .............................................................................. 13

IV.   ARGUMENT .................................................................................................. 13

      A.    LEGAL  STANDARD ..................................................................... 13

      B.    The Class is Sufficiently Numerous as Required by Rule 23(a)(1). .............. 14

      C.    There are Common Questions of Law and Fact as Required by Rule
            23(a)(2). ...................................................................................... 14

      D.    Plaintiffs' Claims are Typical of the Class. ...................................... 16

      E.    Plaintiffs and Their Counsel are Adequate Representatives
            of the Class. ................................................................................. 16

      F.    Common Issues of Law and Fact Predominate
            and a Class Action is Superior. ....................................................... 17

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 4:11-cv-02022-PJH

i

1.   Common Issues Predominate for the CLRA Claims ............................... 17

2.   Common Issues Predominate for the UCL Claims .................................. 18

3.   Class-wide Litigation is a Superior Method of Litigation
     for the Claims at Hand ................................................................ 21

**CONCLUSION** ................................................................................... 21

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 4:11-cv-02022-PJH

ii

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                    <u>PAGE</u>

*Hanan v. Dataproducts Corp.*,
    976 F.2d 497, 508 (9th Cir. 1992) ................................................................ 13

*Doninger v. Pac. Northwest Bell, Inc.*,
    564 F.2d 1304, 1309 (9th Cir. 1977) ............................................................ 13

*Gillibeau v. Richmond*,
    417 F.2d 426, 432 (9th Cir. 1969) ................................................................ 13

*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708, 712 (9th Cir. 2010) ................................................................ 14

*Ellis v. Costco*,
    657 F.3d 970, 981 (9th Cir. 2011) ................................................................ 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1019 (9th Cir. 1998) ............................................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 2551-52 .............................................................................. 14

*Keilholtz v. Lennox Heart Prods.*,
    268 F.R.D. 330, at 337 (N.D. Cal. 2010) ..................................................... 14

*Wolin v. Jaguar Land Rover North Am., LLC*,
    617 F.3d 1168, 1172 (9th Cir. 2010) ..................................................... 14, 21

*Keilholtz v. Lennox Heart Prods.*,
    268 F.R.D. at 336 ......................................................................................... 15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab Lit.*,
    678 F.3d 409, 419 (6th Cir. 2012) ................................................................ 15

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App 4th 1213, 1235 (2010) ............................................................ 15

*Amchem Prods, Inc. v. Windsor*
    521 U.S. 591, 625 (1997) .............................................................................. 15

*In re First Alliance Mortg. Co.*,
    471 F.3d 977, 992 (9th Cir. 2006) ................................................................ 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d at 1020 ........................................................................................... 16

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    No. 11-1085, 2013 U.S. Lexis 1862 (Feb. 27, 2013) .................................... 17

*Colgan v. Leatherman Tool Grp. Inc.*,
    135 Cal. App 4th 663, 680, 682 (2006) ........................................................ 17

*Chamberlan v. Ford Motor Co.*,
    402 FR.3d 952, 962 (9ᵗʰ Cir. 2005) .................................................................... 18

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App 4ᵗʰ 1351, 1360 (2003) ................................................................. 18

*Guitierrez v. Wells Fargo Bank, NA*,
    704 F.3d 712, 717 (9ᵗʰ Cir. 2012) ..................................................................... 18

*Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal 4ᵗʰ 163, 180 (1999) ................................................................................ 19

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718, 713 (9ᵗʰ Cir. 2007) ..................................................................... 18

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App 4ᵗʰ 861 (1999) ............................................................................... 19

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F. 3d 1152, 1168 (9ᵗʰ Cir. 2012) ................................................................ 19

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007) .............................................. 19, 20

*People v. Duz-Mor Diagnostic Laboratory, Inc.*,
    68 Cal. App. 4ᵗʰ 654, 658 (1998) ...................................................................... 19

*Ho v. Toyota Motor Corp.*,
    2013 WL 1087846, at *10-*11 ........................................................................... 19

*Bardin v. Daimlerchrysler Corporation*,
    136 Cal. App. 4ᵗʰ 1255, 1261 (2006) ................................................................ 19

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934, 938 (9ᵗʰ Cir. 2008) ..................................................................... 20

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4ᵗʰ 496, 510-513 (2003) ............................................................. 20

*Massachusetts Mutual Ins. Co. v. Superior Court*,
    97 Cal. App. 4ᵗʰ 1282, 1292-94 (2002) ............................................................. 20

*Chamberlan v. Ford Motor Co.*,
    369 F. Supp. 2d 1138, 1145-46 (N.D. Cal. 2005) ............................................. 20

*In Re Tobacco II Cases*,
    46 Cal. 4ᵗʰ at 327 ............................................................................................... 20

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227, 1234 (9ᵗʰ Cir. 1996) ................................................................... 21

## STATUTES

Cal. Civ. Code § 1770(a) ......................................................................................... 17

Cal. Civ. Code § 1770(a)(5) ..................................................................................... 17

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 4:11-cv-02022-PJH

Cal. Civ. Code § 1770(a)(7) ............................................................................... 17

Cal. Bus. & Prof. Code § 17200 ....................................................................... 18

**<u>RULES</u>**

Federal Rule of Civil Procedure 23(a) ........................................................... 1, 13

Federal Rule of Civil Procedure 23(b)(3)…… .......................................... 1, 13, 17

Federal Rule of Civil Procedure 23(a)(2) ..................................................... 14, 15

Federal Rule of Civil Procedure 23(a)(3) ........................................................... 16

Federal Rule of Civil Procedure 23(a)(4) ........................................................... 16

PLAINTIFFS'  NOTICE  OF  MOTION  AND  MEMORANDUM  OF  POINTS  AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No.: 4:11-cv-02022-PJH

v

## I.   STATEMENT OF ISSUES

1.   Google's undisclosed interception, extraction, acquisition, and use of the substance, purport, and meaning of the content of the Plaintiffs' email messages violates ECPA, and its Florida, Maryland, and Pennsylvania state law analogues because:

- As to the facts of this case, ECPA's ordinary course of business exception applies only to actions necessary for Google to offer "to users thereof the ability to send or receive wire or electronic communications"[1];

- No email user consents to Google's undisclosed message-content extraction and acquisition because: (1) Google's conduct is secret; (2) Google's express terms forbid the conduct; (3) Google violates its own agreements with users through its conduct; and, (4) Google's minor users have no capacity to consent; (5) Google's actions are beyond that necessary for it to offer "to users thereof the ability to send or receive wire or electronic communications"[2]; and,

- Google's affirmative defense of consent is not amenable to resolution on a pleadings motion.

2.   Google's reading, learning, and recording of the meaning and content of private communications violates CIPA because:

- CIPA protects emails which are electronic "communications" or "messages" from Google's unlawful interceptions;

- The *Scott I* Plaintiffs specifically allege a California connection pursuant to CIPA that Google ignored; and

- All CIPA Plaintiffs have standing to pursue their claims because they have been injured by Google's violation of their statutory privacy rights.

## II.   INTRODUCTION

Separate from the normal web-mail processing for SPAM, viruses, spellchecking, routing and delivery, storage, and/or the placement of an email message in a user's inbox, Google actually diverts email messages to separate devices to extract the meaning from the message. These separate devices do not deliver the message, nor do they simply spell-check, index, or highlight words. Google designed these devices to capture the authors' actual *thoughts* ("thought data") for Google's secret use. Any other definition of "automated processing" or "automated scanning" used in the context of this Motion is irrelevant and ignores the Complaint's recitation of the actual practices at issue. (CC, ¶¶ 22-96.)

*///*

---

[1] *See* 18 U.S.C. 2510(5)(a)(ii), 2510(14), and 2510(15).

[2] *Id.*

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                    1

Google creates and uses this "thought data" and attaches it to the messages so Google can better exploit the communication's "meaning" for commercial gain. Google collects and stores the "thought data" separately from the email message and uses the "thought data" to: (1) spy on its users (and others); and, (2) amass vast amounts of "thought data" on millions of people (secret user profiles). Google's attempt to describe its "thought data" mining generically as "automated processing" or "automated scanning" improperly rewrites Plaintiffs' allegations.

Google does not disclose its "thought data" mining to anyone. Google's undisclosed processes run contrary to its expressed agreements. Google even intercepts and appropriates the content of minors' emails despite the minors' legal incapacity to consent to such interception and use. Thus, these undisclosed practices are not within the ordinary course of business and cannot form the basis of informed consent. Despite Google's proclamation, Google cannot do "as it wishe[s]" with the private communications of millions of unsuspecting users and third parties in violation of the privacy protections afforded by the statutes at issue here. Accordingly, Google's motion should be denied.

## III.    STATEMENT OF FACTS

Plaintiffs provide the following facts supported by the ***actual*** allegations in the Complaint.

