1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    WHITTY SOMVICHIAN (194463)
3   (wsomvichian@cooley.com)
    KYLE C. WONG (224021)
4   (kwong@cooley.com)
5   101 California Street, 5th Floor
    San Francisco, CA  94111-5800
6   Telephone:    (415) 693-2000
    Facsimile:    (415) 693-2222
7

8   Attorneys for Defendant
    GOOGLE INC.
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14  IN RE GOOGLE INC. GMAIL           Case No.  5:13-md-002430 LHK (PSG)
    LITIGATION
15                                    **DEFENDANT GOOGLE INC.'S REPLY IN
                                      SUPPORT OF ITS MOTION TO DISMISS**
16
                                      Date:         September 5, 2013
17                                    Time:         1:30 p.m.
                                      Dept.:        Courtroom 8 - 4th Floor
18                                    Judge:        Hon. Lucy H. Koh

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

**Table of Contents**

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT ...................................................................................................... 2

    A.   Plaintiffs Cannot Avoid the Ordinary Course of Business Exception ................... 2

        1.   Plaintiffs Cannot Impose a Requirement That Congress Omitted ............. 2

        2.   Courts Have Rejected Plaintiffs' "Necessity" Requirement ...................... 3

        3.   Plaintiffs' "Necessity" Requirement Leads to Absurd Results .................. 5

        4.   The Ordinary Course Exception Cannot Be Conflated with the Separate Consent Defense ........................................................................ 5

        5.   Applying the Ordinary Course of Business Exception Will Not "Destroy ECPA's Privacy Protections" ..................................................... 6

    B.   Gmail Users Consent to the Automated Processing of Email ................................ 6

        1.   Plaintiff J.K. Is Also Bound to Google's Terms ..................................... 10

            a.   California Family Code Section 6701 Does Not Apply .............. 10

            b.   COPPA Authorizes Google to Obtain Express Consent from Teens Like Plaintiff J.K ..................................................... 10

        2.   The Non-Gmail Plaintiffs Impliedly Consent to Automated Processing ................................................................................................ 12

    C.   The CIPA Claim Fails as a Matter of Law ........................................................... 13

        1.   Plaintiffs Cannot Extend CIPA Beyond Its Terms to Cover Emails ........ 13

        2.   There Can Be No CIPA Liability as a Matter of Law, Even Under Plaintiffs' Interpretation of the Statute .................................................... 14

        3.   The CIPA Plaintiffs' Claims Also Fail Because They Allege No Injury ...................................................................................................... 15

        4.   Plaintiffs Fail to Allege Any Connection with California ....................... 15

    D.   Plaintiffs' Section 632 Claim Fails for Additional Reasons ................................ 16

        1.   Plaintiffs Allege No Facts to Show That Their Emails Were "Confidential Communications" within the Meaning of Section 632 ...... 16

        2.   Plaintiffs Fail to Address Google's Conflict Preemption Argument ........ 16

    E.   The CIPA Claim Should Also Be Dismissed under Choice of Law Principles .......................................................................................................... 17

        1.   The CIPA Plaintiffs Do Not Meaningfully Address the Choice of Law Rules That Prevent Them from Relying on CIPA ........................... 17

            a.   Courts Routinely Resolve Inquiry 2 at the Pleading Stage .......... 17

            b.   Plaintiffs' Allegations of Purported "California Contacts" Do Not Support the Application of CIPA .................................... 19

        2.   Further Discovery Is Unnecessary to Resolve Choice of Law ................ 20

III.    CONCLUSION ................................................................................................. 20

Cooley LLP
Attorneys At Law
San Francisco

# TABLE OF AUTHORITIES

Page(s)

CASES

*Amati v. City of Woodstock*,
176 F.3d 952 (7th Cir. 2001)........................................................................ 4, 5, 6

*Apple Inc. v. Super. Ct.*,
56 Cal. 4th 128 (2013) ....................................................................................... 10

*Arizona v. United States*,
132 S. Ct. 2492 (2012) ....................................................................................... 12

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) .................................................................................... 7, 11

*Banks v. Nissan N. Am., Inc.*,
No. 11-cv-2022, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012)........................ 19

*Bradley v. Google, Inc.*,
No. 06-cv-5289 WHA, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ................................ 14

*Deering v. CenturyTel, Inc.*,
No. 10-cv-0063, 2011 WL 1842859 (D. Mont. May 16, 2011).......................................... 7, 9

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................... 7

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013)....................................................................... 16, 17

*Forcellati v. Hylands, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................................. 18, 19

*Frezza v. Google Inc.*,
No. 12-cv-0237 RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013)..................... 18, 19, 20

*Geier v. Am. Honda Motor Co., Inc.*,
529 U.S. 861 (2000)............................................................................................ 12

*In re Google, Inc. Privacy Policy Litig.*,
No. 12-cv-1382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28. 2012) ............................. 1, 3, 4

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009)............................................................................. 11

*Granfield v. Nvidia Corp.*,
No. 11-cv-5403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ....................................... 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Griffin v. Oceanic Contractors, Inc.*,
   458 U.S. 564 (1982) ................................................................................................ 5

*Hall v. EarthLink Network, Inc.*,
   396 F.3d 500 (2d Cir. 2005) .................................................................................... 4

*Hardt v. Reliance Standard Life Ins. Co.*,
   130 S. Ct. 2149 (2010) ............................................................................................. 3

*Hibbs v. Wynn*,
   542 U.S. 88 (2004) ................................................................................................... 6

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
   No. 11-cv-1576, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ........... 18

*Ideal Aerosmith, Inc. v. Acutronic U.S., Inc.*,
   No. 07-cv-1029, 2007 U.S. Dist. LEXIS 91644 (W.D. Pa. Dec. 13, 2007) ............ 6

*In re iPhone Application Litig.*,
   No. 11-md-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................... 15

*Keene Corp. v. U.S.*,
   508 U.S. 200 (1993) ................................................................................................. 3

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012) ............................................................................... 4

*Kline v. Sec. Guards, Inc.*,
   386 F.3d 246 (3d Cir. 2004) ..................................................................................... 6

*Klump v. Nazareth Area Sch. Dist.*,
   425 F. Supp. 2d 622 (E.D. Pa. 2006) ...................................................................... 6

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ................................................................................... 7

*Leong v. Carrier IQ Inc.*,
   No. 12-cv-1562, 2012 WL 1463313 (C.D. Cal. Apr. 27, 2012) ............................. 17

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ...................................................................... 18, 19, 20

*Mortensen v. Bresnan Commc'n*,
   No. 10-cv-0013, 2010 U.S. Dist. LEXIS 131419 (D. Mont. Dec. 13, 2010) .......... 7

Cooley LLP
Attorneys At Law
San Francisco

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Pharmatrak, Inc.,*
   329 F.3d 9 (1st Cir. 2003) ...................................................................................................... 9

*Pub. Util. Dist. No. 1 v. IDACORP Inc.,*
   379 F.3d 641 (9th Cir. 2004) ................................................................................................ 17

*Rikos v. Proctor & Gamble Co.,*
   No. 11-cv-0226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ............................................ 20

*Route v. Mead Johnson Nutrition Co.,*
   No. 12-cv-7350, 2013 WL 658251 (C.D. Cal. Feb.21, 2013) ........................................ 18, 20

*Shefts v. Petrakis,*
   758 F. Supp. 2d 620 (C.D. Ill. 2010) ..................................................................................... 9

*Shefts v. Petrakis,*
   No. 10-cv-1104, 2011 U.S. Dist. LEXIS 136538 (C.D. Ill. Nov. 29, 2011) ........................... 7

*Shively v. Carrier IQ, Inc.,*
   No. 12-md-2330 EMC, 2012 WL 3026553 (N.D. Cal. July 24, 2012) .................................. 17

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.,*
   No. 09-cv-4567, 2011 WL 900096 (D.N.J. Mar. 15, 2011) .................................................... 7

*United States v. Van Poyck,*
   77 F.3d 285 (9th Cir. 1996) .................................................................................................... 7

*Valentine v. NebuAd, Inc.,*
   804 F. Supp. 2d 1022 (N.D. Cal. 2011) .......................................................................... 14, 19

