WYLY~ROMMEL, PLLC
Sean F. Rommel (*Pro Hac Vice*)
Email: srommel@wylyrommel.com
4004 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 334-8646
Facsimile: (903) 334-8645

CORY WATSON CROWDER & DEGARIS, P.C.
F. Jerome Tapley (*Pro Hac Vice*)
Email: jtapley@cwcd.com
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

*Plaintiffs' Co-Lead Counsel*

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (SBN 138902)
Email: kirk@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone: (916) 567-1111
Facsimile:  (916) 567-1112

*Plaintiffs' Liaison Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE INC. GMAIL LITIGATION | Master Docket No.: 13-MD-02430-LHK |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Judge:   Hon. Lucy H. Koh<br>Place:   Courtroom 8—4th Floor<br><br>Trial Date: October 20, 2014 |

///

///

///

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**
5:13-md-02430-LHK

# TABLE OF CONTENTS

I.   **INTRODUCTION** .................................................. 1

II.  **THE PARTIES** ................................................... 3

III. **JURISDICTION AND VENUE** ................................ 5

IV.  **GENERAL STATEMENT OF FACTS** ...................... 5

  A.    **Gmail** ................................................................ 5

  B.    **Gmail Processes** ................................................ 6

      1.    **Pre- 20  Gmail Email Delivery Flow** ................. 6

         a.  *Incoming Messages* ..................... 6

         b.  *Outgoing Messages* ..................... 7

      2.    **20 — 20  Gmail Email Delivery Flow**............. 8

         a.  *Incoming Messages* ..................... 8

         b.  *Outgoing Messages* ..................... 12

         c.  *Advertising Opt-Out and Method of Access To Gmail* ............ 12

         d.  *Surreptitious User Models* ................. 13

      3.    **Post- 20  Gmail Email Delivery Flow** ................. 14

      4.    **Additional Devices** ................................. 15

      5.    **Google's Unlawful Conduct Occurs In Transit, In Transmission, and/or In Transfer of the Message** ................. 15

      6.    **Google's Use of Collected Data From Email Messages** ................. 16

  C.    **Gmail User Types** ............................................ 16

  D.    **Google's Failure To Disclose That Its Gmail Processes Read, Acquire, and Use Email Message Content Violates Google's Express Agreements With Gmail Users, Cable One Google Apps Users, and Google Apps EDU Users.** .............................. 17

      1.    **No user consents to Google's unlawful conduct because Google's agreements are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.** .......... 17

      2.    **No Cable One Google Apps user consents to Google's unlawful conduct because Google's agreements are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.** ................. 22

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

3.       **No Google Apps EDU user consents to Google's unlawful conduct because Google's agreements are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.** ..................................................25

4.       **No Gmail user, Cable One Google Apps user, or Google Apps EDU user consents to Google's unlawful conduct because Google's Privacy Policies are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.** ..........29

5.       **No person consents to Google's unlawful conduct based on other statements about Gmail processing because: (a) Google is the sole source of the information contained within the statement; and, (b) the information provided by Google is materially false, misleading, or omits material facts.** ..................................................31

6.       **No person consents to Google's unlawful conduct because Google violates its user agreements and notices, because Google makes false and/or misleading statements, and because Google does not disclose the accused conduct.** ..................................................33

E.       **Google's Unlawful Devices** ..................................................34

V.     **CAUSES OF ACTION** ..................................................34

**COUNT ONE** (Violations of 18 U.S.C. §§ 2510 *et seq.*) ..................................................34

A.       **Plaintiffs** ..................................................35

1.     *Plaintiff Keith Dunbar* ..................................................35

2.     *Plaintiffs Fread and Carrillo* ..................................................35

3.     *Plaintiff A.K., as Next Friend of Minor, J.K.* ..................................................39

4.     *Scott, Harrington, Kovler, Scott II, Knowles, and the Classes of Non-Gmail Users* ..................................................39

B.       **ECPA Violations** ..................................................40

**COUNT TWO** (Violations of Cal. Penal Code §§ 630, *et seq.*) ..................................................45

A.       **Violations of Cal. Penal Code § 631(a)** ..................................................47

B.       **Cal. Penal Code § 637.2 Relief** ..................................................48

**COUNT THREE** (Violations of Maryland Courts and Judicial Proceedings Code Ann. §§ 10-402, *et seq.*) ..................................................49

**COUNT FOUR** (Violations of Florida Statute §§ 934.03, *et seq.*) ..................................................52

VI.    **CLASS ALLEGATIONS** ..................................................56

A.       **Ascertainability** ..................................................58

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

       1.       *The Cable One Google Apps Class* .........................................58

       2.       *The Google Apps EDU Class* ...............................................59

       3.       *The Minor Class* ......................................................................59

       4.       *The Scott, Harrington, Kovler, Scott II, and Knowles Classes* ............59

   **B.**     **<u>Numerosity</u>** ..........................................................................................60

   **C.**     **<u>Commonality</u>** ......................................................................................60

   **D.**     **<u>Typicality</u>** .............................................................................................63

       1.       *Plaintiff Keith Dunbar* ..........................................................63

       2.       *Robert Fread and Rafael Carrillo* ........................................63

       3.       *Brad Scott, Todd Harrington, and Ronald Kovler* ...............64

       4.       *A.K., Next Friend of Minor Child, J.K.* .................................64

       5.       *Plaintiffs Matthew C. Knowles and Brent Matthew Scott* .....................64

   **E.**     **<u>Adequacy of Representation</u>** ..........................................................65

   **F.**     **<u>Predominance – There Are No Individual Issues and a Class Action is Superior</u>** ...............................................................................................65

**VII.**  **<u>JURY DEMANDED</u>** ....................................................................................66

**VIII.** **<u>PRAYER FOR RELIEF</u>** ............................................................................66

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

PLAINTIFFS, by and through LEAD PLAINTIFF, KEITH DUNBAR, file this CONSOLIDATED CLASS ACTION COMPLAINT against Defendant Google, Inc. ("Google"), and allege the following:

## I.   **INTRODUCTION**

1.   Google's Mindset:

*Google policy is to get right up to the creepy line and not cross it.* – October 2010.

*We know where you are. We know where you've been.  We can more or less know what you're thinking about.* - October 2010.

*If you have something that you don't want anyone to know maybe you shouldn't be doing it in the first place.* - December 2009.

*We do worry that as this [personal] information gets collected, it becomes a treasure trove.* - August 2008.

*Your digital identity will live forever...because there's no delete button.* – April 2013.

Eric Schmidt, Former CEO, Google Inc.

2.   Unbeknownst to millions of people, on a daily basis and for years, Google has systematically and intentionally crossed the "creepy line" to read private email messages containing information "you don't want anyone to know," and to acquire, collect, or "mine" valuable information from that mail.  Google has one intended purpose for this systematic practice of reading private messages and collecting the data therein: to know and profit from what "you're thinking about."

3.   In short, Google unlawfully opens up, reads, and acquires the content of people's private email messages.  Google may say it automatically "scans" messages and that no humans are involved, but Google actually reads each and every message in order to determine exactly what the author of the message is saying and thinking.  In reality, actual human beings couldn't do it any better, faster, or cheaper.

4.   Because a private message is comprised of data, Google reads the data just as a person would the words, and acquires or collects the data it knows is the most valuable.  Google creates new derivative data (or "metadata") from the private information in the message to maximize Google's use of this valuable information.  Google then ████████████ this

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

newly created derivative data ███████. This ██████ metadata may ████████ the message itself, but only Google has access to the collected metadata.  Google also takes the collected metadata and places the most valuable pieces in separate storage or servers.  Google uses this separately collected derivative data to build surreptitious user models or profiles. Google also uses the collected content and metadata in combination with other data (such as web search history) to "know where you are...know where you've been...[and] know what you're thinking about."

5.     Google tells people that Gmail messages are automatically scanned or filtered for unwanted spam and viruses.  But for years Google's filtering for spam and viruses actually occurred in a process ██████ Google's reading and content acquisition of private email messages for the author's thoughts and meaning.  Accordingly, Google reads and acquires the content of the private email message █████████████████████ ████████ Google ███████████████████████████████████ ██████ However, the email content that Google continues to read, acquire, collect, and annotate is not actually used by Google for spam and virus filtering.  Google's reading and content acquisition of private messages has nothing to do with spam and virus protection.

6.     Google tells people that users' emails are automatically processed to display content based advertising to its users.  Google told potential customers and users who did not (or would not) receive advertising with their email service that their private email messages would not be processed by Google's "advertising systems."  But, Google does not disclose the extent of its processing.  After ██████ of 20██, Google's processes for reading and content acquisition of private email messages occurred ██████ the systems Google might later use for advertising.  As a result, Google actually read and acquired the content of the private email message for the author's thoughts and meaning *regardless* of whether Google further processes the email through its advertising servers.

7.     Plaintiffs bring this Consolidated Individual and Class Action Complaint on behalf of themselves and those classes of similarly situated persons: (1) to require Google to fully and truthfully disclose its practices; and (2) for damages resulting from Google's unlawful

1    conduct in violation of their statutory privacy rights.

2                            II.    **THE PARTIES**

3            8.    Lead Plaintiff, Keith Dunbar ("Dunbar"), is a resident of the State of Texas and

4    is over the age of nineteen (19) years.  Dunbar asserts claims, individually, and on behalf of a

5    class of similarly situated Cable One Google Apps subscribers, against Google for Google's

6    unlawful interception and use of Dunbar's electronic communications in violation of the

7    Electronic Communications Privacy Act of 1985 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*  Dunbar

8    and the Class he seeks to represent are Cable One Google Apps subscribers who do not receive

9    advertising.  Google nonetheless unlawfully intercepts and uses the content of their email

10   messages in violation of 18 U.S.C. §§ 2511(1)(a) and (1)(d).  No person consents to Google's

11   unlawful conduct.

12           9.    Plaintiff, Brad Scott ("Scott"), is a resident of the State of Maryland and is over

13   the age of nineteen (19) years.  Plaintiff, Todd Harrington ("Harrington"), is a resident of the

14   State of Alabama and is over the age of nineteen (19) years.  Plaintiff, Ronald Kovler

15   ("Kovler"), is a resident of the State of New Jersey and is over the age of nineteen (19) years.

16   Scott, Harrington, and Kovler assert claims, individually, and on behalf of a class of similarly

17   situated non-California residents and non-Gmail subscribers, against Google for Google's

18   unlawful recording of and wiretapping of their communications in violation of California's

19   Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq.*  CIPA requires all parties to a

20   communication to consent to the reading of a private message.  Scott, Harrington, Kovler, and

21   their Class of non-Gmail users have not consented to Google's unlawful conduct.  In addition,

22   Scott, Harrington, Kovler, and a nationwide Class of non-Gmail users they seek to represent

23   allege violations of ECPA, specifically §§ 2511(1)(a) and (1)(d).

24           10.   Plaintiff, Matthew C. Knowles ("Knowles"), is a resident of the State of

25   Maryland and is over the age of nineteen (19) years.  Knowles asserts claims, individually, and

26   on behalf of a class of similarly situated Maryland residents and non-Gmail subscribers, against

27   Google for Google's unlawful interception and use of Knowles' electronic communications in

28   violation of Maryland's Wiretap Act, Md. Code Ann. § 10-402 *et seq.*  Maryland requires all

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

parties to a communication to consent to the reading of a private message.  Knowles and his Class of non-Gmail users have not consented to Google's unlawful conduct.

11.     Plaintiff, A.K., next friend of Minor Child, J.K., is a resident of the State of Illinois and is over the age of nineteen (19) years.  Minor Child, J.K., is a resident of the State of Illinois and is sixteen (16) years of age.  A.K. asserts claims on behalf of Minor Child J.K., individually, and on behalf of a class of similarly situated minor Gmail subscribers, against Google for Google's unlawful interception and use of J.K.'s electronic communications in violation of ECPA, specifically §§ 2511(1)(a) and (1)(d).  As minors, A.K. and the Minor Class have not consented to Google's unlawful conduct in violation of ECPA.

12.     Plaintiff, Brent Matthew Scott ("Scott II"), is a resident of the State of Florida and is over the age of nineteen (19) years.  Scott II asserts claims, individually, and on behalf of a class of similarly situated Florida residents and non-Gmail subscribers, against Google for Google's unlawful interception and use of Scott's electronic communications in violation of Florida's Wiretap Act, Florida Statute §§ 10-402 *et seq.*  Florida requires all parties to a communication to consent to the reading of a private message. Scott II and his Class of non-Gmail users have not consented to Google's unlawful conduct.

13.     Plaintiff, Robert Fread, is a resident of the State of Hawaii and is over the age of nineteen (19) years.  Plaintiff, Rafael Carrillo, is a resident of the State of California and is over the age of nineteen (19) years.  Fread and Carrillo assert claims, individually, and on behalf of a class of similarly situated Google Apps for Education ("Google Apps EDU") subscribers against Google for Google's unlawful interception and use of their electronic communications in violation ECPA.  Even though Google does not serve advertising to these accounts, Google still unlawfully intercepts and uses the content of Plaintiffs' email messages in violation of 18 U.S.C. §§ 2511(1)(a) and (1)(d).  No person consents to Google's unlawful conduct.

