1  COOLEY LLP
   MICHAEL G. RHODES (116127)
2  (rhodesmg@cooley.com)
   WHITTY SOMVICHIAN (194463)
3  (wsomvichian@cooley.com)
   KYLE C. WONG (224021)
4  (kwong@cooley.com)
   101 California Street, 5th Floor
5  San Francisco, CA  94111-5800
   Telephone:    (415) 693-2000
6  Facsimile:    (415) 693-2222

7  Attorneys for Defendant
   GOOGLE INC.
8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                           SAN JOSE DIVISION

12

13 | IN RE GOOGLE INC. GMAIL | Case No. 5:13-md-02430 LHK (PSG)
   | LITIGATION              |
14 |                         | **EXHIBIT B TO
   |                         | DECLARATION OF STACEY KAPADIA IN
15 |                         | SUPPORT OF DEFENDANT GOOGLE INC.'S
   |                         | ADMINISTRATIVE MOTION TO FILE
16 |                         | PORTIONS OF DOCUMENTS UNDER SEAL**
17 |                         | Judge:   Hon. Lucy H. Koh
   |                         | Dept:    Courtroom 8 – 4th Floor
18

19                           **[PUBLIC REDACTED VERSION]**

20

21

22

23

24                           # Exhibit B

25

26           **REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED**

27

28

COOLEY LLP
ATTORNEYS AT LAW      1341701 /SF           DECL. OF STACEY KAPADIA ISO GOOGLE'S
SAN FRANCISCO                                 ADMIN MOT. TO FILE UNDER SEAL
                                              CASE NO. 5:13-MD-02430 LHK (PSG)

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE INC. GMAIL LITIGATION | Case No.  5:13-md-02430 LHK (PSG)<br><br>**DECLARATION OF STACEY KAPADIA IN SUPPORT OF GOOGLE INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Dept.:     Courtroom 8 - 4th Floor<br>Judge:    Hon. Lucy H. Koh |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF

**DECL. OF STACEY KAPADIA ISO GOOGLE'S OPPOS. TO MOT. FOR CLASS CERT**
**CASE NO. 5:13-MD-02430-LHK (PSG)**

I, Stacey Kapadia, declare as follows:

1. I am a Software Engineer at Google Inc. ("Google") and am familiar with Google's internal systems related to Gmail, as well as the general business decision-making and strategy related to these systems. I submit this declaration in support of Google's Opposition to Plaintiffs' Motion for Class Certification ("Opposition"). I have personal knowledge of the facts set forth in this Declaration based on my direct work experience and materials I have reviewed, and if called to testify, I could and would testify competently thereto.

2. Google does not process all emails sent to Gmail or Google Apps email accounts in a uniform manner. I understand that the Plaintiffs in this case have made a number of statements suggesting that Google "reads" all email messages to "model the actual ideas in a person's mind," among other claims. These are false assertions. Not only does Google's email processing differ from user to user, it differs from message to message, depending on a number of factors unique to each message, each user, and the manner in which each messages is accessed, as explained in further detail below.

3. Because the Plaintiffs assert claims based upon both messages sent to Gmail or Google Apps users and sent by those users, I address each in turn.

**MESSAGES SENT TO GMAIL OR GOOGLE APPS USERS**

**Initial Transfer of Messages to Gmail**

4. Some emails sent to a Gmail or Google Apps email account are never received by the user because they fail to reach Gmail in the first place. For Google's systems to receive an email from a non-Gmail user, the computer server transmitting the email must successfully exchange a series of command/reply sequences with Google's servers using the Simple Mail Transfer Protocol ("SMTP"). If those sequences are not successful, the email is not delivered and the email does not undergo any scanning whatsoever. The sender may or may not be notified of the failed delivery. Therefore, a non-Gmail user who sends an email to a Gmail or Google Apps email account could have a record of the sent email in his or her email account (in a "sent" folder, for example) but the email may never have been received and processed by Google's Gmail systems.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF

1.

DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   5.      Google applies various processes to determine whether an email sent to a Gmail or
3   Google Apps email account is likely to be a spam email that the user is not interested in (for
4   example, unsolicited commercial emails, or emails from a sender the user has previously flagged
5   for sending spam). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google's
8   systems do not directly notify the sender that ▮▮▮▮▮▮▮▮▮▮▮▮
9   Thus, a person who sends an email to a Gmail or Google Apps email account could have a record
10  of the sent email in his or her own email account but the email may never have been received and
11  processed by Google's Gmail systems.

