WYLY~ROMMEL, PLLC
Sean F. Rommel (*Pro Hac Vice*)
Email: srommel@wylyrommel.com
4004 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 334-8646
Facsimile: (903) 334-8645

CORY WATSON CROWDER & DEGARIS, P.C.
F. Jerome Tapley (*Pro Hac Vice*)
Email: jtapley@cwcd.com
2131 Magnolia Avenue
Birmingham, Alabama 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

*Plaintiffs' Co-Lead Counsel*

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (SBN 138902)
Email: kirk@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone: (916) 567-1111
Facsimile:  (916) 567-1112

*Plaintiffs' Liaison Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| IN RE GOOGLE INC. GMAIL LITIGATION | Master Docket No.: 13-MD-02430-LHK |
|---|---|
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | **DECLARATION OF MATTHEW D. GREEN, PH.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**<br><br>Date:     January 16, 2014<br>Time:    1:30 p.m.<br>Judge:  Hon. Lucy H. Koh<br>Place:   Courtroom 8—4th Floor<br><br>Trial Date: October 20, 2014 |

///

///       [PUBLIC REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]

///

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK

1    I, Matthew D. Green, Ph.D., under penalty of perjury pursuant to 28 U.S.C. § 1746, hereby make the following Declaration in support of the Plaintiffs' Consolidated Motion for Class Certification, and state as follows:

    1.    Various Google employees have given unequivocal declarations that Gmail processes data in non-uniform ways and that information does not exist to process Class Member claims. Plaintiffs' counsel has asked me to give my opinion as to whether those unequivocal declarations are consistent with the evidence Google has produced in this case, and whether a trier of fact can resolve any disputes using common proof. On January 28, 2013, I submitted a declaration in support of Mr. Keith Dunbar's Motion for Class Certification in the matter *Keith Dunbar, et al. v. Google, Inc.*, 5:12-cv-03305-LHK, In the United States District Court for the Northern District of California. I incorporate my statements and opinions expressed in that declaration into this Declaration as if re-written herein and attach that declaration as Exhibit A.

    2.    On March 28, 2013, I submitted a supplemental declaration in support of Mr. Keith Dunbar's Motion for Class Certification in the matter *Keith Dunbar, et al. v. Google, Inc.,*, 5:12-cv-03305-LHK, In the United States District Court for the Northern District of California. I incorporate my statements and opinions expressed in that declaration into this Declaration as if re-written herein and attach that declaration as Exhibit B.

    3.    I base my analysis on a review of the documents identified in Exhibits A and B, as well as the following:

- The Consolidated Motion for Class Certification;
- Declaration of Sean Rommel in Support of the Consolidated Motion for Class Certification and Exhibits;
- The Opposition to the Consolidated Motion for Class Certification;
- Google's Declarations and Exhibits in Opposition to the Consolidated Motion for Class Certification; and
- Declaration of Sean Rommel in Reply and Exhibits.

    4.    [REDACTED] (Kapadia Dec., p.1:8-9.) I read the remainder

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                              1

1  of the Kapadia Declaration as an attempt to support this assertion. I have addressed many of the
2  issues raised by the Kapadia Declaration in my Exhibits A and B and offer those in rebuttal. In
3  addition, I will address more specifically additional issues or supplement prior statements based
4  upon new information made available since my last declaration. However, the unequivocal
5  assertions made by Stacey Kapadia throughout the Kapadia Declaration that Google's systems
6  are not uniform for various reasons versus the evidence upon which I rely would appear to
7  allow for a common question(s) upon which a single trier of fact could answer. Each step in the
8  Gmail process can be posed to a single trier of fact as to its uniform application given a very
9  few finite events as I have previously identified and reiterate below.

