WYLY~ROMMEL, PLLC
Sean F. Rommel (*Pro Hac Vice*)
Email: srommel@wylyrommel.com
4004 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 334-8646
Facsimile: (903) 334-8645

CORY WATSON CROWDER & DEGARIS, P.C.
F. Jerome Tapley (*Pro Hac Vice*)
Email: jtapley@cwcd.com
2131 Magnolia Avenue
Birmingham, Alabama 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

*Plaintiffs' Co-Lead Counsel*

CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (SBN 138902)
Email: kirk@cwclawfirm.com
1111 Exposition Boulevard, Suite 602
Sacramento, California 95815
Telephone: (916) 567-1111
Facsimile:  (916) 567-1112

*Plaintiffs' Liaison Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE INC. GMAIL LITIGATION | Master Docket No.: 13-MD-02430-LHK |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**<br><br>Date:    January 16, 2014<br>Time:    1:30 p.m.<br>Judge:   Hon. Lucy H. Koh<br>Place:   Courtroom 8—4th Floor<br><br>Trial Date: October 20, 2014<br><br>PUBLIC REDACTED |

///

///

///

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................1

II.   ARGUMENT .................................................................................................................1

      A.    The Common Question of Consent is Amenable to Class Treatment.....................1

            1.    Express Consent Should be Determined on a Class-wide Basis. ................1

            2.    Gmail and Google Apps Users Cannot Give Implied Consent ...................2

                  a.    Imlied consent would violate the Terms of Service ("TOS"). .........2

                  b.    Implied consent would violate the Parole-Evidence Rule...............2

                  c.    The Extrinsic Evidence violates the TOS.......................................3

            3.    Google Cannot Obtain Implied Consent From Non-Gmail Users ..............3

            4.    No Implied Consent Under CIPA ................................................................5

      B.    Class-wide Proof Demonstrates Google's Interceptions.........................................6

            1.    The Singular Gmail Architecture And Uniform Data Flow.......................6

                  a.    *"Received" by Google Apps and Minor Gmail Class Members*.......6

                  b.    *"Sent" by all Class Members to @gmail.com users*.........................6

            2.    The Accused Devices and the Interceptions................................................7

      C.    The Proposed Classes Are Ascertainable .................................................................9

      D.    The Proposed Class Representatives Are Adequate...............................................11

      E.    Choice of Law .........................................................................................................13

            1.    California Has a Strong Interest in Applying the CIPA ............................13

            2.    Google Failed to Establish a "True Conflict" .........................................14

            3.    California's Interest is Most Impaired......................................................16

      F.    This Class Action Is Superior................................................................................17

III.  EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE .......................................19

IV.   CONCLUSION ..............................................................................................................20

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
  2012 U.S. Dist. Lexis 123102 (S.D. Cal. 2012) ..................................................... 18

4

*Baccei v. United States,*
  632 F.3d 1140 (9th Cir. 2011) ............................................................................ 16

5

6

*Bateman v. American Multi-Cinema, Inc.,*
  623 F.3d 708 (9th Cir. 2010) ......................................................................... 17, 19

7

*Boyd v. City of Oakland,*
  458 F.Supp.2d 1015 (N.D. Cal. 2006) .................................................................. 19

8

9

*Casimir v. Remington Arms Co.,*
  2013 U.S. Dist. LEXIS 6765 (W.D. Wash. 2013) ................................................... 19

10

*Cent. Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.,*
  2013 U.S. Dist. LEXIS 172919 (C.D. Cal. 2013) ...................................................... 2

11

12

*Chavez v. Blue Sky Nat. Bev. Co.,*
  268 F.R.D. 365 (N.D. Cal. 2010) ......................................................................... 10

13

*Chevron Corp. v. Donziger,*
  2013 U.S. Dist. LEXIS 119622 (N.D. Cal. 2013) ...................................................... 8

14

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.,*
  109 Cal. App. 4th 944 (Ct. App. 2003) ................................................................... 2

15

16

*Gene & Gene LLC v. BioPay LLC,*
  541 F.3d 318 (5th Cir. 2008) ................................................................................ 5

17

*Griggs-Ryan v. Smith,*
  904 F.2d 112 (1st Cir. 1990) ................................................................................ 4

18

19

*Harris v. comScore, Inc.,*
  2013 U.S. Dist. LEXIS 47399 (N.D. Ill. 2013) ......................................................... 2

20

*Holloway v. Full Spectrum Lending,*
  2007 U.S. Dist. Lexis 59934 (C.D. Cal. 2007) ....................................................... 17

21

22

*Hunt v. Check Recovery Systems. Inc,*
  241 F.R.D. 505 (N.D. Cal. 2005) ....................................................................17-18

23

*Hurtado v. Superior Court,*
  11 Cal. 3d 574 (Cal. 1974) ................................................................................. 15

24

25

*IBLC Abogados, S.C. v. Bracamonte*
  2013 U.S. Dist. LEXIS 103739 (S.D. Cal. 2013) .................................................... 16

26

*In re Cathode Ray Tube (CRT) Antitrust Litig.,,*
  2013 U.S. Dist. LEXIS 137945 (N.D. Cal. 2013) .................................................... 10

27

28

*In re First Alliance Mortg. Co.,*
   471 F.3d 977 (9th Cir. 2006) ...................................................................................4-5

*In re High-Tech Emple. Antitrust Litig.,*
   2013 U.S. Dist. LEXIS 153752 (N.D. Cal. Oct. 24, 2013) .................................. 10, 20

*In re Napster, Inc. Copyright Litigation,*
   2005 U.S. Dist Lexis 11498 (N.D. Cal. 2005) ............................................................ 17

*In re Pharmatrack, Inc. Privacy Litigation,*
   329 F.3d 9 (1st Cir. 2003) ............................................................................................ 3

*In re TFT-LCD Antitrust Litig.,*
   2012 U.S. Dist. LEXIS 9449 (N.D. Cal. 2012) ....................................................... 10-11

*J. Truett Payne Co., Inc v. Chrysler Motors Corp.,*
   451 U.S. 557  (1981) ................................................................................................... 10

*Kearney v. Salomon Smith Barney,*
   39 Cal. 4th 95 (2006) .................................................................................................. 14

*Keilholtz v. Lennox Hearth Prods.,*
   268 F.R.D. 330 (N.D.Cal. 2010) ................................................................................. 10

*Kelser v. Ikea U.S. Inc.,*
   2008 U.S. Dist. Lexis 97555 (C.D. Cal. 2008) ........................................................... 17

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds,*
   571 F.3d 672 (7th Cir. 2009) ...................................................................................... 10

*Leckler v. CashCall, Inc..*
   554 F.Supp.2d 1025 (N.D. Cal. 2008) .......................................................................... 1

*Lemieux v. Schwan's Home Serv.,*
   2013 U.S. Dist. LEXIS 127032 (S.D. Cal. 2013) ........................................................ 10

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2012) ................................................................................17-18

*Mazza v. American Honda Motor Co., Inc.,*
   666 F.3d 581 (9th Cir. 2012) ..................................................................................13-16

*McCann v. Foster Wheeler, LLC,*
   48 Cal. 4th 68 (2010) .................................................................................................. 13

*Medina v. County of Riverside,*
   308 F.Appx. 118 (9th Cir. 2009) ...............................................................................3-4

*Murray v. Fin. Visions, Inc.,*
   2008 U.S. Dist. LEXIS 93419 (D. Ariz. 2008) ............................................................. 4

*Negrete v. Allianz Life Ins. Co. of N.A.,*
   238 F.R.D. 482 (C.D. Cal. 2006) .................................................................................. 5

*Northwest Mortgage, Inc. v. Superior Court,*
   72 Cal. App. 4th 214 (Cal. App. 1999) ...................................................................16-17

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION
FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                    iii

*Parkinson v. Hyundai Motor Am.,*
   258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................. 16

*People v. Nakai,*
   183 Cal. App. 4th 499 (Cal. App. 2010) ................................................................. 5-6

*Rowden v. City of Laguna Beach,*
   282 F.R.D. 581 (C.D. Cal. 2012) ............................................................................. 18

*Sanders v. Astrue,*
   2013 U.S. Dist. LEXIS 46029 (N.D. Cal. 2013) ...................................................... 19

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ........................................................................... 10, 17

*Spears v. First American Eappraiseit,*
   2012 U.S. Dist. Lexis 58077 (N.D. Cal. 2012) ....................................................... 17