### A.    Gmail—The Secret Data Mining Machine

Google uses Gmail as its own secret data mining machine which intercepts, warehouses, and uses, without consent, the private thoughts and ideas of millions of unsuspecting Americans who transmit email messages through Gmail. (CC, ¶¶ 19-98.) The Complaint does not seek to prohibit reliable delivery of email or processes designed to "***scan*** email content to filter out spam… [or] detect computer viruses[.]" (Doc. 44, "MTD", 3:22-23.) This case is about Google's undisclosed practices which go beyond normal web-mail "automated ***scanning***" by using ***additional devices*** that intercept messages while in transit to the recipient and ***extract***, ***acquire***, and ***use*** email message content to determine the sender's actual thoughts and ideas. (CC, ¶¶ 22-39, 40-98.) Google stores and uses this extracted information to monitor, spy, and build secret user profiles on millions of people. (CC, ¶¶ 4, 94-98.) Google also uses this

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

information for its own financial benefit to avoid traffic acquisition costs and increase profits. (CC, ¶¶ 96, 282, 338, 358, 380.)   Google's undisclosed practices of intercepting, reading, extracting, acquiring, and using private email content are unique among email service providers, and its nefarious data mining practices stand alone.  (CC, ¶¶ 257, 259f-g, 262-63, 331-32, 352-53, 374-75.)

### B.    No Person Consents to Google's Secret Data-Mining Practices.

No one consents to Google's undisclosed data mining where Google (1) intercepts email messages in transit to acquire meaning, collect content, create metadata, and collect that information for subsequent use; and, (2) reads email messages to obtain the "actual ideas in a person's mind," or "thought data"; all *regardless* of whether a person receives advertising.

Plaintiffs' factual allegations, conveniently ignored by Google, challenge in detail Google's attempt to manufacture consent based on its inadequate terms and disclosures.  (CC, ¶¶ 102-213.)  Despite Google's attempt to substitute its own version of the facts, a jury—not Google—must decide whether persons consent to Google's undisclosed content extraction, acquisition, and use practices.

### C.    Google Apps—The Fraud Upon End-Users

As a subset of Gmail, Google offers Google Apps, a paid service used by businesses, educational organizations, and ISPs.  (CC, ¶¶ 20, 100-01.)  The express terms of the agreements between the users and Google forbid Google from serving advertisements.  (CC, ¶¶ 100-01, 137-84.)  Further, the agreement limits Google's access to user emails.  (CC, ¶¶ 137-145.)  Although Google Apps users do not receive advertisements, Google still secretly intercepts and spies on every message and reads, extracts, acquires, collects and uses the content to create, collect, use, and store "thought data."  (CC, ¶¶ 100-01.)   This fact demonstrates that Google's data-mining practices are not for the benefit of the user, but for Google.  And, Google does not disclose this unlawful practice to users in any of its terms or disclosures.  (CC, ¶¶ 102-21.)

///

///

///

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

1    **IV.   ARGUMENT**

2         Accepting "all factual allegations in the complaint as true,"[3] Plaintiffs have alleged a

3    *prima facie* case for violations of ECPA—and ECPA's Florida, Maryland, and Pennsylvania

4    state law analogues—because Plaintiffs have pleaded facts establishing "that [Google] (1)

5    intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or

6    endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device."

7    *Blumofe v. Pharmatrak, Inc. (In Re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 18 (1st Cir.

8    2003).  *Compare* 18 U.S.C. § 2511(1)(a)[4] *with* (CC, ¶¶ 19-101, 214, 215-86, 322-84.)  Plaintiffs

9    also pleaded that Google's unlawful conduct includes: (1) an intentional act; (2) an interception;

10   and, (3) a use of content.  *Compare* 18 U.S.C. § 2511(1)(d) *with* (CC, ¶¶ 19-101, 214, 260.)

11        Plaintiffs have also pleaded two of "three distinct and mutually independent" violations

12   of Cal. Penal Code § 631: "willfully attempting to learn the contents or meaning of a

13   communication in transit over a wire, and attempting to use or communicate information

14   obtained as a result of engaging in [] the previous [] activities." *Tavernetti v. Superior Court of*

15   *San Diego County*, 22 Cal. 3d 187, 192-93 (Cal. 1978).  *Compare* Cal. Penal Code § 631 *with*

16   (CC, ¶¶ 19-101, 214, 287-97, 298-309).

17        Finally, Plaintiffs have pleaded facts establishing violations of Cal. Penal Code § 632:

18   that Google "intentionally and without consent of all parties to a confidential communication . .

19   . records the confidential communication . . . by means of a telegraph, telephone, or other

20   device, except a radio . . . ."  Cal. Penal Code § 632(a).  *Compare* § 632 *with* (CC, ¶¶ 19-101,

21   214, 287-97, 310-20).    Google cannot escape Plaintiffs' well-pleaded Complaint.

22        **A.   Google's Extraordinary Practice of Email Content Extraction, Acquisition,**
23             **and Use is NOT an "Ordinary Course of Business."**

24        In *Dunbar*, Google already lost its "exception" argument on its previous motion to

25   dismiss.  *Dunbar, et al. v. Google, Inc.*, 5:10-cv-194, Doc. 61, p. 7-8 (E.D. Tex. May 23, 2011).

26   ///

27

28   ───────────────────────────
     [3] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
     [4] Citations to specific provisions of ECPA should be construed as citations to the respective
     portions of each of the Florida, Maryland, and Pennsylvania analogue state statutes.

### 1. No Exception Applies to Google's Extraordinary Practice of Email Interception, Content Extraction, Acquisition and Use.

No generic "automated processing," "automated scanning," or general electronic communication service provider ("ECSP") exception exists within ECPA. Congress carved out one ECSP exception applicable here. Section 2510(5)(a)(ii) exempts from liability "devices" used by wire and ECSPs "in the ordinary course of its business." This exception, however, does not apply to Google's devices which extract, acquire, and use email content and which are not incident to the safe delivery of email. Yet, Google seeks a construction that *any* "processing" performed by an ECSP is excluded from liability under ECPA as long as the particular provider deems the act to be within its own *subjective* "ordinary course of its business." In effect, Google advocates for an ECSP exemption that would swallow the rule, destroy the very protections afforded by ECPA, and allow every telecommunication and email provider to self-define the limits of its own power—which Google contends is limitless.[5]

The *only* "ordinary course of business" language applicable here derives from 18 U.S.C. § 2510(5)(a)(ii) and from within the definition of the word "device." Critical to the analysis of this exception is an understanding that an unlawful interception requires a "device." The operative language of 18 U.S.C. § 2510(5)(a)(ii) states:

> 'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire . . . or electronic communication other than—(a) any telephone or telegraph instrument, equipment, or any component thereof . . . (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business. . . .

The statute limits the ordinary course of business exception to "electronic communication service" providers and only where the provider acts in the "ordinary course of its business." Plaintiffs assert the "ordinary course of business" exception applies only to the

---

[5] Google's efforts to interject components of the Stored Communications Act have no application in this case because: (1) this case does not involve an ECSP accessing information from storage as contemplated by § 2701, (2) the entirety of Plaintiffs' Complaint challenges whether Google was "authorized" to act; and, (3) such a reading of § 2701 would render meaningless § 2510(5)(a)(ii) of the Wiretap Act because, according to Google, all acts by an ECSP within its facilities are covered by § 2701. Finally, Google's expansive version of §§ 2701-03 renders meaningless every analysis by every court on the differences between "storage" and "transmission"/"in transit" when looking at the differences between the application of § 2511 and § 2701. No court has ever sanctioned such an application of §§ 2701-03 to allegations of "interceptions."

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                                    5

provider's "basic service"[6] necessary to "properly route, terminate and otherwise manage"[7] email messages.  Google claims that the "ordinary course of business" exception encompasses **every subjective business practice** of a provider of a wire or electronic communication service.  Unless every subjective business practice is subject to a blanket exception, factual determinations are required to decide whether Google's interception, content extraction, acquisition, and use are beyond the exception.

While ECPA does not define "ordinary course of its business," the statutory language reveals the limitations to the exception.  First, Congress did not *exempt* providers of wire or electronic communication services from ECPA's application.[8]  As the Ninth Circuit opined, "the authority to intercept and disclose wire communications is not unlimited[.]"  *United States v. Cornfield*, 563 F.2d 967, 970 (9th Cir. 1977) (limiting actions to those necessary for the rendition of service and protection of rights and property).  Section § 2510(5)(a)(ii) expresses Congress's intent to limit the exceptions for only *particularized* conduct.

Second, the § 2510(5)(a)(ii) limitation is only applicable to "providers" of wire or "electronic communication services."  Congress defined an "electronic communication system" to mean those facilities used for the "*transmission* of wire or electronic communications."  18 U.S.C. § 2510(14)(emphasis added).  Section 2510(15) defines an "electronic communication service" as "any service which provides to users thereof the **ability to send or receive wire or electronic communications.**"  18 U.S.C. § 2510(15)(emphasis added).  Businesses or *services* beyond the "ability to send or receive wire or electronic communications" are not by definition "electronic communication services."  Facilities or systems unrelated to "transmission" are not electronic communication systems.  The definitions enacted by Congress establish that the limited business upon which the exception was created was for the "ability to send or receive wire or electronic communications."

///

---

[6] *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005).

[7] (MTD, 7:2-6, quoting the legislative history of ECPA, S. Rep. No. 99-541.)

[8] Plaintiff intentionally left in the word "wire" communications because Google's interpretation would allow every telephone communication provider to unlawfully record and commercially use the communications of every telephone call in the United States.