*Walsh v. Krantz,*
   No. 07-cv-0616, 2008 U.S. Dist. LEXIS 64835 (M.D. Pa. Aug. 22, 2008) ........................... 6

*Watkins v L.M. Berry, & Co.,*
   704 F.2d 577 (11th Cir. 1983) ............................................................................................ 4, 9

*Williams v. Poulos,*
   11 F.3d 271 (1st Cir. 1993) .................................................................................................... 9

**STATUTES**

15 U.S.C.
   § 6502(d) .............................................................................................................................. 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

# TABLE OF AUTHORITIES
## (continued)

Page(s)

18 U.S.C.
§ 2510(5)(a)(ii)................................................................................................ 2, 3
§ 2510(15) ......................................................................................................... 2
§ 2511(2)(a)(i) ................................................................................................... 3
§ 2511(2)(c) ....................................................................................................... 6
§ 2511(2)(d) ..................................................................................................... 13
§ 2702 ................................................................................................................ 6

California Family Code
§ 6701 ............................................................................................... 10, 11, 12
§ 6701(c) ......................................................................................................... 10

California Penal Code
§ 629 ................................................................................................................ 13
§ 630 ................................................................................................................ 15
§ 631 .......................................................................................................... 13, 14
§ 631(a) ........................................................................................................... 14
§ 631(b) ..................................................................................................... 14, 15
§ 632 .................................................................................................... 15, 16, 17
§ 632.5(a) ........................................................................................................ 14
§ 632.6 ............................................................................................................. 14
§ 632(e) ........................................................................................................... 15
§ 637.2 ............................................................................................................. 15

**OTHER AUTHORITIES**

Article XII, Section 3 of the California Constitution ................................... 15

Collins English Dictionary (10th ed. 2009) ................................................. 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

I.    **INTRODUCTION.**

Plaintiffs' Opposition ("Opp.") goes to great lengths to describe Google's alleged practices in sinister, Orwellian terms (claiming that Google operates a "secret data mining machine" that obtains "private thoughts and ideas," etc.). But when this hyperbole is set aside, the allegations in the Complaint[1] actually confirm that the alleged misconduct at issue consists of common and reasonable business practices that should not be criminalized under Plaintiffs' various theories.

First, the Complaint repeatedly confirms that the alleged wrongful "devices" at issue are part of Google's normal "Gmail infrastructure" used in the ordinary course of processing emails. (*See, e.g.*, Compl., ¶¶ 46, 51-53, 59-61, 84.) The Opposition further confirms this. (*See* Opp. 8 (noting that the "devices" at issue are "separate and distinct pieces of Gmail infrastructure").) These concessions mandate dismissal under the "ordinary course of business" exception to liability because Plaintiffs' wiretapping claims all "require[] the use of a defined 'device,' *which cannot include Google's own systems*." *In re Google, Inc. Privacy Policy Litig*, No. 12-cv-1382 PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28. 2012) (emphasis added). *See also id*. at *6 ("the inescapably plain language of [ECPA] . . . excludes from the definition of a 'device' a provider's own equipment used in the ordinary course of business."). Plaintiffs essentially ask the Court to impose a novel "necessity" limitation on the ordinary course of business exception, but this manufactured restriction appears nowhere in the statute and is rebutted by all of the applicable case law, including Plaintiffs' own cited authorities.

Second, while Plaintiffs object to some (but not all) of Google's scanning practices, there is no dispute that the automated (non-human) email scanning at issue is done for the express business purpose of providing various "Google services." (*See, e.g.,* Compl. ¶ 97 (alleging that "Google uses the content of the email messages and the derivative data it creates for its own benefit in other Google services"). The Opposition further confirms that the creatively-labeled "thought data mining" and other alleged wrongful acts likewise are merely parts of Google's "web-mail service." (Opp. 9.) These admitted facts bring the Complaint squarely within the

---

[1] Capitalized terms have the meanings as defined in Google's motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS**
**CASE NO. 5:13-MD-002430-LHK (PSG)**

terms of Google's Privacy Policy, which informed Google users throughout the class period that their information can be used by Google to provide Google's "services."  Plaintiffs' efforts to avoid these plain terms are unavailing for all the reasons set forth below.

Moreover, many courts have held that *all* email senders impliedly consent to the processing of their emails because email cannot be sent or delivered without some form of processing.  Plaintiffs simply ignore these cases, and indeed concede that the scanning of email content is widely known and commonly done.  While the non-Gmail Plaintiffs claim they did not know how Google specifically *uses* email information, this purported ignorance is immaterial because the consent defense applies based on consent to the alleged *interception* and not the subsequent uses.

Lastly, the CIPA Plaintiffs fail to show why CIPA should be extended to apply to emails, when both the express terms and legislative history of CIPA confirm that emails are excluded from the scope of the statute.  Nor do they materially contest the choice of law analysis which requires the CIPA Plaintiffs, as residents of Alabama and Maryland, to rely on the local laws of the states in which they reside.  For all of these reasons and as further set forth below, Google respectfully requests that the Court dismiss the Complaint in its entirety.

## II.  ARGUMENT.

### A.   Plaintiffs Cannot Avoid the Ordinary Course of Business Exception.

In an effort to avoid dismissal, Plaintiffs ask the Court to artificially constrain the ordinary course of business exception to acts that are "necessary" to "send or receive" electronic communications on behalf of users.  (Opp. 5-6.)  This requirement contradicts the plain terms of the statute, is rebutted by all of the applicable case law, and leads to absurd results.

#### 1.   Plaintiffs Cannot Impose a Requirement That Congress Omitted.

Plaintiffs concede (as they must) that the ordinary course of business exception, 18 U.S.C. § 2510(5)(a)(ii), contains no "necessity" requirement and thus ask the Court to import this limitation from *other* provisions.  First, Plaintiffs refer to Section 2510(15), which defines an "electronic communications service" as a service that "provides to users thereof the ability to send or receive . . . electronic communications."  But nothing in this definition suggests that ECS

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

providers should be exposed to liability for business practices that are implemented in connection with—but not strictly "necessary" to—transmitting emails. If Congress intended such a limitation, it could have exempted ECS providers from liability only for acts "necessary" to provide an "electronic communications service" or words to that effect. But it did not.

Second, Plaintiffs rely on Section 2511(2)(a)(i), which exempts an *employee* of an ECS provider from liability for acts that are a "necessary incident to the rendition of his service . . . " But the fact that Congress opted *not* to repeat this "necessary incident" language (or any similar language) in Section 2510(5)(a)(ii) proves Google's point. Instead, Congress broadly exempted ECS providers from liability for acts in "the ordinary course of business" without limitation.[2] This confirms that Congress intended to omit any "necessity" requirement, and this legislative judgment must be given effect. "Where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. U.S.,* 508 U.S. 200, 208 (1993) (citation omitted). *See also Hardt v. Reliance Standard Life Ins. Co.,* 130 S. Ct. 2149, 2156 (2010) (Where "Congress failed to include in § 1132(g)(1) an express 'prevailing party' limit," but did so in other parts of the law, the appellate "decision adding that term of art to a fee-shifting statute from which it is conspicuously absent more closely resembles 'invent[ing] a statute rather than interpret[ing] one.'") (citation omitted).

### 2.    Courts Have Rejected Plaintiffs' "Necessity" Requirement.

The relevant case law—including Plaintiff's own authorities—confirms that the ordinary course of business exception does not include any "necessity" requirement. In *In re Google Privacy Policy*, the plaintiffs alleged that Google obtained information from Gmail users and combined it with user information from other Google services to provide services *beyond* transmitting emails in the Gmail system:

> Plaintiffs further contend that Google's new policy violates consumers' privacy rights by allowing Google to take information from a consumer's Gmail account . . . for use in a different context, such as to personalize Google search engine results, or to

---

[2] By creating a more restrictive standard for employees of ECS providers as compared to the entities themselves, Congress made a logical choice to regulate *human* review more stringently.

Cooley LLP
Attorneys At Law
San Francisco

3.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

> personalize advertisements shown while a consumer is surfing the internet . . .