14.     Google Inc. ("Google") is a Delaware corporation, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, County of Santa Clara, State of California.  Google conducts business in all fifty (50) States.  Plaintiffs served Google and Google is a party.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

### III.   JURISDICTION AND VENUE

15.     Pursuant to the Transfer Order dated April 1, 2013, from the United States Judicial Panel on Multidistrict Litigation, and 28 U.S.C. § 1407, the following cases were transferred to this Court for coordinated or consolidated pre-trial proceedings: *Keith Dunbar v. Google, Inc.*, C.A. No. 5:12-03305, Northern District of California; *Brad Scott, et al. v. Google, Inc.*, C.A. No. 5:12-03413, Northern District of California; *Brent Matthew Scott v. Google, Inc.*, C.A. No. 4:12-00614, Northern District of Florida ("*Scott* II"); *A.K. v. Google, Inc.*, C.A. No. 3:12-01179, Southern District of Illinois; *Matthew C. Knowles v. Google, Inc.*, C.A. No. 1:12-02022, District of Maryland; and *Kristen Brinkman v. Google, Inc.*, C.A. No. 2:12-06699, Eastern District of Pennsylvania.   By stipulated administrative motion, this Court ordered *Fread, et al. v. Google, Inc.,* C.A. No. 13-01961, Northern District of California, to be related, coordinated, and consolidated as part of MDL 2430.   Service is complete for all underlying actions.  The Court has subject matter jurisdiction over the actions pursuant to: (1) 28 U.S.C. § 1331 because Plaintiffs *Dunbar, A.K., Fread, Carrillo, Scott, Harrington,* and Kovler bring claims arising under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.,* a law of the United States; and, (2) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiffs *Scott, Scott II, Knowles,* and Kovler bring claims on behalf of citizens of states different than Google and the amounts in controversy exceed $5,000,000.00 exclusive of interests and costs.

16.     This Court has general and specific personal jurisdiction over Google because Google is a resident of California.

17.     Venue is proper in this district for all 28 U.S.C. § 1407 purposes as a result of the April 1, 2013 Transfer Order from the United States Judicial Panel on Multidistrict Litigation.

### IV.   GENERAL STATEMENT OF FACTS

**A.   Gmail**

18.     Google operates an electronic communication service named Gmail.

19.     Google considers Cable One Google Apps users and Google Apps EDU users as Gmail users with Gmail accounts.  Google employs the same processes for Cable One Google

1   Apps and Google Apps EDU accounts as Google does with Gmail accounts.

2       20.   Within Gmail, users can send and receive email messages.  Users send outgoing

3   messages and receive incoming messages.

4       **B.**   **Gmail Processes**

5           **1.**   **Pre-████ 20██ Gmail Email Delivery Flow**

6               ***a.*** ***Incoming Messages***

7       21.   In order for Google to accept an email from outside of the Gmail system, the

8   computer server transmitting the email must successfully exchange a series of command/reply

9   sequences with Google's servers, using the Simple Mail Transfer Protocol ("SMTP").  During

10  the SMTP process, Google implements an ███████████████████ Plaintiffs do

11  not assert claims or violations of law for the separate and distinct ████████████████

12  ██████ during the SMTP process.

13      22.   After an incoming external email message completes the SMTP process, Google

14  sends the incoming email message to the ███████████.  Google then delivers the email

15  message to the ████████████ for classification.

16      23.   The ████████████ is a distinct piece of Gmail infrastructure that

17  ███████████████ Plaintiffs do not assert claims or violations of law for the

18  separate and distinct processes of the Gmail ████████████████.

19      24.   If Google determines the message is ██████, Google delivers the message to

20  the ████████ (a piece of Gmail infrastructure).

21      25.   When a Gmail user is ████████ a regular Gmail account (which receives

22  content-based advertising) and receives an incoming email message, Google transmits the

23  message ████████████████████████████████████.  The

24  ███████ reads and acquires the content of the message.  Based upon the acquired content of

25  the message, Google selects a matching advertisement and attaches it to the message.  Google

26  then delivers the incoming message and the advertisement to the receiving Gmail user.

27      26.   When a Gmail user is ████████ a regular Gmail account (which receives

28  content-based advertising) and receives an incoming email message, Google delivers the

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS
ACTION COMPLAINT**

incoming message to the ███████████████ (a piece of Gmail infrastructure distinct from the ████████████). Once the user ████████, the ████████████████ sends the yet undelivered message to the ██████████████. Google then transmits the message to the ████████ ████████████████████ reads and acquires the content of the message. Based upon the acquired content of the message, Google selects a matching advertisement and attaches it to the message. Google then delivers the incoming message and the advertisement to the receiving Gmail user.

27. The CAT2 mixer (or ██████████████████████) is a distinct piece of ████████ infrastructure which Google uses for Gmail and Google's Adsense program to read and acquire content and then ██████████████ based upon the acquired content.

28. The CAT2 mixer reads the submitted content of an email for ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

29. The Medley Server is a distinct piece of Gmail infrastructure that reads and acquires the content of the transmitted email message.

30. The ICEbox Server is a distinct piece of Gmail infrastructure that reads and acquires the content of the transmitted email message for ███████████ and other characteristics.

31. Google uses additional devices to read and acquire email message content.

### b.   Outgoing Messages

32. When a Gmail user sends an outgoing message from a regular Gmail account (which receives content-based advertising), Google transmits the outgoing message to the ████████████. Google then transmits the outgoing message from the ████████████████ ████████████████████████ reads and acquires the content of the message. Based upon the acquired content of the message, Google selects and returns a matching advertisement to the sending Gmail user.

33. Following the ██████████████ reading and content acquisition of the message, Google transfers the outgoing message ████████████████████████████████████████ ████████████ Google transmits the message to the ████████████████████

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

34.   The █████████████ performs its separate and distinct processes for ███████████  Plaintiffs do not assert claims or violations of law for the separate and distinct processes of the Gmail ████████████.

35.   Google then transmits the outgoing message to the SMTP-out server for external delivery.

36.   When a Gmail user sends an outgoing message to another Gmail user who has a regular Gmail account (which receives content-based advertising) but who is ████████, Google sends the outgoing message to the ██████ and then transmits the message to the ████████████ of the Gmail user recipient.  The ██████████ and the █████ ██████ are distinct and different Gmail devices.  Once the recipient █████ the █████ ███████████████████████████████, Google then transmits the message to the ████████ where the ██████████ reads and acquires the content of the message.  Based upon the acquired content of the message, Google selects a matching advertisement and attaches it to the message.  Google then delivers the message and the advertisement to the receiving Gmail user.

37.   When a Gmail user sends an outgoing message to another Gmail user who has a regular Gmail account (which receives content-based advertising) and who is ██████, Google transmits the message to the ██████████ where the ██████████ reads and acquires the content of the message.  Based upon the acquired content of the message, Google selects a matching advertisement and attaches it to the message.  Google then delivers the message and the advertisement to the receiving Gmail user.

38.   For Gmail users, the reading and content acquisition of the outgoing message by the ████████████████████ from the reading and content acquisition of the incoming message by the ██████████.

2.      █████ 20██—████████ 20██ Gmail Email Delivery Flow

*a.   Incoming Messages*

39.   Beginning in ██████ 20██ Google changed its Gmail email delivery flow but did not change its public disclosures or disclosures to contracting third parties to disclose

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Google's new and additional COB (Content Onebox) process.  COB allows Google to read, acquire, and use message content separate from the ███████████████████ ███ and *regardless* of whether the Gmail user receives advertisements.

40.    The initial SMTP process occurs as alleged *supra*.  This case does not assert claims or violations of law for the separate and distinct processes of the ███████████████ ███████████ during the SMTP process.

41.    When an incoming external email message completes the "SMTP," Google sends the message to the ██████████.  Following transfer to the ██████████, the message undergoes what Google describes as ██████ processing."

42.    ████████████, which is a separate and distinct piece of Gmail infrastructure and performs its own separate processes, processes the email message.  Plaintiffs do not assert claims or violations of law for the separate and distinct processes of the Gmail ██████████.

43.    From the ██████████, Google transmits the message to the ████ ██████████.

44.    ████████████ is a separate and distinct piece of Gmail infrastructure and performs its own separate processes.  Plaintiffs do not assert claims or violations of law for the separate and distinct processes of the Gmail ██████████ ████.

45.    ████████████████████████████████ the ██████████ transfers the message to ██████████ server.  ██████████ server is a separate and distinct piece of Gmail infrastructure.

46.    ██████████ server reads and acquires the content of the transmitted message to identify the following: █████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████ and (9) other information from the content of the email message.

47.    Probabilistic Hierarchical Inferential Learner (PHIL) clusters amount to the

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

inferred meaning of particular words or phrases derived by reading and acquiring the content of the email message.

48.    Through PHIL clusters, Google learns "concepts" by learning an explanatory model of text.  As such, PHIL's concepts are supposed to model the *actual ideas* in a person's mind before that person accesses the text that is read and acquired by Google.

49.    The █████ created by Google are the derived concepts of the content of the message.

50.    Google also transmits the message to the █████████ server.  The DTS/REPHIL server is a separate and distinct piece of Gmail infrastructure.  The DTS/REPHIL server reads and acquires the content of the transmitted message.

51.    Google also transmits the message to the █████ server.   The █████ server is a separate and distinct piece of Gmail infrastructure.  The █████ server reads and acquires the content of the transmitted message.

52.    Google also transmits the message to the █████████.  The █████████ is a separate and distinct piece of Gmail infrastructure.  The █████████ reads and acquires the content of the transmitted message.

53.    For every message that is ████████████, Google reads or attempts to read, and acquires or attempts to acquire the message content through the ████████████ ████████████████████████████████ and the additional delivery processes.  Collectively, Google refers to these processes as the "COB process."

54.    Google also uses additional undisclosed devices which read and acquire message content in the COB process.

55.    At the time Google reads and acquires the message content in the COB process, Google collects the content and creates metadata about that content.  Google █████████ ███████████████████████████████████████████████████████████ ████████████████████████████████ Google calls this ██████████████████ █████████████.

56.    "Nemo" is Gmail's monetization component.  For *every* message that Google

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

█████████ and regardless of whether Google transfers the message to an advertising processor to serve ads, Google reads or attempts to read and acquires or attempts to acquire the message content through the COB process.  Google collects or attempts to collect the content, creates or attempts to create metadata, and collects and ███████████████████.

57.   ████████████████████████████
███████████████████████████████████
█████████

58.   Google ████████████████ to the Caribou Server.  The Caribou Server is a separate and distinct piece of Gmail infrastructure.  The Caribou Server reads and acquires the content of the transmitted message and the ████████.

59.   Google ████████████████ to the Medley server, which is a separate and distinct piece of Gmail infrastructure.  The Medley server reads and acquires the content of the transmitted message and the ████████.

60.   Google ████████████████ to Changeling, which is a separate and distinct piece of Gmail infrastructure.  Changeling reads and acquires the email message's ████████, if any.

61.   When a Gmail user is ████████ a regular Gmail account (which receives content-based advertising) and receives an incoming email message, Google ████████ ████████████████████████████████ reads and acquires the content of the message.  Based upon the acquired content of the message and ████████, Google selects a matching advertisement and ████████ ████ the message.  Google then delivers the incoming message and the advertisement to the receiving Gmail user.  Google transmits the message and the collected █████████████████████████████.

62.   When a Gmail user is ████████████ a regular Gmail account (which receives content-based advertising) and receives an incoming email message, Google delivers the message and collected ███████████████████████ Once the user ████████ the █████████████████████████████████████
███████████████████████████████████

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1  ████████████████████████ reads and acquires the content of the message.

2  Based upon the acquired content of the message and ██████, Google selects a matching

3  advertisement and ████████ the message.  Google then delivers the incoming message and

4  the advertisement to the receiving Gmail user.  Google ████████████████████████

5  ████████████████████

6       63.    Plaintiffs incorporate the allegations *supra* relating to the CAT2 mixer or

7  ████████████████ Medley Server, ICEbox Server and other devices which read and

8  acquire email content.

9                       *b.    Outgoing Messages*

10       64.    When a Gmail user sends an outgoing message from a regular Gmail account

11  (which receives content-based advertising), Google transmits the outgoing message to the

12  ████████████████████████████ reads and acquires the

13  content of the message.  Based upon the acquired content of the message, Google selects and

14  returns a matching advertisement to the sending Gmail user.

15       65.    ████████████ reads and acquires the content of the message, Google

16  transfers the outgoing message ████████████████████████,

17  Google then transmits the message to the ████████████.

18       66.    The ████████████ performs its separate and distinct processes for

19  ████████ Plaintiffs do not assert claims or violations of law for the separate and distinct

20  processes of the Gmail ████████████.

21       67.    Google then transmits the outgoing message to the SMTP-out server for external

22  delivery.

23       68.    For Gmail users, the reading and content acquisition of outgoing messages by the

24  ████████████████ from the reading and content acquisition of incoming

25  messages by the ████████.

26              *c.    Advertising Opt-Out and Method Of Access To Gmail*

27       69.    Google claims that Gmail users may opt-out of content-based advertising ("If

28  you don't want to see ads in Gmail, you can choose to use Gmail's basis HTML view, or POP

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS
ACTION COMPLAINT**

or IMAP[]") or access their email using a method that does not display advertising at all (*e.g.* messages that are "pushed" to mobile devices like iPhones, iPads, and Blackberries).  This simply ██████ Google  from  transmitting  the  message  to  the  ██████  or  equivalent advertising server.   However,  Google  still  employs  the  "█████  process"  to  every  email (including COB processing) which reads and acquires the content of ████████ message *regardless* of whether  Google  additionally  reads  and  acquires  the  content  of  the  message through the separate and distinct ████████ or equivalent advertising server.

70.    Regardless  of  how  a  Gmail  user  accesses  the  email  message,  all  of  the  same information or type of information is read, acquired, collected, and used, irrespective of whether Google does so by using the COB processing, the ██████████████████.

71.    Google  claims  that  it  does  not  process  certain  Google  Apps  users'  email messages through its advertising servers; this means that Google does not route these messages ████████████  However, regardless of whether Google routes a message to the ████ ████, Google still employs the "█████  process" to every email, including COB processing (wherein Google reads, acquires, and uses the content of ██████████ message).