12  6.      Roughly ▮▮▮▮▮ email messages sent to Gmail users is rejected at the SMTP
13  level, and this number ▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮

15  7.      I understand Plaintiffs contend that ▮▮▮▮▮▮, any email sent to a Gmail
16  user would be ▮▮▮▮▮▮▮▮▮▮▮.[1] This is untrue.  ▮▮▮▮▮▮ is not, and has
17  never been, uniformly applied to messages received by Gmail users.

18  8.      As background, Google's ▮▮▮▮▮ is used in certain circumstances to
19  deliver targeted advertising when a Gmail user opens his or her email.  I understand that Plaintiffs
20  allege that Google wrongfully scans emails "while those messages are in transit" and that the
21  ▮▮▮▮▮ is part of the "Gmail Email Delivery Flow."  This is incorrect.  The ▮▮▮▮▮
22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮

24  9.      ▮▮▮▮▮▮ is automated and does not involve human review.  If ▮▮
25  ▮▮▮▮ is applied, it operates by identifying words in an email message that are likely to
26  match words relevant to advertising.  These are called "keywords."

---

[1] I understand that Plaintiffs do *not* appear to contend that emails sent to a Google Apps user are uniformly processed by the ▮▮▮▮▮▮

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF                         2.                  DECL. OF STACEY KAPADIA ISO GOOGLE'S
                                                        OPPOS. TO MOT. FOR CLASS CERT
                                                        CASE NO. 5:13-MD-02430-LHK (PSG)

1  10. ▇▇▇ is not applied uniformly to all emails. In the time period before ▇▇▇ that Plaintiffs focus on, the ▇▇▇ was not applied to messages sent to Gmail users in numerous circumstances, depending on factors that vary for each email.

 a. *First*, ▇▇▇ did not process an email sent to a Gmail user unless the message was successfully received by the Gmail system. As noted above, an email may not be received depending on the results of the SMTP exchange process. In these circumstances, the email would not be available for review and ▇▇▇ apply.

 b. *Second*, ▇▇▇ Gmail user accesses his or her Gmail account in a manner that displays advertisements to the user. ▇▇▇ advertisements were normally shown to a Gmail user only if the user accessed his or her Gmail account from a desktop computer by accessing the Gmail website using a standard web browser. In this circumstance, assuming the ▇▇▇ operated correctly, it would select the advertisements that were displayed to the user when he or she opened an email.

 c. In other circumstances, advertisements were *not* shown to a user and so there was ▇▇▇ These exceptions below apply to the pre▇▇▇ time period that Plaintiffs focus on and are also applicable ▇▇▇

  i. ***Google Apps customers who disable advertising***: Many Google Apps customers have advertisements disabled. If they have advertising disabled, no advertisements are displayed to their end users, and ▇▇▇ is not applied when the end users views their emails. I understand that all the Plaintiffs in this case who purport to represent Google Apps users had accounts in which advertising was disabled. If so, ▇▇▇ did not apply when they viewed their messages.[2]

---

[2] The other individualized issues related to ▇▇▇ of Gmail messages also apply equally to Google Apps messages.

        ii.    ***HTML-only interface***: Another example is viewing Gmail using an HyperText Markup Language only ("HTML-only") interface, which displays Gmail in a simplified display format that omits advertisements. Any user can view Gmail in an HTML-format by using a link that Google publicly provides.[3] In addition, Google defaults to HTML-only mode if a user accesses Gmail using an unsupported browser. And Google provides a user logging in the option of defaulting to an HTML-only mode in certain circumstances, such as when a user's Internet connection is slow and full Gmail would take longer than usual to load.

        iii.    ***Mobile devices***: Another very common example is when a user views his or her Gmail account over a smartphone, tablet, or other mobile device. Google provides free "apps" that allow users to access their Gmail accounts from these mobile devices. Users could also access their Gmail accounts using a mobile web browser. ███████████████ emails that were opened and viewed using one of these mobile apps, or using a mobile web browser, because these apps did not display advertisements. Roughly ███ ███████████ takes place from mobile devices, and the level has been increasing over time.

        iv.    ***IMAP and POP protocols***: Similarly, if recipients use other interfaces to review their emails that do not display advertising—for example, using the iGoogle interface[5] or using a protocol like IMAP or POP to retrieve

---

[3] Google explains this process and provides the link to the HTML view at the following URL: https://support.google.com/mail/answer/15049?hl=en.