     5.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ (Kapadia Dec., p. 1:9-11.) I have addressed separately the uniformity of Google's actions in the preceding and subsequent paragraphs. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, ¶¶ 8-9, 18, 20, 21, 26-27, and offer these paragraphs in rebuttal to the Kapadia assertion stating otherwise. I note that the quoted passage, "model the actual ideas in a person's mind," is a direct quote from the PHIL patent application which reads in relevant parts:

- "Processing text in a way that captures its underlying meaning—its semantics—is an often performed but poorly understood task." (Rommel Dec., Exh. F)

- "In general, search systems and other such semantic processing systems have failed to capture much of the meaning behind text. The system we are about to describe does so, by learning the relationships between words and 'concepts' from a large amount of data." (*Id.*)

- "Our system, the Probabilistic Hierarchical Inferential Learner (PHIL) learns concepts by learning the explanatory model of text." (*Id.*)

- "Phil considers the important information in a piece of text to be words (and compounds) used in the text." (*Id.*)

- "It is because when people are generating text with these words, they have ideas in mind. Phil's concepts are supposed to model the ideas in a person' mind before they generate text." (*Id.*)

I would further note that Google's own 30(b)(6) witness, Thompson Gawley, had no perceived problem in understanding and agreeing with the statement(s) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                    2

1  ████████████████████████████████
2  ██████████████████████████████████
3  ████████████████
4  ██████████████████████████████████
5  ██████████████
6  ██████████████████████████████████
7  ████████████████████████
8  ██████████████████████████████████
9  ████████████████
10 ████████████████████████████
11 ██████████████████████████████████
12 ████████████████████████

(Rommel Reply Dec., Exh. D-1, p. 111:10-12.)  I would also note that another Google 30(b)(6) witness, Aaron Rothman, testified:

> A.  And I want to be clear that through the automated process, Google does try to—the Google systems try to endeavor the meaning of mustang, you know, by looking at the other relevant content of that email—excuse me not looking, trying to scan and process.

(Rommel Dec., Exh. I, p. 294:14-18.)

> A.  Again, I wanted to clarify that there is no human deriving meaning, but that the automated system is able to automatically process and endeavor, and as a result, try to figure out your use of the word.  Like the example used was mustang, right, the car versus the horse.

(Rommel Dec., Exh. I, p. 296:13-18.)

Google ████████████████████████████████████████ ████████████████████████████████ (Rommel Dec., Exh. C, p. 19:9-16.)

Stacey Kapadia also declares that ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                              3

1  ▮▮▮▮ (Kapadia Dec., ¶¶ 14-15.) However, these same statements
2 are supportive of evidence that could be applied to ▮▮▮ to determine whether
3 Google acquires any "*information concerning*" the substance, purport, or meaning of the email.
4 (18 U.S.C. § 2510(8) (emphasis added).) Stacey Kapadia's statements of COB's processes
5 evidences COB's ability to ▮▮▮
6 ▮▮▮
7 ▮▮▮
8 ▮▮▮
9 ▮▮▮
10 ▮▮▮
11 ▮▮▮ (Kapdia Dec., ¶ 16.) I will not speculate as to the basis for the
12 Kapadia distinction between humans or automated processes making these types of
13 associations. But an admitted "automated processes" that must examine the entirety of an
14 email's content for the presence or lack of ▮▮▮ and that has the capability of ▮▮▮
15 ▮▮▮ in my opinion, would be evidence I would apply to the statutory definitions of
16 "intercept" (which requires a non-human component of "electronic, mechanical, or other
17 device) (18 U.S.C. § 2510(4)); "electronic, mechanical, or other device," (which requires a non-
18 human component of "device or apparatus") (18 U.S.C. § 2510(5)); and "contents" (which
19 involves "any information" concerning the substance, purport, or meaning) (18 U.S.C. §
20 2510(8)). In my opinion, the Kapadia declaration provides evidence for a determination that
21 ▮▮▮ in fact acquire "any information" about an email's substance, purport, or meaning.
22 The substance may have great relevance or weight to the benefit of Google, or it may have little
23 to no value to Google. But Google's ability to make that determination, in my opinion, would
24 be evidence applied to ▮▮▮ processes to show that Google does acquire "any information"
25 about the email's content in order to make that decision.
26      6.     In addition, the evidence to-date does ▮▮▮
27 ▮▮▮
28 ▮▮▮

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                    4

1  ▮▮▮▮▮ (Rommel Reply Dec., Exhs. TT & FFF.)  As one Google employee stated:

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

(Rommel Reply Dec., Exh. SS.)