*State v. Townsend,*
   57 P.3d 255 (Wash. 2002) .......................................................................................... 4

*Sullivan v. Oracle Corp.,*
   51 Cal. 4th 1191 (Cal. 2011) ................................................................................ 15-16

*Swanson v. U.S. Forest Serv.,*
   87 F.3d 339 (9th Cir. 1996) ...................................................................................... 19

*Tasion Communs. v. Ubiquiti Networks, Inc.,*
   2013 U.S. Dist. LEXIS 121207 (N.D. Cal. 2013) ................................................... 13

*Thomasson v. GC Servs., Ltd. P'ship,*
   275 F.R.D. 309 (S.D. Cal. 2011) ................................................................................ 9

*Ting v. AT&T,*
   319 F.3d 1126 (9th Cir. Cal. 2003) ............................................................................ 2

*United States v. Van Poyck,*
   77 F.3d 285 (9th Cir. 1996) ........................................................................................ 4

*Valentine v. NebuAd,*
   804 F. Supp. 2d 1022 (N.D. Cal. 2011) ................................................................... 14

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) ............................................................................... 11, 17

*Walker v. Life Insurance Company of the Southwest,*
   2012 U.S. Dist. Lexis 186296 (C.D. Cal. 2012) ................................................. 17, 18

*Wash. Mut. Bank v. Sup. Ct. of Orange Cty.,*
   24 Cal.4th 906 (Cal. 2001) ....................................................................................... 15

*Wershba v. Apple Computer, Inc.,*
   91 Cal. App. 4th 224 (Cal. App. 2001) .................................................................... 16

*Wilson Arlington Co. v. Prudential Ins. Co.,*
   912 F.2d 366 (9th Cir. 1990) ...................................................................................... 3

*Xavier v. Phillip Morris USA Inc.*,
    787 F.Supp.2d 1075 (N.D. Cal. 2011)..........................................................................9

**Statutes**

18 U.S.C. § 2510 ...............................................................................………....7

18 U.S.C. § 2511 ........................................................................................ 7-8

18 U.S.C. § 2701, *et seq.* ("SCA") .............................................................10

Cal. Pen. Code § 631…………………………………………………....5-6, 8, 9

Cal. Pen. Code § 632…..…………………………………………………...5-6

Cal. Fam. Code § 6701 .............................................................................…..1

Cal. Code Civ. Proc. § 1856 ...................................................................…..2

## I.   INTRODUCTION

Google's opposition does not alter the fact that this case is ideally suited for class treatment and certification of the refined Classes should be granted.

## II.   ARGUMENT

### A.   The Common Question of Consent is Amenable to Class Treatment

#### 1.   Express Consent Should be Determined on a Class-wide Basis.

"Consent to an interception can be explicit or implied, but any consent must be actual." (Order, ECF No. 69, 22:18-19.)   *See also Leckler v. CashCall, Inc.*, 554 F.Supp.2d 1025, 1030 (N.D. Cal. 2008) (vacated on other grounds).   The Parties agree that consent is an objective test. (Opp., ECF No. 101-3 at 11:5-6.)   Express consent is the only way Google can obtain actual consent from Gmail[1] and Google Apps[2] Class Members because: (1) extrinsic evidence outside of the contract would violate the parol evidence rule, and (2) the contract excludes extrinsic evidence through a merger clause.   (*See* Han Lee, Exh. A. (Dec. of Brad Chin, ¶ 14; Chin Exh. G, ¶ 20.2; ¶ 15; and Chin Exh. H, "About these Terms.")   This Court has already considered and ruled upon the only documents by which Google could obtain express consent from its users: the two versions of Google's Terms of Service ("TOS"), four Privacy Policies, Google's Create An Account Page, and its Legal Notice.[3]   The TOS and pre-March 2012 Privacy Policies "did not demonstrate explicit consent" and the post-2012 Privacy Policies "are no clearer than their predecessors in establishing consent."   (Order, ECF No. 69, 26:5-6.)   A jury can resolve the class-wide, common issue of express consent simply by reviewing the same disclosures and employing the same methodology the Court did when it denied Google's Motion to Dismiss on these grounds.

///

///

///

---

[1]  Google's "consent" argument fails to articulate how Google could obtain consent from the Minor Gmail Class—Google cannot because the members of the Class cannot give consent as a matter of law.  *See* Cal. Fam. Code § 6701(a), (c).

[2]  The "Google Apps Class Members" includes both the Cable One and Google Apps Edu users unless denoted otherwise.

[3]  *See* Transcript on Motion to Dismiss at 22, 26-27, 29-30.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

### 2.    Gmail and Google Apps Users Cannot Give Implied Consent

#### a.    Implied consent would violate the Terms of Service ("TOS").

We believe that we have created contractual limitations through our privacy policy and our terms of service policy and that those contractual limits are ones we have voluntarily assumed as limits… . [O]nce we've undertaken a contractual limitation, *of course consent is bound by the contractual as well as the statutory limits.* [Google's Counsel, Rommel Reply Dec., Exh. GGG, pp. 44:7-11, 47:19-23.] (emphasis added)

The TOS are contracts of adhesion[4] where Google exercised absolute control in choosing the words and terms of those agreements, including the merger clauses.[5]   (Rommel Reply Dec., Exh. I-1, 82:4-84:12; *See also* Dec. Han Lee, Exh A. (Dec. Brad Chin, ¶ 14; Chin Exh. G, ¶ 20.2; ¶ 15; and Chin Exh. H, "About these Terms".)   These merger clauses form an integrated contract and preclude Google from obtaining Gmail/Google Apps User consent from any extrinsic source.[6]

#### b.    Implied consent would violate the Parol-Evidence Rule.

Google cannot obtain implied consent from Gmail and Google Apps users because "that rule [implied consent] has no place where a party manifested consent through the adoption of a form contract."   *Harris v. comScore, Inc.*, 2013 U.S. Dist. LEXIS 47399, *16 (N.D. Ill. 2013).[7]   Google argues that a failed attempt at express consent can somehow morph into

---

[4] A contract of adhesion is "a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it."   *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. Cal. 2003).

[5] "An integration or merger clause is persuasive evidence of full integration[,]" and full integration bars admission of extrinsic parol-evidence. *Cent. Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.*, 2013 U.S. Dist. LEXIS 172919, *11 (C.D. Cal. 2013) (citing *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 953-54 (Cal. App. Ct. 2003). *See also* Cal. Code Civ. Proc. § 1856(b).

[6] TOS April 16, 2007: "20.2 The Terms constitute the whole legal agreement between you and Google and govern your use of the Services…and completely replace any prior agreements between you and Google in relation to the Services."   TOS Mar 1, 2013: "These terms control the relationship between Google and you."   Current TOS "These terms control the relationship between Google and you."   (*See* Dec. Han Lee, Exh A, Chin Dec., ¶¶ 14-15, Chin Exhs. G-H.)

[7] The *Harris* court explained: "'[i]n assessing whether contracting parties have mutually assented to a contract Illinois courts have long caused that the parties subjective intentions are irrelevant. Rather, courts must evaluate mutual assent based on the objective conduct of the parties[,]'" *i.e.* the terms of their agreement.) *Id.*   California substantive law is in accord.   *See Founding Members*, 109 Cal. App. 4th at 956 ("California recognizes the objective theory of contracts, under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'") (internal citations omitted).

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

implied consent through extrinsic evidence.  (*See* Dec. Han Lee, Exh A, Chin Dec., ¶¶ 24-66,

Chin Exs. P-Z, and Chin Exs. AA-NN.)  But, admission of the extrinsic evidence would violate

California's parol evidence rule which is designed to avoid—"sideshows in a circus of self-

serving declarations as to what the parties to the agreement really had in mind … and to avoid

costly and disruptive litigation over the existence of oral and implied terms that may or may not

have been contemplated by the parties."  *Wilson Arlington Co. v. Prudential Ins. Co.*, 912 F.2d

366, 370 (9th Cir. 1990).

### c.    The Extrinsic Evidence violates the TOS.

For the Google Apps Classes, Google expressly agreed: "***Note that there is no-ad***

***related scanning or processing***[8] ***in Google Apps for Education or Business with ads disabled***."

(Rommel Dec., Exh. R. (emphasis added).)[9] ████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ (Opp., ECF No. 101-3 at

2:25-27; Green Dec., ¶ 11.)  Google cannot obtain consent from the Google Apps Classes to do

those acts which run contrary to its agreements or statements.[10]

### 3.    Google Cannot Obtain Implied Consent From Non-Gmail Users

Google argues, citing to *Medina v. County of Riverside*, 308 F. Appx. 118 (9th Cir.