The congressional history cited by Google actually supports Plaintiffs' contention that § 2510(5)(a)(ii) is limited to an ECSP's ability "to monitor a stream of transmission *in order to properly route, terminate, and otherwise manage the individual messages they contain.*" (MTD, 7:2-6) (emphasis added.)  Nothing in ECPA or the legislative history allows providers like Google to bootstrap other acts beyond those necessary for the routing, termination, or management of the message.  The Second Circuit's opinion in *Hall* also supports Plaintiffs' construction of the limited application of § 2510(5)(a)(ii).  The *Hall* court applied the exception for the provider "because *their basic services* involve the 'acquisition of contents' of electronic communications." *Hall*, 396 F.3d at 505 (emphasis added).  The *Hall* court didn't exempt "any services," it excepted "basic services."

Courts have also limited the "ordinary course of its business" language within § 2510(5)(a)(i) and the law enforcement component of § 2510(5)(a)(ii) to thwart attempts to expand the scope of the exception.  As the Eleventh Circuit stated, "It is not enough for [defendant] to claim that its general policy is justifiable as part of the ordinary course of business.  We have no doubt that it is." *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983).  "[T]he phrase 'in the ordinary course of business' cannot be expanded to mean anything that interests a company.  Such a broad reading 'flouts the words of the statute and establishes an exemption that is without basis in the legislative history' of Title III." *Id.,* 704 F.2d at 582 (quoting *Campiti v. Walonis*, 611 F.2d 387, 392 (1st Cir. 1979).  Likewise, Chief Judge Posner denounced an *unlimited* "ordinary course of [his duties]" exception for law enforcement personnel:

> Investigation is within the ordinary course of law enforcement, so if "ordinary" were read literally warrants would rarely if ever be required for electronic eavesdropping, which was surely not Congress's intent. Since the purpose of the statute was primarily to regulate the use of wiretapping and other electronic surveillance for investigatory purposes, "ordinary" should not be read so broadly; it is more reasonably interpreted to refer to routine noninvestigative recording of telephone conversations. (This interpretation may have much the same practical effect as the interpretation mentioned earlier in which "ordinary course" refers to recording calls on one's own line; for ordinarily when police record calls as part of an investigation they are recording calls on someone else's line.) Such recording will rarely be very invasive of privacy, and for a reason that does after all bring the ordinary-course exclusion rather close to the consent exclusion: what is ordinary is apt to be known; it imports implicit notice.

*Amati, et. al v. City of Woodstock,* 176 F.3d 952, 955 (7th Cir. 1999)(emphasis added).  The Sixth Circuit also requires *knowledge* of the action to make it "ordinary." *See Adams v. City of Battle Creek,* 250 F.3d 980, 984 (6th Cir. 2001).  Congressional intent, statutory purpose, and case law narrowly limit the "ordinary course of business" exception to those  services and processes which enable providers the ability to offer "to users thereof the ability to send or receive wire or electronic communications."

Section 2510(5)(a)(ii)'s exception is limited to acts necessary to deliver messages is confirmed by its companion exception, 18 U.S.C. § 2511(2)(a)(i), which protects *employees*[9] of providers while they are engaged in acts "necessary incident to the rendition of his service" or to "the protection of the rights or property of the provider."  Through § 2511(2)(a)(i), Congress sought to insulate employees engaged in the service of the transmission of a communication.  It would be inconsistent to protect these same employees for such a limited purpose but expose only the employees to liability for a company's actions beyond the acts "necessary incident to the rendition of service.

Thus, all statutory language and relevant authority support that § 2510(5)(a)(ii) applies only to those actions necessary to transmit or deliver wire of electronic communications.[10] Google's interpretation strays from Congressional intent and would allow any provider to bootstrap any subjective business interest as "its ordinary course of business" with no objective way to rebut the assertion.  Plaintiffs allege that the devices used by Google to perform its unlawful acts are "separate and distinct pieces of Gmail infrastructure" and are not used for the ability to send or receive electronic communications.  (CC, ¶¶ 22-90, 214, 259e-f, and 261-265.) Such facts can be applied objectively to the statute to deny Google's Motion.

### 2.    No Court Has Ever Ruled That Google's Practices of Content Interception, Extraction, Acquisition and Use are Lawful.

While Google hypnotically repeats the expression "automated processing" to make its undisclosed practices seem innocuous, this case presents ECPA issues of first impression.  No

---

[9] Google has failed to explain how its "automated processing," which it claims involves no "humans," would ever fall within the protection of § 2511(2)(a)(i).  (*See* CC, ¶¶ 261, 330, 351, and 372.)

[10] *See* 18 U.S.C. 2510(5)(a)(ii), 2510(14), and 2510(15); *Hall,* 396 F.3d at 505; *Amati,* 176 F.3d at 955; and *Adams,* 250 F.3d at 984.

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                          8

court has ever been confronted with a web-mail service that: (1) intercepts and acquires meaning and "thought data" from every email message in transit, collects content from email messages, creates metadata, and attaches that information to the email message for subsequent use; (2) intercepts and reads email messages to obtain the "actual ideas in a person's mind" ("thought data"); (3) creates surreptitious and catalogued profiles on people—all in violation of its own user agreements.  Plaintiffs pleaded that the devices at issue are not used by Google for the ability to send or receive communications and are not used by others in the industry.  Under these facts, Google's reliance on *Kirch* and *In re Google Privacy Policy* are not helpful.  Twice, the court in *Kirch* commented, "We need not decide where to draw the line between *access* to data and *acquisition* of data."  *Kirch v. Embarq Management Co.,* 702 F.3d 1245, 1249, and 1251 n.3 (10th Cir. 2012)(highlighting repeatedly that defendant never acquired any information).  *Kirch* is inapposite because Plaintiffs allege Google *does acquire* data from email.

Likewise, Google erroneously asserts that Judge Grewal held ECPA does not apply to its ECSP facilities.  ECPA does apply to the internal systems of an ECSP, or else there would be no need for the exceptions to the statute enumerated at § 2510(5)(a)(ii) or 2511(2)(a)(i)— Congress could have simply declared the "electronic communications systems" or "facilities" of "electronic communication services" to be exempt.  Even so, unlike the plaintiffs in *In re Google Privacy Policy*, Plaintiffs here have alleged that the devices at issue are "outside" those "systems" necessary for the transmission of email in a service providers' ordinary course of business.  *See In re Google Privacy Policy*, 2012 WL 6738343 at *5-6 (N.D. Cal. 2012).  Unlike the insufficient allegations in *In re Google Privacy Policy*, here Plaintiffs allege that Google diverts email messages to the accused devices, which are separate and distinct pieces of Gmail infrastructure, to acquire and use the message content.

### 3.    Plaintiffs Allege Conduct Beyond The Ordinary Course of Business

The Complaint details factual reasons why Google does not operate in the ordinary course of business: (1) Google's actions violate its agreements with its users[11] and contracting

---

[11] *See* CC, ¶¶ 119-20, 132, 134, 142, 145, 149-50, 153, 156-57, 173-74, 177, 179-81, 191, 193, and 195.

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                    9

parties like Cable One and EDU customers;[12] and, (2) all of Google's disclosures, are materially inadequate and fraudulent.[13]   Unless Google contends that breaches of contracts and the dissemination of false and misleading information are within its ordinary course of business, Google cannot overcome Plaintiffs' pleading.  Further, Google's actions are undisclosed.  *See Adams*, 250 F.3d at 984 (ordinary course of business requires "notice").  Accordingly, Google's actions are not "ordinary."

Finally, *no other* ESCP acts the way Google does—using extraneous devices beyond the reliable delivery of email to acquire and use personal communication content.[14]   Google falsely asserts that Yahoo! performs the same acts Plaintiffs allege against Google.  (MTD, 3-4, n.1.) Google omitted that it was a ***co-defendant*** with Yahoo! in the matter of *Julie Sheppard v. Google, Inc., et al.*[15] where Yahoo! filed a ***sworn declaration*** stating:

> I am familiar with the Complaint filed in this action, and aware that the plaintiffs contend that, prior to delivery, Yahoo! intercepts and reads personal emails sent from non-Yahoo! Mail users to Yahoo! Mail users.  However, with the exception for scanning for viruses, malware and spam, Yahoo! ***does not engage in that practice.***

(Declaration of Amir Doron, Doc. 51-2, Exhibit A to Tapley Dec.).[16]  It is not a "standard" in the industry if no one else does it, and Google's data mining of personal email messages stands alone.

### 4.  Google's Interpretation Would Destroy ECPA's Privacy Protections

Plaintiffs do not seek to criminalize SPAM control, virus protection, or routing of email messages.   Google can even lawfully perform any of the undisclosed practices Plaintiffs uncovered in discovery—as long as Google *properly* obtains informed consent before doing so. But, Google does not.

///

---

[12] *See* CC, ¶¶ 139, 142, 156-57, 163, 166, 169, and 179-81.

[13] *See* CC, ¶¶ 201-08, and 211-12.

[14] *See* CC, ¶¶ 257, 262-63, 331-32, 352-53, and 374-75.

[15] *See Julie Sheppard v. Google, Inc., and Yahoo!, Inc.,* 4:12-cv-4022, In the United States District Court for the Western District of Arkansas, Texarkana Division.

[16] Despite Google's implications in Footnote 1, Yahoo! was dismissed on an unopposed motion in both *Penkava* and *Sheppard* based upon a sworn statement by Yahoo! that it doesn't do what Google claims.