2012 WL 6738343, at *2.  Given those allegations, the "interceptions" at issue could *not* have been "necessary" to delivering emails in the Gmail system; indeed, the plaintiffs claimed they were completely unrelated to Gmail.  Yet Judge Grewal did not hesitate to dismiss the ECPA claim because "the inescapably plain language of [ECPA] excludes from the definition of a 'device' a provider's own equipment used in the ordinary course of business." *Id.* at *5-6.[3]  This holding precludes the "necessity" requirement that Plaintiffs now seek to graft onto the statute.[4]

Similarly, in *Hall v. EarthLink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005), the plaintiff alleged that the defendant ISP violated ECPA by continuing to process emails sent to the plaintiff *after he terminated his email account*. *Id.* at 500, 502.  This ongoing processing of emails sent to a *closed* account could hardly be deemed "necessary."  Yet the court still affirmed dismissal of the ECPA claim based on the ordinary course of business exception, for the simple reason that the processing at issue was part of Earthlink's standard business practice. *Id.* at 504-05.[5]

Plaintiffs' other citations further undermine their position.  For example, Plaintiffs quote extensively from *Watkins v L.M. Berry, & Co.*, 704 F.2d 577 (11th Cir. 1983).  But *Watkins* simply holds that the recording of an employee's personal phone call was not in the defendant employer's ordinary course of business where the employer's own "established policy" limited recording to *business* calls. *Id*. at 579, 583-84.  Notably, the court found defendant's policy of recording business calls falls within the "ordinary course of business" exception, without requiring that the recordings meet any "necessity" requirement. *Id*. at 582  ("if the intercepted

---

[3] Plaintiffs claim their complaint is different because they allege "devices" that "are not used by Google for the ability to send or receive communications ...." (Opp. 9.)  But this was true in *In re Google Privacy Policy*, as discussed above.

[4] *See also Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1250 (10th Cir. 2012) (dismissing ECPA claim because defendant had "access to no more of its users' electronic communications than it had in the ordinary course of its business as an ISP").  Plaintiffs attempt to distinguish *Kirch* on the ground that the defendant had not "acquired" data, but *Kirch* was premised on the assumption that the defendant's access *was* an acquisition under ECPA. *Id.* at 1249 ("[e]ven if such access might be deemed an acquisition, Embarq did not engage in an 'interception' under ECPA").

[5] Plaintiffs point to the reference to "basic services" in *Hall* but the passing use of this phrase hardly supports Plaintiffs' "necessity" limitation.  The court simply noted that if the ordinary course of business exception did not apply to an ISP, they would be "constantly" intercepting electronic communications because an ISP's "basic services" involve "the acquisition of the contents" of those communications.  396 F.3d at 505 (citation omitted).

1    call was a business call, then [the] monitoring of it was in the ordinary course of business.")

2          Similarly, *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 2001), does not suggest that

3    the ordinary course of business exception is limited to "necessary" acts.  To the contrary, *Amati*

4    holds that the phrase "ordinary course of [an officer's] duties" broadly applies to acts that are

5    "routine."  *See id*. at 954 ("It is routine, standard, hence 'ordinary' for all calls to and from the

6    police to be recorded."); *id*. at 955 (applying the ordinary course of business exception to the

7    recording of non-investigative calls because "[t]o record all calls to and from a police department

8    is…a routine police practice").[6]  This further confirms Google's interpretation.

9                    **3.      Plaintiffs' "Necessity" Requirement Leads to Absurd Results.**

10          Plaintiffs' "necessity" requirement would also lead to absurd results by criminalizing a

11   host of standard, consumer-friendly services.  Indeed, the very features that Plaintiffs expressly

12   carve out of their claims—such as spellchecking, virus detection, spam filtering, and indexing of

13   content so a user can search her emails[7]—are not technologically "necessary" to transmitting

14   emails and would therefore fall beyond the exception, as Plaintiffs conceive it.  The Court should

15   not adopt an interpretation that Plaintiffs cannot even square with their own allegations.  *Griffin v.*

16   *Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would

17   produce absurd results are to be avoided if alternative interpretations consistent with the

18   legislative purpose are available.").

19                    **4.      The Ordinary Course Exception Cannot Be Conflated with the**
                              **Separate Consent Defense.**
20
21          Plaintiffs further argue that the ordinary course of business exception does not apply

22   because Google allegedly fails to obtain consent for the "interceptions" at issue.  (Opp. 10)  In

     *Amati* (which Plaintiffs quote at length), Judge Posner rejected this same argument because it
23
     would render the ordinary course of business exception meaningless:
24
25          The plaintiffs argue that wiretapping cannot be "in the ordinary course . . . " unless
            there is express notice to the people whose conversations are being listened to. The

26   _____

27   [6] The language Plaintiffs quote from *Amati* does not help them.  The court noted that its "literal interpretation" would undermine the warrant requirement applicable to law enforcement and thus it interpreted the exception not to permit the warrantless recording of calls in criminal
28   investigations.  176 F.3d at 955.  That narrow carve-out is irrelevant here.
     [7] *See* Compl. ¶¶ 22, 24, 35, 43, 45, 67, 88 (noting where Plaintiffs "do not assert" claims).

Cooley LLP
Attorneys At Law
San Francisco

5.

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS**
**CASE NO. 5:13-MD-002430-LHK (PSG)**

statute does not say this, and it cannot be right. . . . [I]f the "ordinary course" exclusion required proof of notice, it would have no function in the statute because there is a separate statutory exclusion for cases in which one party to the communication has consented to the interception. 18 U.S.C. § 2511(2)(c).

*Amati*, 176 F.3d at 955 (citations omitted). This Court should apply the same reasoning here. *See also Hibbs v. Wynn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that the effect is given to all its provisions, so that no part will be . . . superfluous . . . ").[8]

### 5. Applying the Ordinary Course of Business Exception Will Not "Destroy ECPA's Privacy Protections."

Finally, Plaintiffs claim that applying the ordinary course of business exception to Google's automated processing would allow ECS providers to "begin selling actual private conversations and emails to any third-party…." (Opp. 11.) But Plaintiffs' unfounded hyperbole aside, Section 2702 prohibits an ECS provider from disclosing its users' communications (except in specific circumstances as set forth in the statute) *regardless* of whether or not the ordinary course of business exception otherwise applies to the ECS provider's methods for receiving those communications. This precludes the imaginary scenario that Plaintiffs pose.

In sum, the Court should apply the ordinary course of business exception as written to dismiss Plaintiffs' wiretapping claims in their entirety.[9]

### B. Gmail Users Consent to the Automated Processing of Email.

Separate and apart from the ordinary course of business exception, Plaintiffs' claims also fail because they have expressly or impliedly consented to the automated processing of their emails. Plaintiffs urge the Court to ignore the consent issue by claiming it is an affirmative

---

[8] Plaintiffs suggest that "[i]f an ISP or ECSP offers additional services to set itself apart from the industry, ECPA requires honest disclosure and adequate consent." (Opp. 11.) Under this logic, every change an ECS provider makes to its systems would require notice, no matter how trivial or technical. Congress could not have intended this absurd result.

[9] Regarding the Pennsylvania wiretapping law, Plaintiffs provide no authority to rebut the established rule that "[t]he intended recipient of an intercepted communication . . . has no standing to raise [a] claim . . . " *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 633 (E.D. Pa. 2006). Instead, they urge the Court to ignore *Klump* and "rely upon the Third Circuit's analysis in" *Kline v. Sec. Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004). (Opp. 11.) But *Kline* merely sets out the elements of a claim when determining whether the claim was preempted. *Id.* at 256-57. Far from being the isolated decision that Plaintiffs portray, *Klump* has been followed in each of Pennsylvania's Federal Districts. *See Walsh v. Krantz*, No. 07-cv-0616, 2008 U.S. Dist. LEXIS 64835, at *18 (M.D. Pa. Aug. 22, 2008); *Ideal Aerosmith, Inc. v. Acutronic U.S., Inc.*, No. 07-cv-1029, 2007 U.S. Dist. LEXIS 91644, at *11 (W.D. Pa. Dec. 13, 2007).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)**

defense on which Google bears the burden of proof.  But regardless of who bears the burden,[10] courts routinely dismiss wiretapping claims at the pleading stage based on a plaintiff's consent to a website's terms of use.  *See, e.g., Mortensen v. Bresnan Commc'n.*, No. 10-cv-0013, 2010 U.S. Dist. LEXIS 131419, at *13 (D. Mont. Dec. 13, 2010)[11] (dismissing ECPA claim where "the Court conclude[d] that through the *OnLine Subscriber Agreement*, the *Privacy Notice* and the NebuAd link on Bresnan's website, Plaintiffs did know of the interception and through their continued use of Bresnan's Internet Service, they gave or acquiesced their consent to such interception"); *Deering v. CenturyTel, Inc.*, No. 10-cv-0063, 2011 WL 1842859, at *1 (D. Mont. May 16, 2011) ("Since Deering acquiesced his consent by using CenturyTel's services knowing his Internet activity could be diverted and used to target him with advertisements, the motion [to dismiss] must be granted."); *In re DoubleClick,* 154 F. Supp. 2d at 510.  *Cf. Smith v. Trusted Universal Standards in Elec. Transactions, Inc*., No. 09-cv-4567, 2011 WL 900096, at *10-11 (D.N.J. Mar. 15, 2011) (dismissing claim as a matter of law where "by subscribing to [Microsoft's email service], each Microsoft customer consents to Microsoft intercepting and filtering all of his email communications.").  This case is no different, and the Court should not defer an issue that is fully appropriate for resolution at the pleading stage.