72.    Regardless  of  whether  a  Gmail  user  receives  advertising,  all  of  the  same information  or  type  of  information  which  is  read,  acquired,  collected,  and  used  by  the  ████ ██████████████████  is read, acquired, collected, and used, during COB processing.

### d.    *Surreptitious User Models*

73.    The  ██████████  builds  user  models  from  the  content  of  the  email message, the collected ████████████████████. This User Model includes, but is not limited to, the  following  information:  ████████ ████████████████████████████████ ████████████████████████████████ ██████.  Google collects this information from the email messages and ████████ the ████ ████████  builds the User Models, and Google stores the User Models.

74.    Through the ██████████ and user modeling, Google collects and stores

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

the derivative data from the user's email message ███████████ from the original email message.

75.   The ████████████ also collects the user's web (search) history. The ███ ████████ applies this web (search) history with the user's email message history to build the user model.

76.   Google's collection of information from email messages to build User Models is secret, and Google does not disclose its secret user profiling to anyone.

77.   Google never informs anyone that Google uses information contained within incoming email messages to Gmail users to build secret user models. Although Google builds user models to discern the thoughts of Gmail users, Google collects the derivative data in large part from incoming messages which represent the contemporaneous thoughts of the senders.

78.   Google's application of a user's collected web (search) history with a user's collected email message content and derivative data is secret, and Google does not disclose its secret user profiling to anyone.

**3.   Post-████████ 20██ Gmail Email Delivery Flow**

79.   In ███████ of 20██, Google █████ its COB process to occur █████ the ████ ████████████

80.   The initial SMTP process occurs as alleged *supra*. This case does not assert claims or violations of law for the separate and distinct processes of the ████████████ ████████████ the SMTP process.

81.   When an incoming external email message completes the "SMTP," Google sends the message to the ████████████.

82.   The ████████████████ the message to the COB process, where the COB process performs the actions alleged *supra*.

83.   Google added a separate and distinct piece of Gmail infrastructure known as ████████ to the COB process. The ████████ server reads and acquires the content of the transmitted message.

84.   Google reads and acquires the message content through the COB process,

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1   regardless of whether the user receives advertisements or how the user accesses Gmail.

2         85.   At the time Google reads and acquires the message content in the COB process,

3   Google collects the content and creates metadata about that content.  Google ████████

4   ████████████████████████████████████████████████████████████████████████

5   ██████████████████

6         86.   Once read, analyzed, acquired, used, and processed by the COB process, Google

7   returns the message and the ████████████████████████████████████████████████

8   ████████████████

9         87.   Google then transmits the message and the ████████ to the ████

10  ████████████   However, Google only uses part of the COB process in the ████

11  ████████████   Plaintiffs do not assert claims or violations of law for the separate and

12  distinct processes of the Gmail ████████████████ which may use some of the limited

13  output of the COB process.

14        88.   If determined as ████████, Google transmits the message and ████████ to the

15  ████████ and the message and ████████ undergo the same processes alleged *supra*.

16        89.   Regardless of how the user accesses their Gmail account, or whether the user

17  receives content-based advertising or not, Google still employs the "████ process" to every

18  email, including COB processing, where Google reads and acquires the content of every

19  message.

20        90.   The user modeling occurs as alleged *supra*.

21        **4.**    **Additional Devices**

22        91.   Google uses additional and separate devices to read and acquire the content of

23  incoming and outgoing email messages.

24        **5.**    **Google's Unlawful Conduct Occurs In Transit, In Transmission,**
25               **and/or In Transfer of the Message**

26        92.   With the exception of the ████████████████████, the devices

27  identified *supra* are not storage devices.  Google's reading of the email message content, the

28  acquisition of such content, the collection of such content, the creation of new derivative data

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS
ACTION COMPLAINT**

from this content and collection of same, and the use of the content and annotations from the email messages does not occur in storage.  Google transfers, transmits, or routes each message to each accused device for the purpose of a designated function which is to read and acquire content from the message.

**6.    Google's Use of Collected Data From Email Messages**

93.    Google reads and acquires the content of email messages and uses the content to create derivative data that is more useful to Google and easier to subsequently process and store—whether ███████ to the email message or ████████████████ the email message.

94.    Google uses the content of email messages and the derivative data it creates to build user profiles or models.

95.    Google uses the content of email messages and the derivative data it creates to avoid paying for "traffic acquisition costs" as defined by Google on page 32 of its 10K filed with the Securities Exchange Commission for the year ended December 31, 2010.  Google has no rights or license in the email message content data at issue.  But, through Google's reading, acquisition, and use of private message content, Google obtains for free the exact type of information and data for which it pays third parties.  Google uses the content of email messages and the derivative data it creates to allow its human engineers to read and work with the message content.

96.    Google uses the content of the email messages and the derivative data it creates for its own benefit in other Google services unrelated to the service of email or the particular user.

97.    Google uses the content of the email message and the derivative data it creates for other purposes and for Google's profit.

**C.    Gmail User Types**

98.    Google offers free email accounts through Gmail.

99.    Through its Google Apps Partner program, Google also operates its Gmail service on behalf of Internet Service Providers (ISP's), such as Cable One.  Cable One then re-sells the Gmail service labelled e.g. "Cable One, Powered by Google" or "Mycableone.com,"

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1   under its domain name and service to their customers, including Plaintiff Dunbar.  This type of

2   account is referred to as the Cable One Google Apps account.  As a matter of contract between

3   Cable One and Google, no Google service offered through the Cable One Google Apps

4   accounts can display advertisements.  Google considers Cable One Google Apps users who use

5   Gmail to be Gmail users with Gmail accounts and processes incoming email messages the same,

6   except for serving content-based advertising.

7       100.   Through Google Apps for Education (EDU), Google operates its Gmail email

8   service on behalf of educational organizations for students, faculty, staff, alumni, and members

9   of these organizations.  Like the Google Apps Partner program, the educational organizations

10  require students who pay tuition for this service (and the other users) to use the Gmail service

11  labelled as, *e.g.*, "name.institution.edu," but "Powered by Google."   This type of account is

12  referred to as the Google Apps EDU account.  Google considers Google Apps EDU users who

13  use Gmail to be Gmail users with Gmail accounts, and Google processes these incoming email

14  messages the same, even though Google Apps EDU users do not receive content-based

15  advertising.

16      **D.    Google's Failure To Disclose That Its Gmail Processes Read, Acquire, and
17           Use Email Message Content Violates Google's Express Agreements With
             Gmail Users, Cable One Google Apps Users, and Google Apps EDU Users.**

18           **1.    No user consents to Google's unlawful conduct because Google's
19                 agreements are silent on the processes, contradict other agreements,
                   or violate the terms of service and legal notices.**

20      101.   For Gmail users there are two applicable Google Terms of Service within the

21  class periods beginning in November of 2008: the Google Terms of Service dated April 16,

22  2007, and the Google Terms of Service dated March 1, 2012.

23      102.    Google's Terms of Service, the Gmail Legal Notices, and the Gmail Program

24  Policy do not disclose Google's unlawful conduct and do not obtain consent for the unlawful

25  activities.

26  ///

27  ///

28  ///

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS
ACTION COMPLAINT**

103.    At ¶ 8.3 of the 2007 version of the "Terms of Service," Google states:

> Google reserves the right (but shall have no obligation) to pre-screen, review, flag, filter, modify, refuse or remove any or all Content from any Service.  For some Services, Google may provide tools to filter out explicit sexual content.  These tools include the SafeSearch preference settings (see http://www.google.com/help/cutomoze.html#safe).   In addition, there are commercially available services and software to limit access to material that you may find objectionable.

Google removed this language from Google's March 2012 Terms of Service.

104.    The first sentence of ¶ 8.3 of the "Terms of Service," when viewed in the context of the entirety of Section 8 and the remaining sentences within ¶ 8.3, is limited to Google's reservation of rights to protect its services and users.  No wording in ¶ 8.3 addresses or obtains consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

105.    The words "pre-screen," "review," "flag," "filter," "modify," "refuse," and "remove" used in the context of ¶ 8.3 of the Terms of Service, Section 8 of the Terms of Service, the "Terms of Service," the "The Terms of Service Highlights," the "Gmail Legal Notices," the "Program Policies," and the "Privacy Policy"  do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

106.    Paragraph 17.1 of the "Terms of Service" advises users that "*Some* of the Services are supported by advertising revenue and may display advertisements and promotions." (Emphasis added).  Google does not refer to Gmail as a Service to which this provision is applicable.  Google removed this language from Google's March 2012 Terms of Service.

107.    Paragraph 17.1 of the "Terms of Service" further provides, "These advertisements may be content-based to the *content* information *stored* on the Services, queries made through the Service or other information." (Emphasis added).  Google does not refer to Gmail as a service to which this provision is applicable or define the applicable "content."

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

108.   At ¶ 17.1 in the "Terms of Service," Google does not advise the user how the "content" is "content-based."

109.   At ¶ 17.1 in the "Terms of Service," Google does not advise the user that "content" may be derived from incoming or outgoing messages in transit.

110.   At ¶ 17.1 in the "Terms of Service," Google does not use the capitalized word "Content" as defined in ¶ 8.1 and used throughout the "Terms of Service," thereby specifically excluding the incoming data or content from others.

111.   At the time Gmail users send or receive messages, those messages are not stored on Google's Gmail.  Google's unlawful conduct does not occur during storage.

112.   At the time Gmail users send or receive messages, those messages are not queries through Gmail or other information.

113.   The language of ¶ 17.1 in the "Terms of Service," when compared to the context of the "Terms of Service," the "Gmail Legal Notices," "The Program Policies," and the "Privacy Policy," do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

114.   Paragraph 17.3 of the "Terms of Service" provides, "In consideration for Google granting you access to and use of the Services, you agree that Google may *place such advertising on the Services*."  Google removed this language from Google's March 2012 Terms of Service.  Paragraph 17.3 only allows Google to place advertisements on the unidentified services; it does not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

115.   Pursuant to ¶ 1.5 of the "Terms of Service," the Additional Terms or Legal Notices for a particular Service, like Gmail, take precedence over any term within the "Terms of Service."

116.   The Gmail Legal Notices do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

from such content and collection of the same, or use and store the content and annotations from the email messages.

117.   The "Gmail Legal Notices" specifically states, "Google does not claim any ownership in any of the content, including any text, data, information, images, photographs, music, sound, video, or other material, that you upload, transmit or store in your Gmail account."

118.   Google's reading of email message content, the act of acquiring and collecting email message content for separate storage apart from the user's email message, and Google's exclusive access and use of that message content violates the "Gmail Legal Notices."

119.   Google's creation, acquisition, and collection of data derived from email message content, the separate use and storage of this metadata, and Google's exclusive access and use of that metadata violates the Gmail Legal Notices.

120.   The "Gmail Legal Notices" specifically state, "We will not use any of your content for any purpose except to provide you with the Service." Google removed this language from Google's March 2012 Terms of Service.

121.   The electronic communication service known as Gmail is the only applicable Google "Service" within the "Gmail Legal Notices."

122.   Advertising is not the applicable Google "Service" within the "Gmail Legal Notices."

123.   Advertising is not a Google "Service" to Gmail users.

124.   Advertising is not a "Service" within Gmail.

125.   Paragraph 17.1 of the "Terms of Service" distinguishes "Services" from advertising revenues which pay for the "Services."

126.   Paragraph 17.3's specific request for the user to agree to the placement of advertisements on Services evidences that advertisements are not "Services."

127.   Paragraphs 7.1, 7.2, 8.3, 17.1, and 17.3 of the "Terms of Service" contradict the Gmail Legal Notices and are invalid to the extent that they attempt to allow Google to read email message content, acquire such content, collect such content, create derivative data from

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

such content and collection of the same, or use and store the content and annotations from the email messages.

128.    Paragraphs 7.1, 7.2, 8.3, 17.1, and 17.3 of the "Terms of Service" and "Gmail Legal Notices" are silent with regard to allowing Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

129.    Paragraphs 7.1, 7.2, 8.3, 17.1 and 17.3 of the "Terms of Service" and "Gmail Legal Notices" do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

130.    Due to Google's violations of its own Terms of Service and Legal Notices with Gmail users, no Gmail user ever gives Google consent to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

131.    Due to Google's violations of its own Terms of Service and Legal Notices with Gmail users, Google is not operating within the ordinary course of business when it reads email message content, acquires such content, collects such content, creates derivative data from such content and collection of the same, or uses and stores the content and annotations from the email messages.

132.    Due to Google's violations of its own Terms of Service and Legal Notices with the Gmail user, the Gmail user does not and cannot consent to Google's unlawful conduct in the transmission of any email message to or from any Plaintiff or Class Member.

133.    Due to Google's violations of its own Terms of Service and Legal Notices with the Gmail user, Google's actions are not within the ordinary course of business in the transmission of any email message to or from any Plaintiff or Class Member.

134.    Due to the silence of Google's Agreements with the Gmail user, the Gmail user does not consent to Google's unlawful conduct in the transmission of any email message to or from any Plaintiff or Class Member.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

135.   Due to the silence of Google's Agreements with the Gmail user, Google's actions are not within the ordinary course of business in the transmission of any email message to or from any Plaintiff or Class Member.

> **2.**      **No Cable One Google Apps user consents to Google's unlawful conduct because Google's agreements are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.**

136.   Paragraph 1.2 of the Google Apps Partner Edition Agreement with Cable One provides that Google will "protect against unauthorized access to or *use of Customer data*." (Emphasis Added).

137.   The Google Apps Partner Edition Agreement defines "Customer data" as "data, *including email*, provided, generated, transmitted or displayed via the Services by Customer or End Users."  (Emphasis Added).  Cable One Google Apps users are the "End Users."