[4] Google began initial experiments for displaying ads within the mobile interface for Gmail for certain users beginning in July 2013 and recently launched mobile ads to additional users.

[5] iGoogle is a free Google service that permits users to view information from multiple online sources in one place. For example, an iGoogle user may view their Gmail inbox, a selection of popular YouTube videos, top news stories, and information about the weather on his or her iGoogle page. Additional information about iGoogle is available here: http://support.google.com/websearch/bin/answer.py?hl=en&answer=20324.

1  messages and download them to a computer for review in email software like
2  Microsoft Outlook[6]— ▮▮▮▮▮▮▮▮▮▮
3      d.    **Third**, the ▮▮▮▮▮▮▮▮▮▮ emails that were identified as spam
4  messages and routed to a Gmail user's spam folder (or placed there manually by the user)
5  unless the user accessed the spam folder and opened the email using a method that
6  displays advertising.
7      e.    **Fourth**, even if an email was opened using a standard web browser in a manner
8  that displays advertising, any of a number of technical issues could prevent an email from
9  being processed ▮▮▮▮▮▮
10          i.    ▮▮▮ *errors*: errors sometimes occur in one of the systems necessary to
11  execute ▮▮▮▮▮▮. An error in any one of those systems could prevent the
12  process from occurring, through the email would still be viewable by the user.
13          ii.    ▮▮▮ *downtime*: Google's servers also undergo occasional downtime for
14  maintenance or for improvements. An email viewed during downtime may not
15  have undergone ▮▮▮▮▮▮.
16          iii.    ▮▮▮ *outages*: Google's servers also undergo occasional unplanned
17  outages. An email viewed during a time when one of the systems involved in
18  ▮▮▮▮▮▮ experienced an outage may not have undergone ▮▮▮
19  ▮▮▮.
20      f.    **Fifth**, an email message may also ▮▮▮▮▮▮▮▮▮▮
21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22  ▮▮▮ to process. For example, an email forwarding ▮▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] "IMAP" stands for Internet Message Access Protocol; "POP" stands for Post Office Protocol. Both are free systems that permit an email user to download messages from servers of email services onto the user's computer so that the user can access email with a program like Microsoft Outlook, even when the user is not connected to the Internet. Gmail is compatible with both IMAP and POP. Additional information about using IMAP and POP with Gmail is available here: https://support.google.com/mail/bin/static.py?hl=en&ts=1668960&page=ts.cs.

1       g. **Sixth**, an email message may also have encrypted content. Encrypted content takes various forms, but it generally cannot be processed by the Gmail system. For example, an encrypted message may simply not be accessible to Google's systems. Another common example is "PGP" encryption, which is publicly available and widely used.[7] A PGP-encrypted message appears as random text, and cannot be decoded without a key. If a person sent a PGP-encrypted message to a Gmail user, ███████ but it would be applied to the scrambled text generated by the encryption process and not the actual content of the sender's email. None of the message's actual words could be derived by Google's systems, and ██████████████████████████████.

11. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In the specific case of a non-Gmail user sending an email to a Gmail user, I am ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ that processing of emails through the ██████ is improper. ██████████ is part of a series of steps that Google refers to generally as ██████

---

[7] Instructions for for using PGP encryption are widely available on popular websites. For example, Lifehacker.com recently published an article available at the following link: http://lifehacker.com/how-to-encrypt-your-email-and-keep-your-conversations-p-1133495744.

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ occurs when Google's systems receive an email sent to a Gmail

2   or Google Apps email account, and that email has passed through the SMTP process. ▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮ the process is automated and does not involve human review.

5         13.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I understand that the Plaintiffs assert that ▮▮▮ was implemented

7   in ▮▮▮▮▮▮▮ and began scanning all incoming Gmail or Google Apps messages immediately,

8   but that is untrue. Rather, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11        14.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is processing incoming emails to identify ▮▮▮▮

12  keywords and ▮▮▮▮▮ REPHIL clusters for personalized advertising. ▮▮▮▮▮▮▮▮▮ the term

13  "keywords" refers to words likely to serve as a match for advertising and potentially other uses.