Because of the unequivocal assertion made by Stacey Kapadia that Google (to include its employees) does not read messages to obtain information concerning the substance, purport, or meaning versus the evidence upon which I rely, it would appear that a common question exists as to this factual issue which one trier of fact could answer.

**CONTENT ONEBOX ("COB")**

7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                    5

Case 5:13-md-02430-LHK   Document 112-21   Filed 12/19/13   Page 7 of 18

Rommel Dec., Exh. C, p. 18:20-23; Exh. K; A, p. 39:1-4, 65:3-12, 65:21-66:22; 67:1-12 (I discuss the mentioned failure rate issue below)).

8.

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                6

1  ████████████████████████████████████████
2  ████████████████████
3  ██ ██ ████████████████████
4  ██ ██ ██████████████████
5  ██ ██ ████████████████
6  ██ ████████████████████████████████
7  ████████████████████████████████████
8  ██████████████████████
9  ██ ██ ████████████████████████████████
   ██████████████████████████
10 ██ ██ ██████████████████
11 ██ ██ ████████████
12 ██ ██ ████████████████████████████████
13 ██████████████
14 ██ ██ ██████████████████
15 ██ ██ ████████████
16 ████████████████████████████████████████
17 ████████████████████████████████████████
18 ████████████████████████████████████████
19 ████████████████████████████████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ██████████████████████████████████. I have already
23 discussed the issues of lack of content, Word documents, encrypted information, etc., in Exhibit
24 B.
25    9.   *COB's Implementation*.  ██████████████████
26 ████████████████████████████████████████
27 ████████████████████████████████████████
28 ████████████████████████████████████████

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                 7

10. ***COB's Use In Google Apps Email.***

1  █████████████████████████████████████████████
2  █████████████████████████████████████████████
3  ███████████████████████████
4  ████  ████ *is "ad-related scanning or processing."* I am aware that Google tells
5  Google Apps users, "Note that there is no-ad related scanning or processing in Google Apps for
6  Education or Business with ads disabled." (Rommel Dec., Exh. R.) █████████████
7  █████████████████████████████████████████████
8  █████████████████████████████████████████████
9  █████████████████████████████████████████████
10 █████████████████████████████████████████████
11 ██████████████████████████ I note that Rommel Dec., Exh. R, was printed from the web-
12 page as of August 22, 2013. It also appears that Google's 30(b)(6) witness on consent, Aaron
13 Rothman, was questioned about Google's statement, "Note that there is no-ad related scanning
14 or processing in Google Apps for Education or Business with ads disabled," on August 29,
15 2013. (Rommel Dec., Exh. I, p. 188:22-189:1; 193:11-201:1.) In addition, Google states in
16 Exhibit R, "In other words, we scan or index user content in Google Apps in order to provide
17 features that will directly benefit users, or help us maintain the safety and security of our
18 system." Mr. Rothman was questioned about this statement as well. (Rommel Dec., Exh. I, p.
19 193:11-201:1.) To the Cable One Google Apps user or the Google Apps EDU user, all of ███
20 █████████████████████████████████████████████
21 ██████████████████████████████████ For any Cable One Google Apps user
22 or Google Apps EDU user, I find no direct benefit to the user or need for "safety and security of
23 [Google's] system" for any of the ████████████████████████████ and
24 applied to their emails. Finally, I note that following the Aaron Rothman deposition, it appears
25 Google removed from its web-page the language, "Note that there is no-ad related scanning or
26 processing in Google Apps for Education or Business with ads disabled." (Rommel Dec., Exh.
27 CC.)
28     12. **MEDLEY SERVER.** ████████████████████████████████

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK            9

1 █
2 █
3 █
4 █
5 ██
6 ██
7 █
8 █
9 ██ (Rommel Dec., Exh. G.)
10   14. ██
11 █
12 █
13 █
14 █
15 █
16 ██



Rommel Reply Dec., Exh. PP, p.15:25-16:7.

15. Due to this discrepancy between Google's ███
██ I disagree with Google's inferred position as to lack of knowledge about the litigation or a conflict when "J.K. acknowledged he has no issue with automated scanning to automatically organize emails by subject matter for a user's convenience, yet his Complaint alleges that the very process that implements this feature is an illegal intercepting 'device.'"