2009), that implied consent necessitates an inquiry into each non-Gmail users' knowledge of

Google's secret wiretapping.  However, *Medina* emphasizes the weakness of Google's position

because in *Medina*, the Ninth Circuit found that implied consent must be based upon disclosures

sufficient to "alert plaintiffs of the risk of wiretapping[.]"  *Medina*, 308 Fed. Appx. at 120, *see*

---

[8] The fact that Google distinguished "ad-related scanning and processing" from all of its other "automated processing" (spam, virus, or other features), belies Google's argument that this Court should treat all "automated processing" the same.  It also highlights that consent can in fact be limited.  *See In re Pharmatrack, Inc. Privacy Litig.*, 329 F.3d 9, 19 (1st Cir. 2003) ("A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications.").  It further refutes Google's claim that consent for *any* type of interception is consent for *every* type of interception.

[9] Google removed this language from its web-site in the fall of 2013, but only after Google's 30(b)(6) witness on consent was made aware of this obvious conflict. (*c.f.* Rommel Dec., Exh. R to Exh. CC.) (Rommel Decl, Exh I, p. 188:20-189:1, 193:11-208:3.)

[10] As an example, the Gmail Legal Notice specifically prohibits the ad-related scanning and processing which Google admits it performs on the emails of the Google Apps Class Members. (Han Lee, Exh. A. (Dec. of Brad Chin, ¶ 22 and Chin Exh. O).)

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

*also* (Opp., ECF No. 101-3 at 12:3-4.)  This Court found no "disclosures" "explicitly notify Plaintiffs that Google would intercept [in transit] users' emails for the purposes of creating user profiles or providing targeted advertising."  (ECF No. 69, 23:24-25.)  "Nothing in the Policies suggests that Google intercepts email communication in transit between users, and in fact, the policies obscure Google's intent to engage in such interceptions." (*Id.* at 25:24-25.)  In *sealing* declarations, Google declared that its wiretapping (termed "delivery processing," ECF No. 101-4, ¶ 12), which occurs *prior to delivery,* "before the email is opened by the recipient," is "proprietary information" that is "confidential and highly sensitive in nature."  (ECF No. 101-1, 5:19-6:2; ECF No. 101-1 ¶ 12.)[11]  Google "does not disclose this information to its competitors, customers, or the general public." (*Id.*)[12]  Thus, Google never "alert[s the class to] the risk of wiretapping," because the interceptions are closely guarded secrets.[13]

   For Non-Gmail accounts, Google identifies a uniform, manageable, and discreet set of twenty-seven Google documents on implied consent.  (Dec. Han Lee, Exh A (Dec. Chen Exhibits P-PP)).  Thus, the Court (on dispositive motion), or the trier of fact, could review these documents on a class-wide basis to determine implied consent—courts routinely find commonality and predominance in such circumstances.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006) ("[T]his court has followed an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'") (internal citations

---

[11] ████████████████████████████████████████████████████████████████████████

[12] As a result, Google cannot rely on cases wherein the **intercepting party** made the sufficient disclosures in order to obtain implied consent for its actions.  *See Medina*, 308 F. Appx. at 120 ("Numerous warnings, including audio recordings and signs, existed to alert plaintiffs of the risk of wiretapping in the jail."); *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996) (prison inmate viewed signs about recording calls, received a manual fully disclosing recording, and signed consent form); *Griggs-Ryan v. Smith*, 904 F.2d 112, 117 (1st Cir. 1990) (Defendant "spoke to [plaintiff] and informed him that all incoming telephone calls to [her] home were being tape recorded.").  Furthermore, *State v. Townsend*, 57 P.3d 255 (Wash. 2002), does not contemplate a third-party to a communication obtaining implied consent to intercept messages based on knowledge of "general industry practices," as Google surmises.  (Opp., ECF No. 101-3 at 11:18-20.)  In *Townsend*, the Washington court found that a "user of e-mail had to understand that computers are, among other things, a message recording device," thus the mere receipt of an email cannot support a claim for an unauthorized recording.  *Townsend*, 57 P.3d at 260.

[13] Because Google's interceptions are a trade secret hidden from the entire class, Google cannot rely on *Murray v. Fin. Visions, Inc*., 2008 U.S. Dist. LEXIS 93419, *3-4 (D. Ariz. 2008), where some plaintiffs and class members had knowledge of and participated in their employer's policy of intercepting emails to assist compliance with SEC regulations.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

1   omitted); *Negrete v. Allianz Life Ins. Co. of N.A.*, 238 F.R.D. 482, 491 (C.D. Cal.

2   2006)("'claims based on uniform misrepresentations made to all members of the class' are

3   'appropriate subjects for class certification because the standardized misrepresentations may be

4   established by generalized proof'") (internal citations omitted).[14]

5           As this Court emphasized, Google could have plainly articulated to Class Members what

6   it does with their email contents.  Google chose otherwise.  Either Google itself, has obtained

7   consent, or it has not, and the trier of fact can make this determination on a class-wide basis.[15]

8   **4.      No Implied Consent Under CIPA**

9           As shown above, Google does not obtain express consent from its own users, much less

10  those who have not contracted with Google or agreed to Google's terms of service or privacy

11  policies.  CIPA prohibits "any unauthorized manner" of reading or attempted reading.  Any

12  reading or attempted reading under CIPA must be "authorized" evidencing the inapplicability of

13  implied consent to § 631.  Google cites no authority for its novel proposition.[16]

14

---

15  [14] Google's arguments are premised on the faulty assumption that Class Members will have to
    prove, on an individual basis, which Google documents they individually encountered.  But,
16  Google ignores Plaintiffs' argument–it makes no difference which "disclosure" Plaintiffs
    encountered because none "alert [them to] the risk of wiretapping."  See *In re First Alliance*
17  *Mortgage Co.,* 471 F.3d 977, 992 (9th Cir. 2006) (holding that where a "centrally-orchestrated
    scheme to mislead" is alleged, it is the scheme and not the precise details of any individual's
18  experience that forms the nucleus  of the class claims).  Because Plaintiffs can demonstrate a
    lack of consent to Google's interceptions on a class-wide basis, Google's reliance on cases
19  wherein a plaintiff failed to present class-wide evidence of the absence of consent in various
    contexts is inapposite.  *See, e.g.*, *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir.
20  2008) ("We emphasize again, however, that we do not hold as a matter of law that the consent
    requirement in the case before us defeats the possibility of class certification.  We merely hold
21  that [this plaintiff] has failed to advance any viable theory employing generalized proof
    concerning the lack of consent with respect to the class involved in this case[.]")
22  [15] Further, all of the non-Google sources are hearsay, and Google cannot show such disclosures
    contain any information apart from what Google has stated, because the information upon
23  which a truthful disclosure would be based is a secret.  Because the non-Google sources are
    hearsay, they cannot be offered to prove the truth of the matters asserted, and because they
24  cannot be offered as truthful, they are not relevant to the issue of consent, which "must be
    actual."  Thus, the only admissible evidence upon which Google can obtain consent is Google's
25  own statements, the writings which Google alone authored, and must rightfully live with.  The
    trier of fact can readily determine whether or not Google's statements are sufficient to obtain
26  actual consent—whether the statements "alert [the class members to] the risk of wiretapping."
    [16] Google cites *People v. Nakai*, 183 Cal. App. 4th 499, 517 (Cal. App. 2010) and claims that
27  the court "assess[ed] . . . whether the party impliedly consented to the recording of his online
    chat messages under CIPA."  (Opp., ECF No. 101-3 at 11:13-14.)  However, the alleged CIPA
28  violation at issue in *Nakai* was a recording under § 632, not an unauthorized wiretap under §
    631, and the court's analysis focused on whether recorded chat messages were "confidential"
    communications.  *See Nakai*, 183 Cal. App. 4th at 517-18.  *Nakai* does not analyze consent

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION
FOR CLASS CERTIFICATION**

### B.    Class-wide Proof Demonstrates Google's Interceptions

#### 1.    The Singular Gmail Architecture And Uniform Data Flow

Google uniformly intercepts all emails through a singular Gmail architecture and uniform Gmail data flow.  (Green Dec., ¶¶  4, 7, 9-10, 12, 16, 20, & 22-23 and Green Exh. B, ¶¶ 12-17, 23-29.)[17]  Both the interceptions and the events establishing the interceptions can be proven and verified on a class-wide basis.  (*Id.*)  The interceptions giving rise to the claims for certification concern only two paths of data flow: (1) messages received by Google Apps and Minor Gmail Class Members, and (2) messages sent to @gmail.com accounts by all Class Members.[18]

#### a.    *"Received" by Google Apps and Minor Gmail Class Members*

Google submits ▮▮▮▮▮▮▮▮▮ received by the Google Apps and Minor Gmail Class Members ▮▮▮▮▮ for processing/interception.[20]  (Green Dec., ¶ 7-11, 12-16.)  That Google delivered a message confirms the ▮▮▮▮▮▮▮ and conclusively establishes the processing/interception.  (Green Dec., ¶¶ 7 & 20.)  Google Apps and Minor Gmail Class Members can establish proof of delivery and ▮▮▮▮▮▮ in their own inboxes–thereby establishing interception, class membership, and entitlement to relief including damages.