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

Allowing any telephone company or web-mail service provider to simply declare any course of business or "automated process" as a legitimate § 2510(5)(a)(ii) exception would destroy ECPA's privacy protections.  Every ECSP "device" would be exempted under Google's interpretation.   In effect, Google and *every single* ECSP or telephone company using "automated processing" could begin selling actual private conversations and emails to any third-party because there would be no device, no interception, and no barrier to disclosure.

Congress never envisioned and never enacted the breadth of the exception for which Google advocates.  Section 2510(5)(a)(ii)'s "ordinary course of its business" must be limited to those actions necessary to provide to users "the ability to send or receive wire or electronic communications."  Nothing more.  If an ISP or ECSP offers additional services to set itself apart from the industry, ECPA requires honest disclosure and adequate consent.[17]

### 5. Plaintiff Brinkman Properly Alleges An "Interception" Under Pennsylvania Law

Google seeks dismissal of the Pennsylvania Class's received claims.  (MTD 13:7-19.) Google does not challenge Brinkman's *sent* claims, but Brinkman has clearly pleaded that she sent emails that were intercepted by Google.  (CC, ¶¶ 364, 367, 370, and 391.)   Google challenges Brinkman's *received* claims (CC, ¶¶ 365-67, and 391), relying upon both *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d. 622, 633 (E.D. Pa. 2006), and *Kline v. Security Guards, Inc.*, 386 F.3d 246, 257 (3d Cir. 2004).  (MTD, 13.)  In *Kline*, the Third Circuit adopted a test that requires plaintiff to have "engaged in . . . [a] communication."  *Kline*, 386 F.3d at 257.  *Klump* incorrectly applied *Kline* by defining "engaged in" to exclude the intended recipient of a communication as a party who is "engaged in . . . [a] communication," despite the ordinary definition of that term or the fact that a "communication" necessarily requires a sender and at least one recipient.  This Court should rely upon the Third Circuit's analysis in *Kline* **without** *Klump*'s unsound definition of "engaged in."

///

///

---

[17] Requiring consent for extraneous acts beyond delivery of email has far fewer consequences than a subjective, boundless exception, which would wreak havoc on privacy rights.

**B.      No Person Consents To Google's Conduct**

In *Dunbar*, Google already lost its consent argument on its previous motion to dismiss. *Dunbar, et al. v. Google, Inc.*, 5:10-cv-194, Doc. 61, p. 7 (E.D. Tex. May 23, 2011).

Google's consent arguments fail for a number of reasons.  First, as "the party seeking the benefit of the exception," Google has the burden of proving consent.  *In re Pharmatrack, Inc.*, 329 F.3d at 19.  However, "[C]onsent is an affirmative defense to an ECPA claim that need not be anticipated by Plaintiffs in the pleadings."  *Valentine v. Wideopen West Fin., LLC*, 288 F.R.D. 407, 413 (N.D. Ill. 2012).[18]

Second, consent may be express or implied, but "[i]mplied consent is not, however, constructive consent. Rather, implied consent is 'consent in fact' which is inferred from surrounding circumstances indicating that the party *knowingly agreed* to the surveillance." *Williams v. Poulos*, 11 F.3d 271, 281 (1st Cir. 1993)(emphasis in original)(quoting *Griggs-Ryan v. Smith,* 904 F.2d 112, 116-17 (1st Cir. 1990)).  *See also Berry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir. 1998)("Without actual notice, consent can only be implied when 'the surrounding circumstances [] convincingly show that the party knew about and consented to the interception.'")(quoting *United States v. Lanoue*, 71 F.3d 966, 981 (1st Cir. 1995)).  Further, Consent "should not casually be inferred," *In re Pharmatrack, Inc.*, 329 F.3d at 20, nor "cavalierly implied," *Watkins*, 704 F.2d at 581.  The Complaint details the secrecy of Google's nonconsensual data mining practices and explains how that secrecy prevents any inference or implied understanding of Google's conduct.  (*See* CC, ¶¶ 22-91, 102-213.)

Finally and most importantly, consent may be limited: "A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications." *Pharmatrack, Inc.,* 329 F.3d at 19.  As such, a court "must inquire into the *dimensions of the consent* and then ascertain whether the interception exceeded those boundaries." *Id.*, quoting *Gilday v. DuBois*, 124 F.3d 277, 297 (1st Cir. 1997).  *See also Griggs-Ryan,* 904 F.2d at 119.  As the Eleventh Circuit explained in *Watkins*: "consent within the meaning of section 2511(2)(d) is not necessarily an all or nothing proposition; it can be

---

[18] Consent is—with the exception of the *Dunbar* claims where Google has answered twice already—only an expected affirmative defense because Google has not yet answered.

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

1    limited.  **It is the task of the trier of fact to determine the scope of the consent** and to decide

2    whether and to what extent the interception exceeded that consent."  *Watkins*, 704 F.2d at 582

3    (emphasis added).  The undertaking of such an analysis in the face of the detailed Complaint

4    would alone be sufficient to deny Google's motion.

5        Accepting the Plaintiffs' allegations as true, Google must demonstrate what it cannot—

6    that the Complaint reveals facts that Google **actually** disclosed its practice of intercepting,

7    extracting, acquiring, and using email content, while in transit, to obtain the sender's actual

8    thoughts and ideas, and which it uses for purposes like creating secret user profiles.  To avoid

9    this standard, Google asks this Court to apply an imaginary standard: that consent for **any**

10   purpose (automated processing for routing or viruses) = consent for **every** purpose (extraction,

11   acquisition, and use of email content).  Under Google's standard, if users consent to "automated

12   processing" for virus protection, users consent to "automated processing" for all purposes,

13   regardless of whether Google discloses those processes and purposes.  No such standard for

14   consent exists because consent "**must be actual** " and for "**such** interception."  *In re*

15   *Pharmatrack, Inc.*, 329 F.3d at 19 (emphasis added); *see also* 18 U.S.C. § 2511(2)(d)(emphasis

16   added).

17       Because consent is an affirmative defense to an ECPA claim, the Court can dismiss a

18   claim pursuant to an affirmative defense "only if the defense is 'clearly indicated' and 'appears

19   on the face of the pleading.'"  *Valentine, LLC*, 288 F.R.D. at 413; *see also Harris v. Amgen,*

20   *Inc.*, 2013 U.S. App. LEXIS 11223 at *47 (9th Cir. 2013).[19]  Plaintiffs' Complaint details

21   Google's unlawful practices that include multiple devices (separate from Google's "automated

22   processes" like spam filtration and virus detection), the routing of messages to these devices,

23   interceptions by these devices, and the acquisition of the content and meaning of the messages

24   by these devices.  (*See* CC, ¶¶ 22-98, and 214.)   Plaintiffs' Complaint further explains how

25   these secret, separate devices that perform separate interceptions and exploit the acquired

26   information are (1) undisclosed; and, (2) contradict Google's own written word.  (*See* CC, ¶¶

27

28   ———————————————
     [19] *See also Harris*, at *47, noting that *Jones v. Bock*, 549 U.S. 199, 211-12 (2007), "[held] that a
     plaintiff need not plead the absence of an affirmative defense, even a defense like exhaustion of
     remedies, which is 'mandatory.'"

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

102-213.)   By ignoring these detailed factual allegations, Google fails its burden. Nevertheless, Plaintiffs are required to address Google's generalized consent arguments below.

### 1.   Google Fails To Address Plaintiffs' Specific Allegations Regarding Its Terms and Disclosures

Google sidesteps Plaintiffs' allegations addressing user agreements with Google: the TOS, Privacy Policy, and the Gmail Legal Notice.   The Complaint details the failure of Google's "Terms of Service" to honestly inform users of Google's interceptions and use of their data.   (*See* CC, ¶¶ 102-136.)   Google cannot, as a matter of law, overcome Plaintiffs' specific allegations regarding certain sections of the various terms and policies or its violations of agreements with third parties like Cable One and the University of Hawaii.   *See* CC, ¶¶ 107-114 (detailing § 17.1's inapplicability to email and Google's removal of § 17.1 *after* March of 2012).[20]   Google not only ignores Plaintiffs' rebuttal of § 8.3's application[21] (*see* CC, ¶¶ 104-106), but it also ignores the well accepted principle of law, "knowledge of the ***capability of monitoring*** alone" is not sufficient for consent.   *Watkins,* 704 F.2d at 581[22]

The Complaint reveals Google's TOS and Privacy Policy actually prohibit the very conduct at issue.   Citing to the "use" language of its Privacy Policy (MTD, 15:11-18), Google fails to address ¶¶ 187-90 of the Complaint detailing how Google's policies affirmatively *limit the collection* of users' information—contrary to Google's actual practices.   Google cannot "use" what Google cannot "collect."   Finally, none of the cases cited by Google are analogous to the detailed allegations in this case explaining how Google's TOS and Privacy Policy prohibit the undisclosed data mining practices at issue here.

///

///

///

///

---

[20]   Section 17.1 is further inapplicable to Google Apps and Google EDU users because by contract they cannot be served advertisements.   *See* CC, ¶¶ 158, 169-70.

[21]   Section § 8.3 of the TOS does not state that Google ***will*** monitor.   Section 8.3 actually states, "Google reserves the right (but shall have no obligation) to" perform the various acts.   Plaintiffs specifically averred § 8.3 was merely a "reservation of rights."   *See* CC, ¶ 105.