Next, Plaintiffs claim that "the scope of consent" here is limited because Google does not disclose all of the automated processing applied in the Gmail system.  To frame their argument, Plaintiffs set up a straw man by describing Google's position as follows: "Under Google's standard, if users consent to 'automated processing' for virus protection, users consent to 'automated processing' for all purposes, regardless of whether Google discloses those processes and purposes."  (Opp. 13.)

---

[10] The Ninth Circuit (and others) describes the consent issue as a statutory "exception," not an affirmative defense.  *See, e.g. Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 880 n.9 (9th Cir. 2002) (referring to the consent exception to the ECPA); *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (same).  Courts have also imposed the burden on plaintiffs to prove lack of consent in a wiretapping case.  *In re DoubleClick Inc. Privacy Litig.,* 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001) (dismissing SCA and Wiretap claims where plaintiffs "proffered no proofs whatsoever to support their bare assertion that Doubleclick's access was unauthorized"); *Shefts v. Petrakis*, No. 10-cv-1104, 2011 U.S. Dist. LEXIS 136538, at *29 n.10 (C.D. Ill. Nov. 29, 2011) (finding that "lack of authorization is an element Plaintiff must prove").
[11] *Mortensen* was vacated and remanded on July 15, 2013 to determine compliance with the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

Cooley LLP
Attorneys At Law
San Francisco

7.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

This is an obvious distortion of Google's position, designed to avoid the actual consent terms at issue. While Google's disclosures do call out certain specific Gmail practices, including targeted advertising,[12] the terms by which Google obtains consent are not limited to specific processes. Instead, Google's Privacy Policy advises users that their information can be used broadly to "provide" Google's "services," without limitation. (*See* Exhibit A (summarizing relevant terms of Google's TOS and Privacy Policies throughout the class period).)[13]

Given these express terms, the only way Plaintiffs can show that Google exceeds the "scope of consent" is to show that it uses information for some purposes *other than* providing a Google "service." There is no such allegation in the Complaint (nor could there be). To the contrary, Plaintiffs acknowledge that the automated processing at issue is used to provide Google features like targeted advertising[14], spam and virus filtering, delivery processing, storage categorization, and other services. (*See, e.g.*, Compl. ¶¶ 41, 42, 63. *See also id.* at ¶ 97 (alleging that Google uses Gmail information "in other Google services").) This confirms that Google's alleged conduct falls within the "scope of consent" under Google's Privacy Policy.[15]

To avoid this result, Plaintiffs distort the Privacy Policy to claim that it "affirmatively limit[s] the collection of user's information" and "Google cannot 'use' what Google cannot 'collect.'"[16] (Opp. 14.) But that is not what the Privacy Policy says. The pre-March 2012 versions of the Privacy Policy specify that Google collects and uses certain types of information and further provides that, "*[i]n addition to the above,*" user information can be used generally to provide Google "services" (as discussed above).[17] The versions since March 2012 inform users

---

[12] *See e.g.,* Compl. ¶¶ 26, 27, 33, 37, 38, 62, 63, 107-108 (admitting Plaintiffs are aware that Google scans email to serve targeted ads). *See also* Rothman Decl. Exs. E-J (Google's TOS and Privacy Policy, disclosing practice of targeting ads based on user content).

[13] *See* Rothman Decl., Ex. I (Google may use the information it collects to "[p]rovide, maintain, protect, and improve our services (including advertising services) and develop new services.") Other versions of the Privacy Policy contain the same basic language (*See id.* Exs. G, H, and J.)

[14] Plaintiffs allege that advertising is not a Google "Service" (Compl. ¶ 124-125) but do not dispute that this practice is clearly disclosed as part of the function of Gmail and other "Services."

[15] Though not subject to the same TOS, Google Apps users are still subject to Google's Privacy Policy. (*See* Mot. at 15 & n.13.) As explained in the Privacy Policy, advertising is not the only purpose for which Google scans and collects information (*see* Rothman Decl. Exs. G-J), negating Plaintiffs' argument that because Google does not serve ads to Apps customers it "violates its own agreements" with such users (Opp. 19).

[16] Notably, Plaintiffs do *not* dispute that Gmail users must agree to the Privacy Policy.

[17] The relevant language from version is summarized in Appendix A for the Court's convenience.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

(1) that Google "may collect information about the services that you use and how you use them" without limitation, and (2) that "[w]e use the information we collect from all of our services to provide, maintain, protect, and improve them."  In short, none of the versions of the Privacy Policy contains the purported limitations or prohibitions that Plaintiffs seek to manufacture.

Plaintiffs' authorities in support of their "limited consent" argument also do not help them.  In *Watkins* (discussed above), the defendant disclosed its policy of monitoring *business* calls but the interceptions at issue involved alleged *personal* calls, which the policy expressly stated would *not* be monitored.  704 F.2d at 585.  *In re Pharmatrak, Inc.* involved an alleged interception wherein a third party contracting with drug companies collected personal information about users of their websites, despite having assured those companies they would *not* do so and having expressly agreed *not* to.  329 F.3d 9, 15 (1st Cir. 2003).  In *Williams v. Poulos*, the plaintiff was aware that certain company calls could be monitored but there was no disclosure that *his* calls would be among them.  11 F.3d 271, 281-82 (1st Cir. 1993).  In each case, defendants expressly agreed to limit their practices in specific ways, and the consent that plaintiffs provided was subject to those express limitations.  In contrast, Google's terms contain no such carveouts and state that Google can apply user information to provide Google's services in general terms.

While Plaintiffs also attack certain other terms in the Google TOS, these arguments are also meritless.  Plaintiffs claim that Paragraph 8.3—which authorizes Google to "pre-screen, review, flag, filter, modify, refuse or remove any or all Content from any Service"—should be ignored because it is a mere "reservation of rights."  (Opp. 14 n.21; Compl. ¶ 105.)  But numerous courts have found that similar language is sufficient to obtain consent.  *See Shefts v. Petrakis*, 758 F. Supp. 2d 620, 626 (C.D. Ill. 2010) (finding consent where employee manual stated that defendant "reserves the right to monitor electronic mail messages").[18]

Second, Plaintiffs claim that Section 17.1—which specifies that Google can show targeted advertisements based on the "content of information stored on the Services"— does not apply to Gmail.  (Compl. ¶¶ 107-114.)  But this provision encompasses all "Services," which are defined

---

[18]  *See also Deering*, 2011 WL 1842859 at *1-2 (finding plaintiff had consented based on disclosure stating that the information to be collected by defendant "*may* include" certain information and "*may* disclose" such information).

Cooley LLP
Attorneys At Law
San Francisco

9.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
Case No. 5:13-md-002430-LHK (PSG)

to include *all* of "Google's products, software, services and web sites." (Rothman Decl. Ex. E at ¶ 1.1.)[19]  While Plaintiffs also quibble about whether the defined term "Content" covers emails, Section 17.1 does not use this capitalized term and applies to all "content" in the normal sense. There is no basis to interpret "content" as somehow excluding the content of emails.[20]

In short, Plaintiffs provide no basis to invalidate the express terms by which Gmail users have consented to the processing of their emails in connection with Google's services.