138.   Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages is the "unauthorized access to or use of Customer data." Google's unlawful conduct violates Paragraph 1.2 of the Google Apps Partner Edition Agreement with Cable One.

139.   Paragraph 1.7 of the Google Apps Partner Edition Agreement with Cable One states, "<u>Ads.</u>  Google will not serve Ads in connection with the Service."

140.   The Google Apps Partner Edition Agreement defines "Service" as "the Google Apps Partner Edition services provided by Google and used by Customer under this Agreement."  Service is not limited to Gmail.

141.   Google's application of the same processes for the service of Ads by reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages, violates ¶ 1.7 of the Google Apps Partner Edition Agreement.

142.   The Google Apps Terms of Service, the Gmail Legal Notices, and the Gmail Program Policy do not disclose Google's unlawful conduct and do not obtain consent for the

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

unlawful conduct.

143. Paragraph Three (3) of the Google Apps Terms of Service applicable to Google Apps Cable One users expressly limits Google's "access" to a Google Apps user's "Content" to only those instances where Google is: (1) "required to do so by law;" or, (2) "in a good faith belief that such access" is "reasonably necessary" to: (a) satisfy any applicable law, regulation, legal process, or enforceable government request; (b) enforce the Terms of Service, including investigation of potential violations hereof; (c) detect, prevent, or otherwise address fraud, security, or technical issues (including, without limitation, the filtering of spam); or, (d) protect against imminent harm to the rights, property, or safety of Google, its users or the public as required or permitted by law.

144. Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages, violates ¶ 3 of the Google Apps Terms of Service.

145. Paragraph 1 of the Google Apps Terms of Service specifically references and includes the Gmail Legal Notices.

146. The Gmail Legal Notices do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

147. The "Gmail Legal Notices" state, "Google does not claim any ownership in any of the content, including any text, data, information, images, photographs, music, sound, video, or other material, that you upload, transmit or store in your Gmail account."

148. Google's reading of email message content, the act of acquiring and collecting email message content, and Google's exclusive access and use of that message content violates the Gmail Legal Notices.

149. Google's creation, acquisition and collection of data derived from email message content, the separate use and/or storage of this metadata, and Google's exclusive access and use

of that metadata violates the Gmail Legal Notices.

150.   The "Gmail Legal Notices" state, "We will not use any of your content for any purpose except to provide you with the Service."   Google removed this language from the March 2012 Legal Notice.

151.   The electronic communication service known as Gmail is the only applicable Google "Service" within the "Gmail Legal Notices."

152.   Because Google cannot by contract serve advertisements to Cable One Google Apps users, Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages in any way associated with Google's service of advertising to other Gmail users or processes related to the service of advertising violates the Gmail Legal Notices.

153.   Google cannot obtain consent for acts contrary to or in violation of the Google Apps Partner Edition Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices.   Due to Google's violations of the Google Apps Partner Edition Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices, no Cable One Google Apps user ever gives Google consent to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

154.   Google cannot operate in the ordinary course of business for acts contrary to or in violation of the Google Apps Partner Edition Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices.

155.   Due to Google's violations of the Google Apps Partner Edition Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices, Google cannot operate within the ordinary course of business when it reads email message content, acquires such content, collects such content, creates derivative data from such content and collection of the same, or uses and stores the content and annotations from the email messages.

156.   Because Cable One Google Apps users do not receive advertising, any purported

statement related to content-based advertising in any Agreements with Google has no application Cable One Google Apps users.   Any purported statement related to content-based advertising in any Agreements with Google expressly contradicts the other terms, disclosures or contracts, and these statements do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

157.   Due to the silence of Google's Agreements with the Cable One Google Apps users, the user does not consent to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

158.   Due to the silence of Google's Agreements with the Cable One Google Apps users, Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages are not within the ordinary course of business.

      **3.**      **No Google Apps EDU user consents to Google's unlawful conduct because Google's agreements are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.**

159.   Paragraph 1.2 of the Google Apps Education Edition Agreement with educational institutions states that Google will "protect against unauthorized access to or *use of Customer data*."  (Emphasis Added).

160.   The uniform Google Apps Education Edition Agreement defines "Customer data" as "data, *including email*, provided, generated, transmitted or displayed via the Services by Customer or End Users."  (Emphasis Added).  Further, the definition specifically includes, "any Personally Identifiable Information, as defined in the Family Education Rights and Privacy Act 20 U.S.C. § 1232g ("FERPA"), of Customer or End users provided, generated, transmitted or displayed via the Services by Customer or End Users."  Google Apps EDU users are "End Users."

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

161.   Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages is the "unauthorized access to or use of Customer data," which violates Paragraph 1.2 of the Google Apps Education Edition Agreement.

162.   Paragraph 1.6 of the uniform Google Apps Education Edition Agreement states, "<u>Ads.</u>  a.  <u>Default Setting</u>.  The default setting for the Services is one that does not allow Google to serve Ads."

163.   The Google Apps Education Edition Agreement defines "Service" as "the Google Apps Education Edition services provided by Google and used by Customer under this Agreement."  Service is not limited to Gmail.

164.   Google's application of the same processes as the processes for the service of Ads by reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages, violates ¶ 1.6 of the Google Apps Education Edition Agreement.

165.   The Google Terms of Service discussed *supra* apply to Google Apps EDU users and are incorporated herein.

166.   Google's Terms of Service, the Gmail Legal Notices, and the Gmail Program Policy do not disclose Google's unlawful conduct and do not obtain consent for the unlawful conduct.

167.   Because Google cannot by contract serve advertisements to Google Apps EDU users, ¶ 17.3 of the Terms of Service is contrary to or in violation of the Google Apps Education Edition Agreement.   Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages violates ¶ 17.3 of the Google Apps Education Edition Agreement.

168.   Because Google cannot by contract serve advertisements to Google Apps EDU

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

users, ¶ 17.3 of the Terms of Service or any purported statement relating to advertising are inapplicable and do not obtain consent for Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

169.   The Gmail Legal Notices do not address or obtain consent from Google Apps EDU users to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

170.   The "Gmail Legal Notices" state, "Google does not claim any ownership in any of the content, including any text, data, information, images, photographs, music, sound, video, or other material, that you upload, transmit or store in your Gmail account."

171.   Google's reading of email message content, the act of acquiring and collecting email message content, and Google's exclusive access and use of that message content violates the Gmail Legal Notices.

172.   Google's creation, acquisition and collection of data derived from email message content, the separate use and/or storage of this metadata, and Google's exclusive access and use of that metadata violates the Gmail Legal Notices.

173.   The "Gmail Legal Notices" state, "We will not use any of your content for any purpose except to provide you with the Service."   Google removed this language from the March 2012 Legal Notice.

174.   The electronic communication service known as Gmail is the only applicable Google "Service" within the "Gmail Legal Notices."

175.   Because Google cannot by contract serve advertisements to Google Apps EDU users, Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages in any way associated with Google's service of advertising to other Gmail users or processes related to the service of

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

advertising violates the Gmail Legal Notices.

176.   Google cannot obtain consent for acts contrary to or in violation of the Google Apps Education Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices.

177.   Due to Google's violations of the Google Apps Education Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices, no Google Apps EDU user ever gives Google consent to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

178.   Google cannot operate in the ordinary course of business for acts contrary to or in violation of the Google Apps Education Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices.

179.   Due to Google's violations of the Google Apps Education Agreement, the Google Apps Terms of Service, and the Gmail Legal Notices, Google cannot operate within the ordinary course of business when it reads email message content, acquires such content, collects such content, creates derivative data from such content and collection of the same, or uses and stores the content and annotations from the email messages.

180.   Because Google Apps EDU users do not receive advertising, any purported statement related to content-based advertising in any Agreements with Google has no application Google Apps EDU users.   Any purported statement related to content-based advertising in any Agreements with Google expressly contradicts the other terms, disclosures or contracts, and these statements do not address or obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

181.   Due to the silence of Google's Agreements with the Google Apps EDU users, the user does not consent to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

182.   Due to the silence of Google's Agreements with the Google Apps EDU users, Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages are not within the ordinary course of business.

**4.      No Gmail user, Cable One Google Apps user, or Google Apps EDU user consents to Google's unlawful conduct because Google's Privacy Policies are silent on the processes, contradict other agreements, or violate the terms of service and legal notices.**

183.   Every Privacy Policy since August 7, 2008, is silent as to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.  No user can ever give consent pursuant to the Privacy Policies.

184.   To the extent any purported language within any Privacy Policy since August 7, 2008 addresses or seeks to obtain consent to allow Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages, such language is contrary to user agreements.  No user can ever give consent pursuant to the Privacy Policies.

185.   Within each version of the Privacy Policy, Google *expressly limits* the information it *collects* from Gmail users, Cable One Google Apps users, and Google Apps EDU users to only the following information: (1) personal information (specifically defined) provided by the user when the user signs up for a Google Account; (2) information derived from the placement of cookies on the user's computer or device; (3) log information; (4) user communications *directed at* Google (as a party); (5) personal information (specifically defined) provided from affiliated Google Services or other sites; (6) information from third party applications; (7) location data from location-enabled services; and, (8) unique application numbers from Google Toolbar.

186.   Google intentionally omits and excludes from any of these categories Google's reading of email message content, acquiring such content, collecting such content, creating

derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

187.   Google amended its Privacy Policy on March 1, 2012, and again on July 27, 2012.  In each version, Google *expressly limits* the information it *collects* from all users of Gmail to the following: (1) information the user gives to Google—the user's personal information; and, (2) information Google obtains from the user's use of Google services, wherein Google lists: (a) the user's device information; (b) the user's log information; (c) the user's location information; (d) the user's unique application number; (e) information stored locally on the user's device; and, (e) information derived from cookies placed on a user's device.

188.   Google intentionally omits and excludes from any of these categories Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.  In addition, because incoming email to all Gmail users is read while in transit, and regardless of whether the user is ████████, it does not amount to "Information we get from your use of our services."

189.   Google violates the express limitations of its Privacy Policies with its reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

190.   Google cannot obtain consent for acts contrary to or in violation of Google's Privacy Policies.

191.   Google cannot act in the ordinary course of business in violation of Google's Privacy Policies.

192.   Due to Google's violations of its own Privacy Policies, no person ever gives Google consent to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

193.   Due to Google's violations of its Privacy Policies, Google does not operate within the ordinary course of business when it reads email message content, acquires such content, collects such content, creates derivative data from such content and collection of the same, or uses and stores the content and annotations from the email messages.

194.   Google's Privacy Policies are silent on, and do not address or obtain consent for Google to read email message content, acquire such content, collect such content, create derivative data from such content and collection of the same, or use and store the content and annotations from the email messages.

195.   Google's Privacy Policies are silent on Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages and these actions are not within the ordinary course of business.

**5.     No person consents to Google's unlawful conduct based on other statements about Gmail processing because: (a) Google is the sole source of the information contained within the statement; and, (b) the information provided by Google is materially false, misleading, or omits material facts.**

196.   While Google claims that all email service providers filter for spam and viruses, users and persons can only consent to Google's filtering for spam and virus protection.

197.   Before ▮▮▮▮▮ 20▮▮, the Gmail ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ ▮▮▮▮ processed messages ▮▮▮▮▮▮ Google processes the message unlawfully by reading, acquiring, and using email message content.  After ▮▮▮▮▮ 20▮▮, only part of the message content collected by the Content Onebox process is actually used by Google for purposes of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ separate processing.  No user or person consents to the unlawful reading, acquisition, and use of the message content acquired by these separate devices which is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

198.   While Google claims that it processes messages for spell-check, language detection, and sorting, it fails to disclose the separate occurrences of Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

the email messages.

199.   Google falsely claims that it simply filters or reviews email messages for "keywords," when in fact Google acquires, collects, and stores this type of content and uses it to create derivative data.

200.   Google falsely asserts that only static "keywords" are reviewed, omitting that it actually reads, acquires, collects, extracts, and ███████ information to determine meaning and concepts through PHIL, ███████████████.

201.   Google falsely implies or overtly creates the false impression that users can: (1) opt-out of advertising; (2) use various ways to access Gmail accounts which will not generate advertising; or, (3) use Apps accounts which will not generate advertising, to prevent Google from Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.  Yet, all of these activities occur regardless of: (1) whether a user opts out of advertising; (2) how a user accesses Gmail; or, (3) whether Google serves advertising to the account.

202.   Google falsely claims that no humans read the email message content when in fact Google employees routinely read, examine, and analyze the collected email message content and/or generated metadata.

203.   Google omits the material fact that for years Google has acquired, collected, and created information from email message content and web (search) history to create secret user profiles.

204.   When a user deletes their email messages, Google omits the material fact that it maintains and stores the collected and created email message data in separate storage.

205.   Google never informs the Gmail user that Google acquires the content of the incoming electronic communication during an "interception."  In fact, Google falsely indicates that it acquires information from the users' inbox—not while the email message is in transit to the recipient.  Accordingly, Google never discloses to the user at what point in time the unlawful conduct occurs, i.e. during the transmission process, after receipt in the user's inbox,

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

or when the user displays the message on her screen.  Accordingly, Google never discloses an actual interception for which it can obtain consent.

206.   Google makes other false or misleading statements and omits other material information about its practices.

207.   For users of Gmail who are required to accept the applicable Terms of Service, Legal Notices, Program Policy, and Privacy Policies, and wherein Google's has expressly contracted that (1) the Terms constitute the whole legal agreements, (2) the Terms replace all other agreements, and/or (3) Terms control the relationship between Google and the users.  The uniform, form contract(s) are the only applicable statements as to the issue of consent.