14  The term ▮▮▮▮▮▮" refers to a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20        15.   "REPHIL clusters" are numerical IDs, which Google has automatically generated

21  based on how frequently certain words appear near one another. For example, Google may

22  associate the terms "cheddar" and "cheese," and create a numerical ID recognizing that

23  association. If ▮▮▮▮ recognizes that those terms appear in an email, it may identify the REPHIL

24  cluster associated with those terms. However, Google would not attempt to understand what the

25  message said about cheddar and cheese, apart from recognizing that the words exist in the

26  message.

27        16.   I understand that the Plaintiffs claim that REPHIL clusters "are supposed to model

28  the actual ideas in a person's mind before that person accesses" an email. Google does not

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF                          7.                 DECL. OF STACEY KAPADIA ISO GOOGLE'S
                                                        OPPOS. TO MOT. FOR CLASS CERT
                                                        CASE NO. 5:13-MD-02430-LHK (PSG)

1  purport to have mind-reading ability. Identification of ▮▮▮ keywords and ▮▮▮ REPHIL
2  clusters involves nothing more than an identification of words, or small clusters of words, ▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ based upon their potential match for advertising and other
4  purposes. REPHIL clusters may associate certain words with the same "concepts," but those
5  concepts are identified not by humans, but by an automated process. For example, Google's
6  algorithms may determine that the word "Mustang" in a cluster with "Ford" is appropriate for an
7  advertisement related to cars, rather than horses.

8      17.    In addition to providing more relevant advertising, ▮▮▮▮▮▮ enables a
9  number of other features that benefit Gmail or Google Apps users, such as enabling users to click
10 URL links that are emailed to them and be directed to the website behind the link; helping to
11 identify address information contained in an email and display related maps; helping to identify
12 package tracking numbers contained in an email to enable users to click a button to track a
13 package; and helping users to keep track of their travel itineraries, among others.

14     18.    ▮▮▮▮▮▮ is not uniformly applied to all incoming emails and depends on
15 factors that vary for each email, including whether an email ▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to process
18 a message. These factors are explained further below:

19     a.    ▮▮▮▮▮▮▮▮▮ an email received by a Gmail or Google Apps
20 email account generally ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮ If an email was designated ▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF      8.      DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

b. I understand that the Plaintiffs say their claims involve scanning of emails sent to a Gmail or Google Apps email account. For these emails, there is no way to determine from any information in the sender's account whether the email ▮▮▮ Google does not send any information to the sender indicating that the email ▮▮▮.

c. ▮▮▮ for example. ▮▮▮ also ▮▮▮ even if they consist of a ▮▮▮ The same is true for other types of ▮▮▮ or other file types.

d. In addition, if an email contains a ▮▮▮.

e. ▮▮▮ even if the ▮▮▮ For example, if one email attaches several other emails as attachments, the ▮▮▮ The same is true of ▮▮▮.

f. ▮▮ *error rate*: In certain instances, Google's systems will attempt to initiate the ▮▮▮ will not respond. In these instances, the email can still become available for the recipient to open, but there will ▮▮▮.

g. ▮▮ *downtime*: ▮▮▮ is affected by the fact that Google's servers also undergo occasional downtime for maintenance or for improvements. An email


1  received by the Google system during downtime ▮▮▮

2  ▮▮▮.

3  h. ▮▮▮ *outages*: like any technical system, the ▮▮▮ and related processes

4  experience technical problems. Incoming emails will not be scanned by a process that is

5  experiencing an outage, ▮▮▮.

6  19. ▮▮▮ cannot interpret encrypted content. When an encrypted

7  email is sent to a Gmail or Google Apps email account, the actual content of the email will

8  typically not be scanned ▮▮▮. Instead, ▮▮▮ would be applied, if at all, to the

9  scrambled text generated by the encryption process.

10  20. ▮▮▮

11  ▮▮▮

12  ▮▮▮

13  ▮▮▮

14  ▮▮▮ In the specific case of a non-Gmail user sending an email to a

15  Gmail or Google Apps email account, I am ▮▮▮

16  ▮▮▮

17  ▮▮▮

18  ▮▮▮

19  ▮▮▮

20  ▮▮▮

21  ▮▮▮

22  ▮▮▮

23  21. I understand that the Plaintiffs assert that they do not challenge Gmail's spam

24  filtering. In ▮▮▮ Google modified its process so that ▮▮▮

25  ▮▮▮ described in paragraph 18(a) above, and is used as ▮▮▮

26  ▮▮▮ Whether and how the results of the ▮▮▮ are actually used in the

27  ▮▮▮ on the specific outputs of the ▮▮▮ for each email. For

28  example, ▮ scans emails to determine if they contain words that may indicate a message is a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF

10.

DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

1  commercial email.  If an email is identified as a commercial email, that information is used as one
2  of the criteria in the spam filtering process for determining whether an email should be marked as
3  spam.  The use of ███████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████
5  ██████████.

6      22.    This ████████████████████████████████ the other circumstances noted
7  above in which ████████████████████ on certain emails.  For example, ████ still has an
8  error rate in which it fails to scan some emails; ████ still does not scan the content of encrypted
9  messages; and ████ still does not scan certain types of email content.
10  ████████████████████████████████████

11      23.    The Plaintiffs make a brief reference to the ████████████████████
12  asserting without explanation that both are used "to read, learn, extract, and acquire the content of
13  all email messages."  While it is difficult to understand the Plaintiffs' position given the lack of
14  detail, Plaintiffs' statement is incorrect in that these systems do not "read, learn, extract, and
15  acquire the content of all email messages" in any sense.

16      24.    The ████████ performs basic functions that are commonly used in nearly all
17  email services.  For example, ██████ parses messages so that they can be properly displayed by
18  distinguishing the "to," "from," and other parts of the message "header," from the body of the
19  email text.  ██████ also creates an index of the words in an email so that Gmail and Google Apps
20  users can search their messages using specific search terms.  These are basic functions that are
21  universal to modern email services.

22      25.    The ████████ is the technical process that enables Gmail's "Priority Inbox"
23  feature.  Priority Inbox helps Gmail and Google Apps users organize their inboxes by placing the
24  user's "Important and unread" messages first in the inbox, followed by "Starred" messages that a
25  user has marked to indicate their importance, followed by "Everything else," which includes
26  messages that are unimportant (such as mass emails from commercial senders) and messages that
27  have been read by the user.  As Google informs users, the message's importance is determined
28  based upon factors like whether the sender is someone the user interacts with frequently, the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF      11.      DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

1  user's past treatment of messages from the sender, and the words in the email message. ▮
2  processing is not uniformly applied for many of the same reasons that ▮
3  are not uniformly applied. In addition, ▮ processing is ▮
4  ▮ Thus, if it occurs at all, ▮
5  processing may occur on a message for the ▮
6   I understand that the Plaintiffs' theory is that class certification is appropriate because, they
7  claim, scanning occurs uniformly before a message is viewed by a recipient. If so, then the
8  Plaintiffs' theory ▮

9          26.  ▮
10 ▮
11 ▮
12 ▮
13 ▮
14 ▮
15 ▮

## MESSAGES SENT FROM GMAIL OR GOOGLE APPS EMAIL ACCOUNTS

17         27.  Messages sent from Gmail or Google Apps email accounts to non-Gmail users are
18 ▮. As with incoming messages, ▮ performs fundamental
19 functions necessary for proper display, formatting, and transmission. Plaintiffs do not explain
20 how this could be unlawful. Thus, with regard to messages sent from Gmail or Google Apps
21 email accounts, I address only ▮

22         28.  Google does not include ads in the emails sent from Gmail or Google Apps email
23 accounts, so there is ▮. In some specific circumstances, a Gmail user
24 who sends an email is directed (after clicking "send") to his or her inbox and can be shown an ad
25 that is based on the terms of the email that was just sent. In these circumstances, ▮
26 ▮ is applied to scan the sent email and select an advertisement based upon keywords

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF                    12.    DECL. OF STACEY KAPADIA ISO GOOGLE'S
                                      OPPOS. TO MOT. FOR CLASS CERT
                                      CASE NO. 5:13-MD-02430-LHK (PSG)

1  identified in the email. This process applies to outgoing Gmail messages only in limited
2  circumstances, when all of a number of elements are present

3  29. All the limitations that apply to ▮ for incoming messages apply also to
4  outgoing messages. For example, ▮ will process a message sent by a Gmail user only if the
5  Gmail user uses a supported browser, views Gmail in a manner that displays advertising, no error
6  occurs, and so on. ▮ will also not process a message sent by a Google Apps user unless, in
7  addition to all the other limitations, the Google Apps customer has enabled advertising.