1  (Opp. p. 29:14-17.)  First, I was required to sign an Attachment A to the Agreed Protective
2  Order before I could view most of the documents upon which I rely in making these
3  Declarations.  My understanding is that most of Google's production in this case has been made
4  under a designation of "Highly Confidential—Attorneys' Eyes Only," and the majority if not all
5  of the documents upon which I have relied and that have been produced by Google have been
6  so-marked.  I also note that all of the sworn discovery responses and testimony provided to me
7  and which discuss Google's processes have been marked "Highly Confidential—Attorneys'
8  Eyes Only."  Secondly, as I note in this Declaration, there now appear to be numerous
9  contradictions inserted by Google in its current Opposition and supporting Declarations versus
10 the prior Google documentation, the Google sworn discovery responses, and Google's
11 testimony all on the material topics of Google's processes.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  J.K. may have been well within his
13 understanding of the case for having no concerns of what occurs in storage—a function not
14 involved in this matter.  In any event, the sheer volume of information marked confidential in
15 this case would pose a serious impediment to any Plaintiff or lay person attempting to match
16 and identify any particular process to a resulting feature.
17     16.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮  (Kapadia Dec., p. 9:17-21.)  While I have addressed this issue
19 *supra*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See*
20 Rommel Reply Dec., Exh. PP, p. 15:5-8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ████████████████████ (Rommel Reply Dec., Exh. PP, p. 9:9-16.)

2  17. **EVENTS TO ESTABLISH DEVICE APPLICATION AND CLASS MEMBER IDENTIFICATION.** I will respond to the assertions made in Google's Opposition and the Opposition declarations against the ability to verify Class Members and acts necessary to make a claim. In this Declaration, I have described certain processes leading to events a Plaintiff or Class Member would need to show to establish the application of a Google device upon a particular email.

18. I understand Google to assert that the proposed classes are unascertainable, in part, because individualized proof would be founded upon potential "class member affidavits." (Opp. 9:2-11). However, the verification of class membership and the events associated with the Gmail processes would be based upon objectively verifiable information from either the emails at issue, the public header data in those emails, or Google's own business logs not involving Gmail user email content. I will discuss these specifics *below*.

19. ████████████████████████████████████████████████ (Kapadia Declaraion, ¶¶ 20 & 26.) In my opinion, such logs specifying the particular device(s) are unnecessary to identify the relevant events and the class members.

20. Further, I understand Google to claim that the classes of individuals at issue would contain "Individuals who sent spam, computer viruses, or other abusive (or illegal) emails to Gmail users, who cannot use the wiretapping statutes to benefit from their own wrongful conduct." (Opp., p. 10:6-7.) ████████████████████████████████████████████████████████████████████ (*see also* Exhibit A, ¶ 20; Exhibit B, ¶ 8-11.) ████████████████████████████████████████████████████████████████████

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                                12

███████████████████████████████████ This single event is objectively verifiable by a number of methods, as well as Google's own records as discussed *below*.

21. Although I have previously addressed terms and phrases such as "Message IDs" or "message identifiers" (Exh. A, ¶¶ 14 and 41; Exh. B, ¶ 10), and "message headers" (Exh. A, ¶ 41), I will further describe these phrases and others in response to Stacey Kapadia's and Brandon Long's Declarations about the absence of logs and Google's assertion that the proof to be submitted by Plaintiffs and Class Members is either unavailable or not objectively determinable. All email messages contain certain data created when email is essentially transmitted, and I will briefly describe those to be discussed herein:

- The "Message-ID" field "contains a single unique message identifier," which refers to a "particular version of a particular message." (Rommel Dec., Exh. B, § 3.6.4.) It pertains to "exactly one instantiation of a particular message; subsequent revisions to the message each receive new message identifiers." (*Id.*)

- The "In-Reply-To" and "References" fields "are used when creating a reply to a message." (*Id.*) They hold the message identifier "of the original message," and the "In-Reply-To" contains the contents of the "'Message-ID:' field of the message to which this one is a reply ('the parent message')." (*Id.*) In the context of this case, such information would validate that a particular Plaintiff or Class Member had in fact sent an email message to an @gmail.com user and the message was in fact received by the @gmail.com user—as identified by the "In-Reply-To" field containing the "parent message" message identifier.