#### b.    *"Sent" by all Class Members to @gmail.com users*

Google submits all ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮.[21]  (Green Dec., ¶ 7-16.)  That Google delivered a message confirms the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (*Id.* and ¶ 20.)

---

under § 631 nor "implied consent" under CIPA generally.  The word "implied" does not appear anywhere in the opinion.

[17] Plaintiffs incorporate herein the evidence cited in the respective paragraphs of the Green Declaration as if Plaintiffs cited to the evidence independent of the Declaration.

[18] Plaintiffs no longer seek to certify causes of action involving the ▮▮▮▮▮▮ processing.  Therefore, Google's arguments on the ▮▮▮▮▮▮ (see e.g.., Opp., ECF No. 101-3 at 19:9-23) are no longer relevant to the Court's analysis.  Instead, Plaintiffs focus on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs submit a Revised Proposed Order that reflects the revised class definitions.

[19] For a description of ▮▮▮▮, see Mot., ECF No. 85 at 4:22-26.

[20] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Green Dec., ¶ 7-11, 12-15.)

[21] See also fn. 20.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

1  All Class Members can establish proof of ████████████████████ by obtaining the

2  Message-ID from the @gmail.com addressee, by a reply message from the addressee, or the

3  header information compared to the Gmail delivery logs–thereby establishing interception, class

4  membership, and entitlement to relief including damages.  (Green Dec., ¶¶ 7, 12, 16, & 20-23.)

### 2. The Accused Devices and the Interceptions

6  Google intercepts email messages by using a device (COB) to acquire "*any information*

7  concerning the substance, purport, or meaning of that communication."  (18 U.S.C. § 2510(8)

8  (emphasis added).)  COB is a "device" because it is an "apparatus which can be used to

9  intercept a[n] . . . electronic communication" that is not "being used by a provider of wire or

10  electronic communication service in the ordinary course of its business."  18 U.S.C. §§ 2510

11  (5), (5)(a)(ii); (Green Dec., ¶¶ 5, 7-16.)  Google ignores the definition of "contents" which

12  includes "any information."  The Kapadia declaration alone (in addition to other testimony and

13  documents) shows that Google does in fact acquire "any information" about an email's

14  substance, purport, or meaning.  (Green Dec., ¶¶ 5-7, 11, 12-13, & 16.)  Some of the

15  information may benefit Google, some may not—but Google acquires the entire message—*all*

16  *information*—in order to make that determination.  (*Id.*; *see also* Mot., ECF No. 85 at 2:17-22.)

17  Thus, the interception is complete when Google ██████████████████—regardless of

18  whether the information is useful to Google.[22]

19  Google admits that it *endeavors* to and in fact does submit ████████████████

20  ████████  Google's interceptions are all *intentional* acts—a requisite mental state for an ECPA

21  violation.  (Mot., ECF No. 85 at 5:10-6:1, and the evidence cited therein); 18 U.S.C. §

---

[22] There is no credible evidence before this Court regarding error rates, percentages of errors, or percentages of system outages.  Google's 30(b)(6) designee ████████████████████ ██████████████████████████████████  (Green Dec., ¶ 8; Rommel Reply Dec., Exh. A-2, p. 20:3-23 (emphasis added).)  As to attachments, Word documents, Adobe pdf files, and the like, ████████████████████████████████████████████████  (Green Dec., ¶ 7-8, & 16, Green Exhibit B, ¶ 13, 15.) Plaintiffs object to and move to strike Google's self-serving statements about ████████ ████████ because it contradicts Google's *sworn testimony* ████████  (Green Dec., ¶ 10.)  And, Google offers no proof that Cable One or any Google Apps Edu administrator has initiated such a doubtful configuration. (Green Dec., ¶ 10.)

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

2511(1)(a).  Google also admits that it *endeavors* to determine the meaning of every message—establishing Google's intent to acquire "any information" concerning the substance, purport, and meaning of each message.  (Mot., ECF No. 85 at 2:17-22.)  As to the CIPA, that Google *endeavors* to intercept satisfies the "attempt" element ("***attempts*** to read, or to learn the contents or meaning of any message")—that alone is a violation of the CIPA's § 631.  (Emphasis added.)

Google ***admits*** that it can "show those [emails] went through the process that [Plaintiffs] allege to be wrongful" without a "violation of the SCA."  (Rommel Reply Dec., Exh. HHH, 35:4-10, 37:21-38:10, emphasis added.)  Google has all of the information (non-spam, receipt by the Gmail user) necessary to prove the interceptions.  Google maintains records—identified as "Gmail delivery logs" or "Gmail log search features"—about every email transaction.  (Rommel Reply Dec., Exh. AAA; Green Dec., ¶ 21.)  These logs allow Google to answer basic questions such as: "What happened to an inbound or outbound message?"; "Was a message sent to my domain and marked as spam?"; and "Which users sent or received a specific message?"  Moreover, Google has "information that is available in the log search feature includ[ing]: … Basic message information like ***Sender, Recipient*** … ***Date and Message-ID*** … ***Delivery status***."[23]  (*Id.*)  The log information does not contain "contents of a communication," is not User Data, and Google cannot hide it behind the SCA.  (Rommel Reply Dec., Exh. CCC; Green Dec. ¶ 21.)  Google *recently lost* this very argument.[24]  Accordingly, events such as ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ the only two events necessary to prove an interception ▮▮▮▮▮ can be verified from a single email in seconds.[26]  (Green Dec., ¶¶ 17-23.)  Thus, not only can Plaintiffs objectively prove on a class-wide basis, interception, class membership, and damages, all can be verified through Google's own business logs.[27]

---

[23]  Google can also derive the information from "headers" of emails in a "precise" and quick fashion: "We chose BigQuery because it can analyze multi-terabyte data sets with billions of headers ***to deliver precise results in just a few seconds.***"  (Rommel Reply Dec., Exh. AAA.)

[24]  *See Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 119622, *20-21 (N.D. Cal. 2013) (ordering Google to produce non-contents information pertaining to a subscriber).

[25]  If Google has declared the email as non-spam, non-viral, or non-abusive and delivered the message to the Gmail user, then not only has Google deemed the email worthy of class treatment, but it has also proven the interception.

[26]  All a claims administrator would have to do is query the delivery or impression logs, or submit the limited, necessary information to Google for verification.

[27]  Google also provides narratives of how any Class Member can obtain the tracking information from their email headers to collect the necessary information for claim submission.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

Finally, Google admits that § 631 of the CIPA applies to communications that have a connection to California.  (Opp., ECF No. 101-3 at 22:11-12.)  Plaintiffs have demonstrated that all of the emails at issue have a connection to California.  (Mot., ECF No. 85 at 25:25-26:14; Rommel Reply Dec., Exh. PP. 18:4.)  Further, Google's argument, unsupported with authority, that the CIPA only protects communications while they are in transit within California is erroneous, as § 631's language is clearly disjunctive.  As such, Google's predominance attack based upon its self-imposed limitation that Plaintiffs be required to show that emails were sent to California residents is logically inconsistent, founded upon faulty statutory construction, and meritless.  Moreover, whether the epicenter of Google's actions occur within California is a question that can be universally answered by a single finder of fact.