[22]   *See also Deal v. Spears*, 980 F.2d 1153, 1157 (8th Cir. 1992).

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

2.     **The Minor Plaintiffs Cannot Consent To Google's Actions**

i.     **Pursuant to Section 6701 of the California Family Code, minors have no capacity to consent to Google's unlawful actions.**

Under California law, a minor has no capacity to "give a delegation of power" or "make a contract relating to any personal property ***not in the immediate possession or control*** of the minor."   Cal. Fam. Code § 6701 (emphasis added).  Section 6701 codifies "the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant."[23]  *Berg v. Traylor*, 148 Cal. App. 4th 809, 818 (Cal. App. Ct. 2007).  The statute's express language, prohibiting a minor's "delegation of power" and requiring that a minor have "immediate possession or control" of the property at issue, confirms that under California law "a minor cannot contract with respect to a future interest."  *Sisco v. Cosgrove,* 51 Cal. App. 4th 1302, 1307 (Cal. App. Ct. 1996).

Plaintiff J.K.'s data contained in his Gmail messages are his personal property.  Under California law, *all* property is either "real" or "personal."  Cal. Civ. Code § 657.  Because Gmail message data is not real property, it is, by definition, "personal property."[24]  Further, the Ninth Circuit has declared such intangible property as personal property.  *See Kremen v. Cohen,* 337 F.3d 1024, 1034 (9th Cir. 2002).[25]  J.K.'s data within Gmail is "personal property" within the language of § 663 and modern law regarding the electronic medium at issue.

Furthermore, at the moment of Google's unlawful acts, Plaintiff J.K.'s personal property—the data contained in his Gmail messages was "not in [J.K.'s] immediate possession or control," thus entitling J.K. to relief under § 6701.  "Immediate" means "[n]ot separated by other persons or things." *Black's Law Dictionary,* p. 816 (9th ed. 2009).  The acts complained of occur either after a message is sent or before it is received—but always during transmission,

---

[23] The California Family Code was created in 1994; this section continues pre-existing law, formerly codified as Civil Code § 33 in 1874 (shortly after the initial adoption of the California's written "Field Codes" in 1872).  *See* Civ. Code § 33 (Repealed by Stats.1993, c. 219 (A.B.1500), § 2.)

[24] *See* Cal. Civ. Code § 658, Cal. Civ. Code § 663 ("Every kind of property that is not real is personal.")

[25] "That it is stored in electronic form rather than on ink and paper is immaterial."

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

and at which time, Gmail users do not have "immediate possession or control" of their email messages. (CC, ¶¶ 22-98.)

Ignoring these allegations, Google asserts without citation that "Plaintiff . . . can select what emails to send, which emails to retain, and which to delete." (MTD, 16:15-18.)  Rather, Plaintiffs have alleged that Google secretly extracts data from J.K.'s email, and that the extracted metadata is *not* in control of the minor user, even after J.K. deletes the email.  (CC, ¶¶ 269-73.)  Accordingly, pursuant to California law, because J.K.'s data within Gmail is personal property not within his immediate possession or control, J.K. has no capacity to consent to Google's interception, scanning, and harvesting of his Gmail messages.

### ii.    COPPA does not preempt § 6701.

Congress enacted the Children's Online Privacy Protection Act ("COPPA") in 1998 to protect against the collection of personal information over the internet from children under the age of 13.[26]  15 U.S.C. §§ 6501-06.  COPPA provides that only state laws "inconsistent" with "***an activity or action described in this title*** [COPPA]" are preempted. 15 U.S.C. § 6502(d) (emphasis added).  Federal law preempts state law where: (1) the federal statute expressly says so; (2) Congress preempts the entire field of law; or, (3) the state and federal laws require conflicting or inconsistent compliance.  *See Arizona v. United States*, 132 S. Ct. 2492, 2500-01 (2012).  There is a presumption against preemption "unless that [is] the clear and manifest purpose of Congress." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009)(internal citations omitted).  Here there is no express, field, or conflict preemption of § 6701.

### (a).    COPPA Does Not Expressly Preempt § 6701.

By its own terms, COPPA only preempts state laws affecting conduct "described in" COPPA, i.e., the collection of ***personal information*** from children ***under the age of 13***.  15 U.S.C. § 6501(1).  Activities of website operators involving persons ***13 years and older*** are not

---

[26] COPPA defines a "child" as "an individual under the age of 13."  15 U.S.C. § 6501(1).

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

regulated by, or even mentioned in, COPPA.  In fact, because Google does not make Gmail available to anyone under the age of 13, COPPA does not apply to Gmail users, such as J.K.[27,28]

Moreover, COPPA is limited to the collection of *personal information*, and does not expressly abrogate state contract laws, such as § 6701, that void certain contracts by minors. Finally, Google cites no case to support the proposition it now offers—federal preemption of a state law where Congress *could* have regulated the subject but chose not to do so.  (MTD, 17.)

### (b).    COPPA Does Not Preempt The Entire Field Of Law.

The Ninth Circuit has ruled that, as here, a provision stating that "inconsistent" state laws are preempted "unambiguously signifies that Congress did ***not*** intend to occupy the entire field" and "explicitly left room for state . . . authorities to supplement that . . . regulation." *Whistler Invs., Inc. v. Depository Trust & Clearing Corp*., 539 F.3d 1159, 1165 (9th Cir. 2008)(emphasis added).[29]

Field preemption thus is found only where "Congress 'so thoroughly occupies a legislative field,' that it effectively leaves no room for states to regulate conduct in that field." *Whistler Invs., Inc.*, 539 F. 3d at 1164 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).  Here, the collection of "personal information" (as defined by § 6501(8)) from children under the age of 13 is not the same field of law as the interception of J.K.'s Gmail or the ability of J.K. to make contracts relating to personal property (data amounting to the "substance, purport, or meaning") not in his immediate possession.

### (c).    Compliance With § 6701 Does Not Conflict With COPPA.

"Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether,

---

[27] Here, Plaintiff J.K. is 16 years old. (CC, ¶ 247.)  As alleged in the underlying *A.K.* Complaint (Doc. 45-5, Def. Exhibit EE, ¶ 9), only persons 13 years or older may obtain a Gmail account.

[28] COPPA is a regulatory scheme that governs how Google must conduct itself when its activities involve persons under 13 years.  COPPA is not a license to steal from all children older than 12.

[29] *See also Gordon*, 575 F.3d at 1060 ("[The] presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation.")(quoting *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005)).

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                    17

in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives." *Whistler Invs., Inc.,* 539 F.3d at 1164, *citing Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373 (2000).  Here, it is possible for Google to comply with both COPPA and § 6701 simply by obtaining parental consent before: (1) collecting personal information from children under 13 years old (COPPA); and, (2) attempting to contract with minors prior to intercepting their Gmail (§ 6701).  *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 573 (2009) (explaining that "[i]mpossibility pre-emption is a demanding defense" and finding no preemption where the defendant could "unilaterally" do what state law required).

Furthermore, § 6701 is not an obstacle to Congress's objectives in COPPA, which is designed to enhance parental involvement in the online activities of children, protect the privacy of children, and prohibit unfair or deceptive practices in connection with the collection, use, or disclosure of children's personal information.[30]   Congress's objectives in COPPA did not include the elimination of state contract law protections available to minors not covered by the statute, such as J.K.

In enacting COPPA, Congress chose only to regulate activity involving persons under the age of 13.  COPPA contains no regulation concerning persons over the age of 12 (whether minors or adults).  Accordingly, there is simply no basis for Google's insistence that COPPA preempts state law restrictions affecting the capacity of minors over the age of 12—restrictions which have existed nearly as long as California has had a written legal code.

### 3. Although All Google Apps Users Are Conscripted, Google's Terms Still Do Not Provide Consent For Its Actions

As with regular Gmail users, Google secretly extracts, acquires and uses the private and confidential email content of each Google Apps Class Member to create "thought data" and user profiles.  The fact that Google intercepts Apps users' email content, despite that it is forbidden by contract to serve advertising, demonstrates that Google's content extraction and acquisition is not for the benefit of its users, but for Google.  Plaintiffs do not contend that these allegations

---

[30] *See* 144 Cong. Rec. S11657 (Daily ed., Oct. 7 1998) (statement of Rep. Bryan); Children's Online Privacy Protection Rule, 64 Fed. Reg. 59,888 (Nov. 3, 1999); Sasha Grandison, *The Child Online Privacy Protection Act: The Relationship Between Constitutional Rights and the Protection of Children,* 14 U.D.C. L. Rev. 209, 221 (2011).

undermine the operative agreements between Google, the Apps Customers (contracting party), and the end users (Plaintiffs); Plaintiffs instead allege that Google violates its own agreements with end users and Google Apps Customers through its secret content extraction and acquisition.  (*See* Complaint, ¶¶ 102-36 (TOS and Gmail Legal Notice), ¶¶ 137-60 (Cable One's Agreements and Google Apps TOS), ¶¶ 161-83 (Google Apps EDU Agreements and TOS) and ¶¶ 185-97 (Privacy Policy).)