### 1. Plaintiff J.K. Is Also Bound to Google's Terms.

#### a. California Family Code Section 6701 Does Not Apply.

Plaintiff J.K. cannot rely on Family Code Section 6701(c) to avoid these express terms. As Plaintiffs concede, Section 6701 was enacted in the 1800s, as they describe it, to prevent minors from contracting with respect to "future interests."  (*See* Opp. 15.)  Even if an online Privacy Policy governing the use of a web-based email service could be deemed to fall within the facial terms of the statute, the Court should not impose an interpretation that is inconsistent with the overall statutory scheme.  *Cf. Apple Inc. v. Super. Ct.*, 56 Cal. 4th 128, 138 (2013) (declining to apply Song Beverly Credit Card Act to online transactions that were not contemplated at the time of enactment because doing so would be inconsistent with the statutory scheme as a whole). Moreover, Section 6701(c) is inapplicable on its face because all Gmail users *are* in "control" of their emails.  Plaintiffs argue that the alleged "interceptions" occurs during the "transmission" of an email when users purportedly do not "control" their emails (Opp. 15-16), but this allegation does not change the fact that users control their emails at all times by deciding what to write, when to send, where or to whom to send, and whether to delete an email.

#### b. COPPA Authorizes Google to Obtain Express Consent from Teens Like Plaintiff J.K.

Even if Section 6701 could be applied as Plaintiffs urge, it would be preempted by

---

[19] Plaintiffs object to the Rothman and Wong Declarations and the exhibits thereto in a separate pleading filed with the Opposition.  As discussed in Google's Reply in Support of its Request for Judicial Notice, these objections are improper under Civil Local Rule 7-3(a) and should be stricken.

[20] Plaintiffs further note that this provision was removed from the versions of the TOS beginning in March 2012.  That fact is immaterial.  The amendments to the TOS in March 2012 *broadened* the scope of permissible uses and encompass the prior provisions specific to advertising.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

COPPA, 15 U.S.C. §§ 6501-08, as Google explained in its Motion.  In an effort to avoid COPPA, Plaintiff J.K. argues that preemption principles do not apply because COPPA's terms only address minors under 13.  (Opp. 16-17.)  But the fact that teens are not included in the parental consent requirements of COPPA is not a mere oversight.   Rather, Congress specifically considered applying a parental consent requirement to teens and decided not to.  (*See* Wong Decl. Ex. JJ No. 11.)[21]  The omission of teens from COPPA's parental consent provisions thus reflects the express determination by Congress that websites *can* obtain consent directly from teenagers. Indeed, the FTC's guidance specifically refers to obtaining "affirmative express consent" from teens.  (*Id.*)  Plaintiffs do not address these provisions at all.

Given this context, COPPA's express preemption provision applies to any law that purports to invalidate express consent obtained from teens like J.K.  As set forth in the statute, "[n]o State or local government *may impose any liability for commercial activities* or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter *that is inconsistent with the treatment of those activities or actions under this section*."  *See* 15 U.S.C. § 6502(d) (italics added).  J.K.'s effort to invalidate the express consent he gave to Google would be flatly "inconsistent with the treatment" of teens under COPPA.  *Id.*[22]

Even without this express preemption provision, conflict preemption would still apply because Plaintiff J.K.'s theory "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *AT&T Mobility*, 131 S. Ct. at 1753 (internal quotations and citation omitted).  Because one of COPPA's main objectives is to confirm that websites can obtain express consent from teens, applying Section 6701 to invalidate this express consent would directly conflict with such an objective.  *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 881-82 (2000) (preempting state law imposing liability for lawful conduct under federal law).

---

[21] *See also* Supplemental Declaration of Kyle Wong, Exh. QQ (S. 2326, 105th Cong. §§ 2(1), 3(a)(2)(A)(ii)-(iii) (initial version of COPPA with terms that would have applied to teenagers); *id.* Exh. RR, Testimony of the FTC before Subcomm. on Consumer Prot., Prod. Safety, & Ins., July 15, 2010, at 14-15 ("Congress looked closely at whether adolescents should be covered by the law, ultimately deciding to define a 'child' as an individual under age 13.").

[22] *See also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060, 1061-63 (9th Cir. 2009) ("It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states . . . free to . . . create more burdensome regulation").

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

The fact that COPPA's treatment of teens is not set forth in the express terms of the statute (although it is reflected in FTC guidance, as indicated) is immaterial.  In *Arizona v. United States*, 132 S. Ct. 2492 (2012), the Court addressed the conflict between an Arizona law, which imposed criminal penalties on undocumented workers, and a federal law, which imposed penalties only on *employers*, but was silent as to the undocumented workers themselves.  *See id.* at 2503-04.  The Court ruled that federal law preempts the Arizona law, emphasizing that Congress had considered and rejected proposals to impose penalties on undocumented employees.  *Id*. at 2505.  By embracing a proposal that Congress had rejected, Arizona's law "would interfere with the careful balance struck by Congress" and stood as an "obstacle to the regulatory system Congress chose." *Id*.  Similarly here, Plaintiff J.K.'s application of Section 6701 would "interfere with the careful balance struck by Congress" because Congress specifically considered and rejected a parental consent requirement for teens.  For all these reasons, Section 6701 cannot be applied to invalidate the consent that Google obtained consistently with federal law under COPPA.

**2.     The Non-Gmail Plaintiffs Impliedly Consent to Automated Processing.**

As Google explained in its Motion, while the Non-Gmail Plaintiffs are not contractually bound to Google's terms, they gave implied consent because they must have known that the emails they sent to Gmail recipients would be subjected to automated processing by Google. Plaintiffs' Opposition concedes that the automated processing of emails is widely known, including processes that scan the substantive content of emails.  (*See* Opp. 2 (conceding that Plaintiffs do not seek to challenge processes that "scan email content" for spam and virus detection, or other "normal web-mail 'automated scanning'").).  Plaintiffs nonetheless claim they could not have consented because they were unaware of how Google subsequently uses the information derived from automated processing.  (Opp. 19.)  But this is irrelevant to applying the consent defense.  Under ECPA, the relevant inquiry is whether there is consent for the acts that constitute the "interception"–here, the scanning of emails during the email delivery process.  *See* 18 U.S.C. § 2511(2)(d) (no liability for an "interception" where there is "consent to such interception").  Where there is such consent, there can be no liability for subsequent "uses" because there was no predicate unlawful "interception."  *See id* § 2511(1)(d) (providing liability

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

for the "use" of information only where it is "obtained through the interception . . . in violation of this subsection.")  Plaintiffs' admitted knowledge of automated scanning thus establishes the consent defense, regardless of their purported ignorance of any subsequent uses of information.

Moreover, the non-Gmail Plaintiffs make no effort to rebut their prior admissions that they continued to send emails to Gmail users even *after* filing complaints evidencing their knowledge of Google's alleged wrongful initial scanning and subsequent use of information.[23]

**C.      The CIPA Claim Fails as a Matter of Law.**

**1.      Plaintiffs Cannot Extend CIPA Beyond Its Terms to Cover Emails.**

In their Opposition, the CIPA Plaintiffs claim that Section 631 broadly applies to "any 'message' or 'communication,'" without limitation to "telephone and telegraph" equipment and regardless of any connection to any "wire, line, or connection."  (Opp. 21.)  The text and legislative history of CIPA, however, precludes this all-encompassing interpretation, as detailed in Google's Motion.  Plaintiffs claim that the legislative history referenced in Google's Motion pertains to a separate statute, Penal Code § 629.  But the key legislative report contains an explicit discussion in which the Legislature expressly considered whether to expand *CIPA* (not solely Section 629) to include "emails and other electronic communications."  (Wong Decl. Ex. MM at 4.)  As previously discussed, the Legislature rejected this proposal, reflecting a conscious determination *not* to expand CIPA to cover emails.  (*Id.*; Mot. 23.)