> **6.      No person consents to Google's unlawful conduct because Google violates its user agreements and notices, because Google makes false and/or misleading statements, and because Google does not disclose the accused conduct.**

208.   Due to the silence, the conflicts, and the expressed limitations in Google's agreements with its users, Gmail users and other persons cannot and do not consent to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

209.   Due to Google's false statements and material omissions about its reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages, no person can and does consent to Google's unlawful conduct.

210.   Google is the sole source of information about its Gmail processes, and is the originator of the express terms of its form contracts with Gmail users.  Third party statements relating to Google's unlawful conduct or its user agreements are not probative of whether Google obtains consent for its unlawful practices.  Third party statements relating to Google's conduct are speculative and lack foundation.  To the extent such third party statements are based upon Google's representations, Google's representations are false, omit material information, or violate or contradict a contractual agreement.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

211.   No party to any email message transmitted to or from any Plaintiff and Class Member consents to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.  Plaintiff and the Class Members are not given any reasonable opportunity to consent, cannot consent, and do not consent to Google's unlawful conduct.

**E.**   **Google's Unlawful Devices**

212.   Google utilizes the following "accused devices," including:  machines; instruments; apparatuses; and/or contrivances, to intentionally intercept, endeavor to intercept, use, endeavor to use, read, attempt to read, acquire, take, exert unauthorized control over, record and collect the contents of, determine and learn the meaning and content of, eavesdrop upon, and/or store, private email messages, the content of private email messages, and private electronic communications without consent:

           a.      Content Onebox and supporting processes;

           b.      CAT2 mixer and/or ███████████;

           c.      Goldmine;

           e.      Medley Server;

           f.      ICEbox;

           g.      Caribou Server;

           i.      Criteria Server; and,

           j.      Other undisclosed devices and processes.

## V.   CAUSES OF ACTION

### COUNT ONE
**(Violations of 18 U.S.C. §§ 2510 *et seq.*)**

213.   Plaintiffs adopt and incorporate each and every allegation of this complaint as if stated fully herein.

214.   Plaintiffs Dunbar; Fread and Carrillo; A.K., as Next Friend of Minor, J.K.; Scott, Harrington, and Kovler; assert violations of 18 U.S.C. §§ 2511(1)(a) and (1)(d) for Google's

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1  unlawful interception and use of Plaintiffs' electronic communications.

2      **A.**    <u>**Plaintiffs**</u>

3          **1.**    *Plaintiff Keith Dunbar*

4      215.   Cable One is an ISP.  Prior to November 16, 2010, Dunbar paid Cable One for

5  his internet service, including email service for his business and family.

6      216.   Prior to November 16, 2010, Dunbar sent and received email messages to and

7  from Gmail users wherein Google unlawfully intercepted and used the content of those

8  electronic communications in violation of 18 U.S.C. §§ 2511(1)(a) and (1)(d).

9      217.   On November 16, 2010, Dunbar learned that Cable One required him and all

10  other Cable One account holders to convert their email accounts to be "Powered by Google."

11  Dunbar converted his account to be "Powered by Google" but continued as a Cable One

12  subscriber and his email address remained the same.

13      218.   Similar to Dunbar's conversion, Cable One required the conversion of all other

14  Cable One email accounts to be "Powered by Google."

15      219.   In addition, once Cable One set up its "Mycableone.com" platform using Google

16  Apps for email, new Cable One subscribers opened their new "Powered by Google" Cable One

17  email accounts through Google Apps, and thus, Gmail.

18      220.   Google services Cable One Google Apps email accounts through Gmail.

19      221.   After the conversion of his Cable One email account, Dunbar received email

20  messages through his Cable One Google Apps email account, and sent email messages to Gmail

21  and other Cable One Google Apps email accounts.

22      222.   Accordingly, Dunbar has been (1) a non-Gmail user who sent and received

23  emails to and from a Gmail user; and is: (2) a Cable One Google Apps user (Gmail user) who

24  received messages; and, (3) a Cable One Google Apps user (Gmail user) who sent messages to

25  Gmail users.

26          **2.**    *Plaintiffs Fread and Carrillo*

27      223.   Plaintiff Robert Fread has been a student at the University of Hawaii since

28  January 2011.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

224.    The University of Hawaii's migration of its email services to Google Apps EDU began in 2009, when the University investigated the possibility of contracting out its email services for its students, faculty, and staff.

225.    On June 21, 2010, Google contracted with the University of Hawaii ("the University," or "UH") to provide exclusive email services for all of the UH's students, faculty, and staff.  Google's contract with the University is titled "Google Apps Education Edition Agreement" ("Agreement"), stamped "Google Apps Edu Agreement 031809" ("UH Google Apps EDU Contract").  The UH Google Apps EDU Contract is essentially a form contract containing the same relevant and material terms, conditions and disclosures as other Google Apps EDU contracts.  Google has entered into these contracts throughout the United States including, *e.g.* with the University of the Pacific, and the California State University and University of California systems.  These analogous Google Apps EDU contracts include a provision regarding Google's claim to comply with FERPA by virtue of Google's false and fraudulent designation as a "school official" as a defined term in the contracts.

226.    Through the UH Google Apps EDU Contract, Google services the @hawaii.edu email accounts provided to all students, faculty, and staff of UH, including Plaintiff Fread.

227.    The @hawaii.edu email system is the official—and often exclusive—form of communication by UH for UH's students, faculty, and staff.

228.    In May of 2011, the University sent emails to @hawaii.edu account holders informing them of the forced migration of their email service to Google Apps EDU.

229.    On September 12, 2011, Fread received notice that his student email account would migrate to Google Apps EDU on September 24, 2011, without his consent.

230.    On January 4, 2012, UH's IT department informed Fread that his email account would migrate to Google Apps EDU against his will on January 24, 2012.

231.    On July 23, 2012, Fread's @hawaii.edu email account migrated to a Google Apps EDU account without his consent.  For months, Fread refused to use his Google Apps EDU email account, but later Fread was forced to use the account in order to send and receive official UH communications.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

232.   Google failed to disclose to Fread and UH Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.   Google processes all incoming email messages to UH students, faculty, administrative staff, and alumni @hawaii.edu accounts this way.

233.   Fread did not consent to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.  Fread would not have consented to Google's unlawful conduct had he been aware of it.

234.   Google's reading of Fread's email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages is an interception and use of Fread's electronic communications.

235.   In 2010, the University of the Pacific ("UOP") located in Stockton, California entered into a contract with Google for email services through its Google Apps for Education program ("UOP Google Apps EDU Contract").   McGeorge School of Law is part of UOP. The UOP Google Apps EDU Contract applies to all UOP students, faculty, administrative staff, and alumni, including those affiliated with McGeorge.

236.   The UOP Google Apps EDU Contract is essentially a form contract containing the same relevant and material terms, conditions and disclosures as other Google Apps EDU contracts.  Google has entered into these contracts throughout the United States including, *e.g.* with the University of the Pacific, and the California State University and University of California systems.  These analogous Google Apps EDU contracts include a provision regarding Google's claim to comply with FERPA by virtue of Google's false and fraudulent designation as a "school official" as a defined term in the contracts.

237.   At no time before or after entering into the UOP Google Apps EDU Contract has Google disclosed Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and

storing the content and annotations from the email messages.  Google processes all incoming email messages to UOP students, faculty, administrative staff, and alumni @u.pacific.edu accounts this way.

238.    Before Google began the Google Apps EDU service, all existing UOP students, faculty, administrative staff and alumni sent and received all communications with UOP through @u.pacific.edu accounts.  UOP operated the email system itself using a Novell Group Wise platform or server.  UOP then changed to Google Apps EDU email service and forced all UOP students, faculty, administrative staff and alumni to migrate their accounts to Google Apps EDU accounts.

239.    The forced migration process involved a series of prompts including a "Welcome to Your New Account" page which included terms and conditions and a privacy policy.  The instructions called for the individual to enter a word in a box and click on something which said words like "I accept" and "continue with my account."   UOP requires new students, faculty, and staff to open Google serviced @u.pacific.edu accounts through this same process.

240.    Plaintiff Rafael Carrillo attended McGeorge School of Law from August 2009 until his graduation in May 2012.  McGeorge required Carrillo to maintain an @u.pacific.edu email account for official UOP communications, including communications involving his enrollment.

241.    UOP forced Carrillo to migrate his @u.pacific.edu account in the manner described above, but Carrillo did not understand that the migration created a Gmail account.

242.    Carrillo did not consent to Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages.

243.    After the forced migration, Carrillo sent and received communications to and from UOP and others, including communications relating to private and confidential educational and financial information which are protected from disclosure under federal law, including FERPA.  Google's reading of Carrillo's email message content, acquiring such

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages is an interception and use of Carrillo's electronic communications.

244.   Neither Fread nor Carrillo received Google advertising in their Google Apps EDU accounts.

### 3.   Plaintiff A.K., as Next Friend of Minor, J.K.

245.   Minor Child, J.K., is a sixteen (16) year old child who has a personal Gmail account.

246.   Minor Child, J.K., has used his personal Gmail account to communicate electronically with non-Gmail users and with other Gmail subscribers who are under the age of majority ("Minor Subscribers").

247.   Accordingly, Minor Child, J.K., has received email messages from non-Gmail users and Minor Subscribers.  In addition, Minor Child, J.K., has sent email messages to non-Gmail users and Minor Subscribers.

248.    Minor Child, a child under the legal age of majority, did not consent, and, as a matter of law, could not have consented to the interception of his electronic communications.  As a result of their minority, Minor Class Members were and are incapable of consenting to Google's conduct.  Absent consent, Google's conduct violated and continues to violate ECPA.

249.   Google did not attempt to obtain the permission of the parents or guardians of Minor Child or other members of the Minor Class whose electronic communications were intercepted.

250.   Non-Gmail subscribers or other Minor Subscribers who sent or received electronic communications to or from Gmail accounts of Minor Child or members of the Minor Class did not consent to Google's interception of the electronic communication.

### 4.   Scott, Harrington, Kovler, Scott II, Knowles, and the Classes of Non-Gmail Users

251.   Scott, Harrington, Kovler, Scott II, and Knowles are non-Gmail users who have sent email messages to Gmail users.  Scott, Harrington, Kovler, Scott II, and Knowles are non-

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Gmail users who have received email messages from Gmail users.

252.   Google unlawfully intercepted and used the content of the electronic communications (emails) which Scott, Harrington, Kovler, Scott II, Knowles, and the Classes they seek to represent sent to Gmail users.

253.   Google unlawfully intercepted and used the content of the electronic communications (emails) which Scott, Harrington, Kovler, Scott II, Knowles, and the Classes they seek to represent received from Gmail users.

### B.   ECPA Violations

254.   Google, as a corporation, is a "person" pursuant to 18 U.S.C. § 2510(6).

255.   Google's actions were/are intentional as evidenced by the design of its Gmail data flow processes and the intentional changes made during the course of this litigation. Google has the capacity and in the past actually engineered its Gmail processes: (1) to serve advertisements without the secret creation and collection of separate metadata; and, (2) without unlawfully intercepting and using information from those users who do not receive advertisements with Gmail.  Google's actions are not the industry standard, are not performed by other companies, and are intentional.

256.   Google's actions affect interstate commerce in that: (1) Plaintiffs are residents of various states; (2) Cable One does not offer services in State of California, Cable One and Google entered into a contractual agreement regarding the Google Apps Partner Program, Class Members from several states transferred their Cable One email accounts to Google Apps and Gmail, and *Dunbar*'s Class Members' use of their Cable One Google Apps accounts occurred outside of the State of California; (3) as exemplified by Fread and Carrillo, educational institutions from various states have contracted with Google, those Class Members have transferred their email accounts to Google Apps EDU, and those Class Members' use of their Google Apps EDU accounts occurred within and outside the State of California; and (4) Minor, J.K., resides in Illinois, the Gmail service is offered throughout the United States, and those Class Members have used their Gmail accounts throughout the United States.  Finally, Google's actions as an electronic communication service provider offering Gmail throughout the United

States demonstrates its actions affect interstate commerce.

257. Pursuant to 18 U.S.C. § 2511(1)(a), Google intentionally intercepted, intercepts, or endeavored or endeavors to intercept the electronic communications: (1) Plaintiffs and Class Members sent to @gmail.com account users; and, (2) received by Plaintiffs and the Class Members based on the following:

a. Through Google's reading of the email messages, Google acquired(s) the substance, purport, and meaning of email messages transmitted to and from Plaintiffs and Class Members. The acquisition of content is further exemplified by Google's collection of such content and the creation of metadata which is collected and annotated to the email message.

b. The email messages transmitted to and from Plaintiffs and Class Members are (were) electronic communications. The conduct alleged herein does not occur in storage. Google transfers, transmits, or routes each message to each accused device for the purpose of a designated function to acquire content from the message.

c. Google utilized(s) one or more devices comprised of an electronic, mechanical or other device or apparatus to intercept the electronic communications transmitted to and from Plaintiffs and Class Members. Such devices include, but are not limited to, the distinct pieces of Gmail infrastructure comprising the Content Onebox process, CAT2 mixer or ███████████████ Medley Server, ICEbox, etc.

d. Google does not furnish the devices to Gmail or Google Apps users, and users do not use the devices for connection to the facilities.

e. The intercepting devices are not used for the ability to send or receive electronic communications.

f. The devices are not used by Google, if operating as an electronic communication service, in the ordinary course of business as a provider of an electronic communication server.

g. Google's interception of electronic communications sent by and to Plaintiffs and Class Members for; (a) undisclosed purposes; (b) for the purpose of

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**
5:13-md-02430-LHK                    41 of 67

delivering content-based advertising; (c) for purposes beyond the Service of Gmail; (d) in violation of its user agreements; (e) in violation of its contracts with third parties; (f) in violation of its statements to users; (g) in violation of States' and California law; and, (h) in violation of the property rights of Plaintiffs, Class Members, and third parties; is not within the ordinary course of business of a provider of an electronic communication service.