8  30. In addition, ▮ generally applies to outgoing messages ▮
9  ▮ if the
10 Gmail user is ▮ with only minor exceptions during a brief
11 period of time.[8]

12 31. ▮ the Gmail user has his or her ▮
13 ▮ "Webclips" refers to the box that appears above the inbox or above an opened
14 email, which can display text ads along with other Web content. If the user has ▮
15 ▮—which any Gmail user can easily do— the Gmail user will not see text ads in this box
16 and there will be ▮

17 32. Google also displays different types of advertisements to Gmail users, ▮
18 ▮ These are known as "Gmail sponsored promotions." Gmail
19 sponsored promotions are ads formatted similarly to email messages, which users can easily share
20 with others or dismiss at their choice. These ads are distinct from text ads in Gmail. Gmail
21 sponsored promotions, which are now the preferred form of advertisement in Gmail, are not
22 chosen based upon the content of an individual message. Thus, when a Gmail user sends an
23 email and a Gmail sponsored promotion is selected for display, the ▮
24 ▮

25 33. In Spring 2013, Google launched a new inbox design known as "Sectioned Inbox."
26 Sectioned Inbox allows users to automatically sort their incoming email messages into five

27 [8] ▮
28 ▮

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF

13.

DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

1  default categories: "Primary," "Social," "Promotional," "Updates," and "Forums." This enables
2  users to view their most important "Primary" messages first, and catch up on other categories at a
3  convenient later time. Users can also create their own customized tabs. Sectioned Inbox is now
4  the default format for the Gmail inbox, although users can also retain the original Gmail inbox
5  format if they choose to. Most Gmail users have switched to Sectioned Inbox, instead of
6  retaining the previous Gmail format. Sectioned Inbox is also available to users of Google Apps
7  email accounts. Like Gmail users, Google Apps email account users have the option of switching
8  to Sectioned Inbox, although it is not the default inbox format in Google Apps.

9        34. Among other adjustments, Sectioned Inbox shows more limited advertising than
10 previous versions of Gmail, restricting advertising within the inbox to the "Promotions" tab only
11 unless the user takes other actions. When a Gmail user who has activated Sectioned Inbox
12 (including the "Promotions" tab) sends a message, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮

14       35. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

24 **USER MODEL IN GMAIL**

25       36. I understand that Plaintiffs assert that Google uses email content to create "secret
26 user profiles" and to "spy on its Gmail users." Contrary to this characterization, the ▮▮▮▮▮
27 ▮▮▮▮ maintained in connection with Gmail is simply part of the process of displaying
28 personalized ads. The ▮▮▮▮▮▮▮▮▮ stores information from a number of the most recent

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF      14.      DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

1   emails received by that user, along with basic data useful to providing more relevant advertising,

2   ▓

3   ▓

4   ▓   The email information included in the user model consists

5   primarily of the outputs of the ▓ described above, for the most recent emails received

6   by that email account. If the user deletes an email, any information in the user model related to

7   that email will also be deleted after a short period of time.

**PLAINTIFFS' PROPOSED CLASSES**

37. I understand that the Plaintiffs in this case are seeking to represent groups of non-Gmail users who sent emails to and received emails from Gmail users and are (1) Florida residents; (2) Maryland residents; and (3) persons who live in the United States but not in California.

38. Google does not have internal data that could be used to reliably identify the individuals who meet these definitions. For example, Google has no internal data that could be used to reliably identify whether someone who communicates with a Gmail user is a Maryland resident, a Florida resident, or a U.S. resident who is not a California resident. Nor does Google have data to reliably show that emails sent by Gmail users to non-Gmail users were actually received by the intended recipient. Nor does Google have an existing list of all non-Gmail email accounts that have been used over time to send emails to, or receive emails from, the Gmail system.

39. Google also does not have comprehensive information on which Gmail users reside in California or any other particular state. Users are not required to identify their state of residency as part of creating a Gmail account so Google will generally not have information on whether a particular Gmail user resides in California or any other particular state.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF

15.

DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed in San Francisco, California, this 21st day of November, 2013.

/s/ Stacey Kapadia
Stacey Kapadia

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from its signatory.

Dated: November 21, 2013

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)

/s/ Whitty Somvichian
Whitty Somvichian (194463)
Attorneys for Defendant GOOGLE INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1341607 /SF

16.

DECL. OF STACEY KAPADIA ISO GOOGLE'S
OPPOS. TO MOT. FOR CLASS CERT
CASE NO. 5:13-MD-02430-LHK (PSG)