- Other fields include: (1) the "From" field, which identifies the author of the message and the mailbox (*Id.*, § 3.6.2); (2) the "To" field, which identifies the recipients of the message and contains the address(es) of the recipients (*Id.*,§ 3.6.3); and (3) the "Origination date field" or "Date" field (*Id.*, §§ 3.6, 3.6.1).

- Google itself provides an explanation in its web-page, "Reading full email headers," as to how these fields and others can be interpreted and read. (Rommel Reply Dec., Exh. YY.) Google also provides a very simple description of how such message headers, which "contain tracking information for an individual email," can be obtained from any number of Webmail providers. (Rommel Reply Dec., Exh. ZZ.) Such information could easily be conveyed to any Class Member for claim submission either contained fully in a notice or referenced by hyperlink.

- In this Declaration, I have referenced certain events, such as: non-spam, delivery, receipt, etc. I have also noted in Exhibit A, ¶ 41, the evidence of Google's logs which contain the necessary information to establish the events discussed herein. I note that Google claims in its Opposition that is does not maintain the necessary data for the events and other actions discussed herein. (Opp., p. 8 n.4) Further, Google asserts issues of overwhelming individual evidence leading to disputes necessary to set aside the "myriad issues needed to resolve their claim." (Opp., p. 8:14-23.) However, Google itself publishes web-sites explaining its own capabilities with its own business records through actual "Gmail delivery logs" to provide virtually all of the necessary information to support any

Plaintiffs' or Class Members' claims. (Rommel Reply Dec., Exh. AAA.) These types of logs allow Google to answer basic questions such as:

- ✓ "What happened to an inbound or outbound message?"
- ✓ "Was a message sent to my domain and marked as spam?"
- ✓ "Which users sent or received a specific message?"

(*Id.*) These Google business records contain "information that is available in the log search feature includ[ing]:"

- ✓ Sender,
- ✓ Recipient,
- ✓ Date,
- ✓ Message-ID,
- ✓ The presence of Attachments,
- ✓ Delivery status,
- ✓ Marked Spam,
- ✓ Rejected, and
- ✓ Delivered to Gmail inbox.

(*Id.; see also* Rommel Reply Dec., Exh. DDD ) Google even publicizes that it can provide the search for this information through "BigQuery because it can analyze ***multi-terabyte data with billions of header to deliver precise results in just a few seconds***." (*Id.*) These capabilities also allow for the identification of the IP address "a message has been sent." (Rommel Reply Dec., Exh. BBB.) This could certainly help verify geographic location, if necessary. While the web-site appears to be offered publicly to Google Apps administrators, Google's 30(b)(6) witness, Thompson Gawley, testified about the existence of "Gmail delivery logs" associated with "incoming mail" addressed to Gmail accounts. (Rommel Reply Dec., Exh. D-1, p. 189:13-190:31.) It is my opinion that Google has the capabilities within its own business records to provide the same information for matters associated with this case as it publicly makes available to Google Apps administrators.

- I note that Google claims availability of the type of identifying information and event information mentioned above is barred by the Storage Communication Act. I make no opinion as to the application of the Storage Communication Act. But Google's internal documents do reveal how Google treats the information discussed herein. Google does not consider "user-entered label names," "general headers" (except for "subject lines"), and "Gmail preferences" as User Data. (Rommel Reply Dec., Exh. CCC.)

- In its Opposition, Google does make note of the inability to determine geographic locations of class members. (Opp., p. 23, n. 27.) However, Google itself publishes its ability to determine "general physical location based on someone's computer or mobile device location" with the use of Internet Protocol (IP) addresses, which Google defines as, "a unique number assigned by Internet Service Providers to each computer connected to the Internet." (Rommel Reply

DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION
5:13-MD-002430-LHK             14

Dec., Exh. BBB & EEE; Rommel Reply Dec., Exh. D, p. 122:5-10.)

22. *Class Member verification*.

a. **Cable One Google Apps, Google Apps EDU users, and minor Gmail users**.