## C.   The Proposed Classes Are Ascertainable

Google does not challenge the ascertainability of Minor Gmail or Google Apps Classes—those Classes are easily ascertainable because they have Gmail accounts and contracts with Google.[28]  For the Non-Gmail Classes, Plaintiffs can easily identify themselves as fitting into the applicable class definition and prove class membership through the submission of a single email (or header information) which objectively identifies: (1) account holder status— non-Gmail; and (2) that they sent an email to an @gmail.com address.[29]  For Non-Gmail users: the submission of an email received from a Gmail user in reply to an original message demonstrates delivery, interception, and class membership; or, the submission of a copy of an email received by the Gmail user demonstrates the same.[30]  *See* discussion *supra*.  Moreover,

---

(Rommel Reply Dec., Exhs. YY & ZZ; Green Dec., ¶ 21.)   Additionally, a simple ████████ search of ███████████████████ can easily determine the @gmail.com account status and non-Gmail account status of the parties to the communication.  (Rommel Dec., Exh. W; Green Dec., ¶ 22a.)

[28]  Although not challenged under ascertainability, Minor Gmail and Google Apps Members need only submit a single non-spam email from their own inbox to prove delivery, interception, and class membership.  Account status can be established through GAIA.  (Rommel Dec., Exh. W.)

[29]  See *Thomasson v. GC Servs., Ltd. P'ship*, 275 F.R.D. 309, 313 (S.D. Cal. 2011) ("describe[ing] a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description."

[30]  While obscuring both the simplicity and sufficiency of Plaintiffs' proposed claims process, Google relies on cases wherein a lack of quality, objective evidence prevented the court from assessing an individual's class membership. *See, e.g., Xavier v. Phillip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D. Cal. 2011) (proposed identification of class members required individual testimony, with no documentary proof, that he or she smoked 146,000 Marlboro

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

1   Class Member submissions can be objectively verified by Google's non-content information

2   (e.g. log information) to confirm whether ▮▮▮▮ intercepted any given message.[31]  *See* discussion

3   *supra*.  Thus, "'it is administratively feasible for a court to ascertain whether an individual is a

4   member' . . . 'by reference to objective criteria.'"  *In re High-Tech Empl. Antitrust Litig*., 2013

5   U.S. Dist. LEXIS 153752, *37-38 (N.D. Cal. 2013) (internal citations omitted).  At the class

6   certification stage, "the ascertaining of [class members'] actual identities is not required."

7   *Lemieux v. Schwan's Home Serv*., 2013 U.S. Dist. LEXIS 127032, *13 (S.D. Cal. 2013).  *See*

8   *also Keilholtz v. Lennox Hearth Products, Inc.* 268 F.R.D. 330, 336 (N.D. Cal. 2010); *Chavez v.*

9   *Blue Sky Nat. Bev. Co*., 268 F.R.D. 365, 376 (N.D. Cal. 2010).

10         The uniformity of Google's email processing means that all Class Members have

11   standing to pursue a claim against Google, but the possibility of *some* overbreadth at the time of

12   certification is not fatal to the finding of an ascertainable class.  *See In re: Cathode Ray Tube*

13   *(CRT) Antitrust Litig*., 2013 U.S. Dist. LEXIS 137945, *90-91 (N.D. Cal. 2013) ("Further, even

14   if some individuals join the class and it is then determined that their units did not contain

15   Defendants' CRTs, this does not preclude class certification."), *citing Kohen v. Pac. Inv. Mgmt.*

16   *Co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009) ("a class will often include

17   persons who have not been injured by the defendant's conduct . . . Such a possibility or indeed

18   inevitability does not preclude class certification[.]").  *See also In re TFT-LCD Antitrust Litig*.,

19   2012 U.S. Dist. LEXIS 9449, *41-42 (N.D. Cal. 2012) ("It may be that some individuals lack

20   sufficient proof to establish class membership, but that is not reason to decertify all of the IPP

21

22   cigarettes).  By contrast, all members posses, and can submit, the objective evidence needed to
     conclusively demonstrate class membership.

23   [31]  As mentioned above, the SCA has no application here because as Google's counsel
     represented to Judge Grewal: "If they want us to confirm, hey, in my sent items, I see that I sent

24   100 e-mails to Gmail recipients.  I need to be able to show that those went through the process
     that I allege to be wrongful.  We can figure out a way to do that." (ECF No. 247, pp. 37-38,

25   5:12-cv-03305, N.D. Cal.)  They want to prove up damages.  We can figure out how to do
     that." (*Id.* at 37.)  Rightfully so, because  Google can't hide proof created in the process of its

26   own unlawful acts.  *See, e.g., J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-
     67 (1981) ("[I]t does not 'come with very good grace' for the wrongdoer to insist upon specific

27   and certain proof of the injury which it has itself inflicted.") (internal citations omitted).  *See*
     *also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990)

28   ("Having intentionally violated statutory recording requirements, the defendants may not
     attempt to 'avoid a class suit merely because their own actions have made the class more
     difficult to identify [or locate].'")  (internal citations omitted).

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION
FOR CLASS CERTIFICATION**

1    classes. Rather, the claims of those individuals can be examined once the claims period has

2    closed."); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) ("A class

3    action is the superior method for managing litigation if no realistic alternative exists.").  Thus,

4    Google's argument incorrectly melds ascertainability with proof of membership and entitlement

5    to damages.  *See In re TFT-LCD*, 2012 U.S. Dist. LEXIS 9449, *41 ("In the Court's view,

6    defendants' arguments do not undermine the ascertainability of the class, which remains defined

7    by objective criteria.  Instead, defendants' arguments relate to proof of class membership, a

8    distinct concept.  Numerous courts have held that a class can be certified even if its membership

9    is unclear or overbroad.").[32]   The Classes are identifiable, ascertainable, and proof of

10   membership and entitlement to relief including damages are objectively verifiable.

11           **D.      The Proposed Class Representatives Are Adequate**

12           "The threshold of knowledge required to qualify a class representative is low; a class

13   representative will be deemed inadequate only if 'startlingly unfamiliar' with the case." *Moeller*

14   *v. Taco Bell Corp.,* 220 F.R.D. 604, 611 (N.D. Cal. 2004).  Google's Opposition does not

15   disturb the adequacy of any proposed Class Representative.[33]   That Class Representatives

16   continue to exchange emails with Gmail users ignores the reality that no one can unilaterally

17   choose who emails them or what service others use.  But Google can obey the law rather than

18   ask Class Members to ostracize themselves from email exchanges with Gmail users in order to

19   avoid Google's unlawful conduct.  Google's privacy invasions offend each Plaintiff.[34]  (*See*

20   ECF Nos. 86-30 through 86-38, Rommel Dec. ISO Mot. for Class Cert., Exs. EE-MM; ECF No.

21   98-3, First Amended Consolidated Class Action Complaint.)  Google exaggerates JK's (Gmail

22   Minor Sub-Class) and Carrillo's (Google Apps Edu) continued, limited, and understandable use

23   of their accounts.[35]   And, Google Apps Edu representative Fread is forced to use his

24   ---
     [32] Google overlooks that Plaintiffs seek injunctive relief which would apply to Google's actions
25   and not any individual's *ability* to recover damages.
     [33] Whether Plaintiffs can recover for their post-filing emails is a question for the Court or a
26   jury–it does not adversely affect Plaintiffs' adequacy to represent their respective classes.
     [34] As Plaintiff Dunbar testified, "I expect Google to follow the law, to follow their own policies.
27   That's what I expect."  (Rommel Dec., Exh. EE, p. 43:2-14 (p. 97 of 149).)
     [35] JK used his Gmail account three times. (AK Dep., 21:2-4.)  Moreover, because JK, as a
28   minor, cannot legally consent to the interceptions in the first instance, any continued use of his
     Gmail account is irrelevant.  Carrillo testified that he has not closed his @u.pacific.edu account
     because he receives notices from his *alma mater* law school and he is not sure how to close it.

     **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION**
     **FOR CLASS CERTIFICATION**

@u.hawaii.edu account because it is the only means by which he can receive official communications from his *current* University. (Fread Dep., 66:22-67:5; 160:3-11.)   Google's supposition that Plaintiffs' really do not object to Google's conduct ignores the facts, testimony, and the filing of these lawsuits seeking to end Google's unlawful privacy invasions.