### 4. Google Is Not A Party To Any Communication, Google Is Not An Agent Of The Recipient, And No Person (Gmail or Non-Gmail) Is Aware Of Its Unlawful Conduct

One cannot consent to what one does not know.  Google invites this Court to find that if a person has a basic understanding of email and uses any email service, that person consents to *any and all* interceptions of their email data—even when that person's email servicer performs surreptitious acts of data extraction that are unique in the email service industry and hidden from the public.  Google asks this Court to run afoul of every case that has examined the nature of consent—and ECPA's basic purposes.  (*See* Section IV B., *supra.*)

Google is neither a party to the communications at issue nor an agent for Gmail senders or recipients.  (CC, ¶¶ 292, 327, 335, 348, 369.)  Google's disclosures contain no language for such a party or agency theory.  Further, Google's attempt to interject a Fourth Amendment privacy issue with its citation to *Smith v. Maryland*, 442 U.S. 735 (1979) is not helpful because Congress overruled *Smith* by enacting 18 U.S.C. §3121(a).

Google also argues that non-Gmail users necessarily give implied consent to Google's secret extraction of the content of their private communications.  (MTD, 19-20.)  Google asserts, without support, that the "automated processing" of email is so widely understood and accepted that the act of sending an email constitutes implied consent to any and all processing of their emails, regardless of the nature.[31]  However, Plaintiffs' claims, including those of non-Gmail users, are not premised on the basic delivery and storage of their emails—Plaintiffs

---

[31] Google also takes "liberties" with the facts of Plaintiffs' complaint, including inserting un-alleged facts about Plaintiff Fread's state of mind, and the state of mind of non-Gmail Plaintiffs. (MTD, 20:11-16.)  Google also ignores the non-Gmail Plaintiffs' allegations that Google extracts the meaning of their communications wholly separate and apart from the automated processes necessary for any person to send and receive email.

allege that Google uses specific devices to extract the *content* of their communication in a process that is distinct from and unnecessary to the reliable delivery of email. Admittedly, phone companies must route telephone calls and transmit them over telephone wires—but no one expects the phone company to decipher their calls, turn them into data, and use the data for any commercial purpose like Google does with email. Likewise, email service providers must direct emails to their recipients, store them on servers, and make them available for viewing. But, it is a violation of ECPA for a non-party to a communication to extract and use the content of the communication without consent. Regardless, it is improper for a court to decide whether Google has established the affirmative defense of consent on a motion to dismiss. *Watkins*, 704 F.2d at 582 ("It is the task of the trier of fact to determine the scope of consent[.]").

### 5. The California, Florida, Pennsylvania and Maryland Statutes Require All Parties to Consent.

Under California, Florida, Maryland and Pennsylvania's ECPA analogues, the consent defense is only viable where ***all*** parties to the communication consent *in fact* to the alleged interception.[32] Google concedes that the non-Gmail plaintiffs did not expressly consent to Google's interceptions. (MTD, 19:2-5.); *see also* CC, ¶¶ 210-11. In support of implied consent, Google argues that non-Gmail Plaintiffs "must necessarily expect that the communication will be subject to [Google's] systems." (MTD. at 19:12-13.) But Google can't replace Plaintiffs' facts—that no non-Gmail user (including Plaintiffs) has any knowledge or expectation of Google's secret interception, content extraction, acquisition, and use that would support a finding of implied consent. *See* CC, ¶¶ 210-13 and 102-209.[33]

///

---

[32] *See* Cal. Pen. Code §§ 631-32; Florida Statute § 934.03; Md. Code Ann. §10-402; 18 Pa.C.S. §5704.

[33] Google's reliance upon *Commonwealth v. Proetto*, 771 A.2d 823 (Pa. Super. 2001), is misplaced. In *Proetto*, a law enforcement detective, while posing as a 15 year old girl, was the intended recipient of the criminal defendant's communications, and the court determined on review of a suppression motion that "an e-mail… by… [its] nature… can be downloaded, printed, saved [and] the sender expressly consents… to the recording of the message" by the recipient. *Proetto*, at 833. Here, Google is *not* an intended recipient of or party to plaintiffs' emails (CC, ¶¶ 292, 297, 314-15, 327, 335, 348, and 369); Plaintiff's claims are based on the facts that Google (a third-party to the communications) secretly intercepts those communications, extracts the content, and uses that content without Plaintiffs' knowledge or consent. *Proetto* is not helpful to Google.

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

### C.     Plaintiffs' CIPA Claims Are Viable

The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq*., provides civil remedies (§ 637.2) for conduct generally referred to as wiretapping (§ 631), and the recording of confidential communications (§ 632).  Google's primary argument is that CIPA does not prohibit non-consensual interception, recording, or use of personal email content despite CIPA's broad legislative intent to prevent the invasion of privacy from advances in technology beyond telephone and telegraph mediums of communication:

> The Legislature hereby declares that ***advances in science and technology have led to the development of new devices and techniques*** for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.  The Legislature by this chapter intends to protect the right of privacy of the people of this state.  [Cal. Penal Code § 630.] (emphasis added)

### 1.     CIPA Applies To Any "Message" Or "Communication"

The three clauses of § 631 prohibit "three distinct and mutually independent patterns of conduct."  *Tavernetti*, 22 Cal. 3d at 192-93.  The second clause of § 631, at issue here, provides for a cause of action against "Any person . . . who willfully and without the consent of all parties to the communication, or in an unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."  Google seeks to constrain the application of the second independent clause to only telephone or telegraph communications.[34]  However, the first clause of § 631 does not limit the *type of communication*; it prohibits unauthorized connections to certain *types of facilities or systems*—identified as telegraph or telephone.  Next, the mutually independent second clause specifically addresses a *medium of communication* ("any message, report, or communication")

---

[34] Notably, Google adopts the Second Circuit's expansion of ECPA's § 2510(5)(a)(ii) analysis to include ISP equipment when that section only states "telephone" or "telegraph," and yet in the face of *Hall's* interpretation that Congress envisioned advances in technology, Google asserts that the California Legislature intentionally withheld that foresight.  *See* MTD 8:16-22; *see also* 18 U.S.C. 2510(5)(a)(ii) definition of device mentioning only "telephone" and "telegraph" as mediums; *and Hall*, 396 F.3d at 505 (finding that although ECPA was enacted in 1986, Congress was aware that electronic communications travelled *over telephone wires*, and, therefore, Congress's use of "'telephone' was    thus understood to include the instruments, equipment and facilities that ISPs use to transmit e-mail.").

without limitation to telegraph or telephone.[35]  Finally, the ending language of § 631, "or is being sent from, or received at any place within this state," is intended to apply to other unlawful acts, not just those occurring on wires, lines, and cables.  And, modern courts have had no problem applying CIPA to electronic communications.[36]

Similarly, § 632 cannot be limited to "oral communications," because it specifically applies to communications carried on "by means of a *telegraph,* telephone, *or other device, except a radio*[.]"  Using a telegraph would not entail "oral communications" and the legislature placed no limitation on the *medium* of communication—except by radio.[37]

Next Google completely fabricates the ruling in *Diamond v. Google, Inc.* upon which it relies.  *Compare* MTD, 22:6-7 ("[A] California court has specifically held that CIPA does not apply to automated processing of emails in the Gmail system") *with Diamond* Order, Doc. 45-12, Ex. LL to Wong Dec.  The *Diamond* court **did not** sanction Google's content extraction and acquisition practices or preclude §§ 631's or 632's application to email messages.  Instead, the court interpreted § 631 to require email to have "some connection" to a "telegraph or telephone wire, line, cable, or instrument" and further required Plaintiff to plead sufficient facts confirming "Google's 'recording' of [email] communications." (S*ee Diamond* Order, Doc. 45-12, Ex. LL to Wong Dec.)  While Plaintiffs disagree with the *Diamond* court's interpretation, Plaintiffs in this case expressly alleged facts that satisfy the *Diamond* ruling.  (*See* CC, ¶¶ 305-06.)  Moreover, Google has already admitted *in this case* that telegraph is the modern form of email and "Google's automated scanning technology also could be included as 'telegraph equipment.'"[38]  Google's basis for such an admission is simple, "telegraphy" is a means for

---

[35] The Legislature could have very easily used the phrase "telegraph or telephone message, report, or communication," and completely eliminated the  necessity for the remainder of the section dealing with how the communication was transmitted—"over any wire, line, or cable."

[36] See *Valentine v. Nebuad*, 804 F.Supp. 2d 1022 (N.D. Cal. 2011) (Applying CIPA to tracking of plaintiffs' web browsing habits); *Bradley v. Google*, 2006 WL 3798134 at *5-6 (N.D. Cal. 2006) (Refusing application of CIPA because plaintiff "has not alleged that Google intercepted her communications, only that her stored emails were deleted.")

[37] "Radio" would not need to be excluded if § 632 was limited to just telephone and telegraph.

[38] *See* Response in Opposition to Motion for Preliminary Injunction, P. 6, [Doc. 36] and Reply to Motion to Dismiss Plaintiff's First Amended Class Action Complaint, P. 1 n.1, [Doc. 48], *Dunbar, et al. v. Google*, 5:10cv194, In The United States District Court for the Eastern District of Texas, Texarkana Division.