Plaintiffs' interpretation of CIPA as a continually evolving statute that covers all "communications" of every technological flavor is refuted by other aspects of the legislative history.  In 1985, the Legislature enacted Penal Code § 632.5(a) to expand CIPA to cover "communication[s] transmitted . . . *between any cellular radio telephone and a landline telephone*" (emphasis added).  And in 1990, the Legislature enacted Penal Code § 632.6 so that CIPA would apply to communications "transmitted . . . between any cordless telephone *and a landline telephone*."  *Id.* § 632.6(a) (emphasis added).  There would have been no need to add specific communications technologies each time if Section 631 *already* covered any "message" or

---

[23] *See* Wong Decl. Exs. EE (A.K. Compl. ¶ 21); FF (Knowles Compl. ¶ 20); GG (Brinkman Compl. ¶ 15); II (Scott II Compl. ¶ 15).

1  "communication" regardless of how the communication was sent.[24]

2  Plaintiffs further claim that "modern courts have had no problem applying CIPA to

3  electronic communications."  (Opp. 22 & n.36.)  This is also false.  Neither of the two cases cited

4  on this point considered the question of whether CIPA applies to electronic communications.  In

5  fact, in *Bradley v. Google, Inc.*, No. 06-cv-5289 WHA, 2006 WL 3798134, at *4-5 (N.D. Cal.

6  Dec. 22, 2006), the court declined to apply CIPA to the plaintiff's emails because she did not

7  even allege that Google had intercepted them.  *See also Valentine v. NebuAd, Inc.*, 804 F. Supp.

8  2d 1022 (N.D. Cal. 2011) (ruling on the defendant's statutory standing and preemption arguments

9  without reaching whether CIPA applies to electronic communications).

10  **2.**  **There Can Be No CIPA Liability as a Matter of Law, Even Under**
   **Plaintiffs' Interpretation of the Statute.**

11  Even if Plaintiffs' interpretation were adopted, the CIPA claims should be dismissed

12  because Google would then fall within the express exemptions of CIPA.  According to Plaintiffs,

13  CIPA covers emails because "email and telegraph are functional equivalents under CIPA."  (Opp.

14  23.)   Google disputes this interpretation.[25]   But if emails can be deemed the "functional

15  equivalent" of telegraphs (a strained reading at best), the public utility exception of CIPA would

16  then apply to Google.  Section 631(b) specifically exempts from liability the public utilities that

17  provide the communications services addressed in Section 631(a): "This section shall not apply

18  (1) to any public utility engaged in the business of providing communications services and

19  facilities . . . where the acts otherwise prohibited herein are for the purpose of construction,

20  maintenance, conduct or operation of the services and facilities of the public utility …."  Cal.

21  Penal Code §631(b).[26]  Article XII, Section 3 of the California Constitution in turn provides that

22  providers of telephone and telegraph services are public utilities:  "Private corporations and

23  _____

24  [24]As indicated in Google's Motion, Judge D'Opal dismissed the plaintiff's CIPA claim in the
   *Diamond* action, finding that the plaintiff was required to allege "Google's use of 'telegraph' or

25  'telephone' equipment in its alleged unauthorized practice."  (Mot. 22.)  After reassignment of the
   case, Judge Chernus allowed the plaintiff to proceed in a one-line order that provides no analysis
   and does not purport to overturn the law of the case as established in Judge D'Opal's prior ruling.

26  [25] Plaintiffs claim Google previously admitted in *Dunbar* that emails are "telegraphs." (Opp. 22.)
   These prior arguments involved the ordinary course of business exception under ECPA, and not

27  the scope of CIPA.  Google's prior argument—that its conduct is exempted from liability under
   ECPA—is entirely consistent with its argument that CIPA does not apply.

28  [26] Section 632 has an identical exemption.  *See* Penal Code §632(e).

Cooley LLP
Attorneys At Law
San Francisco

14.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

1   persons that own, operate, control, or manage a . . . system for . . . the transmission of telephone

2   and telegraph messages . . . to or for the public . . . are public utilities . . . ."

3       Under Plaintiff's theory that Gmail is actually a "telegraph" service, Google would

4   therefore fall within the definition of a "public utility," as a private corporation that owns,

5   operates, controls and manages a system for the transmission of "telegraph" messages to the

6   public.  If credited, this interpretation of a "telegraph" would place Google squarely within the

7   exception to liability applicable to public utilities under Section 631(b).  Plaintiffs cannot have it

8   both ways by claiming that Gmail amounts to a "telegraph" while avoiding the term that would

9   then protect Google from liability as a purported provider of "telegraph" services.

10      **3.      The CIPA Plaintiffs' Claims Also Fail Because They Allege No Injury.**

11      Regardless of whether CIPA covers emails, the CIPA claim also fails because the CIPA

12  Plaintiffs allege no injury, as needed to satisfy both the statute and Article III's standing

13  requirement.  Because the CIPA Plaintiffs cannot point to any allegations of injury, they are

14  forced to respond to Google's argument by raising a series of irrelevant issues.  For example, they

15  point out that "actual damages" are not needed to bring a CIPA claim, but this is immaterial.

16  (Opp. 24.)  While the statute does not require "actual damages," in the sense of monetary loss, it

17  expressly limits a civil claim to plaintiffs "*who [have]been injured* by a violation of this chapter .

18  . ."  Cal. Penal Code §637.2 (emphasis added).   Plaintiffs also point to the preamble of CIPA

19  (Section 630) to say that it reflects a general concern for "invasions of privacy."  (Opp. 23.)  But

20  this Court has specifically held that amorphous assertions of privacy intrusions are not enough to

21  confer Article III standing.  *See In re iPhone Application Litig.*, No. 11-md-2250, 2011 WL

22  4403963, at *5 (N.D. Cal. Sept. 20, 2011) (allegations regarding the "collection and tracking of

23  [plaintiffs'] personal information," without more, were insufficient to state an Article III injury).

24  While Plaintiffs contend that Google's scanning of emails is "unlike" other alleged privacy

25  violations that were deemed insufficient to confer standing, this conclusory assertion is

26  unsupported by any explanation.  In short, the CIPA Plaintiffs do not seriously dispute, and

27  effectively concede, that the Complaint alleges no injury for purposes of Article III standing.

28      **4.      Plaintiffs Fail to Allege Any Connection with California.**

Cooley LLP
Attorneys At Law
San Francisco

15.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

The CIPA Plaintiffs' claims further fail because they do not allege any link between their emails and California. (*See* Mot. 24-25.) In their Opposition, Plaintiffs point to their allegations that Google's headquarters are in California and that Google made business decisions regarding Gmail here. (Opp. 25 (citing Compl. ¶ 290).) But these allegations are irrelevant because CIPA's reach is not determined based on the defendant's headquarters or the location where decisions are made, but rather whether the *communication* itself has a connection to California. (Mot. 24.) Plaintiffs also allege that one of Google's "devices" (which they do not identify) was "developed," "designed," and "built," in California, and that it was "physically placed" in California at some unspecified time. (Compl. ¶ 290.) This allegation also fails because it is entirely conclusory, and is not tied to any email involving the CIPA Plaintiffs.

### D.    Plaintiffs' Section 632 Claim Fails for Additional Reasons.

#### 1.    Plaintiffs Allege No Facts to Show That Their Emails Were "Confidential Communications" within the Meaning of Section 632.

Google's Motion demonstrates that the CIPA Plaintiffs fail to allege sufficient facts to show that their emails to Gmail recipients are "confidential communications" under Section 632. In response, Plaintiffs claim this statutory requirement can be satisfied merely by alleging a "recording" by an entity other than the immediate participants to the communication. (Opp. 25.) But similar allegations were made in *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013), in which the Ninth Circuit upheld dismissal of a Section 632 claim. *Faulkner* involved allegations that the defendant recorded a phone call between the plaintiff and a customer service representative. The court held this was insufficient to show an "objectively reasonable" expectation of confidentiality, even though the recording entity was not directly involved in the communication. *Id.* at 1020-21. Plaintiffs' allegations here suffer from the same defect.