258.   Pursuant to 18 U.S.C. § 2511(1)(d), Google intentionally used, uses, or endeavored or endeavors to use the contents of Plaintiffs' and Class Members' electronic communications while knowing or having reason to know that it obtained the information through the interception of the electronic communication in violation of 18 U.S.C. § 2511(1)(a).

259.   Google's interception of and use of the contents of Plaintiffs' and Class Members' electronic communications were not performed by an employee engaged in any activity necessary for the rendition of an electronic communication service or for the protection of the rights or property of Google.

260.   The industry standard for webmail electronic communication services does not include the interception and use of the content of email messages alleged herein as Google performs on these electronic communications.

261.   The ordinary course of business within the industry for webmail electronic communication services for the ability to send and receive electronic communications does not include the interception and use of content of an electronic communication as Google performs on the subject electronic communications.

262.   Google's services that are not related to the ability to send and receive electronic communications are not electronic communication services.

263.   Google's content-based advertising and other uses of Plaintiffs' and Class Members' emails, including those sent to Plaintiffs and Class Members, are not a service of an electronic communication service as defined by 18 U.S.C. § 2510(15).

264.   No party to the electronic communications alleged herein consented to Google's interception or use of the contents of the electronic communications.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

265.   As to consent, and pursuant to 18 U.S.C. § 2520(b)(1), Minor Child, J.K., and the Minor Class seek specific declaratory relief as follows.

266.   At all times relevant hereto, Minor Child, J.K., and the Minor Class were minor children.

267.   Emails, and the contents thereof, are personal property.

268.   Emails, and the contents thereof, sent or received by Gmail users are not in the immediate possession of Gmail users because an individual acquires possession of them only through Google.

269.   The metadata and associated ███████ created by Google from the Minor Child, J.K.'s, and Minor Class Members' email messages are never in possession of or accessible to the Minor Child, J.K., and Minor Class Members.

270.   Google's creation of metadata and associated ███████ relates to personal property not in the immediate possession or control of a minor Gmail user.

271.   Google's reading, acquisition, and other uses of minor Gmail users' email content and data therein by its advertising servers relates to personal property not in the immediate possession or control of a minor Gmail user.

272.   Defendant's uniform (form) contracts with Minor Child, J.K., and the Minor Class are governed by California law, and violate Cal. Fam. Code § 6701(a) and/or (c), to the extent they purport to give  both a delegation of power, and relate to personal property not in the immediate possession or control of a minor.

273.    Contracts that are contrary to Section 6701 are void without disaffirming the contract to avoid its apparent effect.

274.   The 2007 version of the Google Terms of Service provides, "If any court of law, having the jurisdiction to decide on this matter, rules that any provision of these Terms is invalid, then that provision will be removed from the Terms without affecting the rest of the Terms.  The remaining provisions of the Terms will continue to be valid and enforceable."  The 2012 version of the Google Terms of Service provides, "If it turns out that a particular terms is not enforceable, this will not affect any other terms."   Accordingly, Google recognizes that

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

aspects of its Terms found to be invalid may be separated from the Terms.

275.   The provisions, if any, of the Terms of Service and agreements with Google relating to the interception and use of Gmail messages of Minor Child, J.K., and the Minor Class are void.   In the alternative, said Terms of Service and agreements are void in their entirety.

276.   Accordingly, in addition to the other allegations against consent as to Gmail users, Minor Child, J.K., and the Minor Class seek a declaration that the provisions, if any, of the Terms of Service and agreements with Google relating to the interception and use of Gmail of Minor Child, J.K., and the Minor Class are in fact void, will be "removed from the Terms," and that Minor Child, J.K., and the Minor Class have not provided consent.

277.   Alternatively, in addition to the other allegations against consent as to Gmail users, Minor Child, J.K., and the Minor Class seek a declaration that the entire alleged contract between Google and Minor Child, J.K., and the Minor Class is void, and that Minor Child and the Minor Class have not provided consent.

278.   Alternatively, in addition to the other allegations against consent as to Gmail users, Minor Child and the Minor Class seek a declaration that Minor Child and the Minor Class cannot give the consent required under ECPA.

279.   Google intercepts Plaintiffs' and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the laws of any state, and as such, it cannot obtain consent pursuant to § 2511(2)(d).

280.   Google's interception and use of electronic communications violates the proprietary interests of the property owners of the email who have not consented to the interception.   Due to the expressed limitations in the Privacy Policies and content licenses granted to Google by users, Google has no contractual rights to the data within email messages that Gmail users have yet received and yet submitted for public viewing.   At the moment Google reads the incoming email, it exercises unauthorized control over the data within that email to acquire content, make copies of content, create data from the content to be used in association with content, or create data from the content to be used apart from content.   This

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

data is valuable to Google.  Google openly claims to investors the monetary value in obtaining data as alleged herein, and Google pays specific and particularized sums of money for the same type of data to third parties.  Google defines the payment of monies to others for the same type of data as "traffic acquisition costs."  To avoid paying these "traffic acquisition costs," Google unlawfully exercises control over data within incoming electronic communications, copies or derives other data from those emails, and benefits from the value of that data—all without compensation to the owner/party of the message and beyond the scope of its content license with its users.

281.   Google has no property rights or license in the email sent to users of Gmail and that have not been submitted, posted, uploaded, or displayed by the users of Gmail.

282.   Google has no property rights or license in the copies of emails sent to users of Gmail or metadata it generates or creates from email sent to Gmail users.

283.   As a result of Google's violations of § 2511, pursuant to § 2520, Plaintiffs and the Class Members are entitled to:

a.   Preliminary and permanent injunctive relief to require Google to fully disclose its activities, obtain proper parental consent of Minors, and halt Google's violations;

b.   Appropriate declaratory relief;

c.   For Plaintiffs and each Class Member, the greater of $100 a day for each day of violation or $10,000; and

d.   Reasonable attorneys' fees and other litigation costs reasonably incurred.

284.   While certain devices have been identified in this Complaint, Plaintiffs reserve the right to assert ECPA violations as to any further devices disclosed or those devices upon which Google provides additional information.

## COUNT TWO
### (Violations of Cal. Penal Code §§ 630, *et seq.*)

285.   Plaintiffs adopt and incorporate each and every allegation of this complaint as if stated fully herein.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

286.   Plaintiffs Scott, Harrington, and Kovler, individually, and on behalf of a Class of non-Gmail users residing outside of California, assert violations of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.,* specifically Cal. Penal Code §§ 631(a), for Google's unlawful reading and recording of email message content Plaintiffs sent to or received from Gmail users.  Google uses this information to learn information about the sender and recipient, and uses it for commercial advantage and profit.

287.   "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Pen. Code § 630.

288.   Google's acts in violation of CIPA occurred in the State of California because those acts resulted from business decisions, practices, and operating policies that Google developed, implemented, and utilized in the State of California and which are unlawful and constitute criminal conduct in the state of Google's residence and principal business operations.  Google's implementation of its business decisions, practices, and standard ongoing policies which violate CIPA took place in the State of California.  Google profited in the State of California as a result of its repeated and pervasive violations of CIPA.  Google's unlawful conduct which occurred in the State of California harmed Plaintiffs and all Class Members.  Google developed, designed, built, and physically placed in California one or more of the accused devices used by Google to violate CIPA.

289.   Plaintiffs and the Class Members sent email messages to Gmail users and received original email messages from Gmail users.

290.   Google is not a party to Plaintiffs' and Class Members' emails exchanged with Gmail users.

291.   The email messages exchanged by Plaintiffs and Class Members with Gmail users are messages.

292.   These messages are communications between Plaintiffs and the Class Members,

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

and the Gmail users.

293.   Google transmits the messages in defined Internet Message Formats with destination address fields specifying the recipients of the message.

294.   Pursuant to the destination address fields, messages exchanged with Gmail users are confined to those persons specified as recipients in the destination address fields.

295.   Pursuant to the destination address fields, Plaintiffs' and Class Members' messages sent to and received from Gmail users are confined to those persons specified as recipients in the destination address fields.

### A.   Violations of Cal. Penal Code § 631(a)

296.   Pursuant to Cal. Penal Code § 7, Google, as a corporation, is a "person."

297.   Google uses a "machine," "instrument," "contrivance," or "in any other manner" to read, attempt to read, or to learn the content or meaning of Plaintiffs' and the Class Members' emails.

298.   Google acts wilfully when it reads, attempts to read, or learns the content or meaning of Plaintiffs' and Class Members' emails.

299.   Google does not have the consent of all parties to the communication, or it acts in an unauthorized manner, when it reads, attempts to read, or learns the content or meaning of Plaintiffs' and Class Members' emails.

300.   Plaintiffs' and Class Members' emails are "any message, report, or communication."

301.   At the time Google reads, attempts to read, or learns the contents or meaning of Plaintiffs' and Class Members' emails, the emails are in transit to or from the Gmail user.

302.   At the time Google reads, attempts to read, or learns the contents or meaning of Plaintiffs' and Class Members' emails, the emails are passing over any wire, line, or cable.

303.   Email, coded written messages sent electronically to remote locations, is telegraph within the meaning of this Act and section.  As such, the wires, lines, cables and/or instruments which carry and facilitate the transmission of Plaintiffs' and Class members' email are telegraph wires, lines cables and/or instruments within the meaning of this Act and section.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

304.   Google Talk is part of Gmail.  Google Talk allows those using Gmail who download the Google Chat application to make long distance calls anywhere in the world, audio conference, and chat with Gmail friends.  Gmail is a telephone system which uses wires, lines, cables or instruments which are capable of and in fact transmit telephone calls.  This telephone system includes an internal system of wires, lines, cables or instruments connected to the servers involved in the COB and CAT2 processing which are capable of and do in fact transmit telephone calls.  As such, the wires, lines, cables and/or instruments which transmit Plaintiffs' and Class Members' email are telephone wires, lines, cables and/or instruments within the meaning to this Act and section.

305.   Plaintiffs and Class Members do not consent, expressly or impliedly, to Google's eavesdropping upon and recording of their personal emails.  Google does not disclose material information to anyone relating to its attempts at reading, reading, acquiring and collecting of email content, and the creation of derivative data based on that content.

306.   There is no knowledge or expectation among Plaintiffs and Class Members regarding the extent of Google's reading of message content, learning about the content or meaning of the messages, the acquisition of such content, the collection of such content, the creation of derivative data from this content and collection of same, and the use and storage of the content and annotations from the email messages—all beyond the normal occurrences, industry standard, and expectations regarding the transmittal of email messages.

307.   Specifically, Google's actions are entirely separate from and are not the recording of the email message to the user's "inbox."

**B.   Cal. Penal Code § 637.2 Relief**

308.   As a result of Google's violations of § 631, Plaintiffs and the Class are entitled to:

a.   Preliminary and permanent injunctive relief to require Google to fully disclose its practices and halt its violations;

b.   Appropriate declaratory relief;

c.   Monetary relief in the amount set forth in § 637.2 (a)(1) for each Class member;

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1    and,

2    d.    Reasonable attorneys' fees and other litigation costs reasonably incurred.

3

## COUNT THREE
4    **(Violations of Maryland Courts And Judicial Proceedings Code Ann. §§ 10-402, *et seq.*)**

5    309.   Plaintiffs adopt and incorporate each and every allegation of this complaint as if
6    stated fully herein.

7    310.   Within the Class Period, Plaintiff Matthew C. Knowles has sent emails to
8    @gmail.com account holders.

9    311.   Within the Class Period, Plaintiff Knowles has received emails from
10   @gmail.com account holders.

11   312.   At the time Plaintiff sent and the received the emails to and from @gmail.com
12   account holders, Plaintiff did so from his Yahoo® account.

13   313.   Plaintiff and the Class Members have transmitted email messages to and from
14   Gmail users.

15   314.   Google is not a party to Plaintiff's and Class Members' emails exchanged with
16   Gmail users.

17   315.   Pursuant to Maryland Court and Judicial Proceedings Code Annotated § 10-402,
18   Google intentionally intercepted, intercepts, or endeavored or endeavors to intercept the
19   electronic communications Plaintiff and Class Members sent to and received from @gmail.com
20   account users:

21          a.    Through its reading of the email message, Google acquired(s)
22   information concerning the identity of the parties or the existence, substance, purport,
23   and meaning of email messages transmitted to and from Plaintiff and Class Members.
24   The acquisition of content is further exemplified by Google's collection of such content
25   and the creation of metadata which is collected and annotated to the email message.

26          b.    The email messages transmitted to and from Plaintiff and Class Members
27   are (were) electronic communications.  The conduct alleged herein does not occur in
28   storage.  Google transfers, transmits, or routes each message to each accused device for

the purpose of a designated function to acquire content from the message.

c.    Google utilized(s) one or more electronic, mechanical, or other devices or electronic communication to intercept the electronic communications sent by and to Plaintiff and Class Members.  Such devices include, but are not limited to, the distinct pieces of Gmail infrastructure comprising the Content Onebox process, CAT2 mixer or ██████████████████ Medley Server, ICEbox, etc.

d.    Google does not furnish the devices to the users of Gmail, and users do not use the devices for connection to the facilities.

e.    The intercepting devices are not used for the ability to send, receive, or transmit electronic communications.

f.    The devices are not used by Google, if operating as a communications common carrier, in the ordinary course of business as a provider of a communications common carrier.

g.    Google's interception of electronic communications sent by and to Plaintiff and Class Members for: (a) undisclosed purposes; (b) for the purpose of delivering content-based advertising; (c) for purposes beyond the Service of Gmail; (d) in violation of its user agreements; (e) in violation of its contracts with third parties; (f) in violation of its statements to users; (g) in violation of States' laws; and, (h) in violation of the property rights of Plaintiff, Class Members, and third parties; is not within the ordinary course of business of a provider of an electronic communication service.