For any Cable One Google Apps user, Google Apps EDU user, and minor Gmail user, Google maintains ▆▆▆▆▆▆▆▆▆▆ as to each person based upon their email address which would establish the (1) their name, (2) their email address, (3) their status as a Gmail user, (4) date in which they activated their Gmail account, and (5) every IP address from which they logged-in or used their Gmail account. (Rommel Dec., Exh. W; Green Exhibits A & B) With verification of the date of activation of the Gmail account, Brandon Long's declaration about the differences in time in which an Apps user may have joined Gmail can be readily determined by the user's own information and with ease. (*c.f.* Long Dec., ¶¶ 4 & 6.)

As such, for any Cable One Google Apps user, Google Apps EDU user, and/or minor Gmail user, that person could submit any email within their inbox alleged to have been intercepted and the header information of that email to show who they are, the date of the email, and the sender of that email. In addition to verification of the class member being accomplished in this manner, the event for *delivery* would also be established. Further, metadata and the additional ▆▆▆▆▆▆▆▆▆▆ within their own email would clearly establish (1) spam or non-spam and (2) ▆▆▆▆▆▆▆▆▆▆ and its processes on that particular email as demonstrated by Rommel Reply Dec., Exh. XX.

For any Cable One Google Apps user, Google Apps EDU user, and/or minor Gmail user that person could submit any email within their sent box alleged to have been intercepted to show who they are, the date of the email, and the @gmail.com recipient of the email.

b. **Non-Gmail users**. A non-gmail user can be readily identified as being a person who sent an email from a non-gmail account *via* the email address utilized in the emails and claimed by that person to have been intercepted. In the same way Google can verify that a Gmail user or Apps user maintains a Gmail account and used a particular email address, Google can also verify that the email address used by a particular Class Member was not associated with a Gmail account. (Rommel Dec., Exh. W.)

As such, for every non-gmail user, that person could submit any email within their sent

box alleged to have been intercepted to show who they are, the date of the email, and the purported @gmail.com recipient of the email. The Plaintiff or Class Member would still need to show the applicable events as indicated below.

23. *Event Verification*.

a. *Emails sent to @gmail.com person or received by a Gmail or Google Apps Class Member*: After verification of the Class Member status, the following events would need to be established by the Plaintiff or Class Member to verify (1) Google's processing by any accused device to an email sent to an @gmail.com user or (2) Google's processing by any accused device of an email received by a Google Apps or Gmail user:

   i. ▇▇▇▇▇▇▇▇
   ▇▇▇▇▇ ▇ ▇▇▇▇

b. **Gmail and Google Apps Class Members**. For every Gmail or Google Apps Class Member who submits in their claim a received email from their own Gmail or Google Apps account as having been intercepted pursuant to that account, all of the necessary events can be verified and obtained in the ▇▇▇▇▇▇▇▇▇▇ Gmail delivery logs, or if necessary the metadata within their email as exhibited by Rommel Dec., Exh. W and Rommel Reply Dec., Exh. XX. As shown by Exh. XX, ▇▇▇▇▇▇▇▇▇▇▇▇▇ can be readily identifiable. The submission of a Message ID as contained in the header information would be the only information necessary to generate a verifying report.

c. **Emails sent to @gmail.com users**. For any Plaintiff or Class Member who submits a claim for an email as having been intercepted when sent to an @gmail.com recipient, the events of ▇▇▇▇▇▇▇▇ can be verified by the Gmail Delivery Logs or logs associated with the Message Id for that email based upon the sender, time, and date. An alternative form of proof of claim could easily be for the Plaintiff or Class Member to submit in the claims process the email received by the @gmail.com user along with the header information from that email. A reply email with the header information showing the "parent message" would also establish initial delivery to the Gmail user.

24. I understand that Brandon Long has declared that ▇▇▇▇▇▇▇▇

[REDACTED]

DATE: December 19, 2013.

*/s/ Matthew D. Green*
Matthew D. Green, Ph.D

**DECLARATION OF MATTHEW D. GREEN, Ph.D., IN REPLY AND IN SUPPORT OF THE CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                    17