Google's standing challenge is without merit—Google subjected all of the Plaintiffs' emails to the secret wiretapping before they suspected as much or filed suit, and, with the exception of Fread, Google does not dispute this.  Fread "signed up" for his "Powered by Google" @u.hawaii.edu account–his only option for receiving official school communications.  Fread's concerns were *generalized* and driven by information based on the *Street View* case against Google—not knowledge of Google's wiretapping of his email messages.  (Fread Dep., 55:14-56:24.)   Fread and the Google Apps Edu Class he seeks to represent are similarly situated—students who are forced to use official school accounts whose emails are intercepted by Google.  (*Id.*, 76:14-77:10; 78:22-79:19.)

Google caused Plaintiffs' lack of *technical knowledge* to answer *technical questions* by designating documents concerning its secret wiretapping as **Confidential "Attorney's Eyes Only."**  (*See* e.g. Fread Dep., 107:13-109:7, 164:11-165:17; Carrillo Dep., 59:22-60:22, 75:22-77:20; 186:5-28; Knowles Dep., 73:19-74:7; Brent Scott Dep., 175:4-176:8, Green Dec., ¶ 15 .)[36] Plaintiff Harrington did understand that content scanning for purposes of providing targeted advertising was part of his claims. (Harrington Dep., 169:1-170:7)  Google's Counsel sought to overcome Google's confidential designations through unfair hypothetical questions, which improperly assumed erroneous, disputed facts.  JK and his mother AK, like other Plaintiffs, who were faced with these hypothetical questions, explained their inability to answer.  (AK Dep., 134:21-137:21; JK Dep., 78:10-81:14.)   Plaintiff Kovler's expression of confidence in his counsel's experience does not disturb his understanding of, or willingness to fulfill, his obligations to the Class.  (Kovler Dep., 138:7-18, 124:10-23.)  That Plaintiff Carrillo's law firm bought a copier that runs through a Gmail account (opened by the *copier supplier*, not Carrillo),

---

(Carrillo Dep., 226:10-24.)  Importantly, Google fails to reconcile its statement that no "ad-related scanning or processing" occurs, when the opposite is true.

[36] Importantly, Google's own employees, unencumbered by the confidential designations cannot explain it either.  (Rommel Dec. Exh. I, pp. 23-28, 206-212, 261-262, & 266; Exh. S.)

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

or that Plaintiff JK apparently opened a second Gmail account for a Facebook account he was asked to create for a local "Police Explorer" program, does not create conflict—both are irrelevant.[37]  (Carrillo Dep., 91:9-92:2; 283:3-284:23; JK Dep., 32:19-33:9.)  Whatever business dealings Brad Scott's employer, a large real estate company, had in the past with Google is irrelevant and creates no conflict.  (Brent Scott Dep., 212:1-213:23.)

Ultimately, Plaintiffs are familiar with the basis for the suit and familiar with their responsibilities as lead plaintiffs—that is sufficient to establish their adequacy. *In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litigation,* 270 F.R.D. 521, 531 (N.D.Cal.2010); *Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 267 (N.D. Cal. 2011).  Indeed, "[t]o be sufficiently knowledgeable, a plaintiff must "understand [her] duties and [be] currently willing and able to perform them. The Rule does not require more."[38] *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 602 (C.D. Cal. 2011)(internal citations omitted).

### E.   Choice of Law[39]

California has "sufficient aggregation of contacts to the claims of each class member" such that Google does not dispute or even argue that the application of CIPA would offend due process.  *See Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 589-90 (9th Cir. 2012); (*See* Mot., ECF No. 85 at 25:22-26:14, establishing **significant** contacts to California).  Google's must therefore "demonstrate that foreign law, rather than California law, should apply to the class claims."  *Id.* at 590 (citation omitted).

### 1.   California Has a Strong Interest in Applying the CIPA

"[T]he California Supreme Court has recognized[] states have an interest 'in regulating conduct that occurs within its borders' and applying its laws to corporations operating within its borders." *Tasion Communs. v. Ubiquiti Networks, Inc.*, 2013 U.S. Dist. LEXIS 121207, *41 (N.D. Cal. 2013), quoting *McCann v. Foster Wheeler LLC,* 48 Cal. 4th 68, 98 (Cal. 2010). This

---

[37] That AK had a preexisting Gmail account which Google admits she does not use for email is irrelevant because she is Next Friend of a **minor** Gmail sub-class.  Knowles' pre-existing Gmail account continues to receive minimal email traffic.  (Knowles Dep., 93:11-22.)

[38] Plaintiffs object and move to strike Google's summary, offered through the improper testimony of Google's counsel, which mischaracterizes Plaintiffs' testimony concerning how each came to hire his counsel.  Somvichian Dec. ¶¶ 17, 38, 49, 65, and 88.

[39] Google concedes that Maryland law applies to the Maryland Class and that Florida law applies to the Florida Class.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

1    case is no different, especially where the facts in this case show that California is the

2    "epicenter" of the privacy violations at issue.  (Mot., ECF No.85 at 25:22-26:14.)

3         Google's reliance on *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95 (Cal. 2006) for

4    the proposition that California has no interest in applying CIPA to the conduct of Google—

5    headquartered and incorporated in California—is misplaced because the facts in *Kearney* are

6    inapposite: "*Kearney v. Salomon Smith Barney*, on which [Google] relies to show that the CIPA

7    protects only California residents, is of limited value because its facts are opposite those here:

8    the *Kearney* plaintiffs were California residents suing an out-of-state defendant, whereas

9    Plaintiffs here are out-of-state residents suing a California defendant."  *Valentine v. NebuAd*,

10   804 F. Supp. 2d 1022, 1027 (N.D. Cal. 2011).  The court in *Valentine* reasoned that any

11   limitations should "logically" derive from the "provisions of statutes governing civil

12   remedies[,]" and the statute "provides that an action under the CIPA can be brought by '*[a]ny*

13   *person* who has been injured by a violation of this chapter … against the person who committed

14   the violation … To conclude otherwise would mean the California Legislature intended to allow

15   California residents to violate CIPA … with impunity with respect to out-of-state individuals

16   and entities, a result this Court declines to reach."  *Id.* at 1027-28 (emphasis in original). The

17   same reasoned analysis applies here.

### 2.    Google Failed to Establish a "True Conflict"

19        Instead of carrying its burden to analyze the other forty-nine states' interests in applying

20   their law ***to the facts of this case*** to determine whether a "true conflict" exists, Google makes a

21   sweeping pronouncement that *Mazza* stands for the proposition that in ***every case*** involving

22   non-resident claimants, all states have an interest in applying their own consumer protection

23   laws.  (See Opp., ECF No. 101-3 at 26:2-12.)  Google's burden is not that easy–it must establish

24   the other 49 states' interests in applying their law to the ***facts and circumstances of this case***:

> "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event **[that party] must demonstrate that the latter rule of decision will further the interest of the foreign state** and therefore that it is an appropriate one for the forum to apply to the case before it."
>
> If, however, the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its

own law applied to the case. **Despite materially different laws, "there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." This means the trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied.**

*Wash. Mut. Bank v. Sup. Ct. of Orange Cty.*, 24 Cal.4th 906, 919-20 (Cal. 2001) (emphasis added, internal citations omitted). Google has failed to establish that a "true conflict" exists because it does not explain "what interest, if any, each state has in having its own law applied **to th[is] case**." Thus, "[this] [C]ourt may properly find California law applicable without proceeding to the third step in the analysis … ." (*Id.*)

Google disregards ***critical*** elements underpinning *Mazza's* holding: "Under the ***facts and circumstances of this case***, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction ***in which the transaction took place***." *Mazza*, 666 F.3d at 594 (emphasis added) (finding the affirmative misrepresentations and "transactions" at issue occurred "within 44 different jurisdictions"). Here, every Gmail "transaction" is governed by California law, through Google's choice of law provision in its Terms of Service. (Han Lee, Exh A. (Dec. Brad Chin, ¶ 14 and Chin Exh. G, ¶ 20.2; ¶ 15 Chin Exh. H.) Google offers no facts of any occurrence or "transaction" in any state outside of California. The only fact unique to any other state is the *residency of the class members*. But, no state has an interest in applying their own law merely because a class member resides in that state. And, that each state "has an interest in setting the appropriate level of liability for companies conducting business within its territory," *id.* at 594, is illusory because Google, through the choice of law provision, has already chosen California as "the appropriate level of liability" for all Gmail "transactions." These facts present a textbook "false conflict"[40]

---

[40] In *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (Cal. 2011), non-resident plaintiffs working in California sought relief under "California's overtime law" even though it "clearly differs from that of Colorado and Arizona, plaintiffs' home states." *Sullivan*, 51 Cal. at 1203. Despite those differences, the California Supreme Court found that a "true conflict" was "doubtful, at best," because California had a clear interest in regulating activity within its borders. *Id.* at 1205. The court's analysis considered that "a state can properly choose to create a business-friendly environment within its own boundaries," but observed that "*every* state enjoys the same power," including California, and that no state had an interest in shielding the defendant from liability under California law. *See id. See also Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 (Cal. 1974) ("When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.").