"transmitting messages or communications by means of electric currents and signals[.]"  *Davis v. Pacific Tel. & Tel. Co.*, 127 Cal. 312, 317 (Cal. 1899).  The common meaning of "email" is "a means or system for transmitting messages electronically."     www.merriam-webster.com/dictionary/email.  As such, email and telegraph are functional equivalents under CIPA.  But, Google advocates for a "wooden construction" which is at direct odds with CIPA's express purpose, and California's rules of statutory construction.  *Apple, Inc. v. Superior Court*, 56 Cal.4th 128, 138 (Cal. 2013) ("[S]tatutory interpretation must be prepared to accommodate technological innovation, if the technology is otherwise consistent with the statutory scheme.")

Google's argument relating to CIPA's subsequent legislative history specifically ignores that Cal. Penal Code §§ 629, *et seq*. is a separate Penal Code chapter involving police power protections.  Google also ascribes unwarranted importance to a hypothetical question posed in a committee analysis document dealing specifically with amendments to the Lawful Interception Act, not CIPA.[39]  The *Diamond* court rejected these same arguments already.  *Diamond* Order, Doc. 45-12, at 1 ("The legislative history of former Penal Code section 629 does not prove the reach of Penal Code sections 631 or 632 – which are part of a different Penal Code chapter.").  The Legislature chose not amend §§ 631 and 632 because no such amendment was necessary—the sections apply to email communications.

### 2.   Plaintiffs Have Standing To Assert CIPA Claims

Section 630 sets forth the injury or harm at issue: an "invasion of privacy" which amounts to "a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Plaintiffs have pleaded: (1) an injury in fact, including Google's statutory violations giving rise to Plaintiffs' causes of action; that (2) is traceable to Google's challenged conduct.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Furthermore, Plaintiffs seek injunctive relief and request statutory damages under CIPA, Cal

---

[39] "Although resort to legislative committee reports is appropriate when the meaning of a statute is unclear, the actual language of a statute bears far more significance than statements of legislative committee members." *Guillen v. Schwarzenegger*, 147 Cal.App.4th 929, 947 (Cal. App. Ct. 2007). This is particularly the case where, as here, the hypothetical question relied upon appears in a report involving a different chapter of the Penal Code.  See *Santa Clara Local Transportation Authority v. Guardino*, 11 Cal.4th 220, 238 (Cal. App. Ct. 1994)("While an opinion of the Legislative Counsel is entitled to respect, its weight depends on the reasons given in its support.")

Penal Code § 637.2, meaning Plaintiffs' claims are also "redressable."  And, Plaintiffs have pleaded a "case or controversy" that gives Plaintiffs Constitutional standing.  *See id.*

### a.      A CIPA violation  is an "injury" for purposes of standing.

Google's content extraction and acquisition practices are unlike the "use of Flash cookies to track internet activity."  (MTD, 24:17-18.)   The Complaint details the evasive privacy violations Google performs on Plaintiffs' emails and the harm envisioned by § 630.  "[T]he Supreme Court instructs that a concrete 'injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Jewel v. NSA*, 673 F.3d 902, 908 (9th Cir. 2011)(quoting *Lujan*, 504 U.S. at 578).[40]   Like ECPA, CIPA prohibits "interception of communications absent compliance with statutory procedures," and "explicitly creates a private right of action for claims of illegal surveillance." *Jewel*, 673 F.3d at 908; *see* Cal. Penal Code § 637.2 ("Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation . . . (c) ***It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages.***")(emphasis added.)  Because CIPA does not require actual damages as a prerequisite for successfully litigating a claim, there is no requirement that a Plaintiff plead actual damages.[41]

### b.      Plaintiffs have pleaded a particularized grievance.

CIPA Plaintiffs "have alleged such a personal stake in the outcome of the controversy as to warrant . . . invocation of federal-court jurisdiction."  *Jewel*, 673 F.3d at 909, *quoting Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Here, Plaintiffs alleged more than Google's general practices and large scale violations of CIPA—Plaintiffs have alleged that they were personally injured by Google's invasion of their privacy.  *See id.* at 910 ("Significantly, Jewel alleged with particularity that *her* communications were part of the dragnet.")(emphasis in original).  Plaintiffs Scott and Harrington allege that Google's business practices result in the

---

[40] *See also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1020-21 (N.D. Cal. 2012).

[41]  *See also Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 882 (Cal. App. Ct. 1980)("Therefore, even if appellant did not sufficiently allege actual damages, as respondents argued below, it would be entitled to a minimum judgment of $3,000, as actual damages are not a necessary prerequisite to an action pursuant to section 637.2.").

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

unlawful reading and recording of their email message content.  (CC, ¶¶ 287-321.)  "[T]he fact that a harm is widely shared does not necessarily render it a generalized grievance."  *Jewel*, 673 F.3d at 908.  Plaintiffs have pleaded that their own personal emails were intercepted, and the violation of their privacy is a particularized grievance that may be remedied by this Court.

### 3.  The *Scott I* Plaintiffs Allege a California Connection

Paragraph 290 of the Consolidated Complaint, which Google ignores, adequately alleges a California connection to the *Scott I* CIPA claims.  (See also *infra* E.3.)  Further, § 631's application is not solely limited to messages sent or received in California as Google contends.[42]

### D.   Section 632 Claims Are Viable

### 1.  Plaintiffs Sufficiently Allege Emails are Confidential Communications

The court in *Diamond* already rejected Google's argument, and rightfully so.[43]  Whether a communication is "confidential" has nothing to do with the "content of the conversation." *Flanagan v. Flanagan*, 41 P.3d 575, 581-82 (Cal. 2002).  Section 632(c) defines a confidential communication when the circumstances "reasonably indicate that *any* party to the communication desires it to be *confined to the parties thereto*[.]"  (Emphasis added.)  The focus is on "simultaneous dissemination, not secondhand repetition" to "an unannounced second auditor."  *Flanagan*, 41 P.3d at 580.  Plaintiffs' email messages are confined to the specified senders and recipients and contain specific "destination address fields" pursuant to defined "Internet Message Formats."  (*See* CC, ¶¶ 295-97.)  This restriction of the "destination address fields" and the defined parties to the communication "reasonably indicates" the desire that the message be confined to the sender and receiver.

The recording at issue in this case does not involve the placement of the original message into the user's inbox.  The allegations of Google's interceptions of Plaintiffs' communications sufficiently detail the surreptitious and "simultaneous dissemination to an

---

[42] Google chooses to limit § 631's application to this last phrase while completely disregarding the language when applied to the distinction from "wire, line, or cable" discussed *supra*.

[43] *Diamond* Order, Doc. 45-12, at 1. ("Factual questions of whether the senders of email to Gmail recipients impliedly consented" to Google's alleged review [] or have an objectively reasonable expectation[] of confidentiality within the meaning of *Flanagan v. Flanagan*, 27 Cal.4th 766, 768 (2002) . . . cannot be resolved on demurrer[.]").

unannounced second auditor, whether that auditor be a person or a mechanical device." *See Flanagan*, 41 P.3d at 581.[44]   Google, not Plaintiffs, fails to address a single detail of its surreptitious activities and separate recordings.

### 2.     ECPA Does Not Preempt CIPA

The *Diamond* court also rejected this argument.[45]   The express legislative history of ECPA shows that Congress did not intend for ECPA to preempt state privacy laws.[46]   Google argues that ECPA preempts CIPA, and cites *Bunnell v. Motion Picture Ass'n of Am*., 567 F. Supp. 2d 1148 (C.D. Cal. 2006) and *In re Google Inc. Street View Elec. Communs. Litig*., 794 F. Supp. 2d 1067 (N.D. Cal. 2011).   *Bunnell* relies on *Quon v. Arch Wireless Operating Co., Inc*., 445 F. Supp. 2d 1116 at 1134, 1138 (C.D. Cal. 2006).   *Google Street View* relies on *Bunnell*.   *Google Street View*, 794 F. Supp. 2d at 1085.   All turn on the Stored Communications Act [Title II of ECPA], and none involve the interception of messages prohibited in Title I of ECPA.

Like many others, the court in *Shively v. Carrier IQ, Inc*., considered ECPA's rich and explicit legislative history, in finding that ". . . *Bunnell* is fundamentally flawed because it fails to take into account the legislative history above. Nor does it account for the language and context of § 2518(10)(c)."   2012 U.S. Dist. LEXIS 103237, at *14.   Likewise, the court in *Leong v. Carrier IQ, Inc*., reached the same conclusion, criticizing *Bunnell's* preemption finding by way of 18 U.S.C. § 2518(10)(c), in these terms: "[i]n this Court's view, that provision does not even impact the question of preemption, but rather focuses on the scope of available

---

[44] *See also*, *e.g.* CC, ¶¶ 47 (acquisition of message content), 49 (PHIL calculation of actual ideas), 56 (COB's collection of "thought data"), 58, and 102-213 (detailing the secrecy of the actions).

[45] *Diamond* Order, Doc. 45-12, at 2 (". . . Google has not shown that privacy claims involving emails would be preempted by federal law.").

[46] *See* Doc. 51-3, Tapley Exhibit B, Senate Hearing 99-1006, November 18, 1985, page 38 ("It is also true that States would be free to enact more restrictive laws in the area if they so choose. So, to that extent, States are unaffected."); *see also* Doc. 51-4, Tapley Exhibit C, S. Rep. 90-1097, S. Rep. No. 1097, 90th Con., 2nd Sess. 1968, 1968 U.S.C.C.A.N. 2112, 2196 (stating on three occasions, "There is no intent to preempt State Law.").

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

federal remedies when a violation of the statute has been established. Other courts agree….”