#### 2.    Plaintiffs Fail to Address Google's Conflict Preemption Argument.

Plaintiffs' response to Google's conflict preemption argument is equally deficient. Mustering yet another straw man, Plaintiffs argue that *field* preemption should not be applied. (Opp. 26-27.) But that is not what Google contends. Rather, preemption applies here because of a direct *conflict* between Plaintiffs' interpretation of Section 632 and the specific terms of ECPA

that expressly permit ECS providers to record electronic communications involving their users. (*See* Mot. 9-10.)  Against this backdrop, Plaintiff cannot use Section 632 to bar an ECS provider like Google from doing what is specifically permitted under federal law.  *Pub. Util. Dist. No. 1 v. IDACORP Inc.*, 379 F.3d 641, 650 (9th Cir. 2004) ("Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law.") (citations omitted).[27]

### E.    The CIPA Claim Should Also Be Dismissed under Choice of Law Principles.

#### 1.    The CIPA Plaintiffs Do Not Meaningfully Address the Choice of Law Rules That Prevent Them from Relying on CIPA.

The CIPA Plaintiffs make virtually no effort to contest the choice of law analysis in Google's Motion, which shows they must proceed under the laws of their local jurisdictions, not CIPA.  Instead, they focus on two irrelevant issues:  (1) they point out that some courts have declined to resolve choice of law at the pleading stage *for purposes of adjudicating class action allegations*; and (2) they claim they have alleged sufficient "contacts" with California for *constitutional purposes*.  (Opp. 28-29.)  These arguments conflate three distinct inquiries:  (1) whether CIPA permits a claim by non-California residents ("Inquiry 1");[28] (2) assuming it does, whether choice of law principles nevertheless require non-California residents to rely on their local laws rather than California law to resolve their individual claims ("Inquiry 2"); and (3) in the context of a class action, whether California law can be applied to a nationwide class under Rule 23 ("Inquiry 3").  Google's arguments address Inquiry No. 2, yet Plaintiffs focus almost exclusively on Inquiry Nos. 1 and 3 in their Opposition, as discussed below.

##### a.    Courts Routinely Resolve Inquiry 2 at the Pleading Stage.

The CIPA Plaintiffs' main response–that it would be premature for the Court to perform a

---

[27] Plaintiffs cite two non-binding cases that involved cellular *phone* communications and therefore failed to address ECPA's provisions governing ECS providers.  (Opp. 26-27 (citing *Leong v. Carrier IQ Inc.*, No. 12-cv-1562, 2012 WL 1463313, at *1 (C.D. Cal. Apr. 27, 2012) and *Shively v. Carrier IQ, Inc.*, No. 12-md-2330 EMC, 2012 WL 3026553 (N.D. Cal. July 24, 2012)).)  These cases–which do not address conflict preemption–are inapplicable.

[28] Inquiry 1, in turn, raises both questions of statutory interpretation (whether a statute is intended to permit a claim by non-residents) and constitutional compliance (whether extraterritorial application implicates the Commerce Clause and due process).  As to the latter, Plaintiffs make no effort to address the constitutional issues raised in Google's motion.

Cooley LLP
Attorneys At Law
San Francisco

17.

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)**

choice of law analysis at the pleading stage–attempts to blur the distinction between Inquiries 2 and 3. Courts routinely undertake Inquiry 2 at the pleading stage to assess whether a non-California resident can state an *individual* claim under California law. *See, e.g., Frezza v. Google Inc.*, No. 12-cv-0237 RMW, 2013 WL 1736788, at *5-7 (N.D. Cal. Apr. 22, 2013) (performing choice of law analysis at the pleading stage to dismiss plaintiff's *individual* claims because "the North Carolina plaintiffs' consumer protection claims should be governed by the North Carolina consumer protection laws"); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, No. 11-cv-1576, 2012 U.S. Dist. LEXIS 19215, at *9-10 (S.D. Cal. Feb. 13, 2012) (dismissing *individual* claims brought by out-of-state plaintiffs at the pleading stage "[b]ecause each state has an interest in setting the appropriate level of liability for companies conducting business within its territory"); *Granfield v. Nvidia Corp.*, No. 11-cv-5403 JW, 2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012) (dismissing *individual* claims at the pleading stage pursuant to *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)).

The CIPA Plaintiffs do not attempt to refute this established line of authority, which confirms that the Court can and should resolve Inquiry 2 at the pleading stage. Instead, they rely on isolated cases that declined to address the class certification-related issue of Inquiry 3, which Google is not asking the Court to perform at this time. For example, in *Forcellati v. Hylands, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012), the court explained that "[c]ourts rarely undertake choice-of-law analysis *to strike class claims* at this early stage in litigation."[29] *Id.* at 1159-60 (emphasis added). But the court emphasized that this analysis is distinct from the question of "whether Plaintiff *as an individual* may assert claims against Defendants under California law." *Id.* at 1161 (emphasis added). The court found that resolving choice of law to determine whether the plaintiff had asserted an "individual" claim (that is, Inquiry 2) was entirely appropriate on a

---

[29] More recent cases have held that Inquiry 3 *can* be addressed at the pleading stage. *See, e.g., Route v. Mead Johnson Nutrition Co.*, No. 12-cv-7350, 2013 WL 658251, at *8-9 (C.D. Cal. Feb.21, 2013) (addressing choice of law issues relevant to class certification because "the matter is sufficiently obvious from the pleadings"); *Banks v. Nissan N. Am., Inc.*, No. 11-cv-2022, 2012 U.S. Dist. LEXIS 37754, at *2-3 (N.D. Cal. Mar. 20, 2012) (dismissing the plaintiffs' "nationwide class action" claims at the pleading stage because "such allegations are inappropriate, pursuant to the Ninth Circuit's reasoning in *Mazza*").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

Rule 12(b)(6) motion.  *Id.*[30]  This is precisely what Google is asking the Court to adjudicate.[31]

        **b.**      **Plaintiffs' Allegations of Purported "California Contacts" Do Not Support the Application of CIPA.**

      The CIPA Plaintiffs next argue that even though they are non-California residents and do not allege that they ever sent emails to California residents, they have alleged sufficient "constitutional contacts" with California to pursue a claim.  They further argue that the court in *NebuAd*, 804 F. Supp. 2d at 1028, found that non-California residents can potentially assert a claim under CIPA.  (Opp. 30.)  These considerations, however, are relevant only to Inquiry 1 and the question of whether CIPA permits claims by non-California residents at all.  As explained above, *even if* CIPA allows non-residents to bring a claim, the Court must *still* resolve Inquiry 2 to determine if doing so here would impair the interests of the CIPA Plaintiffs' home jurisdictions.  Indeed, the governmental interest test *assumes* that a plaintiff can potentially assert a claim under the laws of *both* competing states.  *See Mazza*, 666 F.3d at 589-90.

      When considered as part of the choice of law analysis, the purported "California contacts" on which the CIPA Plaintiffs rely do not override the prevailing interests of Alabama and Maryland in applying their own laws to disputes raised by their own citizens.  Indeed, the same argument that Plaintiffs rely on here—that California law should apply because Google is headquartered in California and made business decisions in California—has been rejected as applied to Google.  *See Frezza*, 2013 WL 1736788 at *5 (declining to apply California law where the plaintiff alleged that "Google[ ] is headquartered in California, and the allegedly fraudulent representations originated from California," but where "the transactions at the center of the dispute [*i.e.*, the plaintiff's enrollment in Google's "Tags" service] occurred in the plaintiffs' state of North Carolina") (emphasis omitted).  Moreover, even if Google's contacts with California were sufficient to give California some interest in regulating this matter, the CIPA Plaintiffs do not address *at all* the other side of the equation in the governmental interest analysis—the interests of Alabama and Maryland in resolving the claims of their citizens and in determining the

---

[30] The court declined to rule because the issue was not fully briefed.  876 F. Supp. 2d at 1160-61.
[31] The CIPA Plaintiffs also claim the choice of law analysis should be deferred because of some undefined right to assert alternative theories.  But the CIPA Plaintiffs are *not* pursuing alternative theories; they are *exclusively* pursuing claims under CIPA.  (*See* Compl. ¶¶ 9, 287-321.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

1   appropriate scope of the liability to be applied to businesses that deal with their residents.  As

2   *Mazza* explained, "if California law were applied to the entire class, foreign states would be

3   impaired in their ability to calibrate liability to foster commerce."  666 F.3d at 593.  Plaintiffs

4   make no effort to rebut this dispositive aspect of the choice of law analysis.