316.    Google intentionally used, uses, or endeavored or endeavors to use the contents of Plaintiff's and Class Members' electronic communications knowing or having reason to know that Google obtained the information through the interception of the electronic communication in violation of § 10-402(a)(3).

317.    Google's interception of and use of the contents of Plaintiff's and Class Members' electronic communications were not performed by an employee while engaged in any activity which is necessary incident to the rendition of Gmail or for the protection of the

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

rights or property of Google.

318.   The industry standard for webmail electronic communication services does not include the interception and use of the content of the email alleged herein as Google performs on these electronic communications.

319.   The ordinary course of business within the industry for webmail electronic communication services for the ability to send and receive electronic communications does not include the interception and use of content of an electronic communication that Google performs on the subject electronic communications.

320.   Google's services that are not related to the ability to send and receive electronic communications are not electronic communication services or communications common carrier services.

321.   Google's content-based advertising and other uses of Plaintiff's and Class Members' emails, and those sent to Plaintiff and Class Members, are not a service of a communication service as defined by §§ 10-401(3), (6), or (7).

322.   Google is not a party to the communications, and § 10-402(c)(3) and the defense of consent are not applicable to Google or Google's actions.

323.   If § 10-402(c)(3) is found applicable, all parties to the communication have not consented to Google's interception of the communications.

324.   Google intercepts Plaintiff's and Class Members' communications for the purpose of committing a criminal or tortious act in violation of the laws of any state, and as such, it cannot obtain consent pursuant to § 10-402(c)(3).

325.   Pursuant to § 10-402(c)(3), Google's interception and use of communications violates the proprietary interests of the property owners of the email who have not consented to the interception.  Due to the expressed limitations in the Privacy Policies and content licenses granted to Google by users, Google has no contractual rights to the data within email that Gmail users have yet received and yet submitted for public viewing.  At the moment Google reads the incoming email, it exercises unauthorized control over the data within that email to acquire content, make copies of content, create data from the content to be used in association with

content, or create data from the content to be used apart from content.  This data is valuable to Google.  Google openly claims to investors the monetary value in obtaining data as alleged herein, and Google pays specific and particularized sums of money for the same type of data to third parties.  Google defines the payment of monies to others for the same type of data as "traffic acquisition costs."  To avoid paying these "traffic acquisition costs," Google unlawfully exercises control over data within incoming electronic communications, copies or derives other data from those emails, and benefits from the value of that data—all without compensation to the owner/party of the message and beyond the scope of its content license with its users.

326.    Google has no property rights or license in the email sent to Gmail users and that have not been submitted, posted, uploaded, or displayed by the Gmail user.

327.    Google has no property rights or license in the copies of emails sent to Gmail users or metadata it generates or creates from email sent to Gmail users.

328.    As a result of Google's violations of § 10-402, pursuant to § 10-410, Plaintiff and the Class are entitled to:

      a.    For Plaintiff and each Class Member, the greater of $100 a day for each day of violation or $1,000 in liquidated damages;

      b.    Punitive damages; and

      c.    Reasonable attorneys' fees and other litigation costs reasonably incurred.

329.    While certain devices have been identified in this Complaint, Plaintiff reserves the right to assert violations as to any further devices disclosed or those devices upon which Google provides additional information.

## COUNT FOUR
### (Violations of Florida Statute §§ 934.03, *et seq.*)

330.    Plaintiffs adopt and incorporate each and every allegation of this complaint as if stated fully herein.

331.    Within the Class Period, Plaintiff Brent Scott ("*Scott II*") has sent emails to @gmail.com account holders.

332.    Within the Class Period, Plaintiff Scott II has received emails from @gmail.com

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1    account holders.

2    333.   At the time Plaintiff sent and the received the emails to and from @gmail.com

3    account holders, Plaintiff did so from his Hotmail® account.

4    334.   Plaintiff and the Class Members have transmitted email messages to and from

5    Gmail users.

6    335.   Google is not a party to Plaintiff's and Class Members' emails exchanged with

7    Gmail users.

8    336.   Pursuant to Florida Statutes § 934.03(1)(a),   Google intentionally intercepted,

9    intercepts, or endeavored or endeavors to intercept the electronic communications Plaintiff and

10   Class Members sent to and received from @gmail.com account users:

11       a.     Through   its   reading   of   the   email   message,   Google   acquired(s)

12   information concerning the identity of the parties or the existence, substance, purport,

13   and meaning of email messages transmitted to and from Plaintiff and Class Members.

14   The acquisition of content is further exemplified by Google's collection of such content

15   and the creation of metadata which is collected and ▮▮▮▮▮▮  the email message.

16       b.     The email messages transmitted to and from Plaintiff and Class Members

17   are (were) electronic communications.  The conduct alleged herein does not occur in

18   storage.  Google transfers, transmits, or routes each message to each accused device for

19   the purpose of a designated function to acquire content from the message.

20       c.     Google utilized(s) one or more electronic, mechanical, or other devices or

21   apparatuses to intercept the electronic communications sent by and to Plaintiff and Class

22   Members.  Such devices include, but are not limited to, the distinct pieces of Gmail

23   infrastructure comprising the Content Onebox process, CAT2 mixer or ▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮ Medley Server, ICEbox, etc.

25       d.     Google does not furnish the devices to the users of Gmail, and users do

26   not use the devices for connection to the facilities.

27       e.     The intercepting devices are not used for the ability to send, receive, or

28   transmit electronic communications.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS
ACTION COMPLAINT**

f.      The devices are not used by Google, if operating as an electronic communications service, in the ordinary course of business as a provider of an electronic communications service.

g.      Google's interception of electronic communications sent by and to Plaintiff and Class Members for: (a) undisclosed purposes; (b) for the purpose of delivering content-based advertising; (c) for purposes beyond the service of Gmail; (d) in violation of its user agreements; (e) in violation of its contracts with third parties; (f) in violation of its statements to users; (g) in violation of States' laws; and, (h) in violation of the property rights of Plaintiff, Class Members, and third parties; is not within the ordinary course of business of a provider of an electronic communication service.

337.   Google intentionally used, uses, or endeavored or endeavors to use the contents of Plaintiff's and Class Members' electronic communications knowing or having reason to know that Google obtained the information through the interception of the electronic communication in violation of § 934.03(1)(d).

338.   Google's interception of and use of the contents of Plaintiff's and Class Members' electronic communications were not performed by an employee while engaged in any activity which is necessary incident to the rendition of Gmail or for the protection of the rights or property of Google.

339.   The industry standard for webmail electronic communication services does not include the interception and use of the content of the email alleged herein as Google performs on these electronic communications.

340.   The ordinary course of business within the industry for webmail electronic communication services for sending and receiving electronic communications does not include the interception and use of content of an electronic communication as Google performs on the subject electronic communication.

341.   Google's services that are not related to the ability to send and receive electronic communications are not electronic communication services or communications common carrier

services.

342.   Google's content-based advertising and other uses of Plaintiff's and Class Members' emails and those sent to Plaintiff and Class Members are not a service of an electronic communication service as defined by §§ 934.02(12), (14), and (15).

343.   Pursuant to § 934.03(2)(d), all parties to the communication have not consented to Google's interception of the communications.

344.   Google intercepts Plaintiff's and Class Members' communications for the purpose of committing a criminal violation, and as such, it cannot obtain consent pursuant to § 934.03(2)(e).

345.   Pursuant to § 934.03(2)(e), Google's interception and use of communications amounts to the taking of the proprietary interests of the property owners of the email who have not consented to the interception.  Due to the expressed limitations in the Privacy Policies and content licenses granted to Google by users, Google has no contractual rights to the data within email that Gmail users have yet received and yet submitted for public viewing.  At the moment Google reads incoming email, it exercises unauthorized control over the data within that email to acquire content, make copies of content, create data from the content to be used in association with content, or create data from the content to be used apart from content.  This data is valuable to Google.  Google openly claims to investors the monetary value in obtaining data as alleged herein, and Google pays specific and particularized sums of money for the same type of data to third parties.  Google defines the payment of monies to others for the same type of data as "traffic acquisition costs."   To avoid paying these "traffic acquisition costs," Google unlawfully exercises control over data within incoming electronic communications, copies or derives other data from those emails, and benefits from the value of that data —all without compensation to the owner/party of the message and beyond the scope of its content license with its users.

346.   Google has no property rights or license in the email sent to Gmail users and that have not been submitted, posted, uploaded, or displayed by the Gmail user.

347.   Google has no property rights or license in the copies of emails sent to Gmail

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

users or metadata it generates or creates from email sent to Gmail users.

348.    As a result of Google's violations of § 934.03, pursuant to § 934.10, Plaintiff and the Class are entitled to:

        a.    Preliminary or equitable or declaratory relief as may be appropriate;

        b.    For Plaintiff and each Class Member, the greater of $100 a day for each day of violation or $1,000 in liquidated damages;

        c.    Punitive damages; and

        d.    Reasonable attorneys' fees and other litigation costs reasonably incurred.

349.    While certain devices have been identified in this Complaint, Plaintiff reserves the right to assert violations as to any further devices disclosed or those devices upon which Google provides additional information.

## VI.    CLASS ALLEGATIONS

350.    Plaintiffs adopt and incorporate each and every allegation of this complaint as if stated fully herein.

351.    Plaintiffs bring this class action, pursuant to Rule 23(a) and (b)(3) of the *Federal Rules of Civil Procedure*, individually and on behalf of all members of the following Classes.

352.    As to each of the Class Definitions, the following exclusions apply and are incorporated into the definitions:

        i.    Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

        ii.    Individuals, if any, who timely opt out of this proceeding using the correct protocol for opting out;

        iii.    Current or former employees of Google;

        iv.    Individuals, if any, who have previously settled or compromised claims(s) as identified herein for the Class; and,

        v.    Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

353.   Plaintiff Dunbar seeks to represent the following Class consisting of:

**All natural persons who are Cable One users and who have, through their Cable One Google Apps email accounts, (1) sent an email message to an @gmail.com address, (2) sent an email message to an @cableone.com address, or (3) received an email message, within two years before the filing of this action up through and including the date of class certification.**

354.   Plaintiffs Fread and Carrillo seek to represent the following Class consisting of:

**All natural persons who are Google Apps for Education users with an account at an educational institution within the United States, and who have, through their Google Apps for Education email accounts, (1) sent an email message to an @gmail.com address, (2) received an email message, within the longest period of time allowed by statute before the filing of this action up through and including the date of certification.**

355.   Plaintiffs Scott, Harrington, and Kovler seek to represent the following ECPA Class consisting of:

**All natural persons who reside in the United States, who have, through their non-Gmail accounts, (1) received an original email message from an @gmail.com address, or (2) sent an email message to an @gmail.com email address, within the longest period of time allowed by statute before the filing of this action up through and including the date of certification.**

356.   Plaintiffs Scott, Harrington, Kovler, Scott II, and Knowles seek to represent the following sub-classes of the Scott, Harrington, and Kovler ECPA Class:

a.   Plaintiffs Scott, Harrington, and Kovler seek to represent the following CIPA sub-class consisting of:

**All natural persons who reside in the United States, excluding California residents, who have, through their non-Gmail accounts, (1) received an original email message from an @gmail.com address, or (2) sent an email message to an @gmail.com address, within the longest period of time allowed by statute before the filing of this action up through and including the date of certification.**

b.   Plaintiff Scott II seeks to represent the following sub-class consisting of:

**All natural persons who reside within the State of Florida who have, through their non-Gmail accounts, (1) received an original email message from an @gmail.com address, or (2) sent an email message to an @gmail.com address, within the longest period of time allowed by statute before the filing of this action up through and including the date of certification.**

c.   Plaintiff Knowles seeks to represent the following sub-class

PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT

consisting of:

**All natural persons who reside within the State of Maryland who have, through their non-Gmail accounts, (1) received an original email message from an @gmail.com address, or (2) sent an email message to an @gmail.com address, within the longest period of time allowed by statute before the filing of this action up through and including the date of certification.**

357.   Plaintiff A.K., as Next Friend of Minor, J.K., seeks to represent the following Class consisting of:

**All children in the United States who, at any time during the period commencing two years prior to the filing of this action up through and including the date of class certification, were at least 13 years of age and under the legal age of majority, had an @gmail.com account, and used his or her @gmail.com account to send an email to or receive an email from either: (1) a non-@gmail.com account; or (2) another @gmail.com subscriber who was at least 13 years of age and under the legal age of majority.**

**A.    Ascertainability**

358.   The Classes are objectively defined.

359.   The Classes are ascertainable.

**1.    *The Cable One Google Apps Class***

360.   Google treats Cable One Google Apps email accounts operated through Google Apps as Gmail accounts.

361.   Gmail accounts contain readily identifiable information as to the account user.

362.   Through the Google Apps account, direct notice can be given to the Class Member *via* email.

363.   A Cable One Google Apps user can be identified through the corresponding Cable One account.

364.   The Cable One account contains readily identifiable information as to the account user.

365.   Through the Cable One accounts, direct notice can be given in a number of ways; one such method is by mail to the Cable One billing address for the accounts.

366.   Upon Court-approved notice, any Class Member who desires to seek actual damages pursuant to 28 U.S.C. § 2520(C)(2)(a) may opt-out OR remain in the Class and be bound by the remedies and results sought herein.