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**
5:13-MD-002430-LHK                    15

because Google has made it impossible for any state other than California to have an interest "in having its own law applied to th[is] case."   The facts before the Court demonstrate that California is the only state who has an interest in having its law apply to this case.[41]  (*See* Mot., ECF No. 85 at 25:22-26:14.)

### 3.        California's Interest is Most Impaired

Under the third prong of the governmental interest analysis, Google takes the same fatal step it did under the second prong by proclaiming that *Mazza* stands for the universal proposition that ***in every case*** "foreign states would be [more] impaired in their ability to calibrate liability to foster commerce" than California.  *Mazza*, 666 F.3d at 593.  In *Mazza*, the Ninth Circuit recognized "California has an interest in regulating those who do business within its state boundaries," but disagreed with the application of California law "to the claims of foreign residents ***concerning acts that took place in other states*** … ." *Id.* at 594 (emphasis added). Here, the undisputed facts show the "bulk of the relevant, actionable conduct"— notwithstanding the class members' residency—occurred in California.  (*See* Mot., ECF No. 85 at 25:22-26:14, 28:6-29:13.)  Under the facts of this case, no state has the ability "to calibrate liability to foster commerce" except California because Google has chosen California law to calibrate its liability for every Gmail "transaction."   Google has failed to "demonstrate that foreign law, rather than California law, should apply to the class claims." *Id.* at 590.  Not only is California's interest in applying CIPA compelling, its interest would be more impaired if CIPA is not applied.[42]

---

[41]  Google does not dispute Plaintiffs' facts; any such argument is therefore waived.  *Baccei v. United States,* 632 F.3d 1140, 1149 (9th Cir. 2011).

[42]  *See, e.g.*, *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 244 (Cal. App. 2001) (affirming certification of nationwide class that included non-residents, even where differences in state laws arose); *Sullivan*, 51 Cal. 4th at 1205-06 ("to subordinate California's interests to those of Colorado and Arizona unquestionably would bring about the greater impairment"); *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 589 (C.D. Cal. 2008) ("Even assuming a conflict existed, defendant cannot show that another state has a more substantial interest in having its laws apply to this action. California has a strong interest in policing wrongful conduct allegedly occurring within its borders, including when the victims of such conduct are out-of-state residents."); *IBLC Abogados, S.C. v. Bracamonte*, 2013 U.S. Dist. LEXIS 103739, *31 (S.D. Cal. 2013) (applying California law to non-residents' claims where true conflict exists) ("California has an additional significant interest in this case that Mexico does not. The fact that the proceeding is taking place in California is important to the choice of law issue."); *Northwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225 n. 13 (Cal. App. 1999)

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

### F.      This Class Action Is Superior

In *Six (6) Mexican Workers v. Arizona Citrus Growers*, the Ninth Circuit found a class action seeking only statutory damages to be superior because "statutory damages … are not dependent on proof of actual injury" and the "statutory damages provision" provides a "strong deterrence function[.]"  *Six (6) Mexican Workers*, 904 F.2d at 1306.  "[T]he availability of statutory damages weighs in favor rather than against class certification ... ."  *In re Napster, Inc. Copyright Litig.*, 2005 U.S. Dist. Lexis 11498, *36 (N.D. Cal. 2005) (relying on Ninth Circuit's holding in *Six (6) Mexican Workers*).  Courts in this Circuit routinely find class actions superior where statutory damages, attorney's fees, and costs are available.[43]  *See Bateman v. American Multi-Cinema, Inc.* 623 F.3d 708 (9th Cir. 2010), discussed *infra*.  In addition to the four superiority factors enumerated in Rule 23, superiority is satisfied "where no realistic alternative to class resolution exists."  *Walker v. Life Ins. Co. of the Southwest*, 2012 U.S. Dist. Lexis 186296, *48 (C.D. Cal. 2012), citing *Valentino*, 97 F.3d at 1234-35.  "This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution."  *Id.*, citing *Hanlon*, 150 F.3d at 1023.

Google's failure to analyze the four superiority factors is fatal.[44]  Google offers no "comparative evaluation of alternative mechanisms of dispute resolution," other than the prospect of thousands of costly, inefficient, individual suits brought before this Court in this MDL.[45]  Even if it did analyze the four superiority factors, Plaintiffs satisfy each.  *See Local*

---

(affirming certification of class of non-residents to the extent "the injury arose from offending conduct occurring in California").

[43] *See Spears v. First American Eappraiseit*, 2012 U.S. Dist. Lexis 58077, *23-24 (N.D. Cal. 2012); *In re Napster*, 2005 U.S. Dist Lexis 11498, *42 (N.D. Cal. 2005); *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514-15 (N.D. Cal. 2005); *Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. Lexis 59934, *25-26 (C.D. Cal. 2007); *Kelser v. Ikea U.S., Inc.*, 2008 U.S. Dist. Lexis 97555, *24 (C.D. Cal. 2008).

[44] *See In re Napster*, 2005 U.S. Dist. Lexis 11498, *33 (Finding superiority where "[r]ather than focusing on the considerations identified in Rule 23(b)(3), Bertelsmann's analysis of the 'superiority' issue emphasizes the availability of statutory damages and attorneys' fees under the Copyright Act as an incentive for individual class members to file their own infringement actions."  Also, MDL coordination "attests to the advantages of litigating all Napster-related claims in this court" *Id.* at *32.

[45] *See Kelser*, 2008 U.S. Dist. Lexis 97555, *24 ("The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."); *Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. Lexis 59934, *25-27 (C.D. Cal. 2007) ("'[T]he alternative to class action is likely to

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

1  *Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152,

2  1163 (9th Cir. 2001)[46]

3        Under superiority, Google relies on two inapposite cases—neither of which are ECPA or

4  CIPA cases.  *Antoninetti v. Chipotle Mexican Grill, Inc.* is distinguishable because that court

5  "s[aw] no advantage with respect to judicial economy" or statutory enforcement where

6  defendant "ha[d] already litigated and lost this [common] issue in [Plaintiff's] individual case"

7  and "class member's entitlement to damages hinge[d] on factual determinations requiring

8  individualized proof."  *Antoninetti*, 2012 U.S. Dist. Lexis 123102, *14-19 (S.D. Cal. 2012)

9  (emphasis added).  Likewise, *Rowden* is not helpful to Google because there the court found a

10  class action would be inferior to the "administrative remedy," a "tragic waste of scarce judicial

11  resources," and "unfair" because it involved a "technical violation" ("harmlessly printing the

12  credit and debit card expiration dates on parking receipts") against a "small municipality" who

13  already "took corrective actions."  *Rowden v. City of Laguna Beach*, 282 F.R.D. 581, 585-87

14  (C.D. Cal. 2012).  Here, Google's financially driven, enormously profitable, and unlawful

15  scheme is intentional, calculated, invades fundamental privacy rights, and continues.

16

17  be no action at all for the majority of class members. . . . Thus, given that class issues
18  predominate and that the potential recovery is small for each individual, a class action is the
   superior method of adjudicating this controversy." ).