*Leong*, 2012 U.S. Dist. LEXIS 59480, at \*10. [47]

      The *Leong* court added to its criticism of *Bunnell* with its observations of Google’s only other preemption authority, *Google Street View*, finding that:

> the analysis in these cases ignores the great weight of authority holding that one of the principal purposes of the federal statute was to establish minimum standards with which states must comply. In that regard, *Bunnell* and *In re Google Inc. Street View* reflect a marked departure from the preemption analysis of courts in this and other districts and circuits in the more than four decades since the Federal Wiretap Act was enacted. In light of the clarity of the 1968 and 1986 Senate Reports that the federal law is intended to establish minimum standards and not to preempt state laws that meet these standards; the long-standing view of the States and courts that States are free to enact legislation that is more restrictive than the federal law; and the rarity with which preemption applies . . . . the Court concludes that the Federal Wiretap Act does not completely preempt California's Invasion of Privacy Act.

*Leong*, 2012 U.S. Dist. LEXIS 59480 at \* 12-13.  A two-party consent statute is more restrictive and more protective than ECPA’s single-party statute.  Likewise, § 632 does not contain the definitional limitations (*e.g.* devices) affording greater protection to users.  Multiple courts have rejected Google’s assertion of preemption over state privacy laws.[48]

## E.    Choice-Of-Law Dictates CIPA’s Application In This Case

      The only choice-of-law analysis currently before this Court is whether the *Scott I* Plaintiffs have adequately pleaded a connection to California under CIPA. (MTD, 27:12-14.)

---

[47] To the extent Google relies upon § 2518(10)(c), every court that has examined the legislative history has rejected any express preemption argument based upon this section—including *In re Google St. View*.

[48] *See Stuart Diamond v. Google, Inc.*, CV1202715, in the Superior Court of California, County of Marin (Doc. 45-2, Tapley Exhibit A); *Debra L. Marquis v. Google, Inc.*, No. 11-2808-BLS1, in the Superior Court of Suffolk County, Commonwealth of Massachusetts (Doc. 45-5, Tapley Exhibit D); *Lane v. CBS Broad, Inc.*, 612 F. Supp. 2d 623 (E.D. Pa. 2009); *Valentine v. Nebuad, Inc.*, 804 F. Supp. 2d 1022 (N.D. Cal. 2011); *Ideal Aeorosmith, Inc. v. Acutronic USA, Inc.*, 87 U.S.P.Q. 2d (BNA) 1756 (W.D. Pa. 2008); *Bansal v. Russ*, 513 F. Supp. 2d 264 (E.D. Penn. 2007); and *In re NSA Telecomms. Records Order Litigation*, 483 F. Supp. 2d 934 (N.D. Cal. 2007).  Prior to the 1986 enactment of ECPA, many courts ruled that the preceding Wiretap act did not preempt state law, Congress’s intent was to only establish *minimum* standards, and more restrictive state standards were not preempted: *See United States v. Smith*, 726 F.2d 852, 859 (1st Cir. 1984); *State v. Politte*, 664 P.2d 661, 671 (Ariz. App. 1982); *Navarra v. Bache Halsey Stuart Shields, Inc.*, 510 F. Supp. 831 (E.D. Mich. 1981); *State v. Williams*, 617 P.2d 1012, 1017 (Wash. 1980); *State v. Hanley*, 605 P.2d 1087, 1090 (Mont. 1979); *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977); *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976); *Commonwealth v. Vitello*, 327 N.W. 2d 819 (Mass. 1975); and *People v. Jones*, 30 Cal. App. 3d 852, 855 (Cal. App. 1973).

PLAINTIFFS’ OPPOSITION TO GOOGLE INC.’S MOTION TO DISMISS

See *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012)(outlining California's governmental interest analysis for the choice of law).

### 1. Google's Choice-of-Law argument is premature.

"In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage." *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010). Google's attempt to eliminate Plaintiffs' CIPA claims through a choice-of-law analysis is premature because discovery is necessary to confirm Plaintiffs' allegations in ¶ 290 which, if true, require the application of California law. "Importantly, *Mazza* (and nearly every other case cited by Defendants) undertook a class-wide choice-of-law analysis at the class certification stage, rather than the pleading stage. Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' [] laws are material in this case." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).

### 2. Plaintiffs Properly Pleaded Separate and Alternative Legal Theories.

The Court, not the Parties, determines the choice of law that governs Google's unlawful conduct, a determination that is premature at this stage in discovery. Despite Google's urging, this Court should not force Plaintiffs in the underlying, consolidated actions to agree on a single choice-of-law at the pleading stage. A consolidated complaint is not a substantive pleading as Google contends—it is a procedural device for consolidation of the related actions until trial.[49] The Plaintiffs in the underlying actions are entitled to argue choice-of-law after the benefit of discovery. Furthermore, at the pleading stage, even a single Plaintiff in a single underlying action may assert claims in the alternative under the laws of different states.[50] Google also fails

---

[49] *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 785 F. Supp. 2d 925, 931 (C.D. Cal. 2011)("Neither the general authorization of the coordination and consolidation under the MDL statute nor the more specific use of consolidated complaints, as the Court has required here, is intended to alter the substantive rights of the parties. The use of a consolidated complaint has been described as 'a procedural device rather than a substantive pleading with the power to alter the choice of laws rules applicable to the plaintiffs' claims.' The device does not alter choice-of-law rules[.]")(internal citations omitted).

[50] *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012)("At this stage in the litigation—before the parties have submitted briefing regarding either choice-of-law or class certification—plaintiff is permitted to assert claims under the laws of different states in the alternative.").

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                    28

to consider that different underlying actions are subject to different choice-of-law analyses. For a state law claim in a diversity action, a transferee Court applies the law of the transferor forum's choice-of-law rules.[51]

### 3.   California's Choice-of-Law analysis supports application of CIPA.

While it is too early to identify all relevant facts that will affect the ultimate choice-of-law governing the various Plaintiffs' claims, the CIPA Plaintiffs properly pleaded facts that support the application of California law. (*See* CC, ¶ 290.) Google's argument that California's choice-of-law principles preclude the CIPA claims of non-California residents relies on Google's false representation that the "communications at issue have no alleged link to California." (MTD, 29 n. 30.) The actual allegations of the CIPA Plaintiffs include: (1) Google is a resident of Mountain View, California; (2) Google's acts in violation of CIPA occurred in the State of California; (3) Google developed and implemented its unlawful business practices and procedures in the state of California; (4) Google profits from this unlawful conduct in California; and, (5) Google developed, designed, built, and physically placed one or more of its accused devices in California. (*See* CC ¶¶ 17, 290.) Because Plaintiffs establish these sufficient constitutional contacts in support of the application of California law, the burden shifts to Google to demonstrate "that foreign law, rather than California law, should apply to class claims." *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. Cal. 2012), *quoting Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 921 (Cal. 2001). Here, Google has not carried its burden.

///

///

///

///

///

///

---

[51] *See, e.g.*, *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)("[A] transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed.").

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

Google's assertion that "California has *no interest* in applying CIPA to the claims of non-residents" (MTD, 28, emphasis added) finds its sole support in CIPA's statement of purpose which specifically references California residents.   But the Northern District of California has explicitly held the opposite:

> The Court declines to read [CIPA's] statement of purpose as a limitation on standing when both statutes expressly allow an action to be brought by 'any person' or by an 'owner or lessee' without imposing any residency requirements. A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. ***To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA and the CCCL with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach***.

*Valentine v. Nebuad, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011)(emphasis added).

The Supreme Court of California has opined that "California choice-of-law cases nonetheless continue to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders . . . ." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97-99 (Cal. 2010)(internal citations omitted).[52]   The CIPA Plaintiffs allege that they have been injured by Google, a California resident, from conduct occurring in California which violates California law.  (See CC, ¶¶ 17, 290.)  Google contends that Alabama and Maryland would be offended if California protects Alabama and Maryland residents from Google's unlawful conduct.  (MTD, 28, 30.)  But, Google ignores that the CIPA Plaintiffs allege that Google's unlawful conduct occurred in California, providing the CIPA Plaintiffs the protection of California law.  (CC ¶¶ 17, 290.)  In effect, Google's proposal would render *California* law meaningless by allowing Google to "violate the CIPA . . . with impunity with respect to out-of-state individuals and entities, a result this Court [should] decline[] to reach." *Valentine v. Nebuad, Inc.*, 804 F. Supp. 2d at 1028.

## V.    CONCLUSION

Google's motion should be denied.

///

---

[52] *See also McCann*, at 99 ("California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California.").

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**

Respectfully submitted,

Dated:  July 11, 2013

CORY WATSON CROWDER & DEGARIS, P.C.

By:*/s/ F. Jerome Tapley*
F. Jerome Tapley (*Pro Hac Vice*)
Email: jtapley@cwcd.com
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

WYLY~ROMMEL, PLLC
Sean F. Rommel (*Pro Hac Vice*)
Email: srommel@wylyrommel.com
4004 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 334-8646
Facsimile: (903) 334-8645

*Plaintiffs' Co-Lead Counsel*

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (SBN 138902)
Email: kirk@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone:  (916) 567-1111
Facsimile:  (916) 567-1112

*Plaintiffs' Liaison Counsel*

**PLAINTIFFS' OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS**
5:13-MD-002430-LHK                  31