5   **2.      Further Discovery Is Unnecessary to Resolve Choice of Law.**

6   Last, the CIPA Plaintiffs claim they need more discovery "to confirm Plaintiffs'

7   allegations in ¶ 290 which, if true, require the application of California law."  (Opp. 28.)  This is

8   always the talisman of a deficient pleading, but regardless, the allegations in Paragraph 290 have

9   nothing to do with the choice of law analysis.  Further fact discovery, for example, could have no

10  possible bearing on assessing the interests of Alabama and Maryland in applying their laws to the

11  claims here.  (*See* Mot. 27-30.)  In similar circumstances, courts have routinely rejected pleas to

12  defer the choice of law analysis based on a purported need for discovery.  *See, e.g.*, *Frezza*, 2013

13  WL 1736788 at *7 ("Contrary to plaintiffs' contention, courts that have considered this issue have

14  decided against deferring the choice of law decision until discovery."); *see also Rikos v. Proctor*

15  *& Gamble Co.*, No. 11-cv-0226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012) (rejecting

16  plaintiff's request for further discovery); *Route*, 2013 WL 658251, at *8-9 (rejecting plaintiff's

17  request to defer ruling on the choice of law issue until the class certification stage).

18  **III.   CONCLUSION.**

19  For the reasons outlined above and in Google's opening brief, this Court should dismiss

20  the Complaint in its entirety.

21  Dated:  July 29, 2013                      COOLEY LLP
22                                             MICHAEL G. RHODES (116127)
                                               WHITTY SOMVICHIAN (194463)
23                                             KYLE C. WONG (224021)

24                                              /s/ Whitty Somvichian
25                                             Whitty Somvichian (194463)
                                               Attorneys for Defendant GOOGLE INC.
26  1326868 /SF

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS
CASE NO. 5:13-MD-002430-LHK (PSG)

# APPENDIX A

**Relevant Terms of Google's Terms of Service & Privacy Policy, 2008-2013**

| Terms of Service | |
|---|---|
| **Effective Date** | **Relevant Language** |
| **4/16/2007 (Rothman Decl. Exh. E)** | **1. Your relationship with Google**<br><br>1.3 Your agreement with Google will also include the terms of any Legal Notices applicable to the Services, in addition to the Universal Terms. All of these are referred to below as the "Additional Terms".<br><br>1.5 If there is any contradiction between what the Additional Terms say and what the Universal Terms say, then the Additional Terms shall take precedence in relation to that Service.<br><br>**7. Privacy and your personal information**<br><br>7.1 For information about Google's data protection practices, please read Google's privacy policy at http://www.google.com/privacy.html. This policy explains how Google treats your personal information, and protects your privacy, when you use the Services.<br><br>7.2 You agree to the use of your data in accordance with Google's privacy policies.<br><br>**8. Content in the Services**<br><br>8.1 You understand that all information (such as data files, written text, computer software, music, audio files or other sounds, photographs, videos or other images) which you may have access to as part of, or through your use of, the Services are the sole responsibility of the person from which such content originated. All such information is referred to below as the "Content".<br><br>8.3 Google reserves the right (but shall have no obligation) to pre-screen, review, flag, filter, modify, refuse or remove any or all Content from any Service. For some of the Services, Google may provide tools to filter out explicit sexual content. These tools include the SafeSearch preference settings (see http://www.google.com/help/customize.html#safe). In addition, there are commercially available services and software to limit access to material that you may find objectionable.<br><br>**17. Advertisements**<br><br>17.1 Some of the Services are supported by advertising revenue and may display advertisements and promotions. These advertisements may be targeted to the content of information stored on |

**Relevant Terms of Google's Terms of Service & Privacy Policy, 2008-2013**

| | |
|---|---|
| | the Services, queries made through the Services or other information.<br><br>17.2 The manner, mode and extent of advertising by Google on the Services are subject to change without specific notice to you.<br><br>17.3 In consideration for Google granting you access to and use of the Services, you agree that Google may place such advertising on the Services. |
| **3/1/2012 (Rothman Decl. Exh. F)** | **Your Content in our Services**<br><br>Some of our Services allow you to submit content. You retain ownership of any intellectual property rights that you hold in that content. In short, what belongs to you stays yours.<br><br>When you upload or otherwise submit content to our Services, you give Google (and those we work with) a worldwide license to use, host, store, reproduce, modify, create derivative works (such as those resulting from translations, adaptations or other changes we make so that your content works better with our Services), communicate, publish, publicly perform, publicly display and distribute such content. The rights you grant in this license are for the limited purpose of operating, promoting, and improving our Services, and to develop new ones. This license continues even if you stop using our Services (for example, for a business listing you have added to Google Maps). Some Services may offer you ways to access and remove content that has been provided to that Service. Also, in some of our Services, there are terms or settings that narrow the scope of our use of the content submitted in those Services. Make sure you have the necessary rights to grant us this license for any content that you submit to our Services.<br><br>You can find more information about how Google uses and stores content in the privacy policy or additional terms for particular Services. If you submit feedback or suggestions about our Services, we may use your feedback or suggestions without obligation to you. |

**Relevant Terms of Google's Terms of Service & Privacy Policy, 2008-2013**

| Privacy Policy | |
|---|---|
| **Effective Date** | **Relevant Language** |
| **8/7/2008 (Rothman Decl. Exh. G)**<br><br>**1/27/2009**<br><br>**3/11/2009 (Rothman Decl. Exh. H)** | **Information we collect and how we use it**<br><br>We offer a number of services that do not require you to register for an account or provide any personal information to us, such as Google Search. In order to provide our full range of services, we may collect the following types of information:<br><br>• Information you provide…<br>• Cookies…<br>• Log information…<br>• User communications (to Google)…<br>• Affiliated sites…<br>• Links…<br>• Other sites…<br><br>Google only processes personal information for the purposes described in this Privacy Policy and/or the supplementary privacy notices for specific services. In addition to the above, such purposes include:<br><br>• Providing our services to users, including the display of customized content and advertising;<br>• Auditing, research and analysis in order to maintain, protect and improve our services;<br>• Ensuring the technical functioning of our network; and<br>• Developing new services. |
| **10/3/2010 (Rothman Decl. Exh. I)**<br><br>**10/20/2011** | **Information we collect and how we use it**<br><br>We may collect the following types of information:<br><br>• Information you provide…<br>• Cookies…<br>• Log information...<br>• User communications... |

3

**Relevant Terms of Google's Terms of Service & Privacy Policy, 2008-2013**

| | |
|---|---|
| | • Affiliated Google Services on other sites...<br>• Third Party Applications...<br>• Location data...<br>• Unique application number...<br>• Other sites...<br><br>In addition to the above, we may use the information we collect to:<br><br>• Provide, maintain, protect, and improve our services (including advertising services) and develop new services; and<br>• Protect the rights or property of Google or our users. |
| **3/1/2012 (Rothman Decl. Exh. J)**<br><br>**6/27/2012**<br><br>**6/24/2013** | **Information we collect**<br>   We collect information to provide better services to all of our users – from figuring out basic stuff like which language you speak, to more complex things like which ads you'll find most useful or the people who matter most to you online.<br><br>We collect information in two ways:<br><br>    • **Information you give us…**<br>    • **Information we get from your use of our services.** We may collect information about the services that you use and how you use them, like when you visit a website that uses our advertising services or you view and interact with our ads and content. This information includes:<br>        ○ Device information…<br>        ○ Log information…<br>        ○ Location information…<br>        ○ Unique application numbers…<br>        ○ Local storage…<br>        ○ Cookies and anonymous identifiers…<br><br>**How we use information we collect**<br>   We use the information we collect from all of our services to provide, maintain, protect and |

4

**Relevant Terms of Google's Terms of Service & Privacy Policy, 2008-2013**

<table>
<tr><td></td><td>

improve them, to develop new ones, and to protect Google and our users. We also use this information to offer you tailored content – like giving you more relevant search results and ads.

. . . We use information collected from cookies and other technologies, like pixel tags, to improve your user experience and the overall quality of our services. For example, by saving your language preferences, we'll be able to have our services appear in the language you prefer. When showing you tailored ads, we will not associate a cookie or anonymous identifier with sensitive categories, such as those based on race, religion, sexual orientation or health.

</td></tr>
</table>