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

### 2.    *The Google Apps EDU Class*

367.   Google treats Google Apps EDU email accounts as Gmail accounts.

368.   Google Apps EDU accounts contain readily identifiable information as to the account user.

369.   Through the Google Apps EDU accounts, direct notice can be given to the Class Member *via* email.

370.   Upon Court-approved notice, any Class Member who desires to seek actual damages pursuant to 28 U.S.C. § 2520(C)(2)(a) may opt-out OR remain in the Class and be bound by the remedies and results sought herein.

### 3.    *The Minor Class*

371.   Minor Plaintiff, J.K., and the Minor Class have (had) Gmail accounts which contain readily identifiable information as to the account user.

372.   Through the Gmail accounts, direct notice can be given to the Class Member *via* email.

373.   Upon Court-approved notice, any Class Member who desires to seek actual damages pursuant to 28 U.S.C. § 2520(C)(2)(a) may opt-out OR remain in the Class and be bound by the remedies and results sought herein.

### 4.    *The Scott, Harrington, Kovler, Scott II, and Knowles Classes*

374.   The definition of the proposed classes involves email messages *sent* and *received* by the Class Members demonstrating: (1) the receipt of an original email message sent directly from @gmail.com account, and (2) the Class Members' sent email messages to the @gmail.com account.   The term "original email message" is necessary because Google ████████ ████████████████████████████████████████████████████████████████████ ██████████████   Accordingly, the proposed Classes are ascertainable by email messages contained in their own inboxes, rather than any requirement or necessity of viewing the @gmail.com user's account.

375.   Notice can be achieved through publication or by email.

376.   Upon Court-approved notice, any Class Member who desires to seek actual

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

damages pursuant to respective States' laws may opt-out OR remain in the Class and be bound by the remedies and results sought herein.

**B.    Numerosity**

377.    The Classes are so numerous that joinder of all members is impracticable, in large part because Cable One does not offer services in California and the Class Members are from multiple states.

378.    The number of Cable One Google Apps users exceeds 100 persons.

379.    The number of Google Apps EDU users exceeds 100 persons.

380.    The number of minor Gmail users exceeds 100 persons.

381.    The number of non-Gmail, non-California United States residents who have exchanged email messages with Gmail subscribers exceeds 100 persons.

382.    The number of non-Gmail United States residents who have exchanged email messages with Gmail subscribers exceeds 100 persons.

383.    The number of non-Gmail Maryland residents who have exchanged email messages with Gmail subscribers exceeds 100 persons.

384.    The number of non-Gmail Florida residents who have exchanged email messages with Gmail subscribers exceeds 100 persons.

**C.    Commonality**

385.    There are questions of law or fact common to the class.  These questions include, but are not limited to, the following:

386.    For all classes except the *Scott* CIPA Class:

a.    Whether Google intentionally intercepted, endeavored to intercept, or procured any other person to intercept or endeavor to intercept Plaintiffs' and Class Members' electronic communications as made the basis of this suit.  Inclusive in this common question(s) are the common questions regarding the elements of ECPA, Maryland law, and Florida law as alleged *supra* and based upon the respective statutory definitions:

i.    Whether the emails sent by and to Plaintiff and Class Members

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

were electronic communications;

      ii.     Whether Google used an electronic, mechanical, or other device;

      iii.    Whether Google acquired any content of email sent by and to Plaintiffs and Class Members;

      iv.    Whether that content amounted to any information concerning the substance, purport, or meaning of the electronic communications by and to Plaintiffs and Class Members;

      v.     Whether Google acted intentionally;

      vi.    Whether statutory or liquidated damages against Google should be assessed; and,

      vii.   Whether injunctive and declaratory relief against Google should be issued.

b.     Whether Google intentionally used, or endeavored to use, the contents of Plaintiffs' and Class Members' electronic communications knowing or having reason to know that the information was obtained through the interception of the electronic communication in violation of ECPA, Maryland law, and Florida law as alleged *supra*. Inclusive in this common question(s) are the common questions regarding the elements of ECPA, Maryland law, and Florida law as alleged *supra* and based upon the respective statutory definitions:

      i.      Whether the emails sent by and to Plaintiffs and Class Members were electronic communications;

      ii.     Whether Google used an electronic, mechanical, or other device;

      iii.    Whether Google acquired any content of email sent by and to Plaintiffs and Class Members;

      iv.    Whether that content amounted to any information concerning the substance, purport, or meaning of the emails sent by and to Plaintiffs and Class Members;

      v.     Whether Google used the content of Plaintiffs' and Class

Members' electronic communications;

   vi. Whether Google acted intentionally;

   vii. Whether statutory or liquidated damages against Google should be assessed; and.

   viii. Whether injunctive and declaratory relief against Google should be issued.

 387. For the Scott, Harrington, and Kovler CIPA Class:

**§ 631 claims:**

  a. Whether Google, as a corporation, is a "person."

  b. Whether Google, as a corporation, acts through "persons" for whose actions Google is liable.

  c. Whether Google uses a "machine," "instrument," "contrivance," or "in any other manner" to read, attempt to read, or to learn the content or meaning of Plaintiffs' and the Class Members' emails.

  d. Whether Google acts willfully when it reads, attempts to read, or learns the content or meaning of Plaintiffs' and Class Members' emails.

  e. Whether Google has the consent of all parties to the communication or does it act in an unauthorized manner when it reads, attempts to read, or learns the content or meaning of Plaintiffs' and Class Members' emails.

  f. Does Google's review, processing, acquisition or copying of Plaintiffs' and Class Members' email amount to Google reading, attempting to read, or learning the content or meaning of Plaintiffs' and Class Members' emails.

  g. Do Plaintiffs' and Class Members' emails amount to "any message, report, or communication."

  h. At the time Google reads, attempts to read, or learns the contents or meaning of Plaintiffs' and Class Members' emails, are the emails in transit to the Gmail recipients.

  i. At the time Google reads, attempts to read, or learns the contents or

meaning of Plaintiffs' and Class Members' emails, are the emails passing over any wire, line, or cable.

        j.      Whether Google utilizes any telegraph or telephone line, wire, cable or instrument.

*§ 637.2 relief*

        a.      Whether Plaintiffs and the Class are entitled to preliminary and permanent injunctive relief to halt Google's violations.

        b.      Whether Plaintiffs and the Class are entitled to appropriate declaratory relief.

        c.      Whether each Plaintiff and each Class Member are entitled to $5,000 in statutory damages.

        d.      Whether Plaintiffs and the Class are entitled to reasonable attorneys' fees and other litigation costs reasonably incurred.

388. Accordingly, all questions of law or fact are common to the respective Classes.

**D.**    **Typicality**

389. Plaintiffs' claims are typical of the claims of the Classes they seek to represent.

        *1.*     *Plaintiff Keith Dunbar*

390. Dunbar and the Class he seeks to represent are Cable One Google Apps users. Plaintiff and the Class received emails pursuant to their Cable One Google Apps account. Google intercepted and acquired the emails' contents, Google used or endeavored to use the emails' contents, neither Plaintiff nor the Class consented to Google's interception and uses of content, neither Gmail users nor the senders of the email consented to the interception and use of the emails, the user agreements between the parties are uniform, and Plaintiff and the Class Members are entitled to declaratory relief, statutory damages, and injunctive relief due to Google's conduct.

        *2.*     *Robert Fread and Rafael Carrillo*

391. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and the Class are Google Apps EDU users, and: (1) Plaintiffs and Class Members' sent and/or received

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

emails through their Google Apps EDU accounts;(2) Google intercepted and/or endeavored to intercept and acquired the emails' content;(3) Google used or endeavored to use the emails' content;(4) neither Plaintiffs nor the Class consented to Google's interception and uses of the emails' content; (5) the Google Apps EDU contracts are uniform, and contain the same relevant and material terms, conditions and disclosures; and, (6) Plaintiffs and the Class Members are entitled to declaratory relief, statutory damages, and injunctive relief as a result of Google's unlawful conduct.

### 3.    *Brad Scott, Todd Harrington, and Ronald Kovler*

392.    Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and Class Members sent email messages to Gmail users and Gmail users sent email messages to Plaintiffs and Class Members; Plaintiffs and Class Members are non-Gmail subscribers; Google (1) read, eavesdropped, or recorded, and, (2) intercepted and used Plaintiffs' and Class Members' message contents; neither Plaintiffs nor the Class Members consented to Google's reading, eavesdropping, or recording of their messages; neither Plaintiffs nor the Class Members consented to Google's interception and use of their messages; and, Plaintiffs and the Class Members are entitled to declaratory relief, statutory damages, and injunctive relief due to Google's conduct.

### 4.    *A.K., Next Friend of Minor Child, J.K.*

393.    Plaintiff's claims are typical of the Minor Class because J.K. is a minor Gmail subscriber, the consent issues applicable to J.K. are applicable to all minor Gmail subscribers, Google intercepted and acquired the Plaintiff's and Class Members' emails' contents, Google used or endeavored to use the emails' contents, neither Plaintiff nor the Class consented to Google's interception and uses of content of email, neither minor Gmail users nor the senders of the email to Plaintiff and the Class Members consented to the interception and use of the emails, and Plaintiff and the Class Members are entitled to declaratory relief, statutory damages, and injunctive relief due to Google's conduct.

### 5.    *Plaintiffs Matthew C. Knowles and Brent Matthew Scott*

394.    Plaintiffs' claims are typical of the Classes they seek to represent in that

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Plaintiffs and the Class are non-Gmail subscribers; Plaintiffs and the Class Members exchanged email messages to and from @gmail.com users; none of the Plaintiffs or Class Members consented to the interception or use of their email messages; Google intercepted and acquired the email messages' contents; Google used the contents of Plaintiffs' and the Class Members' email messages; and Plaintiffs and the Class Members are entitled to declaratory relief, statutory damages, and injunctive relief due to Google's conduct.

**E.    Adequacy of Representation**

395.    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs' interests do not conflict with the interests of the Class Members they seek to represent.  Furthermore, Plaintiffs have retained competent counsel experienced in class action litigation.  Plaintiffs' counsel will fairly and adequately protect and represent the interests of the Class.

**F.    Predominance - There Are No Individual Issues and a Class Action is Superior**

396.    Pursuant to Fed. R. Civ. P. 23(b)(3), questions of law or fact common to the Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

397.    Google's reading of email message content, acquiring such content, collecting such content, creating derivative data from such content and collection of the same, or using and storing the content and annotations from the email messages are uniform.

398.    All disclosures made by Google to the Gmail users, Plaintiffs, Class Members, or any person upon which Google could assert a defense of consent are uniform.

399.    All disclosures made by third parties are based upon information from Google and may be uniformly adjudicated as if Google was the author of the information.

400.    A class action is superior to any individual actions available to affected Class Members because: (1) the individual members of the respective Classes are from several states; (2) for many Class Members, Google would likely require each affected individual Class

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Member using Gmail to litigate in California; and, (3) Google's non-disclosure and concealment of its unlawful conduct in communications with: (a) Gmail users; (b) the public; (c) Google Apps users, including Cable One Google Apps and Google Apps EDU users; and, (d) Plaintiffs, make it unlikely that individuals will be able to effectively or economically adjudicate their important individual privacy rights without this litigation; and, (4) one Class within the State of California on behalf of the affected Class Members is more efficient.

## VII.   JURY DEMANDED

Plaintiffs, individually and for the Classes they seek to represent, demand trial by jury on each and every triable issue.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class members they respectively seek to represent, request:

(1)    that this matter be certified as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(2)    that Plaintiffs be appointed as Class Representatives of their respective Classes they seek to represent;

(3)    that Class counsel be appointed pursuant to Rule 23(g); and,

(4)    that Class notice be promptly issued.

Further, Plaintiffs request the Court enter judgment against the Defendant as follows:

(1)    a Verdict against the Defendant for the causes of action alleged against it and for Class Damages;

(2)    an award to Plaintiffs for their personal damages pursuant to their respective causes of action;

(3)    an award to Plaintiffs for litigation costs reasonably incurred;

(4)    an award to Plaintiffs and Class Counsel for attorney fees;

(5)    an Order for the entry of the Court approved Verdict claims process and Class Claim Form;

(6)    an Order for the appointment of the Class Claims Administrator;

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS ACTION COMPLAINT**

1    (7)      an Order for the issuance of Verdict Notice to the Class Members;

2    (8)      an Order for the approval of Class Claims Administrator's findings as to Class

3    Members' Claims;

4    (9)      an Order for award of post-Verdict litigation costs reasonably incurred;

5    (10)     an Order for award of post-Verdict attorney fees;

6    (11)     Judgment for Plaintiffs and the Class Members for the amount of the approved

7    claims;

8    (12)     Judgment for Plaintiffs and the Class Members for litigation costs reasonably

9    incurred;

10   (13)     Judgment for Plaintiffs and the Class Members for attorney fees; and,

11   (14)     Judgment for all other relief to which Plaintiffs may prove and are entitled.

12       Respectfully submitted,

13

14   Dated:  November 13, 2013                    CORY WATSON CROWDER & DEGARIS, P.C.

15

16                              By:*/s/ F. Jerome Tapley*
                                  F. Jerome Tapley (*Pro Hac Vice*)
                                  Email: jtapley@cwcd.com
17                                2131 Magnolia Avenue
                                  Birmingham, AL 35205
18                                Telephone: (205) 328-2200
                                  Facsimile: (205) 324-7896
19
                                  WYLY~ROMMEL, PLLC
20                                Sean F. Rommel (*Pro Hac Vice*)
                                  Email: srommel@wylyrommel.com
21                                4004 Texas Boulevard
                                  Texarkana, Texas 75503
22                                Telephone: (903) 334-8646
                                  Facsimile: (903) 334-8645
23
                                  Plaintiffs' Co-Lead Counsel
24

25

26

27

28

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED INDIVIDUAL AND CLASS
ACTION COMPLAINT**