19  [46] (Finding four factors "easily satisfied" under superiority analysis where: the "case involves
20  multiple claims for relatively small individual sums"; litigation complexity and costs when
   compared to individual recovery "'reveals no other realistic possibilities'"; and "members of the
   would be class appear to agree with the choice to litigate as a class.")  *See also Hunt v. Check*
21  *Recovery Systems, Inc.*, 241 F.R.D. 505, 514-515 (N.D. Cal. 2005)(in a statutory damages case,
22  superiority was satisfied where: consumers were likely unaware of their rights under statute,
   statutory damages are relatively small providing little incentive to litigate, and "efficiency and
23  consistency favor litigating the legality of Defendant's standardized conduct by all class
   members in one suit[.]";*Walker* 2012 U.S. Dist. Lexis 186296, *49-51 (finding: recovery
24  between $4,000 and $11,500 does not suggest "that each class member has a greater interest in
   pursuing individual claims; common factual and legal issues regarding uniform conduct requires
25  concentrating cases in single forum which promotes "judicial efficiency" and single
   adjudication of claims; and "'when viewed from this perspective;" of "'case management
26  problems that may arise upon certification'" versus adjudicating "'thousands of actions by
   individual class members'", "'a class action is clearly the most efficient and in all likelihood the
27  most equitable method for resolving the parties' dispute.'"  *In re: Toyota Motor Corp.*
   *Unintended Acceleration*, 2012 U.S. Dist. LEXIS 183941, *215-217 (C.D. Cal. 2012)(finding
28  consideration of the four factors establishes class action as superior where: extreme complexity
   of proof and relatively low value of recovery satisfy first and third factors; MDL coordination
   satisfies second factor; and, under the fourth factor, "[c]lass adjudication of this matter is clearly
   superior to the alternative consisting of millions of individual lawsuits."

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION
FOR CLASS CERTIFICATION**

1    Finally, Google claims the threat of "massive damages" raises due process concerns

2    because the damages "bear[] no relation to any harm actually sustained by any class member."

3    Google ignores *Bateman v. American Multi-Cinema, Inc.*, "[n]one of these enumerated [Rule

4    23] factors appear to authorize a court to consider whether certifying a class would result in

5    disproportionate damages." *Bateman*, 623 F.3d 708, 713 (9th Cir. 2010).[47]   Google fails to

6    suggest how its alternative for individual lawsuits would not subject it to the *exact same amount*

7    of damages.  When a single trial is compared to the likelihood of thousands of unmanageable

8    individual trials, class-wide adjudication is not only more efficient and cost effective, it is

9    superior.

10   **III.   EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE**

11        Plaintiffs object to and move to strike the following "evidence" submitted by Google in

12   opposition as (1) incompetent assertions by Google's attorneys[48]; (2) improper argument and/or

13   opinion in excess of the page limits allowed by this Court's prior order[49]; and (3) hearsay

14   (including argument and opinion of counsel) to which no exception applies[50]: Kyle Wong Dec.,

15   ¶¶ 3-80 and 84-100, and Exhibits 2-70 and 74-93 (which in addition lack foundation);[51] Whitty

16

---

17   [47] In *Bateman*, a statutory damages case, the Ninth Circuit reversed the district court's denial of
18   class certification on superiority grounds holding "[w]e conclude that none of these three
     grounds—the disproportionality between the potential liability and the actual harm suffered, the
19   enormity of the potential damages…justified the denial of class certification and hold that the
     district court abused its discretion in relying on them." *Bateman,* 623 F.3d at 713.  Moreover,
20   the proportionality of damages does not change if this case is certified; the size of the potential
     liability remains exactly the same.  *Id.* at 719.  "[T]he touchstone of this determination is
21   whether denying class certification on this ground [proportionality of statutory damages] is
     consistent with congressional intent," but Google failed to advance this argument here.  *Id.* at
     717.
22   [48] *See* Fed. R. Evid. 602; *Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1024 (N.D. Cal. 2006)
     (statements by party's attorney were supported by "mere assertions of personal knowledge and
23   competency to testify" and were "insufficient to establish these assertions to be true"); *Casimir
     v. Remington Arms Co., LLC*, 2013 U.S. Dist. LEXIS 6765, *12-13 (W.D. Wash. 2013)
24   (declaration of attorney could not be considered because "it was not based upon personal
     knowledge and admissible in evidence")
25   [49] *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343-45 (9th Cir.1996) (affirming district
     court's discretion to strike submissions filed in circumvention of page limits); *Sanders v.
26   Astrue*, 2013 U.S. Dist. LEXIS 46029, *12 (N.D. Cal. 2013) (Court only considered arguments
     the Court could discern from "first 25 pages")
27   [50] *See* Fed. R. Evid. 802; *Boyd*, 458 F. Supp. 2d at 1025 (statements in declarations were based
     "not on the personal knowledge of, but on… hearsay statements")
28   [51] Wong Exhs. 4, 5, 8, 10, 11, 13, 15-23, 25-29, 31, 36-38, 40-49, and 51-70 are barred by the
     parol evidence rule as well.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION
FOR CLASS CERTIFICATION**

Somvichian Dec., ¶¶ 2-95, 97-113, and 115-118; and the Maco Stewart Dec. ¶2, ¶3, 1:15-17; ¶4, 1:22-23; ¶4a, 1:25-2:1; ¶4b, 2:2-5; ¶4c, 2:6-11; ¶4d, 2:13-16; ¶4e, 2:17-22; ¶4f, 2:23-26; ¶5, 3:3; ¶5a, 3:6; ¶5b, 3:9-10; ¶6, 3:20-23; ¶7, 3:24-25; ¶7a-e, 3:28-4:19; ¶8, 4:25; ¶8a, 4:28-5:2; ¶8b, 5:3-8; ¶8c, 5:9-10; ¶8c (i-ii), 5:11-19; ¶8d, 5:20-23; ¶8d(i), 5:24-25; ¶8d (ii-iii), 5:26-6:3; ¶8e, 6:4-5; ¶9, 6:8-9; ¶9a-b, 6:10-18; ¶10, 6:20-21; ¶10a-b, 6:22-7:6; ¶11, 7:7-15; ¶11a-c, 7:16-25; ¶12, 7:28-8:1; ¶12a-b, 8:2-9; ¶13, 8:10-13; ¶13a-b, 8:14-24; ¶14, 9:2-3; ¶14a, 9:4-9; ¶14b, 9:10-14; ¶14c-d, 9:15-23; ¶14e, 9:24-10:2; ¶14f, 10:3-9; ¶15, 10:11-19; ¶16, 10:20-22; ¶16a-b, 10:23-11:4; ¶16c, 11:5-10; ¶16d-e; 11:11-19; ¶17a-b, 11:20-28; ¶18, 12:2-27; ¶19, 12:28. Likewise, Somvichian Dec., ¶¶ 4-10,12, 14, 16-20, 22-28, 30-36, 38, 39-42, 43-63, 65-69, 79-82, 86, 88-95, 97-99, 101-103, 105, 107, 109, 113-114, and 116-118 are irrelevant; ¶¶ 3, 13, 53, 110 and 116 lack foundation.  Wong's Dec., ¶¶ 12-19, 21-23, 25-26, 28-33, 37, 39, 41-63, 65-69, and 71-96 are overbroad as to time and/or speculative.  Cuzbiak Dec., ¶2:2-6 is hearsay. Haamel Exh. 2 is irrelevant.

## IV.    CONCLUSION

This case is perfectly suited for class treatment.  The Court should grant certification.  If the Court is inclined to deny the Motion in whole or in part, Plaintiffs respectfully request leave to refile.[52]

///

///

///

///

///

///

///

---

[52] Google's admitted conduct through the evidentiary submissions and this briefing are ideally suited for injunctive relief and Plaintiffs may seek to certify a purely injunctive class.  A class may be certified under Rule 23(b)(2) if "'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  *In re High-Tech Emple. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 153752 *27 (N.D. Cal. Oct. 24, 2013) (quoting Fed. R. Civ. P. 23(b)(2)).

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

Respectfully submitted,

Dated:  December 19, 2013                 CORY WATSON CROWDER & DEGARIS, P.C.

                                          By:/s/ F. Jerome Tapley
                                             F. Jerome Tapley (*Pro Hac Vice*)
                                             Email: jtapley@cwcd.com
                                             2131 Magnolia Avenue
                                             Birmingham, AL 35205
                                             Telephone: (205) 328-2200
                                             Facsimile: (205) 324-7896

                                             WYLY~ROMMEL, PLLC
                                             Sean F. Rommel (*Pro Hac Vice*)
                                             Email: srommel@wylyrommel.com
                                             4004 Texas Boulevard
                                             Texarkana, Texas 75503
                                             Telephone: (903) 334-8646
                                             Facsimile: (903) 334-8645

                                             *Plaintiffs' Co-Lead Counsel*

                                             CARTER WOLDEN CURTIS, LLP
                                             Kirk J. Wolden (SBN 138902)
                                             Email: kirk@cwclawfirm.com
                                             1111 Exposition Boulevard, Suite 602
                                             Sacramento, California 95815
                                             Telephone:  (916) 567-1111
                                             Facsimile:  (916) 567-1112

                                             *Plaintiffs' Liaison Counsel*